William M. Audet (waudet@audetlaw.com)
Michael McShane (mmcshane@audetlaw.com)
Adel A. Nadji (anadji@audetlaw.com)
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.982.1776
Facsimile: 415.568.2556

Law Offices of Anthony M. Urie
Anthony M. Urie (Cal. State Bar #92363)
18025 17th Ave. N.W.
Shoreline, WA 98177

*Attorneys for Plaintiffs and
the Class Members*

# UNITED STATES DISTRICT COURT FOR

# THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Chelsea, LLC, Mark Russo, Allen Loretz, and Ivan Simpson, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Regal Stone, Ltd., Hanjin Shipping, Co., Ltd., Conti Cairo KG, NSB Neiderelbe, Synergy Maritime, Ltd. *In Personam*; M/V Cosco Busan, their engines, tackle, equipment, appurtenances, freights, and cargo *In Rem*,<br><br>Defendants. | Court File No. C–07–5800<br><br>AT LAW AND IN ADMIRALTY<br><br>**VERIFIED FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**Jury Trial Demanded** |

1

## INTRODUCTION

1. November 7, 2007 was like any other fall day in the San Francisco Bay Area: cold, overcast and foggy. Vessels were navigating their way through the San Francisco Bay to the Pacific Ocean. Crab fishermen, among others, were waiting for news of the season to officially open.

2. Heading north out to the ocean bound for Asia, one container ship — the COSCO BUSAN — failed to heed normal precautions and hit the fender of tower W4 of the San Francisco Bay Bridge. The impact of the crash tore a huge gash in the side of the vessel and resulted in the spillage of an estimated 58,000 gallons of fuel oil into the fragile San Francisco Bay ecosystem.

3. This man-made disaster will for years have a profound impact on not only the wildlife of Northern California, but has also immediately impacted the livelihood of thousands and thousands of individuals and small businesses, such as commercial fishers, and crabbers, as well as recreational charter operations. On November 12, 2007, the Governor of the State of California "halted" all commercial fishing in and around the San Francisco Bay Area.

4. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on its own behalf and as representative of a Class. Plaintiffs and members of the Class will have incurred significant damages and economic losses and will continue to incur such expenses and losses in the future.

## PARTIES

5. Individual and Representative Plaintiff Chelsea, LLC. Plaintiff Chelsea is a member of the class. Plaintiff is a 60-foot "crab" vessel that prior to the spill caught crab in the San Francisco Bay Area.

6. Individual and Plaintiff Mark Russo resides in Monterey, California, Plaintiff Russo is the owner of the vessel *Freeland* and has owned the vessel on or about November 7, 2007 and continues to own said vessel. The vessel is a duly licensed California Commercial Crab Fishing Vessel.

7. Individual and Plaintiff Allen Loretz is a hired captain and crewmember aboard the vessel *Freeland*. Plaintiff Zorn was the captain and crewmember on or about November 7, 2007 and continues to serve as captain. The vessel is a duly licensed California Commercial Crab Fishing Vessel.

8. Individual and Plaintiff Ivan Simpson resides in Arizona. Plaintiff Simpson is a crewmember on board the vessel *Rogue* and was employed aboard the vessel on or about November 7, 2007 and continues to be employed aboard the vessel. The vessel is a duly licensed California Crab Fishing Vessel.

9. Plaintiffs bring this action on behalf of themselves and on behalf of a class of over 500 fishermen, vessel owners, charterers and operators (the exact number of which is not presently known) who were to participate in, or depend upon, the 2007-2008 California Fisheries for commercial purposes.

10. Defendant Conti Cairo KG, upon information and belief, is an owner of the vessel COSCO BUSAN with its headquarters in Buxtehude, Germany. Defendant

NSB Neederelbe, upon information and belief, is a ship manager of the vessel COSCO BUSAN with its headquarters in Buxtehude, Germany.

11. Defendant vessel, COSCO BUSAN, their engines, tackle, equipment, appurtenances, cargo, all freights, and other earnings (the "Vessel") is now, or will be during the pendency of this action, within the district and jurisdiction of this court.

12. Defendant Regal Stone, Ltd., upon information and belief, is a Hong Kong based company that claims ownership of the COSCO BUSAN.

13. Defendant Hanjin Shipping Co., Ltd. is a large Korean-based shipping company that leases or charters the COSCO BUSAN from Defendant Regal Stone, Ltd. or other owners.

14. Defendant Synergy Maritime, Ltd. upon information and belief is a manager, owner and the employer of the crew of the vessel COSCO BUSAN.

## JURISDICTION AND VENUE

15. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is within this Court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333 and Article III § 2 of the United States Constitution. Certain causes of action that arise under the laws of California are within this Court's supplemental jurisdiction 28 U.S.C. § 1367. Further, this Court has jurisdiction over this action because this is a class action lawsuit in which over $5,000,000 is at issue and there are more than one hundred putative class members. Further this Court has jurisdiction under the Extension of Admiralty Act.

16. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 in that substantial part of the events or omissions giving rise to the claims asserted herein

occurred in this District. The vessel COSCO BUSAN, upon information and belief, is or will be within this District during the pendency of this action.

## FACTS

17. On November 7, 2007, at approximately 7:30AM, the COSCO BUSAN, a freighter ship bound for Asia, left the Port of Oakland.

18. Less than thirty minutes later, the COSCO BUSAN crashed into a support piling of the Oakland Bay Bridge.

19. The crash resulted in a huge breach in the ship's hull, where the fuel tanks of the ship are located. The hole on the port side was reportedly at least 70 feet long, 12 feet wide, and 3 feet deep.

20. Unfortunately, instead of immediately notifying the authorities about the magnitude of the problem, the ship's captain initially "estimated" less than "150" gallons of fuel spillage. In reality, the 150 gallons turned into over 58,000 gallons of toxic "bunker oil."

21. As the day wore on, the oil "dispersed" into San Francisco Bay and also into the Pacific Ocean. The ship's pilot has recently reported that the ship's onboard radar malfunctioned and the ship's master may have provided confusing instructions to the captain.

22. The non-economic damage to the San Francisco Bay's fragile ecosystem is beyond dollars and cents. Moreover, because of the negligence of the Defendants, and or unseaworthiness of the COSCO BUSAN, commercial crabbers and other commercial fishers postponed the short season and as such will lose millions of dollars.

23. As of November 13, 2007, the crab season was cancelled and all commercial fishing halted with public safety and health concerns regarding Dungeness crab, and potentially other seafood species.

24. This lawsuit seeks to economically compensate the victims of the spill.

## CLASS ACTION ALLEGATIONS

25. Plaintiffs bring this action on their own behalf and as representatives of a class consisting of: "all commercial fishing operations, crab, shellfish, bottomfish, herring fishing, and recreational charter vessel operations, which commercially fish and/or operate in and around the coastal waters of the San Francisco Bay Area and adjacent fishing areas grounds."

26. The Class is so numerous that joinder of all members is impracticable.

27. There are questions of law and fact common to the Class including, but not limited to:

    a. Whether Defendants negligently and/or fraudulently acted to cause the spill;

    b. Whether Defendants conducted adequate supervision to determine whether the spill could be prevented;

    c. Whether Defendants engaged in unconscionable, deceptive, and/or unreasonable business practices and conduct;

    d. Whether Defendants knowingly, intentionally, or negligently concealed, suppressed, or omitted material information concerning the safety of their ship from the public;

    e. Whether the Class has suffered injury by virtue of the Defendants' negligence, recklessness, carelessness, and/or unconscionable and/or deceptive business practices and conduct; and

    f. Whether Defendants are strictly liable to the Class, by virtue of State of Federal Law.

    g.    Whether the COSCO BUSAN was unseaworthy and such unseaworthiness was a proximate cause of the November 7, 2007 Oil Spill.

28. These and other questions of law and/or fact are common to the Class and predominate over any questions affecting only individual Class members.

29. The claims of the named Plaintiffs are typical of the claims of the respective Class they seek to represent.

30. In the case of the proposed Court-supervised "Clean-Up" Program, the representative Plaintiff and the Class as a whole will benefit from such relief.

31. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class they seek to represent.

32. Plaintiff has retained the undersigned counsel competent and experienced in complex class actions to represent them and the members of the proposed Class. Accordingly, the interests of the Class will adequately be protected and advanced. In addition, there is no conflict of interest among Plaintiff and the members of the proposed Class.

33. Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate injunctive and/or declaratory relief.

34. Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because, as set forth above, common issues of law and fact predominate over any individual issues and certification of the claims as class claims is superior to other available methods for the fair and efficient adjudication of these claims. In addition, there would be enormous economies to the courts and parties in litigating these common

issues on a class-wide basis rather in individual trials. Plaintiffs foresee no difficulties in the management of this action as a class action.

## CLASS CLAIMS

## FIRST CAUSE OF ACTION

### [Mandatory "Clean Up" Program]

35. Plaintiffs hereby restates and realleges each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

36. As a direct result of Defendants' actions and omissions, Plaintiffs and Class have been injured. The Bay Area spill requires immediate "clean up" of the toxins. Defendants are responsible for the spill.

37. Accordingly, Defendants should be required to establish a fund and emergency "clean-up" program.

## SECOND CAUSE OF ACTION

### [Strict Liability]

38. Plaintiffs hereby restates and realleges each and every allegation set forth above with the same force and effect as if set forth herein.

39. At all times herein, Defendants were the owners, charterers, custodians, and/or operators of the COSCO BUSAN which caused the incident described herein.

40. At all times relevant to this action, Defendants had supervision, custody, navigation and control of the COSCO BUSAN from which the harmful oil spill occurred.

41. At all times herein, Defendants were under a continuing duty to protect Plaintiffs and proposed class from the harm occasioned by the COSCO BUSAN within its custody, navigation and control.

