William M. Audet (waudet@audetlaw.com)
Michael McShane (mmcshane@audetlaw.com)
Adel A. Nadji (anadji@audetlaw.com)
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.982.1776
Facsimile: 415.568.2556

Law Offices of Anthony M. Urie
Anthony M. Urie (Cal. State Bar #92363)
18025 17th Ave. N.W.
Shoreline, WA 98177

*Attorneys for Plaintiffs and
the Class Members*

**UNITED STATES DISTRICT COURT FOR**

**THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Chelsea, LLC, Mark Russo, Allen Loretz, and Ivan Simpson, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Regal Stone, Ltd., Hanjin Shipping, Co., Ltd., Conti Cairo KG, NSB Neiderelbe, Synergy Maritime, Ltd. *In Personam*; M/V Cosco Busan, their engines, tackle, equipment, appurtenances, freights, and cargo *In Rem*,<br><br>Defendants. | Court File No. C–07–5800-SC<br><br>**IN ADMIRALTY**<br><br>**EX PARTE APPLICATION FOR ARREST OF THE VESSEL COSCO BUSAN PURSUANT TO RULE C OF THE SUPPLEMENTAL ADMIRALTY RULES AND ADMIR. L.R. 3** |

Pursuant to Rule C of the Supplemental Admiralty Rules and Admir. L.R. 3-1 and 3-2 of this Court, Plaintiffs, Chelsea, LLC, Mark Russo, Allen Loretz, and Ivan Simpson ("Plaintiffs"), hereby apply *ex parte* for the arrest of the vessel COSCO BUSAN, a commercial container vessel, IMO number 9231743, 65131 gross tonnage, year of build 2001, her engines, tackle, furniture, apparel (hereinafter the "Vessel" or "COSCO BUSAN").

Plaintiffs make this *ex parte* application because delay in hearing this matter, and notice to the *in personam* Defendants, Regal Stone, Ltd., Hanjin Shipping, Co., Ltd., Conti Cairo KG, NSB Neiderelbe, Synergy Maritime, Ltd., (collectively "Defendants") before the Court issues a warrant for arrest of the Vessel, would cause severe hardship to Plaintiffs. This is because commercial vessels, such as the Vessel that is the subject of this action, are highly mobile and unless arrested as requested in this application, the owners and operators of such vessels when notified of the threat of such an arrest could easily avoid arrest of the Vessel by leaving the jurisdiction of this Court in a few hours, and leaving the jurisdiction of the United States in less than twenty-four hours. Therefore, delay and notice to the *in personam* Defendants that Plaintiffs request the arrest of the Vessel will likely deprive Plaintiffs of the only collateral that might satisfy all or part of the claims and liens, for the reasons and causes said in the Complaint, the *in personam* Defendants owe. *See* Verified First Amended Complaint.

Therefore, good cause exists for the *ex parte* relief sought by Plaintiffs.

## I.    FACTUAL BACKGROUND

This case arises out of the oil spillage in the San Francisco Bay that was caused by the COSCO BUSAN on November 7, 2007. Heading north out to the ocean bound for

Asia, the COSCO BUSAN failed to heed normal precautions and hit the fender of tower W4 of the San Francisco Bay Bridge. The impact of the crash tore a huge gash in the side of the vessel and resulted in the spillage of an estimated 58,000 gallons of fuel oil into the fragile San Francisco Bay ecosystem. *See* verified Complaint, ¶¶ 2 and 17.

This man-made disaster will for years have a profound impact on not only the wildlife of Northern California, but has also immediately impacted the livelihood of thousands and thousands of individuals and small businesses, such as commercial fishers, crabbers, and clammers, as well as recreational charter operations. On November 12, 2007, the Governor of the State of California "halted" all commercial fishing in and around the San Francisco Bay Area. *See* Verified First Amended Complaint, ¶ 3.

The Plaintiffs in this action are San Francisco Bay Area fishermen, vessel owners, charterers and operators who were to participate in, or depend upon, the 2007-2008 California fisheries for commercial purposes. *See* Verified First Amended Complaint, ¶¶ 5-9.

This lawsuit, *inter alia*, seeks to economically compensate the victims of the spill as well equitable relief, directing Defendants to establish a fund and emergency "clean-up" program. *See* Verified First Amended Complaint, ¶¶ 35 and 37. Furthermore, Plaintiffs have asserted a maritime lien. *See* Verified First Amended Complaint, Prayer for Relief, ¶¶ K-L.

## II.   ARGUMENT

**A.   The Court Has Jurisdiction Over Plaintiffs' Claims**

The act of causing oil to be placed in the navigable waters of the State is a maritime tort over which the district courts of the United States have original jurisdiction.

