1  JOHN D. GIFFIN, CASB No. 89608
   john.giffin@kyl.com
2  JULIE L. TAYLOR, CASB NO. 154341
   julie.taylor@kyl.com
3  JULIE A. KOLE, CASB NO. 203681
   KEESAL, YOUNG & LOGAN
4  A Professional Corporation
   Four Embarcadero Center, Suite 1500
5  San Francisco, California 94111
   Telephone:   (415) 398-6000
6  Facsimile:    (415) 981-0136

7  Attorneys for Defendant
   REGAL STONE, LTD.

8

9

10                UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12

13
   Chelsea, LLC, Mark Russo, Allen            )  Case No. C-07-5800-SC
14 Loretz, and Ivan Simpson, individually     )
   and on behalf of all others similarly      )  REGAL STONE LTD.'S OPPOSITION
15 situated,                                   )  TO PLAINTIFFS' *EX PARTE* MOTION
                                               )  FOR ORDER TO SHOW CAUSE WHY
16                                             )  A PROTECTIVE ORDER TO
                        Plaintiffs,            )  SUPERVISE OR OTHERWISE LIMIT
17                                             )  COMMUNICATIONS WITH
            vs.                                )  PUTATIVE CLASS MEMBERS
18                                             )  SHOULD NOT ISSUE
   Regal Stone, Ltd., Hanjin Shipping,         )
19 Co., Ltd., Conti Cairo KG, NSB              )
   Neiderelbe, Synergy Maritime, Ltd. *In*     )
20 *Personam;* M/V Cosco Busan, their          )  Courtroom:  1, 17th Floor
   engines, tackle, equipment                  )  Honorable Samuel J. Conti
21 appurtenances, freights, and cargo *In*     )
   *Rem*,                                       )
22                                             )
                        Defendants.            )
23 _____       )

24

25       Regal Stone Ltd., ("Regal Stone") having made a limited appearance on behalf of

26 the COSCO BUSAN *in rem*, hereby submits the following opposition to Plaintiffs' *Ex*

27 *Parte* Motion for Order to Show Cause Why a Protective Order to Supervise or

28 Otherwise Limit Communications With Putative Class Members Should Not Issue.

KYL_SF459455

1

2

# TABLE OF CONTENTS

3   I.    INTRODUCTION ........................................................................................1

4   II.   THIS *EX PARTE* MOTION IS IMPROPER ON ITS FACE ...................2

5   III.  PLAINTIFFS' REQUEST FOR IMMEDIATE INJUNCTIVE RELIEF
        IS IMPROPER ..........................................................................................2

6

7   IV.   THE CLAIMS PROCESS ........................................................................3

8         A.    FEDERAL LAW MANDATES THE CLAIMS PROCESS ..............3

9         B.    FEDERAL OVERSIGHT ...........................................................6

10        C.    THE HMMS CLAIMS PROCESS AT ISSUE ..............................7

11  V.    NO AUTHORITY EXISTS FOR THIS COURT TO INTERFERE WITH
        THE CLAIMS PROCESS ...........................................................................9

12        A.    PLAINTIFFS' ARGUMENT THAT THE COURT HAS AUTHORITY
                TO LIMIT COMMUNICATIONS IS MISGUIDED ........................9

13

14        B.    THE CLAIMS PROCESS IS ENTIRELY COMPLIANT WITH
                FEDERAL LAW ......................................................................11

15        C.    THE CLAIM FORM AND ALL RELATED COMMUNICATIONS
                ARE ENTIRELY APPROPRIATE................................................13

16

17        D.    PLAINTIFFS ARE ATTEMPTING TO INTERFERE WITH OTHER
                ATTORNEY/CLIENT RELATIONSHIPS......................................14

18  VI.   CONCLUSION.........................................................................................15

19

20

21

22

23

24

25

26

27

28

i

KYL_SF459455

# TABLE OF AUTHORITIES

## Cases

Abundiz v. Explorer Pipeline Co.,
    2003 WL 230960198, at *3 (N.D. Tex. 2003) ............................................ 12

Burford v. Cargill, Inc.,
    2007 WL 81667 (W.D. La. Jan. 9, 2007) ................................................ 13

Cole v. March,
    560 F.2d 186 (3rd Cir. 1977) ................................................ 10

Gulf Oil v. Bernard,
    452 U.S. 89 (1981) ................................................ 9, 10

Intel Corp. v. ULSI Systems Technology, Inc.,
    995 F2d 1566 (Fed. Cir. 1993) ................................................ 3

Jenifer v. Delaware Solid Waste Authority,
    1999 WL 117762 (D. Del. Feb. 25, 1999) ................................................ 13

