1   JOHN D. GIFFIN, CASB No. 89608
    john.giffin@kyl.com
2   JULIE L. TAYLOR, CASB NO. 154341
    julie.taylor@kyl.com
3   KEESAL, YOUNG & LOGAN
    A Professional Corporation
4   Four Embarcadero Center, Suite 1500
    San Francisco, California 94111
5   Telephone: (415) 398-6000
    Facsimile: (415) 981-0136
6
    Attorneys for Defendant
7   REGAL STONE, LTD.

8

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12

13                                    )  Case No. C-07-5800-SC
    Chelsea, LLC, Mark Russo, Allen   )
14  Loretz, and Ivan Simpson, individually )  DECLARATION OF MICHAEL
    and on behalf of all others similarly  )  DUNCHEON IN OPPOSITION TO
15  situated,                         )  PLAINTIFFS' MOTION FOR ORDER TO
                                      )  SHOW CAUSE WHY A PROTECTIVE
16                      Plaintiffs,   )  ORDER TO SUPERVISE OR
                                      )  OTHERWISE LIMIT
17          vs.                       )  COMMUNICATIONS WITH PUTATIVE
                                      )  CLASS MEMBERS SHOULD NOT ISSUE
18  Regal Stone, Ltd., Hanjin Shipping, )
    Co., Ltd., Conti Cairo KG, NSB    )
19  Neiderelbe, Synergy Maritime, Ltd. *In* )  Courtroom: 1, 17th Floor
    *Personam;* M/V Cosco Busan, their )  Honorable Samuel J. Conti
20  engines, tackle, equipment        )
    appurtenances, freights, and cargo *In* )
21  *Rem,*                            )
                                      )
22                      Defendants.   )
                                      )
23  ───────────────────────────────

24

25  I, MICHAEL DUNCHEON, declare under penalty of perjury as follows:

26      1.      I am an attorney licensed to practice law before all of the courts in the State

27  of California, as well as the United States District Court, Northern District of California.

28                                  - 1 -                            KYL_SF459424
    ─────────────────────────────────────────────────────────
    DECLARATION OF MICHAEL DUNCHEON IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER
    TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT
    COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-
    5800-SC

I am a partner in the law firm of Hanson Bridgett Marcus Vlahos & Rudy, LLP, located at 425 Market Street, 26th Floor, and San Francisco, California 94105.

2.     The oil spill caused by the *M/V Cosco Busan* occurred on November 7, 2007. Based on a pre-existing relationship that I had with local crab fishermen, I met with some of them after the oil spill to discuss my firm representing them and their associations in connection with securing compensation for damages caused by the oil spill. In connection with these discussions, we associated John Hillsman, an acknowledged maritime law expert, and his firm, McGuinn, Hillsman & Palefsky.

3.     As a result of our discussions with local crab fishermen, Hanson, Bridgett and McGuinn, Hillsman were retained by each of the associations representing local crab fishermen, i.e. Crab Boat Owners Association (San Francisco), Fisherman's Marketing Association Incorporated of Bodega Bay, Inc., and Half Moon Bay Fishermen's Marketing Association, Inc. Additionally, we have been personally retained by 76 local commercial crab fishermen ported out of the ports of San Francisco, Bodega Bay, and Half Moon Bay. This number does not include our clients who are deckhands, or fishermen who only fish for salmon or halibut or herring. We do not represent non-local fishermen, that is fishermen from the Crescent City, California area and fishermen from Washington and Oregon, because those fishermen are not similarly situated to local fishermen, and there is substantial competition between our clients and non-local fishermen.

