William M. Audet (waudet@audetlaw.com)
Michael McShane (mmcshane@audetlaw.com)
Adel A. Nadji (anadji@audetlaw.com)
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.982.1776
Facsimile: 415.568.2556

*Attorneys for Plaintiffs
and the Class Members*

**UNITED STATES DISTRICT COURT FOR**

**THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Chelsea, LLC, Mark Russo, Allen Loretz, and Ivan Simpson, individually and on behalf of all others similarly situated,<br><br>　　Plaintiffs,<br><br>v.<br><br>Regal Stone, Ltd., Hanjin Shipping, Co., Ltd., Conti Cairo KG, NSB Neiderelbe, Synergy Maritime, Ltd. *In Personam*; M/V Cosco Busan, their engines, tackle, equipment, appurtenances, freights, and cargo *In Rem*,<br><br>　　Defendants. | CASE NO.:   C-07-5800-SC<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF ISSUANCE OF AN ORDER TO SHOW CAUSE** |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION. ............................................................ 1

II.   ADDITIONAL EVIDENCE OF MISCONDUCT. ....................... 2

III.  FACTS NOT IN DISPUTE. ................................................. 2

IV.  ARGUMENT. .................................................................. 4

    A.    The Claims Process Set Up By Defendants and Implemented by Hudson is Materially Inconsistent with OPA. ..................... 4

    B.    OPA 90 Does Not Provide a Responsible Party in an Oil Spill With *Carte Blanche* Authority to Misled the Injured Parties. ..................... 4

    C.    Defendants' Characterization of the Claims Process As Exclusively Governed By the OPA 90 Ignores Applicable California State Law And Defendants' Violations Thereof. ..................... 6

    D.    Absent Court Intervention, the Class Members and Existing Clients of Firms with Class Action Cases Will Be Irreparably Injured. ............ 7

V.   CONCLUSION. ............................................................... 9

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Hampton Hardware v. Cotter & Co.*,
    156 F.2d 630 (N.D.Tex. 1994)................................................. 8

*In re School Asbestos Litigation*,
    842 F.2d 671 (3rd Cir. 1988)................................................. 5

*Johnson v. Colonial Pipeline Co.*,
    830 F.Supp. 309 (E.D. Va. 1993)............................................. 6

*Ralph Oldsmobile v. General Motors Corp.*,
    2001 WL 1035132 at *7 (S.D.N.Y. 2001)....................................... 5

**Statutes**

33 U.S.C. § 2718.................................................................. 6

**Codes**

33 Code of Federal Regulations
    Part 161(c)(4)................................................................ 6

Cal. Gov. Code

    § 8670.56.5(l)................................................................ 7

    §§ 8670 *et seq.*............................................................. 6

    §§ 8670.51 *et seq.*.......................................................... 6

**Rules**

Federal Rule of Civil Procedure

    Rule 23....................................................................... 5

## I. INTRODUCTION

On January 17, 2008, Plaintiffs filed a Motion for an Order to Show Cause ("Motion"). On January 23, 2008, before the Court issued its order as requested by Plaintiffs, Defendants filed a full opposition to the OSC ("Opposition"). Unfortunately the Opposition filed by the Defendants fails to directly address the issues raised by Plaintiffs in their request, and contains descriptions of the Claims Process that are inaccurate as a matter of law. Indeed, a review of the papers submitted reveals that certain factual claims made by Plaintiffs are not at all disputed by the Defendants in any fashion. In view of these admissions, the overwhelming facts and the law that fully supports Plaintiffs request, and the fact that the parties have now fully briefed the issues, Plaintiffs - with the support of the plaintiffs in the state action - urge this Court to issue the requested relief without any further submissions by the parties. While the Plaintiffs welcome the opportunity to appear before the Court and argue the motion, the papers present the parties respective positions. More importantly, the efforts by the Defendants to 'buy' out the Plaintiffs and erode the class members claims is becoming more and more clear as time passes and Defendants continue unimpeded to compromise class members claims and 'punish' any Plaintiffs' engaged in class actions and/or cases against the Defendants. If not stopped in the near future by this Court, Plaintiffs are confident that the class action will be gutted and the Plaintiffs' law firms with filed cases will continue to lose clients through the Defendants' 'bait and switch' advance payments to certain clients and certain law firms.[1]

///

///

---

[1] Plaintiffs want to make perfectly clear that the relief which they seek is on behalf of themselves, the similarly situated plaintiffs in the state action, and unrepresented putative class members. Those putative class members who are represented by other counsel are free to conduct themselves and their relationship with Defendants as they and their counsel see fit.

