William M. Audet (waudet@audetlaw.com)
Michael McShane (mmcshane@audetlaw.com)
Adel A. Nadji (anadji@audetlaw.com)
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.982.1776
Facsimile: 415.568.2556

*Attorneys for Plaintiffs and
the Class Members*

# UNITED STATES DISTRICT COURT FOR

# THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Chelsea, LLC, Mark Russo, and Allen Loretz, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Regal Stone, Ltd., Hanjin Shipping, Co., Ltd., Synergy Maritime, Ltd., Fleet Management Ltd., and John Cota, *In Personam*; M/V Cosco Busan, their engines, tackle, equipment, appurtenances, freights, and cargo *In Rem*, <br><br> Defendants. | Case No. C–07–5800-SC <br><br> AT LAW AND IN ADMIRALTY <br><br> **VERIFIED SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. November 7, 2007 was like any other fall day in the San Francisco Bay Area: cold, overcast and foggy. Vessels were navigating their way through the San Francisco Bay to the Pacific Ocean. Crab fishermen, among others, were waiting for news of the season to officially open.

2. Heading north out to the ocean bound for Asia, one container ship — the COSCO BUSAN — failed to heed normal precautions and hit the fender of tower W4 of the San Francisco Bay Bridge. The impact of the crash tore a huge gash in the side of the vessel and resulted in the spillage of an estimated 58,000 gallons of fuel oil into the fragile San Francisco Bay ecosystem.

3. This man-made disaster will for years have a profound impact on not only the wildlife of Northern California, but has also immediately impacted the livelihood of thousands and thousands of individuals and small businesses, such as commercial fishers, and crabbers, as well as recreational charter operations. On November 12, 2007, the Governor of the State of California "halted" all commercial fishing in and around the San Francisco Bay Area.

4. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on its own behalf and as representative of a Class. Plaintiffs and members of the Class will have incurred significant damages and economic losses and will continue to incur such expenses and losses in the future.

## PARTIES

5. Individual and Representative Plaintiff Chelsea, LLC. Plaintiff Chelsea is a member of the class. Plaintiff is a 60-foot "crab" vessel that prior to the spill caught crab in the San Francisco Bay Area.

6. Individual and Plaintiff Mark Russo resides in Monterey, California, Plaintiff Russo is the owner of the vessel *Freeland* and has owned the vessel on or about November 7, 2007 and continues to own said vessel. The vessel is a duly licensed California Commercial Crab Fishing Vessel.

7. Individual and Plaintiff Allen Loretz is a hired captain and crewmember aboard the vessel *Freeland*. Plaintiff Loretz was the captain and crewmember on or about November 7, 2007 and continues to serve as captain. The vessel is a duly licensed California Commercial Crab Fishing Vessel.

8. Plaintiffs bring this action on behalf of themselves and on behalf of a class of over 500 fishermen, vessel owners, charterers and operators (the exact number of which is not presently known) who were to participate in, or depend upon, the 2007-2008 California Fisheries for commercial purposes.

9. Defendant vessel, COSCO BUSAN, their engines, tackle, equipment, appurtenances, cargo, all freights, and any bonds as issued and other earnings (the "Vessel" or "COSCO BUSAN") is now, or will be during the pendency of this action, within the district and jurisdiction of this court.

10. Defendant Regal Stone, Ltd. ("Regal Stone"), upon information and belief, is a Hong Kong based company that claims ownership of the COSCO BUSAN.

11. Defendant Hanjin Shipping Co., Ltd. ("Hanjin") is a large Korean-based shipping company that leases or charters the COSCO BUSAN from Defendant Regal Stone, Ltd. or other owners.

12. Defendant Synergy Maritime, Ltd. ("Synergy") upon information and belief is a manager, owner and the employer of the crew of the vessel COSCO BUSAN.

13. Defendant Fleet Management Limited ("Fleet Management") upon information and belief is the managing operator or sub-manager of the COSCO BUSAN.

