**United States District Court**
For the Northern District of California

1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7
    THE CONTINENTAL INSURANCE COMPANY, )   Case No. 08-2052 SC
8                                      )
               Plaintiff,             )         Related cases:
9                                      )             07-5800 SC
          v.                          )             07-6045 SC
10                                     )             07-5926 SC
    JOHN JOSEPH COTA; REGAL STONE,     )             08-2268 SC
11  LIMITED, FLEET MANAGEMENT LTD.; and)
    the M/V COSCO BUSAN, LR/IMO Ship   )   ORDER GRANTING
12  No. 9231743, her engines, apparel, )   DEFENDANT"S MOTION TO
    electronics, tackle, boats,        )   STAY CIVIL ACTION
13  appurtenances, etc., in rem,       )   PENDING RESOLUTION OF
                                       )   CRIMINAL PROCEEDING
14             Defendants.             )
                                       )
15  _____ )
16
17  I.   **INTRODUCTION**
18          This matter comes before the Court on the Motion to Stay
19  Civil Action Pending Resolution of Criminal Proceeding or,
20  Alternatively, to Compel Arbitration ("Motion"), filed by the
21  defendant John Joseph Cota ("Cota").  Docket No. 33.  The
22  Continental Insurance Company ("Plaintiff" or "Continental")
23  submitted a Response, as did the defendants Regal Stone Limited
24  ("Regal Stone") and Fleet Management, Ltd. ("Fleet").  Docket Nos.
25  42, 43.  Cota submitted a Reply.  Docket No. 50.  For the reasons
26  discussed below, Cota's Motion is GRANTED and the case is hereby
27  STAYED pending resolution of the criminal matter, United States v.
28  John J. Cota, Case No. CR 08-0160, now pending before the

1   Honorable Judge Illston.

2

3   **II.   BACKGROUND**

4       On November 7, 2007, the cargo ship COSCO BUSAN hit the Bay

5   Bridge while attempting to sail out of the San Francisco Bay.  As

6   a result of this allision, the COSCO BUSAN discharged more than

7   50,000 gallons of heavy bunker fuel into the bay.  Various

8   lawsuits have since been filed in state and federal court.  The

9   four federal civil actions have been related and are before this

10  Court.  See Chelsea v. Regal Stone, Ltd. et al., Case No. 07-5800;

11  Shogren Living Trust et al. v. Regal Stone, Ltd. et al., Case No.

12  07-5926; Continental Ins. Co. v. Cota et al., Case No. 08-2052;

13  California v. Regal Stone Ltd. et al., Case No. 08-2268.  In

14  addition, the United States filed a criminal action against both

15  Cota and Fleet.  See Cota, Case No. CR 08-0160.

16      Cota is a member of the San Francisco Bar Pilots ("Bar

17  Pilots") and was allegedly at the helm of the COSCO BUSAN when it

18  allided with the bridge.[1]  First Am. Compl. ("FAC"), Docket No.

19  14, ¶ 21.  Regal Stone owns the COSCO BUSAN and Fleet is the

20  ship's operator.  Continental had issued an insurance policy to

21  the Bar Pilots, including Cota, that was in effect at the time of

22  the allision.  FAC ¶¶ 11, 12.  Because of this policy, Cota

23  tendered his defense in the criminal matter to Continental.  Mot.

24  at 1.  Although Continental initially refused to defend or

25

26      [1]  The San Francisco Bar Pilots is an association of
    approximately 60 pilots authorized to pilot large vessels into and
27  out of the San Francisco Bay and its tributaries.  Mot. at 3.

28                                     2

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

indemnify him, it eventually agreed to do so in the criminal

proceedings, subject to a reservation of rights.  Id. at 2.  In

the civil matters, Cota initially tendered his defense to both

Continental and, pursuant to California Harbors and Navigation

Code § 1198(c), to Regal Stone and Fleet.[2]  FAC ¶¶ 26, 27.  Regal

Stone and Fleet initially declined to defend Cota, while

Continental accepted the obligation under a reservation of rights.

Id. ¶ 28.  Several months later, Regal Stone and Fleet reversed

course and assumed Cota's defense in the civil actions, also under

a reservation of rights.  Id. ¶ 30.

Continental subsequently filed the present action seeking

indemnity as to the civil defense costs against Regal Stone and

Fleet for the months during which Continental paid these costs.

Id. ¶ 31.  According to Continental, these costs totaled

$315,321.31.  Id.  In addition, Continental seeks declaratory

relief as to its obligations regarding the defense of Cota in the

---

[2]  California Harbors and Navigation Code § 1198(c) states, in part:

> Every vessel, owner, operator, or demise or bareboat charterer hiring a pilot with a state license for the Bays of San Francisco, San Pablo, and Suisun shall either defend, indemnify, and hold harmless pilots pursuant to paragraph (1), or alternatively, notify pilots of an intent to pay for trip insurance pursuant to paragraph (2). If a vessel or its owner, operator, or demise or bareboat charterer does not provide written notice pursuant to paragraph (2) of an intent to exercise the trip insurance option, then the vessel and its owner, operator, and demise or bareboat charterer will be deemed to have elected the obligation to defend, indemnify, and hold harmless pilots pursuant to paragraph (1).