42. The oil spill herein was occasioned by its ruin, vice, unseaworthiness or defect.

43. Defendants knew or, in the exercise of reasonable care, should have known of the ruin, vice, unseaworthiness or defect which caused the oil spill.

44. The injuries sustained by Plaintiffs as a result of the oil spill was the direct and proximate result of the strict liability of the Defendants.

45. Due to the Defendants strict liability, Plaintiffs and Class members are entitled to recover actual damages.

### THIRD CAUSE OF ACTION

### [Negligence]

46. Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein.

47. The Defendants owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care.

48. The Defendants breached their duty to Plaintiffs and the Class.

49. The Defendants in the exercise of reasonable care should have known that the ship would or could hit the bridge.

50. As direct and proximate result of the Defendants' negligence, Plaintiffs and the Class have sustained damages.

WHEREFORE, Plaintiffs on behalf of themselves and all others similarly situated, demands judgment against the Defendants for compensatory damages for himself/herself and each member of the Class, for establishment of a common fund, plus attorneys' fees, interests and costs.

## FOURTH CAUSE OF ACTION

**[Violation of the Unfair Competition Act, Cal. Bus. & Prof. Code § 17200, *et seq.*]**

51. Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein.

52. As described herein, Defendants' conduct constitutes unfair competition within the meaning of the Unfair Competition Act, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "Act"), insofar as the Act prohibits "any unlawful, unfair or fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising."

53. Defendants have engaged and continue to engage in unfair competition in violation of the Act.

54. Defendants' conduct constitutes unlawful business acts or practices under the Act insofar as it violates, *inter alia,* Business and Professions Code §§ 17500 *et seq.* and California Civil Code §§ 1750 *et seq.*

55. Defendants' conduct constitutes "fraudulent" business practices within the meaning of the Act in that members of the public have been harmed.

56. Defendants' conduct amounts to "unfair" business practices insofar as the Act forbids all wrongful business activities in any context in which they appear. Moreover, as described herein, Defendants' practices offend established public policies, and are immoral, unethical, oppressive, and unscrupulous. The impact of the Defendants' practices is in no way mitigated by any justifications, reasons or motives. The Defendants' conduct has no utility when compared to the harm done to Plaintiffs and other members of the Class.

57. As a direct and proximate result of the Defendants' unfair methods of competition and unfair and deceptive acts or practices, Plaintiffs and the Class have sustained damages.

58. As a proximate result of their unfair methods of competition and unfair or deceptive acts or practices, the Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to Bus. & Prof. Code §§ 17203 and 17204.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that this Court enter a judgment against the Defendants and in favor of the Plaintiffs and the Class and award the following relief:

A. That this action be certified as a class action on behalf of the proposed Class described herein and that counsel of record be appointed to represent the Class;

B. That a comprehensive Court-supervised "Clean-Up" Program be established;

C. For general damages in an amount to be proven at the time of trial;

D. For special damages in an amount to be proven at the time of trial;

E. For pre-judgment and post-judgment interest on the above general and special damages;

F. For restitution and disgorgement of all profits;

G. For compensatory and other damages, as the Court may determine;

H. For exemplary and punitive damages, to the extent permissible by law and in an amount to be proven at the time of trial, and sufficient to punish Defendant or to

deter them and other from repeating the injurious conduct alleged herein or similar conduct;

I. Costs, including experts' fees and attorneys' fees and expenses, and the costs of prosecuting this action; and

J. That the defendant Vessel be arrested, including all appurtenances, and cargo aboard that the plaintiffs have judgment against them, in amounts to be proven at trial, with additional interest, attorneys' fees, costs, and applicable federal and state penalties to be proven at trial;

K. That the plaintiffs' claims be determined to be valid maritime claims against the defendant vessels, with priority over all other interests, claims or liens, as provided by law;

L. That the defendant vessels be condemned and sold to pay the judgment of the plaintiffs and a lien be created under federal law;

M. That the plaintiffs have judgment against all *in personam* defendants for compensatory and exemplary damages, in an amount to be proven at trial, plus interest, attorneys' fees, and costs; and

N. For such other relief as this court deems just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demands a jury trial as to all claims triable in this action.

12

Verified First Amended Class Action Complaint

Dated: November 19, 2007  AUDET & PARTNERS, LLP

*[signature]*

William M. Audet
Michael McShane
Adel A. Nadji
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.982.1776
Facsimile: 415.568.2556


Anthony M. Urie (Cal. State Bar #92363)
Law Offices of Anthony M. Urie
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone (206) 859-3400


*On Behalf of Plaintiffs and the Class*

## VERIFICATION

Plaintiff Mark Russo declares:

I am a named Plaintiff in this action, and make this verification pursuant to Admir. L.R. 2-1; I have read the forgoing complaint, know the contents thereof, and from information officially furnished to me believe the same to be true.

I verify under penalty of perjury, in accordance with 28 U.S.C. §1746, that the forgoing is true and correct.

Dated:  November 19, 2007

_____
Mark Russo