*California by Dep't of Fish & Game v. S.S. Bournemouth*, 307 F. Supp. 922, 926 (C.D. Cal. 1969) ("It is the view of this court that the general maritime law has consistently provided *in rem* relief to the owner of property tortiously damaged by conversion while such property is upon the navigable waters."); *A/S HJALMAR BJORGES REDERI v. The tugboat "CONDOR,"* 1979 U.S. Dist. LEXIS 13427 at *5 (S.D. Cal. 1979)(The court concluded that the vessel was properly arrested and that jurisdiction need not be have been evaluated under the minimum contacts test because admiralty is a separate branch of the law with a special need for *in rem* procedures.); *see also, Alyeska Pipeline Service Co. v. The Vessel Bay Ridge*, 703 F.2d 381, 384 (9th Cir. 1983) *overruled on other grounds*, *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852, 859 (9th Cir. 2005)("In absence of an arrest, no decree *in rem* can be rendered against the *res*."); *Yokohama Specie Bank, Ltd. v. Chengting T. Wang*, 113 F.2d 329 (9th Cir. 1940)

An *in rem* action against a vessel to foreclose a maritime lien is only cognizable in a federal district court. Thomas J. Schoenbaum, *Admiralty & Maritime Law*, Vol. 2; Section 21-3, page 401 (4th ed. 2002)(citing *Madruga v. Superior Court* (1954) 346 U.S. 556.). Consequently, the Court has exclusive admiralty jurisdiction over this action pursuant to Rule 9(h) of the Federal Rules of Civil Procedure, Rule C of the Supplementary Admiralty Rules; 46 U.S.C. Section 31325(c) and the general maritime law.

**B.     This Is The Proper Court For This Suit And The Court Has Jurisdiction To Order The Arrest Of The Vessel**

A prerequisite to *in rem* jurisdiction is that the vessel to be arrested must be present in the district when the suit in filed or during the pendency of the action, *See* Schoenbaum, *supra*, Vol. 2, Section 21-3, pages 402 and 406.

Venue and jurisdiction are proper in this case because the Vessel is a federally documented commercial container vessel in navigation upon the navigable waters of these United States, and is now and/or will be during the pendency of this action afloat upon navigable waters of the United States and within this Judicial District. *See* Verified First Amended Complaint, ¶16.

### C. Plaintiffs Are Entitled To The Arrest Of The Vessel Under Rule C Of The Supplemental Admiralty Rules

Plaintiffs have brought an action to enforce a maritime lien under Rule C of the Supplemental Admiralty Rules, and asserting a right to arrest and foreclose the Vessel.

Under Rule C of the Supplemental Admiralty Rules: "The plaintiff must file a complaint and an affidavit asserting the validity of the lien in the federal district court where the vessel is or will be located during the pendency of the action". *Schoenbaum*, Vol II, Section 21-3, pages 402-403 citing Rule C(2); *see also*, page 408: "The first step in an action under Rule C is the preparation and filing a verified complaint. The complaint should describe the property which the subject of the action; alleged that a maritime lien exists and the grounds therefore; state the circumstances giving rise to the claim with such particularity that a *prima facie* case of liability is evident; and state that the property is within the jurisdiction of the court."

A Rule C action, therefore, is commenced by a complaint, *ex parte* review by a judge or magistrate and, upon finding that the circumstances exist for arrest of a vessel, the judge or magistrate issues an order directing the clerk to issue a warrant of arrest for the vessel by the U.S. Marshal and order that after arrest of the vessel, notice be provided of the action and the arrest to adverse parties, *Schoenbaum*, Vol II, Section 21-3, pages 403-404 citing Rule C(3)(a)(ii) and (b).

After Rule C has been utilized to bring the vessel into the custody of the Court, Release of the vessel may be authorized only by order of the Court upon giving such security as the Court may require. *Schoenbaum*, Vol II, Section 21-5, pages 414- 416 citing Rule E(4)(f j and E (5). In the present case, Plaintiffs have filed a Complaint with an affidavit from one of its Plaintiffs, Mark Russo, asserting that Plaintiffs have a maritime lien against the Vessel. *See* Verified First Amended Complaint.

### III.   CONCLUSION

Plaintiffs respectfully request an Order for a warrant of arrest issue against the Vessel based on the above. Based on Plaintiffs' familiarity with the Vessel, Plaintiffs have reason to believe that the Vessel is now berthed in the port of Oakland. Due to the obvious mobile nature of the Vessel, the nature and extent of the damages, and the nature of the property that is to be arrested (a commercial container vessel) there is a very great and real danger that the Vessel may evade *in rem* process unless the Order and Warrant For Arrest of the Vessel are issued forthwith.

Dated: November 19, 2007

AUDET & PARTNERS, LLP

William M. Audet
Michael McShane
Adel A. Nadji
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.568.2555
Facsimile: 415.568.2556

Anthony M. Urie (Cal. State Bar #92363)
Law Offices of Anthony M. Urie
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone (206) 859-3400

*On Behalf of Plaintiffs and the Class*