Johnson v. Colonial Pipeline Co.,
    830 F. Supp. 309 (E.D. Va. 1993) ................................................ 12

Lujan v. Defenders of Wildlife,
    504 US 555 (1992) ................................................ 3

Ralph Oldsmobile, Inc. v. General Motors Corp.,
    2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001) ................................................ 13

Sierra On-Line, Inc. v. Phoenix Software, Inc.,
    739 F2d 1415 (9th Cir. 1984) ................................................ 3

Stanley v. University of So. Calif.,
    13 F.3d 1313 (9th Cir. 1994) ................................................ 3

Unocal v. United States,
    222 F. 3rd 528 (9th Cir. 2001) ................................................ 4

Weinberger v. Romero-Barcelo,
    456 US 305 (1982) ................................................ 3

## Statutes

33 C.F.R. § 136.1 et seq. ................................................ 4, 6

    § 136.103 ................................................ 4, 6

    § 136.105(a) ................................................ 5, 6

    § 136.105(b) ................................................ 5, 6

    §136.105(e) ................................................ 5, 6

    § 136.105(e)(13) ................................................ 5, 6

§ 136.109 .................................................................................. 6

§ 136.111(b) ............................................................................. 6

§ 136.115(d) ............................................................................. 6

§ 136.309 .............................................................................. 5, 6

OPA '90 (33 U.S.C. § 2701, *et seq.*) ............................. 4, 7, 11, 13

§ 2173(a) ................................................................................ 11

§ 2701(32) ............................................................................... 4

§ 2702(b)(2) ............................................................................. 4

§ 2705(a) .................................................................................. 4

§ 2713(a) .................................................................................. 4

§ 2713(c) ................................................................................ 11

§ 2714(b) .................................................................................. 5

§ 2714(b)(2) ............................................................................. 5

California Govt. Code §§ 8670.51 *et seq.* .................................. 4

### Other Authorities

135 Cong. Rec. at H 7962, 7965 (statements of Rep. Hammerschmidt and Rep. Lent) ... 12

### Rules

Federal Rules of Civil Procedure

Rule 23 ................................................................................... 11

Rule 65(a) ................................................................................. 3

Northern District Local Rule 7-10 ............................................. 2

KYL_SF459455

## I.    INTRODUCTION

Plaintiffs' *Ex Parte* Motion is an unprecedented and improper attempt to interfere with a ***federally mandated*** Claims Process which has been instituted under the oversight of the United States Coast Guard following the November 7, 2007 COSCO BUSAN oil spill.[1]  Federal oil pollution law requires that, following an oil spill, the designated Responsible Party fund a Claims Process to provide compensation to individuals and entities who suffered damages as a result of the spill.  The purpose of this requirement is to provide full compensation for any damage suffered as a result of the oil spill to any entity affected – crabbers, fishermen, processors, etc. – without the need for lengthy litigation.

In compliance with this mandate, Regal Stone, the designated Responsible Party in connection with the COSCO BUSAN oil spill, has funded and will continue to fund a Claims Process.  Contrary to Plaintiffs' Motion, neither Regal Stone nor any of the other Defendants control the Claims Process.  Rather, the claims process is administered by Hudson Marine Management Service ("HMMS") under the general oversight of the Federal On Scene Coordinator ("FOSC").  HMMS is not a party to this lawsuit.

By all accounts, the Claims Process in place has been very successful, processing over 300 claims and providing "up-front" money to fishermen and crabbers who claim to have been damaged as a result of the delay in the opening if the fishing season.  HMMS has processed claims not only from unrepresented individuals, but has also worked with attorneys representing groups of fishermen in order to efficiently compensate all claimants as soon as possible.  Indeed, it is the efficacy of the Claims Process that has spawned the instant motion.  To put it simply, Plaintiffs' counsel is distressed by the

[1] Plaintiffs' Motion is replete with misrepresentations regarding the oil spill, the clean-up efforts that followed and the resulting environmental impact.  Plaintiffs' "facts" in this regard are supported by nothing more than citations to allegations in their own Complaint.  As set forth in the accompanying Objection to Evidence, such citations are improper.  However, because these issues are not relevant to the Motion before the Court, Regal Stone will not respond further to Plaintiffs' misstatements.

KYL_SF459455

REGAL STONE LTD.'S OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-5800-SC

number of potential class members whose claims are being processed and paid through the Claims Process.  The more individuals and entities that are compensated through the Claims Process means the less potential class members – and therefore less attorneys fees – for Plaintiffs.[2]  In an unprecedented effort to prevent claimants from being compensated without litigation, Plaintiffs' counsel is asking this court to interfere in a federally mandated process over which it has no oversight responsibility.  Plaintiffs' request for an Order to Show Cause should be denied.