4.     In representing our clients, our focus has been, first and foremost, to secure interim compensation for clients who suffered severe hardship as a result of the fact that the oil spill delayed the opening of the crab season by approximately 17 days, but we have no intention of waiving or prejudicing the right of our clients to file a lawsuit if as and when necessary. Prior to filing suit, we contacted the attorneys for the owners of the vessel that caused the spill, Regal Stone, Ltd. (designated the "Responsible Party" by

- 2 -

KYL_SF459424

DECLARATION OF MICHAEL DUNCHEON IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-5800-SC

the U.S. Coast Guard) and a representative of the insurer for the Responsible Party. The insurer for the responsible party is Steamship Owners Mutual Protection and Indemnity Association, a well-known, financially sound marine protection and indemnity association. Its representative with respect to the subject oil spill is Hudson Marine Management Services. Hudson Marine Management Services has not in any way refused to disclose or hidden the fact that it is representing the insurer for the Responsible Party.

5. With respect to our efforts to secure interim compensation, we are well aware that the Oil Pollution Act of 1990, 33 USC § 2713 ("OPA"), requires that the Responsible Party set up a claims process that is designed to provide a mechanism for the speedy resolution of claims so as to reduce the potential need for litigation or at least limit the scope of litigation. We are of the view that the law provides for strict liability in this instance, and that liability for compensatory damages is not reasonably subject to dispute in the case of the oil spill caused by the *Cosco Busan*. Accordingly, we believe that the prospect of an early resolution of significant issues is realistic and in our clients' best interests. We specifically desired to avoid the situation that arose in Alaska following the oil spill caused by the Exxon *Valdez,* where litigation has been protracted for years without payment to the injured parties.

6. While we were determining whether it would be feasible to negotiate an interim compensation arrangement on behalf of our clients, we did not "race to the courthouse" because, based on preliminary discussions with Hudson Marine, we concluded that racing to the courthouse was premature and potentially unnecessary.

7. We did not authorize nor did our clients authorize Mr. Audet to file his purported class action, allegedly on behalf of all crab and other fishermen, seeking damages for the oil spill, and we have a number of serious objections to his purported class action. We have concerns with Mr. Audet's overbroad class definition and the

KYL_SF459424

DECLARATION OF MICHAEL DUNCHEON IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-5800-SC

potential conflict among putative class members.  The substance of the allegations in

Mr. Audet's complaint reflect its hasty preparation and his complaint fails to allege

causes of action that should, in our judgment, be alleged, if as and when it is determined

that litigation is required in this matter. Nor do we necessarily believe that litigation, if

required, should be commenced in federal court.  For these and other reasons, there is a

high likelihood that our clients will opt out of Mr. Audet's purported class action, if it is

ever certified as such.  (Nor did the clients we represent authorize the purported class

action filed in state court by the law firm of Cotchett, Pitre & McCarthy; since that case

is not filed in this court, but in state court, it is unnecessary to comment on that suit

here.)  Depending on the outcome of the claims process described below and assuming a

mechanism is agreed to address  continuing and future damages to the crab fishery and

potential punitive damages, it is not clear that a class action is necessary in this case or

that it is superior to the utilization of the claims process. We think that the claims

process should be permitted to work its course without delay, that it may be superior to

a class action or, at least, that, as OPA intended, it may reduce the issues that need to

be litigated.  Finally and in any event, compensatory damages in this case to the crab

fishermen must be individually determined, as the amount of damage to each crab

fisherman is unique depending upon a host of individual factors.  As an individual

claims process will be required at some point in any event, it is better for the fishermen

that it takes place sooner rather than later.

8.    On behalf of our clients, Hanson, Bridgett and McGuinn, Hillsman, on the

one hand, and Hudson Marine Management on the other engaged in extensive arm's-

length negotiation to develop a claims process that we believe is expeditious, fair and

reasonable to our clients.  We have agreed and have a clear understanding that

participation in the claims process does not involve a waiver of our clients' right to file or

join a lawsuit at any time, if, as, and when they might conclude that the claim process

- 4 -

DECLARATION OF MICHAEL DUNCHEON IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER
TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT
COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-
5800-SC

has been unreasonably delayed or that it has produced an outcome that is not acceptable to a particular fishermen. It is clearly agreed between us and Hudson Marine that, at this juncture, the claims process only relates to damages suffered prior to December 1, 2007, and that our clients are in no way waiving or prejudicing their right to file a lawsuit seeking damages for future effects caused by the oil spill or for punitive damages. I emphasize that our clients have not waived or surrendered their right to initiate their own action or to participate in class actions which we or others might initiate or which have been initiated, if they are dissatisfied with and do not accept the outcome of the claims process.