## II. ADDITIONAL EVIDENCE OF MISCONDUCT

During the briefing of this motion, the Defendants continued, unabated, with attempting to lure absent class member and represented parties into the unapproved Claims Process. The undersigned counsel have been contacted by clients it represents with statements that clearly support the need for this Court to intervene and supervise the communications between the Defendants, the Defendants' claims administrator and the injured fishermen. Clients currently represented by the undersigned have been told that if they "immediately fired' their attorneys, Hudson Marine would pay them $10,000. (Indeed, representatives of Hudson Marine even advised the clients to send in the letter firing their attorneys via certified mail.)

## III. FACTS NOT IN DISPUTE

Notwithstanding its lengthy submission, certain facts were not disputed by the Defendants. By failing to dispute these critical facts now in the record, Defendants admit that:

1. The Claims Process established by Hudson is not a court approved program;

2. The Claims Process is designed to coerce a claimant to forgo rights to proceed in state or federal court;

3. The Claims Process potentially impacts a claimants right to participate in a class action recovery or litigation;

4. The so-called "advances" have not been paid to any client of any firm that has filed a lawsuit;

5. The so-called advances are only paid to clients of law firms willing to waive important rights of the clients;

6. Hudson and its affiliates have 'cold called' class members in an attempt to convince them to waive certain rights;

7. Hudson and its affiliates have contacted, *ex parte*, boat owners who Hudson knew were represented by counsel, including the undersigned firms;

8. Neither the Claim Form nor the Cover Letter notifies the putative class members of the existence of the pendency of the class action lawsuit;

9. The Claim Form was never approved by class counsel or this court, despite the fact that two class action cases have been filed that include persons to whom the Claim Form is given;

10. The so called 'advances' have been unfairly denied to any class member working with any of the law firms that have filed a class action lawsuit;

11. Hudson has set up a duel standard for paying advances and consideration of claims - none payment of advances for anyone working with class counsel and immediate payment of advances to those who work with other certain law firms;

12. Hudson and its employees have advised currently represented parties to 'fire' their attorneys with promises of quicker payment if they do;

13. The claim form and advances require class members to agree to proceed only in the 'claims process' without any real disclosure of the impact of such a waiver of rights.

In addition to these facts, the Defendants have also made a number of material misstatements in their submission to the Court. Specifically, as the United States' reply memorandum notes, the "Hudson Marine" Claims Process is not a government "approved" or "required" process. Indeed, as the United States' papers reveal, the Defendants are improperly seeking to violate the Oil Pollution Act of l990 ("OPA 90") rules and regulations by extending the claims process to other parties and to use OPA 90 as a "cover" to dilute injured parties' potential recovery. *See* United States Reply (dated February 1, 2008). Furthermore, Defendants' characterization of the claims process as being "federally mandated" and exclusively governed by the OPA 90 ignores applicable California state law and seeks to impose exhaustion requirements where they do not exist.

These facts alone support the limited request for relief sought by class counsel in this action (and are supported by state class counsel). The Plaintiffs have no choice but to ask the Court to protect class members' rights and prevent Hudson and the Defendants from directly impeding "attorney-client" relationships and interfering with this Court's well established jurisdiction over absent class members. Without Court intervention, the Defendants (and their hired administrator) will continue to mislead class members and coerce currently retained clients of the undersigned to fire their

attorneys.

## IV. ARGUMENT

### A. The Claims Process Set Up By Defendants and Implemented by Hudson is Materially Inconsistent with OPA

In their opposition papers, Defendants and the claims administrator spend 18-plus pages of their memorandum discussing the OPA 90 process and how OPA 90 requires a responsible party to set up a claims administration process. Plaintiffs do not dispute the fact that OPA, as well as California state law, requires a responsible party of an oil spill to establish a claims process. However, a defendant (or group of defendants) may not use OPA 90 as a means to undercut a pending class action and to circulate misleading information regarding the OPA 90 process.

Moreover, OPA 90 does not allow a claims administrator, in conjunction with defendants in a lawsuit, to set up a claims process that actually impacts the injured parties access to court. In the present case, Defendants are requiring everyone to agree to a vague claims process that potentially restricts claimants' rights. Under OPA, the responsible party must process claims - but they are not allowed to force an injured party (let alone class members) to agree to additional restrictions and limits above and beyond that set forth under OPA. In the present case, as a "pre condition" to obtaining any recovery under OPA, the Defendants are requiring claimants to agree to a nebulous claims process for resolution of all claims against all Defendants - whether or not those parties are an OPA 90 party. Nowhere in OPA 90 is a responsible party allowed to force an injured party to waive their rights in order to obtain statutory payment under OPA, as the Defendants and their claims administrator are seeking to do at this point.