14. Defendant John Cota ("Cota"), on information and belief, was piloting the COSCO BUSAN at the time of the allision and discharge of the 58,000 gallons of bunker fuel.

## JURISDICTION AND VENUE

15. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is within this Court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333 and Article III § 2 of the United States Constitution. Certain causes of action that arise under the laws of California are within this Court's supplemental jurisdiction 28

U.S.C. § 1367.  Further, this Court has jurisdiction over this action because this is a class action lawsuit in which over $5,000,000 is at issue and there are more than one hundred putative class members.  Further this Court has jurisdiction under the Extension of Admiralty Act.

16. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 in that substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.  The vessel COSCO BUSAN, upon information and belief, is or will be within this District during the pendency of this action.

## FACTS

17. On November 7, 2007, at approximately 7:30AM, the COSCO BUSAN, a freighter ship bound for Asia, left the Port of Oakland.

18. Less than thirty minutes later, the COSCO BUSAN crashed into a support piling of the Oakland Bay Bridge.

19. The crash resulted in a huge breach in the ship's hull, where the fuel tanks of the ship are located.  The hole on the port side was reportedly at least 70 feet long, 12 feet wide, and 3 feet deep.

20. Unfortunately, instead of immediately notifying the authorities about the magnitude of the problem, the ship's captain initially "estimated" less than "150" gallons of fuel spillage. In reality, the 150 gallons turned into over 58,000 gallons of toxic "bunker oil."

21. As the day wore on, the oil "dispersed" into San Francisco Bay and also into the Pacific Ocean.  The ship's pilot has recently reported that the ship's onboard radar malfunctioned and the ship's master may have provided confusing instructions to the captain.

22. The non-economic damage to the San Francisco Bay's fragile ecosystem is beyond dollars and cents.  Moreover, because of the negligence of the Defendants, and/or unseaworthiness of the COSCO BUSAN, commercial crabbers and other commercial fishers postponed the short season and as such have and will continue to lose millions of dollars.

23. As of November 13, 2007, the crab season was cancelled and all commercial fishing halted with public safety and health concerns regarding Dungeness crab, and potentially other seafood species.

24. Recently uncovered evidence revealed that that despite company policy to use two independent means for position fixing and for the posting of additional "lookouts" during poor visibility conditions, at least one of the two radars on board malfunctioned or otherwise needed servicing in Long Beach before the COSCO BUSAN arrived in the San Francisco-Oakland area, and one of the two lookouts left the bow of the ship for a smoke and something to eat prior to the allision (and while the ship was navigating through the foggy waters of the San Francisco Bay).

25. Further evidence revealed that upon leaving the berth of Port of Oakland, the Chief Officer noted that the COSCO BUSAN was moving "faster and faster," eventually reaching the speed of approximately 15 to 16.5 knots despite the fact that he, as a lookout, was unable to see navigational buoys in the shipping channel. In fact, the Chief Officer stated that the ship would not be moving in the foggy conditions had the ship been in Chinese port. In his opinion, the ship was moving "too fast" and in "too much fog."

26. An "internal audit" conducted subsequently to the Bay Bridge allision revealed a number of egregious deficiencies, including but not limited to: that the speed log was not operational; navigational areas were not segregated; sole lookout was allowed without any evidence of risk assessment and deck logbook entry; manning and un-manning of ship stations were not being logged; there were no contingency plans marked on the navigation chart nor were they mentioned of contingency plans in the passage plan; navigating officers did no complete the bridge team management training; and, navigational warnings were not properly filed.

27. On that foggy day, Defendants knew of the extremely high risk of catastrophic injury inherent in the navigation of the COSCO BUSAN. Notwithstanding, Defendants took no action to prevent or otherwise protect Plaintiffs and Class, and demonstrated a callous and reckless disregard for human life, health and safety by departing the Port of Oakland. Defendants acted with such indifference to the consequences of their misconduct, and with such recklessness as to be willful, malicious and oppressive and in disregard of the rights of Plaintiffs thereby meriting an award of punitive or exemplary damages against Defendants.