3

**United States District Court**
For the Northern District of California

criminal action; reimbursement of the criminal defense costs paid

for Cota; declaratory relief against all defendants; and indemnity

as to the criminal defense costs against Regal Stone and Fleet.

Id. ¶¶ 23-62.  Regal Stone and Fleet filed a Counterclaim against

Continental, a Cross-Claim against Cota, and a Third-Party

Complaint against the Bar Pilots (collectively, "Counter

Complaint").  Docket No. 27.  In the Counter Complaint, Regal

Stone and Fleet seek declaratory relief that the California

Harbors and Navigation Code § 1198(c) is preempted by federal law

or, in the alternative, that § 1198(c) does not require Regal

Stone and Fleet to indemnify Cota in the criminal action.  Counter

Compl. ¶¶ 25-34.  Regal Stone and Fleet also allege violations of

§ 1198(a) by Cota and the Bar Pilots and seek by way of

declaratory relief a finding that Regal Stone and Fleet are not

obligated to indemnify Continental because of these alleged

violations.[3]  Id. ¶¶ 35-42.

III.  **LEGAL STANDARD**

Courts may, within their discretion, stay civil proceedings

"when the interests of justice seem to require such action."

---

[3]  California Harbors and Navigation Code § 1198(a) states:
Except as provided in subdivision (c), the
rates and charges for pilotage services
shall not include the cost of primary
marine insurance insuring a pilot, an
organization of pilots, or their officers
or employees, from liability arising from
negligence or errors in judgment in
connection with the provision of pilotage
service by pilots, organizations of
pilots, or their officers or employees.

4

<u>Keating v. Office of Thrift Supervision</u>, 45 F.3d 322, 324 (9th Cir. 1995) (internal quotation marks and alterations omitted). "The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made in light of the particular circumstances and competing interests involved in the case." <u>Id.</u> (internal quotation marks omitted). The first consideration is "the extent to which the defendant's fifth amendment rights are implicated." <u>Id.</u> (internal quotation marks omitted). In addition, courts should generally consider the following factors:

> (1) the interest of the plaintiffs in proceeding expeditiously . . . and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceeding may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

<u>Id.</u> at 324-25.

**IV.  DISCUSSION**

As an initial matter, the Court notes that subsequent to the filing of the instant Motion by Cota, Continental conceded that it was required to submit its dispute with Cota to arbitration, as mandated by the underlying insurance policy. <u>See</u> Continental's Opp'n at 5. In light of this fact, Continental voluntarily dismissed Cota from its lawsuit. <u>See</u> Docket No. 44. In addition, Continental has indicated that, in the interest of judicial

**United States District Court**
For the Northern District of California

economy, it does not oppose a stay of the action.  Continental's Opp'n at 6.  Regal Stone and Fleet, however, continue to oppose the stay and argue that it is overbroad and prejudicial to their interests.

In applying the <u>Keating</u> factors to the circumstances of the present case, the Court finds that a stay is warranted.  It is undisputed that all of the civil actions and the criminal action spring from the same nucleus of facts--the allision of the COSCO BUSAN with the Bay Bridge and the resulting oil spill.

Contrary to the argument presented by Regal Stone and Fleet, resolution of their Counter Complaint against Cota will likely involve resolution of issues that are pivotal the criminal action. For example, in their Counter Complaint, Regal Stone and Fleet seek "a determination by this Court that section 1198(c) does not obligate [Regal Stone and Fleet] to defend, indemnify or hold harmless Cota . . . ."  Counter Compl. ¶ 33.  Section 1198(c) releases insurers from the obligation to defend in "cases of willful misconduct by a pilot."  Cal. Harb. & Nav. Code § 1198(c)(1)(C).  Thus, as their Cross Complaint makes clear, Regal Stone and Fleet seek, in part, a determination that Cota engaged in willful misconduct.  It is difficult to imagine how adjudication of this issue would not implicate many of the factual issues underlying the criminal action.  Accordingly, discovery propounded on Cota in the underlying civil action will likely implicate his fifth amendment rights.  Although Regal Stone and Fleet assert that they "do no presently believe discovery of Cota is necessary to their anticipated motion for summary judgment,"

6

**United States District Court**
For the Northern District of California

Regal Stone & Fleet Opp'n at 6, such a belief does not justify the risk of prejudice Cota would face were he forced to proceed with discovery at this time.

Finally, a stay of this case would not unduly prejudice Regal Stone and Fleet. The only prejudice they have identified is a delay in the determination of their responsibility to Cota's defense. While delay is a relevant factor under <u>Keating</u>, the possible prejudice Regal Stone and Fleet might suffer as a result of this delay is not substantial and does not weigh heavily against a stay. Furthermore, Fleet is a co-defendant with Cota in the criminal action and, as Fleet concedes in its Opposition, is now seeking to postpone the criminal trial from its current date of November 17, 2008, to March 2009. Regal Stone & Fleet Opp'n at 7 n.5. Thus, some of the delay for which Regal Stone and Fleet assert they will be prejudiced is in fact delay they are actively pursuing in the criminal action.

The remaining <u>Keating</u> factors, to the extent they apply, also favor a stay.

**V.   CONCLUSION**

For the reasons discussed above, Cota's Motion to Stay Civil Action Pending Resolution of Criminal Proceeding is GRANTED.

IT IS SO ORDERED.

Dated: September 18, 2008

_____
UNITED STATES DISTRICT JUDGE

7