## II.    THIS *EX PARTE* MOTION IS IMPROPER ON ITS FACE

Without regard to the merit (or, in this case, lack thereof) of Plaintiffs' contentions, Plaintiffs' *Ex Parte* Motion is defective on its face and must be denied. Northern District Local Rule 7-10 requires that an *ex parte* motion "include a citation to the statute, rule or order which permits the use of an *ex parte* motion to obtain the relief sought." (ND CA Rule 7-10).  Plaintiffs have failed to comply with Local Rule 7-10. Indeed, *ex parte* motions are appropriate in limited situations and should not be submitted unless the relief requested is warranted pursuant to the requirements set forth by the court.  Plaintiffs' wholesale failure to provide authority as a basis for their *ex parte* motion renders it improper.

## III.    PLAINTIFFS' REQUEST FOR IMMEDIATE INJUNCTIVE RELIEF IS IMPROPER

Incredibly, at the conclusion of their motion Plaintiffs request that the Court "immediately enjoin the Claims Process and associated communications by Defendant or their agents" without citing a single legal authority for such a proposition.  Although it is unclear what category of injunctive relief Plaintiffs seek, it appears that Plaintiffs

---

[2] It is ironic that Plaintiffs are attempting to stop the prompt resolution of claims through the Claims Process when they have done absolutely nothing to prosecute their lawsuit beyond demanding that a security be posted on the vessel.  To the best of Regal Stone's knowledge, Plaintiffs have not served a single Defendant in this action.

KYL_SF459455

REGAL STONE LTD.'S OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-5800-SC

request the Court to issue a preliminary injunction "until a Revised Claim Form and Revised Cover Letter [described by Plaintiffs] is drafted and approved by the Court."

The function of a preliminary injunction is to preserve the status quo and to prevent irreparable loss of rights prior to judgment. <u>Sierra On-Line, Inc. v. Phoenix Software, Inc.</u>, 739 F2d 1415, 1422 (9th Cir. 1984). Furthermore, "a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted." <u>Intel Corp. v. ULSI Systems Technology, Inc.</u>, 995 F2d 1566, 1568 (Fed. Cir. 1993). Considering the extraordinary nature of the relief sought, it is particularly egregious that Plaintiffs do not even attempt to satisfy the requirements attendant to obtaining a preliminary injunction. Namely, Plaintiffs do not demonstrate that (1) legal remedies are inadequate and (2) they risk irreparable injury if the injunction is not granted. <u>Weinberger v. Romero-Barcelo</u>, 456 US 305, 312 (1982); <u>see also</u>; <u>Stanley v. University of So. Calif.</u>, 13 F.3d 1313, 1320 (9th Cir. 1994). In addition, Plaintiffs fail to show they have standing to seek the injunction by *proving* they have sustained "an injury in fact." <u>Lujan v. Defenders of Wildlife</u>, 504 US 555, 560 (1992).

Finally, pursuant to Federal Rule of Civil Procedure 65(a), a preliminary injunction carries with it the requirement that the "adverse party" be given notice by the party seeking the injunction. Plaintiffs' effort to achieve an injunction as to the Claims Process without any apparent effort to give notice to HMMS (the entity responsible for directing it) or any other entity involved in the governance of the claims process, such as the U.S. Coast Guard, is entirely inappropriate. Plaintiffs' baseless request that the Court enjoin the claims process should be denied.

## IV.    THE CLAIMS PROCESS

### A.    <u>FEDERAL LAW MANDATES THE CLAIMS PROCESS</u>

The primary federal statute which governs oil spill liability in the U.S. is found in the Oil Pollution Act of 1990 (OPA '90), which amended the then existing versions of the Federal Water Pollution Control Act ("FWPCA") and Clean Water Act. <u>See</u> OPA '90 (33

- 3 -

REGAL STONE LTD.'S OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-5800-SC

U.S.C. § 2701, *et seq.*). OPA '90 establishes the oil pollution liability and compensation regime for the United States. In the event of an oil spill, OPA '90 provides for a statutorily mandated process by which those damaged by the oil spill may present claims to the Responsible Party. OPA '90 was passed in the wake of the Exxon *Valdez* tanker accident off Alaska in 1989.[3] One of the primary functions of OPA '90 is to ensure that the Responsible Party is obligated and rapidly responds to the oil spill without first attempting to resolve questions of fault or comparative responsibility. Unocal v. United States, 222 F. 3rd 528, 535 (9th Cir. 2001).