9.    In a memorandum in support of their motion to show cause, Mr. Audet alleges that Hudson Marine has initiated a claims process which is "rife with pretrial misrepresentations, misleading omissions and coercion." The allegation of "coercion" is completely unsupported by our experience with this case to date. The claims process involving the crab fishermen initiated by Hudson was the result of negotiations with us, and also, I believe, the result of negotiations with other attorneys representing crab fishermen. It was not unilaterally imposed by the Responsible Party or Hudson Marine. Nor are we aware of misrepresentations with respect to the claims handling procedures. One purported "misrepresentation" that Mr. Audet claims to have been made to him is that participation in the claims process would in no way prejudice rights to bring suit for damages other than interim damages resolved in the claims process. This representation, if made, would in our view be correct. Further, pursuit of the claim process as designed would constitute exhaustion of the OPA requirement, to the extent the requirement is applicable. (Both Mr. Audet's suit and Mr. Pitre's suit ignore this OPA requirement as if it were not applicable. By this declaration, I do not admit that the OPA requirement is applicable to all of the claims which could be brought, but it is applicable to a claim under OPA and exhausting it at this juncture is advantageous.)

KYL_SF459424

DECLARATION OF MICHAEL DUNCHEON IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE · Case No. C-07-5800-SC

The only other purported misrepresentation cited by Mr. Audet is the alleged representation that there would be no cap on the damages a claimant could receive through the claims process. The representation was not made to us, but we are well into the claims process and the insurer is not proposing to impose a cap on individual claims, or on the aggregate payment of the claims of crab fishermen. The potential qualified limit on the Responsible Party's aggregate liability under OPA, 33 U.S.C. 2704, only applies under OPA, not other applicable statutes (33 U.S.C. 2718(c)(1), (2)), and, as stated, we have no indication at this juncture that the qualified cap either can or will be applied in a way that would limit our claimants recovery through the claims process. (If it is invoked and applicable, it would apply to putative class claims in court to the same extent as it would apply in the claims process, and is not a reason to avoid the claims process in any event.) And if, contrary to our expectation, the limit comes into play, under the claims process as we have negotiated it, no claimant is required to accept it and we and they are free to litigate the damage issues in court. The only alleged omission on the part of Hudson Marine is the claim that Hudson Marine does not make it clear that going through the administrative claims process will not involve a waiver of the right to litigate if as and when necessary. The papers submitted by Mr. Audet do not reflect that either he or Mr. Pitre contacted Hudson Marine for clarification of this issue, nor do the papers from Hudson Marine submitted in support of the subject motion reflect any suggestion that a crab fishermen's right to litigate would be or was being waived, if he went through the claims process. In any event, in the case of our clients, based on our negotiations with Hudson, we have a clear agreement that the claims process does not require a waiver of the right to litigate or participate in class actions in the future if need be.

10.     Because of the great hardship caused by the oil spill to crab fishermen, Hanson, Bridgett and McGuinn, Hillsman  negotiated an arrangement with Hudson

- 6 -

Marine as part of the claims process whereby the insurer supplied funds in the initial amount of $700,000, which we have used to make immediate, partial prepayments to claimants we represented who supplied certain minimum documentation demonstrating they were harmed by the oil spill, and who agreed to follow through with the claims process, subject to the agreement that the process would not prejudice their right to litigate. Utilizing the insurance company's money, we have distributed so far $445,000 to a total of 50 of our clients in $5,000 and $10,000 increments, and we expect to distribute substantially more money as our clients' secure necessary documentation. These payments are advances or credits against larger sums that claimants will be eligible to receive through the claims process. This arrangement to expedite significant payments has been immensely appreciated by and beneficial to our clients. Although we negotiated the arrangement with Hudson Marine, we understand that Hudson Marine has offered similar advances under the same conditions to crab fishermen represented by other attorneys and also to crab fishermen who are acting on their own behalf.