### B. OPA 90 Does Not Provide a Responsible Party in an Oil Spill With *Carte Blanche* Authority to Misled the Injured Parties

As detailed in the Plaintiffs' initial motion, Hudson Marine has misled class members regarding the Claims Process and their rights to a recovery thereunder. In addition, as noted in the submissions, Hudson Bay continues to punish certain class

members and clients who are represented by state or federal class action counsel. Hudson has a duty and obligation to act in good faith to all injured parties. Here, by paying certain fishermen advances, but denying payments of <u>any</u> funds to other represented fishermen, Hudson Marine has abused the process and breached their duty of good faith.

More importantly, the Defendants do not contest the fact that the current process has been used to directly interfere with current, existing attorney client relationships. The undersigned attorneys have been advised that, for at least two clients, the Hudson representatives promised 'fast money' in exchange for 'firing' their attorneys. Hudson has repeatedly sought to interfere with attorney client relationships. Any notice and/or communications with absent class members requires Court approval. *See, e.g., In re School Asbestos Litigation*, 842 F.2d 671, 680 (3rd Cir. 1988) (Rule 23 empowers District Courts to prevent abuses of the class action process.). Indeed, where, as here, a party has failed to advise the absent class member of the existence of the class action, the Court may require the offending party to issue corrective notice. *See, e.g., Ralph Oldsmobile v. General Motors Corp.*, 2001 WL 1035132 at *7 (S.D.N.Y. 2001).

Indeed, Defendants' tendency to give misleading information regarding the OPA 90 and its relationship to the Claims Process extends to the Opposition itself. As noted in the introduction, the United States' attorney has explicitly refuted the Defendants' representations as to the federal government's involvement in the claims process. United States Reply at 2-3 (discussing Opposition at 6-7). As the government's attorney makes clear, the regulations which Defendants cite in supposed support for their claim of "Federal Oversight" actually apply only to situations where a claimant makes a claim to a federal government fund in the event that he or she is not able to receive compensation from the responsible party, e.g. here, Regal Stone. *Id*.

Defendants' misleading statements regarding the OPA 90 in the Opposition do not, however, end there.  The discussion of the OPA 90's exhaustion requirements is worded so as to suggest that the OPA 90 requires an injured party to participate in an OPA 90 claims process before filing ***any*** action in court.[2]  However, the OPA 90's exhaustion requirements ***only apply to claims brought under the OPA 90.***  Thus, by way of example, in *Johnson v. Colonial Pipeline Co.*, 830 F.Supp. 309, 311-312 (E.D. Va. 1993), once the court dismissed the plaintiffs' OPA 90 claim on the ground that plaintiffs failed to exhaust the OPA 90 claims process, the court was forced to determine whether it had an independent basis on which to assert jurisdiction over the plaintiffs' state law claims which were unaffected.  *Id.*  Indeed, the OPA 90 explicitly preserves, and leaves unaffected by any requirements in the statute or related regulation, the rights of litigants to pursue state law remedies for injuries which could also give rise to a claim under the OPA 90.  *See* 33 U.S.C. § 2718; *see also* 33 C.F.R. Part 161(c)(4).

C. **Defendants' Characterization of the Claims Process As Exclusively Governed By the OPA 90 Ignores Applicable California State Law And Defendants' Violations Thereof**

The Opposition's substantial inaccuracies regarding the law applicable to claims process are not limited to those identified by the United States attorney and above.  The Opposition also fails to acknowledge that the claims process is also governed by California state laws or that Defendants are in violation thereof.

In a footnote, Defendants state: "The claims process is also mandated by California law."  Opposition (citing Cal. Gov. Code §§ 8670.51 *et seq.*).  As an initial

---

[2] "All claims for damages due to the oil spill shall be first presented to the Responsible Party."  Regal Stone Opposition at 4.  "If a claim is presented in accordance with this section and the Responsible Party denies liability or does not pay the claim within 90 days after the date upon which the claim was presented or advertising was begun (whichever is later), only then may the claimant elect to commence an action in court against the Responsible Party."  *Id.* at 5.  "OPA 90 provides that all claims for damages shall be presented first to the party."  *Id.* at 11.

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF
ISSUANCE OF AN ORDER TO SHOW CAUSE; Case No. C-07-5800-SC**                                    6

1 point of clarification, the Lempert-Keene-Seastrand Act, Cal. Gov. Code §§ 8670 *et seq.*, under which plaintiffs in the state action are suing Defendants, does not in anyway "mandate" that a plaintiff exhaust any claims process before bringing a claim in court under the Act in a manner analogous to the OPA 90.  Rather, the law creates a direct and explicit right of private action for those injured by an oil spill which occurs in California tidal waters, ***without any exhaustion requirements***.  See Cal. Gov. Code § 8670.56.5(l).