28. This lawsuit seeks to economically compensate the victims of the spill.

## CLASS ACTION ALLEGATIONS

29.  Plaintiffs bring this action on their own behalf and as representatives of a class consisting of: "All commercial fishing operations, including but not limited to crab fishermen, herring fishermen, salmon fishermen, bottom trawl fishermen, shellfish producers, seafood processors, vendors, truckers, unloaders and other distributors of seafood products, and recreational charter vessel operations and marinas, who have been injured, or otherwise financially harmed, as a result of the COSCO BUSAN Oil Spill of November 7, 2007"."

30.  The Class is so numerous that joinder of all members is impracticable.

31.  There are questions of law and fact common to the Class including, but not limited to:

    a.  Whether Defendants negligently and/or fraudulently acted to cause the spill;

    b.  Whether Defendants conducted adequate supervision to determine whether the spill could be prevented;

    c.  Whether Defendants engaged in unconscionable, deceptive, and/or unreasonable business practices and conduct;

    d.  Whether Defendants knowingly, intentionally, or negligently concealed, suppressed, or omitted material information concerning the safety of their ship from the public;

    e.  Whether the Class has suffered injury by virtue of the Defendants' negligence, recklessness, carelessness, and/or unconscionable and/or deceptive business practices and conduct; and

    f.  Whether Defendants are strictly liable to the Class, by virtue of State and Federal Law.

    g.  Whether the COSCO BUSAN was unseaworthy and such unseaworthiness was a proximate cause of the November 7, 2007 Oil Spill.

32.  These and other questions of law and/or fact are common to the Class and predominate over any questions affecting only individual Class members.

33.  The claims of the named Plaintiffs are typical of the claims of the respective Class they seek to represent.

34. In the case of the proposed Court-supervised "Clean-Up" Program, the representative Plaintiffs and the Class as a whole will benefit from such relief.

35. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class they seek to represent.

36. Plaintiffs have retained the undersigned counsel competent and experienced in complex class actions to represent them and the members of the proposed Class. Accordingly, the interests of the Class will adequately be protected and advanced. In addition, there is no conflict of interest among Plaintiffs and the members of the proposed Class.

37. Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate injunctive and/or declaratory relief.

38. Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because, as set forth above, common issues of law and fact predominate over any individual issues and certification of the claims as class claims is superior to other available methods for the fair and efficient adjudication of these claims. In addition, there would be enormous economies to the courts and parties in litigating these common issues on a class-wide basis rather in individual trials. Plaintiffs foresee no difficulties in the management of this action as a class action.

## **JOINT AND SEVERAL LIABILITY**

39. On information and belief, Plaintiffs contend that at all material times hereto, the owners, operators, managers and charterers of the COSCO BUSAN were operating the vessel while it was within the navigable waters of San Francisco Bay pursuant to a joint venture agreement with The San Francisco Bar Pilots Association and its members, including Captain John Cota. That such joint operating agreement creates joint and several liability for all damages arising from the oil spill from the COSCO BUSAN on November 7, 2007.

# CLASS CLAIMS

## FIRST CAUSE OF ACTION

### [Mandatory "Clean Up" Program]

### [Against COSCO BUSAN, Regal Stone, Hanjin, Synergy, and Fleet Management]

40. Plaintiffs hereby restates and realleges each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

41. As a direct result of Defendants' actions and omissions, Plaintiffs and Class have been injured. The Bay Area spill requires immediate "clean up" of the toxins. Defendants are responsible for the spill.

42. Accordingly, Defendants should be required to establish a fund and emergency "clean-up" program.

## SECOND CAUSE OF ACTION

### [Strict Liability]

### [Against All Defendants]

43. Plaintiffs hereby restates and realleges each and every allegation set forth above with the same force and effect as if set forth herein.