The "Responsible Party" with respect to a vessel is defined as any person owning, operating, or demise chartering the vessel. 33 U.S.C. § 2701(32). Regal Stone has previously accepted its designation as the Responsible Party in this matter. "Damages" under OPA '90 include: damage to natural resources, damage to real or personal property, loss of subsistence use, lost revenues, lost profits and earning capacity, and increases in public services. 33 U.S.C. § 2702(b)(2).

With regard to the claims process, regulations promulgated under OPA '90, which are set forth in 33 C.F.R. § 136.1 *et seq.,* govern the presentation, filing, processing, settlement, and adjudication of claims filed for damages resulting from the discharge, or substantial threat of discharge, of oil from a vessel into or upon the navigable waters or adjoining shorelines.[4] Pursuant to these regulations, the Responsible Party "shall establish a procedure for the payment or settlement of claims for interim, short term damages." 33 U.S.C.A.§ 2705(a). All claims for damages due to the oil spill shall first be presented to the Responsible Party. 33 U.S.C.A. § 2713(a); 33 C.F.R. § 136.103.

---

[3] John G. Young, who is currently representing 45 independent fishermen in connection with the Claims Process, has been involved as an attorney in the Exxon *Valdez* litigation since that spill occurred in 1989. In his concurrently filed Declaration, Mr. Young describes that his experience with the *Valdez* litigation causes him to believe strongly in the Claims Process as a vehicle for claimants to be "successful in obtaining immediate full compensation for virtually all of the fishery income losses." (Declaration of John G. Young ("Young Decl."), ¶ 6.)

[4] The claims process is also mandated by California law. See, California Govt. Code §§ 8670.51 *et seq.*

REGAL STONE LTD.'S OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-5800-SC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Responsible Party is required to "advertise the designation [as the Responsible Party] and the procedures by which claims may be presented to the Responsible Party." 33 U.S.C.A. § 2714(b). These advertisements must be placed no later than 15 days after the date that the Responsible Party is deemed as such (id.) and "shall state that a claimant may present a claim for interim, short term damages" and "that payment shall not preclude recovery for damages not reflected in the paid or settled" claim. 33 U.S.C.A §2714(b)(2). Each advertisement is required to contain certain information regarding the oil spill, including, but not limited to, the date, time and location of the incident, the name of the Responsible Party, contact information for the person to whom claims may be presented and the procedures by which a claim may be presented. The Director, NPFC, who is the person in charge of the U.S. Coast Guard National Pollution Funds Center or that person's authorized representative determines for each incident the type, geographic scope, frequency, and duration of the advertisement required. 33 C.F.R. § 136.309.

The claimant bears the burden of providing all evidence, information, and documentation deemed necessary by the Director, NPFC (the person in charge of the U.S. Coast Guard National Pollution Fund Center) to support the claim. 33 C.F.R. § 136.105(a). Each claim must be in writing for a sum certain for compensation for each category of uncompensated damages or removal costs resulting from an incident and must include, among other information, an explanation of how and when the damages were caused and evidence to support the claim. 33 C.F.R. § 136.105(b) & (e). It is within the discretion of the Director, NPFC, to determine if additional information not set forth in 33 C.F.R. §136.105(e) is necessary to properly process the claim for payment. 33 C.F.R. § 136.105(e)(13). If a claim is presented in accordance with this section and the Responsible Party denies liability or does not pay the claim within 90 days after the date upon which the claim was presented or advertising was begun (whichever is later), only then may the claimant may elect to commence an action in court against the Responsible

- 5 -

KYL_SF459455

REGAL STONE LTD.'S OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-5800-SC

Party.  33 C.F.R. § 136.103(c).

As set forth above, OPA '90 and 33 C.F.R. § 136.1 *et seq.* are designed to facilitate the adjustment and adjudication of claims that a party may have without the need for litigation.  Under these statutory schemes, assuming a claimant has a qualified claim, he or she can simply present the claim to the claims office and receive payment.

**B.    FEDERAL OVERSIGHT**

As noted above, the Director, NPFC oversees and directs certain aspects of the claims process mandated by OPA '90 and 33 C.F.R. § 136.1 *et seq.*  The following determinations applicable to the claims process are within the sole discretion of the Director, NPFC, *not Regal Stone or any other Defendant*:

- The Director, NPFC, determines for each incident the type, geographic scope, frequency, and duration of advertisement required and provides those requirements to the Responsible Party.  33 C.F.R. § 136.309(a) & (c).

- The Director, NPFC determines what evidence a claimant must provide in order to support their claim.  33 C.F.R. § 136.105(a).

- The Director, NPFC, determines if additional information not set forth in 33 C.F.R. §136.105(e) is necessary to properly process a claimant's claim for payment.  33 C.F.R. § 136.105(e)(13).