11.    We are presently preparing and filing claims on behalf of the fishermen for their full damages for losses resulting from the fact that the oil spill delayed the opening of the crab season until December 1. Hudson Marine has stated that it intends to pay valid claims that are appropriately documented and we are in the process of providing the documentation to establish these claims. (In that regard, if we or if any claimant we represent do not accept the outcome of the claims process, we and they are at liberty to file suit and/or to participate in an appropriate legal action that we or others may have filed or file.)

12.    Based on our extensive discussions with crab fishermen and in light of extensive media coverage, I believe that all the local crab fishermen are well aware of the purported class actions that have been filed in this matter, and that they are also aware of the various attorneys, including Mr. Audet, Mr. Pitre, myself, and others, who

- 7 -

KYL_SF459424

DECLARATION OF MICHAEL DUNCHEON IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-5800-SC

had been active in representing interested crab fishermen. (The fishermen have been deluged by attorneys with a financial interest in representing them.) As Mr. Fitz states in his declaration: "The San Francisco Bay Area commercial fishing community .... is close knit and information travels quickly amongst its members." Consequently, we contend it is unnecessary to delay, slow down or interfere with the claims process, purportedly to notify fishermen of the pendency of the two class actions. It is also my belief, based on interaction with the fishermen, that some fishermen are highly skeptical of the class actions, to say nothing of lawyers in general and that some fishermen are choosing not to be represented by counsel and wish to pursue the claims process directly without the benefit of counsel. In this regard, I suspect that virtually all crab fishermen have consulted and are represented by counsel, if they wish counsel. Some simply do not. For those crab fishermen who wish to be represented by attorneys, I believe that the overwhelming majority of crab fishermen are represented by attorneys other than Mr. Audet's firm and Mr. Pitre's firm.

13.    Hudson Marine has not been "coercive" in our experience, and, as stated above, it has not limited the right to obtain an advance or to a file claim to our clients. The papers submitted by Mr. Audet and by Mr. Pitre do not indicate that either of these attorneys personally contacted Hudson Marine on behalf of their respective individual clients, i.e. Chelsea, LLC, or Steven Fitz or John Tarantino, and sought to establish eligibility for an advance or sought to submit a claim. It would greatly surprise me if Hudson Marine would treat these claimants any differently than it has treated us or our clients.

14.    Speaking for the crab fishermen we represent, there is no justification for the Court's involvement in overseeing or delaying the claims process at this juncture. As the attorneys for 76 local crab fishermen claimants and their associations, I am satisfied that the claims process in its present form is in the interest of my clients and crab

- 8 -

KYL_SF459424

DECLARATION OF MICHAEL DUNCHEON IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-5800-SC

1  fishermen generally; that it has not been the product of misrepresentations, omissions or

2  coercion; that it may produce results that are expeditious and in amounts that will be

3  acceptable to many, if not most, of the crab fishermen we represent (and many that we

4  do not represent); and that it may well serve to limit the claims that have to be

5  adjudicated in court. But, if I am mistaken or overly optimistic, I am confident that

6  going through the claims process will not prejudice our clients' right to file a lawsuit or

7  participate in class actions in the future as circumstances may require, and we certainly

8  intend to file an appropriate lawsuit at the appropriate time in the appropriate court, if

9  and when it becomes necessary.

10

11  I declare under penalty of perjury that the foregoing is true and correct and that this

12  Declaration was executed on January 23, 2008, at San Francisco, California.

13

14

15  MICHAEL A. DUNCHEON

16

17

18

19

20

21

22

23

24

25

26

27

28
- 9 -
KYL_SF459424

DECLARATION OF MICHAEL DUNCHEON IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER
TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR OTHERWISE LIMIT
COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS SHOULD NOT ISSUE - Case No. C-07-
5800-SC