More directly on point, Defendants fail to acknowledge that the actual mandates of the Lempter-Keen-Seastrand Act regarding a claims process fall upon Defendants and Defendants have failed to comply therewith.  Section 8670.51.1 of the Act lays out a process by which the California State Department of Fish and Game designates a responsible party who then is required to establish a claims process in accordance with the rules therein.   Fish and Game has designated Regal Stone as the responsible party.  However, Regal Stone has not complied with the requirements of Section 8670.51.1.  Specifically, Section 8670.51.1(a)(1) states that the designated responsible party must "immediately, widely advertise ***the manner in which it shall accept and pay claims.***" (emphasis added).  Far from widely advertising the manner in which it will accept and pay claims, Regal Stone has kept that information intentionally vague and secret.  Indeed, the only significant information which Plaintiffs have regarding the Claims Process is that contained in the Opposition and accompanying Declaration of Cynthia Hudson.  However, that information contains descriptions which are demonstrably contrary to federal law, ignores applicable state law, is contained only court filings and so cannot be termed "widely advertised," and is in many other ways inadequate.

**D.   Absent Court Intervention, the Class Members and Existing Clients of Firms with Class Action Cases Will Be Irreparably Injured**

It is beyond dispute that this Court has the duty and the right to regulate *ex parte* communications by Defendants and their agents.  The Court has the authority to prohibit Defendants from *ex parte* communications with absent class members and with

clients already represented by counsel. *Hampton Hardware v. Cotter & Co.*, 156 F.2d 630, 634-35 (N.D.Tex. 1994) (Court issued protective order after Defendant encouraged absent class members not to participate in the class action.).

At a bare minimum, Plaintiffs respectfully submit the Court should force Defendants to properly determine, and explain to the Court and Plaintiffs the federal and California State laws which govern the Claims Process. Once the Court has assured assuring itself that Defendants have finally reached the appropriate determination in this regard, the Court should compel Defendants to redraft the Claims Form and Cover Letter so that they fully and accurately describe the Claims Process. This should include a clear description of the applicable laws under which the Claims Process is to be conducted, as well as all the information necessary for potential claimants to understand the manner in which Defendants will accept and pay claims, such as what documentation is necessary for submission of a claim.[3] Furthermore, the Court should require insertion of language which explicitly recognizes that by submitting a claim, a claimant: (1) does not prejudice his or her right to continue litigation already initiated or to initiate litigation in the future, and (2) that submission of a claim also does not prejudice his or her right to choose the law under which to pursue such litigation.

In opposing the instant Motion, Defendants were forced to take the first steps necessary to bring the Claims Process out of the shadows and into the light of day. Defendants made a partial and inaccurate description of the law which is applicable to the Claims Process, and admitted they had no grounds on which to exclude Plaintiffs or anyone else who has already filed litigation against them from participation in the Claims Process. *See* Opposition at 9; Hudson Dec., ¶ 12. While still woefully

---

[3] According to Cynthia Hudson's Declaration, "[l]ists of needed documentation have been created for the various classes of potential claimants," thus meeting this requirement should create no great strain on Defendants. Hudson Dec., ¶ 7.

inadequate, not least because these disclosures still do nothing for those putative class members not represented by counsel in this or the state action, they are a start. Plaintiffs respectfully request that the Court compel Defendants to take the further steps necessary to ensure that Claims Process operates in a manner which is accordance with the law and basic tenets of fairness and honesty.

## V. CONCLUSION

As the facts indicate, the Defendants have improperly engaged in a pattern and practice of misleading the class members of their rights, all in an effort to gut the class action. Moreover, the Defendants have on more than one occasion directly contacted represented parties in an effort to convince them to 'fire' their attorneys. To make matters worse, the Defendants have willfully sought to interfere with attorney client relationships by punishing claimants who are represented by law firms that have refuse to sell out their clients in exchange for short term cash payments and advances. None of these critical facts are in dispute.

At this point, the issues have been fully briefed and a full factual record exists that would allow the Court to issue the requested relief - without any further briefing or argument by the parties. Accordingly, the undersigned request that the Court issue the relief requested in the form of the order submitted with these papers.

Dated: February 4, 2008        AUDET & PARTNERS, LLP

              /s/ William M. Audet
            William M. Audet
            Michael McShane
            Adel A. Nadji
            221 Main Street, Suite 1460
            San Francisco CA 94105
            Telephone: 415.568.2555
            Facsimile: 415.568.2556
            E-mail: waudet@audetlaw.com

            On Behalf of Plaintiffs and the Class