44. At all times herein, Defendants were the owners, charterers, custodians, and/or operators of the COSCO BUSAN which caused the incident described herein.

45. At all times relevant to this action, Defendants had supervision, custody, navigation and control of the COSCO BUSAN from which the harmful oil spill occurred.

46. At all times herein, Defendants were under a continuing duty to protect Plaintiffs and proposed class from the harm occasioned by the COSCO BUSAN within its custody, navigation and control.

47. The oil spill herein was occasioned by its ruin, vice, unseaworthiness or defect.

48. Defendants knew or, in the exercise of reasonable care, should have known of the ruin, vice, unseaworthiness or defect which caused the oil spill.

49. The injuries sustained by Plaintiffs as a result of the oil spill was the direct and proximate result of the strict liability of the Defendants.

50. Due to the Defendants strict liability, Plaintiffs and Class members are entitled to recover actual damages.

51. The acts and omissions of Defendants, and each of them, were done with malice, fraud, and/or oppression as herein above set forth.

## THIRD CAUSE OF ACTION

### [Negligence]

### [Against All Defendants]

52. Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein.

53. The Defendants owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care.

54. The Defendants breached their duty to Plaintiffs and the Class.

55. The Defendants in the exercise of reasonable care should have known that the ship would or could hit the bridge.

56. As direct and proximate result of the Defendants' negligence, Plaintiffs and the Class have sustained damages.

WHEREFORE, Plaintiffs on behalf of themselves and all others similarly situated, demands judgment against the Defendants for compensatory damages for himself/herself and each member of the Class, for establishment of a common fund, plus attorneys' fees, interests and costs.

## FOURTH CAUSE OF ACTION

### [Violation of the Unfair Competition Act, Cal. Bus. & Prof. Code § 17200, *et seq.*]

### [Against All Defendants]

57. Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein.

58. As described herein, Defendants' conduct constitutes unfair competition within the meaning of the Unfair Competition Act, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "Act"),

insofar as the Act prohibits "any unlawful, unfair or fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising."

59. Defendants have engaged and continue to engage in unfair competition in violation of the Act.

60. Defendants' conduct constitutes unlawful business acts or practices under the Act insofar as it violates, *inter alia,* Business and Professions Code §§ 17500 *et seq.* and California Civil Code §§ 1750 *et seq*.

61. Defendants' conduct constitutes "fraudulent" business practices within the meaning of the Act in that members of the public have been harmed.

62. Defendants' conduct amounts to "unfair" business practices insofar as the Act forbids all wrongful business activities in any context in which they appear. Moreover, as described herein, Defendants' practices offend established public policies, and are immoral, unethical, oppressive, and unscrupulous. The impact of the Defendants' practices is in no way mitigated by any justifications, reasons or motives. The Defendants' conduct has no utility when compared to the harm done to Plaintiffs and other members of the Class.

63. Defendants conduct constituted a violation several statutes, ordinances, or regulations including but limited to the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act ("Lempert-Keene Act"), Government Code Section 8670, *et seq*. as well as the Porter-Cologne Water Quality Control Act ("Porter-Cologne Act"), Cal. Water Code Section 13000, *et seq*., and, Cal. Fish & Game Code Section 5650, *et seq*.

64. As a direct and proximate result of the Defendants' unfair methods of competition and unfair and deceptive acts or practices, Plaintiffs and the Class have sustained damages.

65. As a proximate result of their unfair methods of competition and unfair or deceptive acts or practices, the Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to Bus. & Prof. Code §§ 17203 and 17204.

66. The acts and omissions of Defendants, and each of them, were done with malice, fraud, and/or oppression as herein above set forth.

# FIFTH CAUSE OF ACTION

**[Strict Liability Under Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, Government Code Section 8670, *et seq*.]**
**[Against COSCO BUSAN, Regal Stone, Hanjin, Synergy, and Fleet Management]**

67.  Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein.