- The Director, NPFC, determines whether a claimant's claim for removal costs and each separate category of damages should be treated separately for settlement purposes.  33 C.F.R. § 136.109.

- The Director, NPFC, has the discretion to request that a claimant submit information relating to any insurance policies maintained by the claimant which may apply to the damages incurred by the Claimant. 33 C.F.R. § 136.111(b).

- The Director, NPFC, upon written request of the claimant or of a person duly authorized to act on the claimant's behalf, reconsiders any claim denied. 33 C.F.R. § 136.115(d).

In addition, the FOSC (either the U.S. Coast Guard or the Environmental Protection Agency) designated under the National Contingency Plan generally oversees the claims process.  If at any time the FOSC or NPFC is unhappy with the claims process established, the FOSC or NPFC can unilaterally take over the claims process.  (See, Declaration of Cynthia Hudson in Support of Regal Stone's Opposition to Plaintiffs' Motion being filed concurrently herewith ("Hudson Decl."), ¶13.)

## C.    THE HMMS CLAIMS PROCESS AT ISSUE

The Claims Process at issue in this matter is run by HMMS as overseen by Senior Vice President Cynthia Hudson. (Hudson Decl. ¶¶ 1, 3.)  HMMS provides, among other services, services relating to claims support and environmental management.  Over the last four years, the HMMS team has responded to more than 90 marine incidents. (Hudson Decl., ¶2.)  HMMS was retained by Regal Stone's third party insurer to audit and monitor clean up operations and process claims in accordance with OPA '90 and the federal regulations promulgated under that statutory scheme.  (Hudson Decl., ¶3.)

Within a day and a half of the oil spill incident, an 800 number had been established and was being advertised in order to inform claimants of their right to submit claims for damages.  (Hudson Decl., ¶5.) Subsequently, advertisements were made in the Oakland Tribune, the San Francisco Chronicle and the Marin Independent Journal, and flyers were distributed throughout affected marinas.  (Id.) HMMS also affirmatively reached out to government entities and municipalities and to claimants who had reported to HMMS but never submitted documentation in order to educate affected individuals of their right to seek relief.  (Id.)  Since November 9th, HMMS has been receiving and processing claims every business day from 9:00 am to 5:00 pm.  (Id.)

In determining an appropriate claims process, HMMS collaborated with a number of industry experts such as Natural Resource Consultants ("NRC"), as well as attorneys representing groups of potential claimants.  (Hudson Decl., ¶6.)  HMMS representatives are working with approximately 9 attorneys representing over 196 claimants to discuss

a process to resolve their clients' claims. Those attorneys were extremely helpful in creating a process to be used to fairly and expeditiously process claims, and in developing lists of relevant supporting documentation to "prove up" each claimant's damages. (Hudson Decl., ¶7.)

While the models were being developed and tested, concerns were raised that local boat owners were being caught in a financial squeeze from the season opener loss. In order to provide timely assistance and to demonstrate that the Responsible Party was committed to effectuating prompt settlements, HMMS proposed a pre-payment plan to crab boat owners/operators. The purpose of the pre-payment was to provide immediate compensation to affected crab boat owners/operators and minimize potential and actual litigation effort. (Hudson Decl., ¶11.) In order to qualify for a prepayment, claimants must agree to proceed through the claims process until such time as they receive an offer of resolution or until their claim is rejected. (Hudson Decl., ¶12.) If a claimant receives an offer and rejects it, he or she is free to submit his or her claim to the NPFC for resolution or proceed in a lawsuit. (Id.) By accepting the prepayment, claimants are not foregoing their opportunity to file a lawsuit; rather they are making a good faith commitment to attempt to resolve their claims through the claims process.[5] (Id.)

To date, approximately 250 crab boat owners/operators have submitted claims. No less than 40 crewmembers have submitted claims, and at least 11 leading processors have submitted claims. (Hudson Decl., ¶8.) In accepting, rejecting and processing claims through the claims process, *HMMS receives no direction from Regal Stone or any of the other Defendants in this matter.* (Hudson Decl., ¶4.)

If HMMS is contacted by a claimant whom HMMS knows to be represented by

---

[5] Cynthia Hudson met by telephone with William Audet, counsel for Plaintiffs in this action. During that telephone conversation, Ms. Hudson explained the claims process thoroughly to Mr. Audet, including documentation needed and the requirements for obtaining prepayments. Ms. Hudson *clearly* told Mr. Audet that, by submitting claims, his clients would not forgo the right to litigation of any unsettled claim or for long term damage to the crab population/fishery, if any. (Hudson Decl., ¶10.)