68.  The Lempert-Keene Act provides that "[a]ny responsible party, as defined in Section 8670.3, shall be absolutely liable without regard to fault for any damages incurred by any injured party which arise out of, or are caused by, the discharge or leaking of oil into or onto marine waters." Cal. Gov. Code Section 8670.56.5 (a).

69.  The San Francisco Bay and surrounding ocean areas are "marine waters," as defined in Section 8670.03 (i).

70.  The "Responsible parties" include "the owner or transporter of oil or a person or entity accepting responsibility for the oil;" and "the owner, operator, or lessee of, or person who charters by demise, any vessel ... or a person or entity accepting responsibility for the vessel ...." Cal. Gov. Code Section 8670.3 (w).

71.  As the owner, operator, lessee, or charterer by demise of the vessel and owner or transporter of the oil of the discharged oil, Defendants Regal Stone Ltd., Hanjin Shipping Co., Ltd., Fleet Management Ltd., Synergy Maritime, Ltd., and COSCO BUSAN are responsible parties that are absolutely liable under the Lempert-Keene Act.

72.  The bunker fuel that was discharged from the vessel is "oil" within the meaning of the Act, which defines "oil" as "any kind of petroleum, liquid hydrocarbon, or petroleum products or any faction or residues therefrom, including ... bunker fuel ...." Cal. Gov. Code Section 8670.3 (n).

73.  On November 7, 2007, defendants discharged or leaked bunker fuel into the San Francisco Bay, and are therefore absolutely liable without regard to fault for all damages that plaintiffs sustained or will sustain.

74. The Lempert-Keene Act entitles a plaintiff to recover a broad variety of damages, including, without Limitation, the costs of investigation, response, containment, removal and treatment, damages for injury to, or economic losses resulting from destruction of or injury to real or personal property, lost faxes, royalties, rents, or net profit shares caused by the injury, destruction, loss, or impairment of as of real property, and personal property. Cal. Gov. Code Section 8670.56.5 (h).

75. The contamination legally caused by the discharge of bunker fuel by the COSCO BUSAN into or upon the San Francisco Bay injured, destroyed, caused to be lost, and/or impaired the use of natural resources on which Plaintiffs and the class depend for their livelihood, including but not limited to, the local populations of Dungeness crab and herring.

76. The injury, destruction, loss, and/or impairment of usability of these natural resources has caused Plaintiffs and the class to lose profits, and will cause future losses of profits by Plaintiffs and the class and/or impairment of their earning capacities.

77. The likely long-lasting effects of the contamination of the discharge of bunker fuel into the San Francisco Bay by the Ship on the marine life on which Plaintiffs' and the class' livelihoods depend, especially but not limited to, the Dungeness crab and herring fish, requires that Plaintiffs and the class continue future monitoring and testing activities in order to ensure that such marine life is not contaminated and is safe and fit for human consumption.

78. Plaintiffs on behalf of themselves and all others similarly situated, demands judgment against the Defendants for compensatory damages for himself/herself and each member of the Class, for establishment of a common fund, plus attorneys' fees, interest, costs, and additional relief as set forth below.

79. The acts and omissions of Defendants, and each of them, were done with malice, fraud, and/or oppression as herein above set forth.

## SIXTH CAUSE OF ACTION
### [Negligence Per Se]
### [Against All Defendants]

80. Plaintiffs incorporates by reference all preceding paragraphs as if fully set forth

herein and further alleges as follows:

81. At all times herein mentioned, Defendants negligently, wantonly, carelessly and/or recklessly hired, retained, supervised, trained, and/or entrusted the COSCO BUSAN to one another, for the purpose of transporting cargo aboard a container ship filled with bunker fuel through the San Francisco Bay. Thereafter, the Defendants, and each of them, controlled, navigated, and/or managed the COSCO BUSAN with the knowledge, consent, permission, and/or within the scope of authority conferred by Defendants.