KYL_SF459455

REGAL STONE LTD.'S OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-5800-SC

counsel, HMMS instructs that individual that HMMS can not speak with them directly without their counsel present, but HMMS encourages them to have their counsel contact HMMS to submit their claim. (Hudson Decl., ¶9.)  Claimants who have already filed litigation are entitled to submit a claim through the claims process, but are not entitled to a prepayment unless they and their attorneys agree to make a good faith attempt to resolve their claim through the claims process. (Hudson Decl., ¶12.)

The United States Coast Guard ("USCG") is also very involved in this process.  In fact, HMMS submits a daily/weekly report to the USCG Incident Command Center with respect to claims submitted and resolved.  Further, the USCG, through FOSC Captain Paul Gugg (and various unified/incident command representatives), have been provided with extensive information regarding the claims process and efficacy. (Hudson Decl., ¶13.)  If at any time the USCG or NPFC is unhappy with the claims process established by HMMS, the USCG or NPFC can unilaterally take over the claims process. (Id.)  In addition, seven days ago, Ms. Hudson presented to the NPFC in Washington D.C a detailed report regarding the claims process, the requirements to submit a claim, the need and requirements for prepayments, the documentation needed for final resolution and the efficacy of the claims process. (Hudson Decl., ¶13.)  HMMS has never been told nor has it ever been inferred to HMMS that the claims process established by HMMS is viewed by the USCG or the NPFC as anything less than exemplary. (Id.)

## V.    NO AUTHORITY EXISTS FOR THIS COURT TO INTERFERE WITH THE CLAIMS PROCESS

### A.    PLAINTIFFS' ARGUMENT THAT THE COURT HAS AUTHORITY TO LIMIT COMMUNICATIONS IS MISGUIDED

To support their misguided position that the district court has authority to limit the communications between HMMS and individuals who are not before this court, Plaintiffs rely heavily on the Supreme Court case of Gulf Oil v. Bernard, 452 U.S. 89 (1981).  Gulf Oil is not only factually distinguishable from the present motion, but it is

- 9 -

also misquoted by Plaintiffs throughout their motion.  In <u>Gulf Oil</u>, an employment discrimination case, *defense counsel* petitioned the district court to limit communications between prospective class members and the named plaintiffs or their counsel.  <u>Id.</u> at 89. The district court imposed a complete ban on all communications between parties or their counsel and any actual or potential class members because of plaintiffs' counsel's interference with the conciliation efforts of the defendant.  <u>Id.</u>  The Supreme Court held that the ban was unjustified by the record and an abuse of discretion.  <u>Id.</u>  As is readily apparent, <u>Gulf Oil</u> is not instructive in the context of Plaintiffs' Motion and does not support Plaintiffs' contention that this court has authority to limit communication between HMMS – a third party claims processor – and the claimants whose claims are being processed by HMMS.

In addition, Plaintiffs' argument that <u>Gulf Oil</u> allows this court to limit communications without requiring actual proof of harm is similarly misguided.  Rather, the Court stated that the discretion of the district court to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties "is not unlimited, and indeed is bounded by the relevant provisions in the Federal Rules." <u>Id.</u> at 100.  Furthermore, an order limiting communications between parties and potential class members "should be based on a *clear record and specific findings* that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."  <u>Id.</u> at 101 (emphasis added) (see also <u>Id.</u> at 102, the district court "may not exercise the power without a *specific record* showing by the moving party of the particular abuses by which it is threatened" (emphasis added) <u>citing</u> <u>Cole v. March,</u> 560 F.2d 186, 189 (3rd Cir. 1977)).

Moreover, Plaintiffs erroneously cite <u>Gulf Oil</u> as stating that the court need not wait for actual harm but only the "likelihood of serious abuse" before limiting communication.  (Motion 8:21).  In fact, the <u>Gulf Oil</u> Court cautioned that "the mere possibility of abuses does not justify routine adoption of a communications ban . . . in the

- 10 -

REGAL STONE LTD.'S OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-5800-SC

KYL_SF459455

absence of a clear record and specific findings of need." Id. at 104.

Plaintiffs' contention that the court needs to limit communications in this case to maintain the integrity of the putative class and preserve the litigation rights of putative class members also misses the mark. This "class action" consists of nothing more than a complaint filed with the court in November, 2007. Not only is the proposed class not certified, *Plaintiffs have yet to serve a single party*. Plaintiffs attempt to halt the Claims Process in the face of their own failure to diligently prosecute their lawsuit is particularly egregious.

Finally, Plaintiffs state that the district court should limit communication to further the policy of Rule 23. However, nothing in Rule 23 stands for the proposition that class action litigation – a necessarily costly and time consuming process – is in any way superior to a claims process in which claimants need only prove up their damages to receive full compensation. In fact, the *only* parties who benefit from litigation in lieu of a federally mandated and supervised claims process are the attorneys involved.