82. Defendants violated several statutes, ordinances, or regulations including but limited to the Lempert-Keene Act, Government Code Section 8670, *et seq*. as well as the Porter-Cologne Act, Cal. Water Code Section 13000, *et seq*., and, Cal. Fish & Game Code Section 5650, *et seq.*

83. As a direct and legal cause of the Defendants wrongful acts and omissions herein above set forth, Plaintiffs and Class have suffered and will suffer economic harm, injury, and losses.

84. Plaintiffs' harm resulted from the occurrence of the nature that the Lempert-Keene Act and Porter-Cologne Act were designed to prevent.

85. Plaintiffs are members of the class of persons for whose protection the Lempert-Keene Act and Porter-Cologne Act were adopted.

86. The acts and omissions of Defendants, and each of them, were done with malice, fraud, and/or oppression as herein above set forth.

## SEVENTH CAUSE OF ACTION
### [Public Nuisance]
**[Against COSCO BUSAN, Regal Stone, Hanjin, Synergy, and Fleet Management]**

87. Plaintiffs incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

88. Defendants have created a condition that affects a substantial number of individuals similarly situated to the Plaintiffs; and a condition which would reasonably annoy

Audet & Partners, LLP
www.audetlaw.com

13
VERIFIED SECOND AMENDED CLASS ACTION COMPLAINT

and disturb an ordinary person. The particular conduct constituting a nuisance is the discharge of approximately 58,000 gallons of fuel in the San Francisco Bay.

89. The seriousness and gravity of the harm outweighs the social utility of Defendants' conduct.

90. Plaintiffs and Class suffered harm and injury to their economic livelihood, which they did not consent to and which is different from the type of harm which is suffered by the general public.

91. The above acts and omissions also created a public nuisance vis-a-vis the Plaintiffs and the Class, interfering with the property rights of Plaintiffs and the Class, and rights incidental to those property rights.

92. The acts and omissions of the Defendants described herein were also in violation of various California state laws including but not limited to the Lempert-Keene Act, Government Code Section 8670, *et seq.*, and the Porter-Cologne Act, Water Code Sections 13000, *et seq.*, and Cal. Fish & Game Code Section 5650, *et seq.*

93. Defendants' violations of these statutes directly and proximately caused, and will cause, injury to Plaintiffs and the Class of a type which the statutes are intended to prevent. Plaintiffs and the Class are of the class of persons for whose protection these statutes were enacted.

94. As a direct and legal cause of the Defendants wrongful acts and/or omissions herein above set forth, Plaintiffs and the Class have suffered and will suffer economic harm, injury, and losses as herein above set forth.

95. In maintaining the nuisance, Defendants are acting with full knowledge of the consequences and damage being caused, and the acts and omissions of Defendants, and each of them, were done with malice, fraud, and/or oppression as herein above set forth.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs request that this Court enter a judgment against the Defendants and in favor of the Plaintiffs and the Class and award the following relief:

1  A.  That this action be certified as a class action on behalf of the proposed Class described herein and that counsel of record be appointed to represent the Class;

   B.  That a comprehensive Court-supervised "Clean-Up" Program be established;

   C.  For general damages in an amount to be proven at the time of trial;

   D.  For special damages in an amount to be proven at the time of trial;

   E.  For pre-judgment and post-judgment interest on the above general and special damages;

   F.  For restitution and disgorgement of all profits;

   G.  For compensatory and other damages, as the Court may determine;

   H.  For any damages or penalties pursuant to the Lempert-Keene Act, and any other applicable law;

   J.  Costs, including experts' fees and attorneys' fees and expenses, and the costs of prosecuting this action; and

   K.  That the Defendant Vessel be arrested, including all appurtenances, and cargo aboard that the plaintiffs have judgment against them, in amounts to be proven at trial, with additional interest, attorneys' fees, costs, and applicable federal and state penalties to be proven at trial;

   L.  That the plaintiffs' claims be determined to be valid maritime claims against the Defendant Vessel, with priority over all other interests, claims or liens, as provided by law;