**B.    THE CLAIMS PROCESS IS ENTIRELY COMPLIANT WITH FEDERAL LAW**

As set forth above, OPA '90 governs oil spill liability under federal law. Parties deemed responsible for the oil spill are obligated to respond in compliance with OPA '90. This not only includes the clean-up efforts, but also the process by which those damaged by the oil spill may present claims to the Responsible Party and be compensated. The claims process was enacted by Congress as part of OPA '90 to provide a prompt, federally-coordinated response to oil spills and to compensate victims.

OPA '90 provides that all claims for damages shall be presented first to the party responsible for the spill. 33 U.S.C. § 2173(a). If such a claim is presented and the responsible party denies liability or the claim is not settled within 90 days, the claimant may elect to commence an action in court against the responsible party. 33 U.S.C. § 2713(c). Plaintiffs who fail to comply with the prerequisites for bringing such a claim

- 11 -                KYL_SF459455

and proceed immediately to litigation must have their claims dismissed by the court. See, Johnson v. Colonial Pipeline Co., 830 F. Supp. 309, 310 (E.D. Va. 1993), see also Abundiz v. Explorer Pipeline Co., 2003 WL 230960198, at *3 (N.D. Tex. 2003).

Plaintiffs claim that this process binds claimants to the OPA '90 process and unfairly requires them to go through the Claims Process without court supervision. However, the actual purpose of the claim presentation procedure is to promote settlement and to avoid costly and cumbersome litigation. Johnson, 830 F. Supp. at 310-311, 135 Cong. Rec. at H 7962, 7965 (statements of Rep. Hammerschmidt and Rep. Lent). The claim process enables the parties to negotiate and settle if possible the potential claims without having to resort to litigation. Johnson, 830 F. Supp. at 311. As is evidenced by the Claims Process at issue, the requirements of OPA '90 provide many claimants with relief that they would not otherwise get absent costly and lengthy legal action. Indeed, as set forth in the Declarations of John G. Young and Michael Duncheon, claimants, their counsel, and HMMS acknowledge "the desirability of achieving an early resolution of claims" and agree that the Claims Process "may be superior to a class action or, at least that, as OPA intended, it may reduce the issues that need to be litigated." (Young Decl., ¶ 7; Declaration of Michael Duncheon ("Duncheon Decl."), ¶ 7.)

Further, HMMS's Claims Process is monitored by the USCG, which could at any time, revoke its authority to settle the claims if the process was determined to be fraudulent, misleading, or in any way in conflict with the requirements of OPA '90. Despite careful monitoring, the USCG has not taken any action to alter the Claims Process established by HMMS. This Court should defer to the USCG's authority over the federally mandated Claims Process that is currently providing fishermen and others with compensation. To stop this process in order to provide Plaintiffs' counsel with a bigger class – and ultimately a larger fee award – would unduly interrupt an inherently fair, efficient and just process developed by Congress.

C.    **THE CLAIM FORM AND ALL RELATED COMMUNICATIONS ARE ENTIRELY APPROPRIATE**

As set forth above, HMMS – *and not Regal Stone or any other Defendant* – processes claims in compliance with OPA '90, and HMMS's handling of the Claims Process has been deemed satisfactory by the U.S. Coast Guard. Moreover, the Claims Process is ultimately approved by the NPFC. There is no legal basis for Plaintiffs' contention that the claims form must contain information about this class action. To be sure, there is no basis for Mr. Audet's self-serving assertion that contact information for his law firm be included on the form.

Contrary to Plaintiffs' contention, the <u>Burford</u>, <u>Jenifer</u>, and <u>Ralph Oldsmobile</u> cases do not support Plaintiffs' contention that the claims form at issue is inadequate. As an initial matter, none of these cases involve claims forms or releases similar to those used in the OPA '90 claims process. <u>Burford v. Cargill, Inc.</u>, 2007 WL 81667 (W.D. La. Jan. 9, 2007); <u>Jenifer v. Delaware Solid Waste Authority</u>, 1999 WL 117762 (D. Del. Feb. 25, 1999); <u>Ralph Oldsmobile, Inc. v. General Motors Corp.</u>, 2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001). Moreover, none of the cases involve a federally mandated claims process like the one at issue here (requiring, for example, that all claims paid be submitted to the NPFC for review in order to ensure that claimants were adequately compensated). Instead, all three cases involve defendants who affirmatively reached out to potential class members seeking releases. In addition, unlike the Claims Process at issue here – where liability issues are not in play – the cases cited by Plaintiffs involve defendants seeking releases that *limit* liability.