   M.  That the Defendant Vessel be condemned and sold to pay the judgment of the plaintiffs and a lien be created under federal law;

   N.  That the plaintiffs have judgment against all *in personam* Defendants for compensatory and exemplary damages, in an amount to be proven at trial, plus interest, attorneys' fees, and costs; and

   O.  For such other relief as this court deems just and equitable under the circumstances.

   //

**PUNITIVE DAMAGES**

P.   For exemplary and punitive damages, to the extent permissible by law and in an amount to be proven at the time of trial, and sufficient to punish Defendants or to deter them and other from repeating the injurious conduct alleged herein or similar conduct. Defendants knew of the extremely high risk of catastrophic injury inherent in the control, navigation, and management of the COSCO BUSAN. Notwithstanding, Defendants took no action to prevent or otherwise protect Plaintiffs and Class, and demonstrated a callous and reckless disregard for human life, health and safety. Defendants acted with such indifference to the consequences of their misconduct, and with such recklessness as to be willful, malicious and oppressive and in disregard of the rights of Plaintiffs thereby meriting an award of punitive or exemplary damages against Defendants and in favor of Plaintiffs for the purpose of deterring them from such future misconduct and to make a public example of their egregious, wrongful and despicable acts. Plaintiffs are not presently aware of the true net worth of Defendants and therefore cannot ascertain an amount which would properly punish them by way of punitive damages, and Plaintiffs pray leave to amend this complaint to insert the same herein when Defendants' true net worth is finally ascertained so that a jury may hear all the evidence and render a full, fair and complete verdict condemning their outrageous misconduct.

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demands a jury trial as to all claims triable in this action.

Dated: July 29, 2008            AUDET & PARTNERS, LLP

*/s/ William M. Audet*

William M. Audet
Michael McShane
Adel A. Nadji
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.982.1776
Facsimile: 415.568.2556

*On Behalf of Plaintiffs and the Class*

1  Anthony M. Urie (Cal. State Bar #92363)
   Law Offices of Anthony M. Urie
2  18025 17th Ave NW
   Shoreline, WA, 98177
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

...

# **VERIFICATION**

I am the attorney of record for Plaintiffs and class in this action, and make this verification pursuant to Admir. L.R. 2-1;  I have read the forgoing complaint, know the contents thereof, and from information officially furnished to me believe the same to be true.

I verify under penalty of perjury, in accordance with 28 U.S.C. §1746, that the forgoing is true and correct.

Dated:  July 29, 2008

*/s/ William M. Audet*
William M. Audet

# PROOF OF SERVICE

## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

I am employed in the County of San Francisco, State of California; my business address is 221 Main Street, Suite 1460, San Francisco, California 94105. I am over the age of 18 and not a party to the within action. On this date I served the following documents:

**VERIFIED SECOND AMENDED COMPLAINT**

I hereby certify that on July 29, 2008, I electronically the above documents with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record listed on the Electronic Mail Notice List.

True and complete copies of the above documents were also served on the following counsel and individuals by U.S. Mail:

John D. Giffin
Keesal, Young & Logan
Suite 1500
Four Embarcadero Center
San Francisco, CA 94111

*Counsel for Regal Stone, LTD; Fleet Management Limited; and COSCO BUSAN, in rem*

David P. Shack
K&L Gates
10100 Santa Monica Blvd., 7th Floor
Los Angeles, CA 90067

*Counsel for John Cota*

Walter G. Coppenrath, Jr.
George Jones
Coppenrath & Associates
400 Oceangate, Ste 700
Long Beach, CA 90802

*Counsel for John Cota*

Eric P. Wise
Alecksandrs E. Drumals
FLYNN, DELICK & WISE LLP
One World Trade Center, Suite 1800
Long Beach, CA 90831

*Counsel for Hanjin Shipping Company, Ltd.*

[X] Federal: I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on this 29th day of July, 2008 at San Francisco, California.

_____
Adrienne C. Brennan

- 1 -
PROOF OF SERVICE