Notably, should the Claims Process administrator – HMMS – deny a claimant's claim in whole or in part, OPA '90 allows for a private right of action. In addition, if a claim is denied a claimant can seek relief directly from the NPFC before turning to litigation. Plaintiffs' contention that the claims form at issue somehow usurps a potential claimants' right to seek redress should they be dissatisfied with the Claims Process must be rejected outright.

- 13 -

REGAL STONE LTD.'S OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-5800-SC

1

**D.    PLAINTIFFS ARE ATTEMPTING TO INTERFERE WITH OTHER ATTORNEY/CLIENT RELATIONSHIPS**

2

As is evidenced by the concurrently filed Declarations of Michael Duncheon, John

3

Young and Cynthia Hudson, several attorneys representing over 196 claimants in total

4

have been working with HMMS since November to provide their clients with relief.

5

Plaintiffs are requesting the Court to require HMMS to send these *represented* claimants

6

a claim form and notice "which informs such members of their right to rescind their

7

former agreement" and enter into "the agreement embodied in the Revised Claim Form."

8

(See, Plaintiffs' Motion, 25:3)  Not surprisingly, Plaintiffs have requested that the

9

Revised Claim Form include information about the class action and Mr. Audet's contact

10

information.  Mr. Audet is essentially asking the Court to order HMMS to solicit *already*

11

*represented* clients for his class action.  This is not only illogical, it is arguably unethical.

12

In his Declaration, Mr. Duncheon makes clear that his primary goal in

13

representing his clients is "first and foremost, to secure interim compensation for clients

14

who suffered severe hardship..." (Duncheon Decl., ¶ 4.)  Indeed, Mr. Duncheon notes

15

that "the prospect of an early resolution of significant issues is realistic and in our

16

clients' best interests.  We specifically desired to avoid the situation that arose in Alaska

17

following the oil spill caused by the Exxon *Valdez*, where litigation has been protracted

18

for years without payment to the injured parties." (Duncheon Decl., ¶ 5.)  Moreover,

19

altering – or *enjoining* – the Claims Process, would unwind the efforts these attorneys

20

have made on behalf of their clients, through extensive arm's-length negotiation, to

21

develop "a claims process that we believe is expeditious, fair and reasonable."

22

(Duncheon Decl., ¶8.)  Notably, Mr. Duncheon confirms that "[t]he claims process

23

initiated by Hudson was the result of negotiations with us, and...the result of

24

negotiations with other attorneys representing crab fishermen.  It was not unilaterally

25

imposed by the Responsible Party or Hudson Marine." (Duncheon Decl., ¶¶ 9, 10.)

26

Similarly, Mr. Young's Declaration sets forth that his firm's primary goal in

27

representing 45 independent fisherman has been "to secure for our clients full

28

- 14 -

KYL_SF459455

REGAL STONE LTD.'S OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-5800-SC

1  compensation for the economic losses they have incurred as a result of the spill..." and

2  that "[w]e have advised our clients that there will be ample time to determine whether

3  there are additional claims for which compensation is appropriate and if litigation is

4  needed." (Young Decl., ¶ 5.) Mr. Young notes that his firm and the clients he represents

5  did not authorize anyone to file a class action on his clients' behalf, and "[i]n fact, I have

6  advised against filing a litigation at this time." (Young Decl., ¶ 7.) As is readily

7  apparent, Plaintiffs' attempt to interfere with the Claims Process would, in effect,

8  thwart the objectives of these and other counsel and their clients seeking near-term

9  relief through the Claims Process.

10 **VI.    CONCLUSION**

11         Plaintiffs' unprecedented request to enjoin a process by which potential class

12 members can avoid costly and drawn out litigation is highly suspect. Not surprisingly, it

13 is unsupported by statutory authority, case law, or orders of the court. Plaintiffs'

14 attorneys are attempting to interfere with the Claims Process for one reason and one

15 reason only – they do not benefit from it. Only by preserving a class of claimants who

16 have not been made whole through the Claims Process will Plaintiffs' attorneys

17 potentially be entitled to a windfall fee award. Plaintiffs have presented absolutely no

18 authority for the proposition that this court can or should interfere with a federally

19 mandated Claims Process. Plaintiffs' request for an order to show case should be denied.

20

21

22 DATED:  January 18, 2008

23                                                JOHN D. GIFFIN
                                                 JULIE L. TAYLOR
24                                               JULIE A. KOLE
                                                 KEESAL, YOUNG & LOGAN
25                                               Attorneys for Defendant
                                                 REGAL STONE, LTD.

26

27

28
                                                                    KYL_SF459455
REGAL STONE LTD.'S OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR ORDER TO SHOW
CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS
WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-5800-SC