United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CONTINENTAL INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>JOHN JOSEPH COTA; REGAL STONE LIMITED, FLEET MANAGEMENT, LTD.; and the M/V COSCO BUSAN, LR/IMO Ship No. 9231743, her engines, apparel, electronics, tackle, boats, appurtenances, etc., <u>in rem</u>,<br><br>        Defendants.<br>_____<br>REGAL STONE LIMITED and FLEET MANAGEMENT, LTD.,<br><br>        Counterclaimants,<br><br>    v.<br><br>THE CONTINENTAL INSURANCE COMPANY,<br><br>        Counterdefendant.<br>_____<br>REGAL STONE LIMITED and FLEET MANAGEMENT, LTD.,<br><br>        Cross-Complainants,<br><br>    v.<br><br>JOHN JOSEPH COTA,<br><br>        Cross-Defendant.<br>_____ | Case No. 08-2052 SC<br><br>Related cases:<br>07-5800 SC<br>07-6045 SC<br>08-2268 SC<br>08-5096 SC<br>08-5098 SC<br>09-1469 SC<br><br>ORDER RE:<br>APPLICABILITY OF<br><u>SECTION 1198</u> |

1

| | |
|---|---|
| REGAL STONE LIMITED and FLEET MANAGEMENT, LTD., | ) ) ) |
| Third-Party Plaintiffs, | ) ) |
| v. | ) ) |
| THE SAN FRANCISCO BAR PILOTS and THE SAN FRANCISCO BAR PILOTS BENEVOLENT AND PROTECTIVE ASSOCIATION, | ) ) ) ) ) |
| Third-Party Defendants. | ) ) |

## I. INTRODUCTION

On September 21, 2009, the Court ordered supplemental briefing on the question of whether California Harbors and Navigation Code section 1198 ("section 1198") applies to Defendants, Counterclaimants, and Cross-Defendants Regal Stone Limited ("Regal Stone") and Fleet Management, Ltd., ("Fleet"). Docket No. 157 ("Order Requiring Supplemental Briefing"). Plaintiff and Counterdefendant Continental Insurance Company ("Continental") and Cross-Defendatn John Joseph Cota ("Cota") filed supplemental briefs. Docket Nos. 122 ("Continental's Supplemental Br."), 126 ("Cota's Supplemental Br."). The San Francisco Bar Pilots ("Bar Pilots") joined and adopted the supplemental briefs of Continental and Cota. Docket No. 127 ("Joinder"). Regal Stone and Fleet filed an Opposition. Docket No. 130 ("Opp'n"). Continental and Cota submitted Replies. Docket Nos. 139 ("Continental's Reply"), 140 ("Cota's Reply"). For the reasons stated herein, the Court finds that section 1198 applies to Regal Stone and Fleet.

**II. BACKGROUND**

Continental and Cota moved for partial summary judgment on the question of whether section 1198 is preempted by federal maritime law. Docket Nos. 90 ("Continental's MPSJ"), 93 ("Cota's MPSJ"). In response, Regal Stone and Fleet contend that section 1198 does not apply to them because the time charterer hired the pilot. Opp'n at 9-15. The Court ordered supplemental briefing related to this contention. Docket No. 128 ("Order").

**III. LEGAL STANDARD**

Under California law, the objective of statutory interpretation is to ascertain and effectuate legislative intent. Burden v. Snowden, 2 Cal. 4th 556, 562 (1992). The court looks first to the language of the statute, giving effect to its plain meaning. Id. "[T]he objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration in its interpretation." Rock Creek Water Dist. v. Calaveras County, 29 Cal. 2d 7, 9 (1946).

**IV. DISCUSSION**

    **A. Statutory Framework**

Under California law, foreign vessels in the Bay of San Francisco must use a pilot: "Every foreign vessel . . . [in] the bay[] of San Francisco . . . shall use a pilot or inland pilot holding a license issued pursuant to this division . . . ." Cal. Harbors & Navigation Code § 1127(d). Section 1190 requires "[e]very vessel" to pay a specified bar pilotage rate. Id.

3

§ 1190(a).  "Vessels which use pilotage services . . . and their owners, operators, and agents are jointly and severally liable for pilotage fees . . . ."  Id. § 1120.

Section 1198(c) begins by stating that:

> Every vessel, owner, operator, or demise or bareboat charterer hiring a pilot with a state license for the Bays of San Francisco, San Pablo, and Suisun shall either defend, indemnify, and hold harmless pilots pursuant to paragraph (1), or alternatively, notify pilots of an intent to pay for trip insurance pursuant to paragraph (2).

Cal. Harbors & Navigation Code § 1198(c).  Paragraph (1) states, in part, that:

> A vessel subject to this paragraph and its owner, operator, and demise or bareboat charterer shall defend, indemnify, and hold harmless the pilot, any organization of pilots to which the pilot belongs, and their officers and employees, with respect to liability arising from any claim, suit, or action, by whomsoever asserted, resulting in whole, or in part, from any act, omission, or negligence of the pilot, any organization of pilots to which the pilot belongs, and their officers and employees.

Id. § 1198(c)(1)(B).  Paragraph 2 states, in part, that:

> In lieu of paragraph (1), a vessel subject to this subdivision and its owner, operator, demise or bareboat charterer, and agent may elect to notify the pilot, or the organization of pilots to which the pilot belongs, of intent to pay for trip insurance . . . .

Id. § 1198(c)(2).

**B.   Legislative Intent**

The legislative history indicates that the main purpose of section 1198 was to protect bar pilots, especially given that

4

pilotage is compulsory in the Bay of San Francisco.  According to Senator John Burton, the bill's sponsor,

> SB 1109 would require that a vessel, its owners and operators defend, indemnify, and hold harmless a pilot from any liability and expenses in connection with civil claims or actions relating to the pilot's performance of pilotage. . . . There is no adequate statutory provision to protect a mandatory bar pilot's personal assets, when he or she is sued for piloting a vessel involved in an incident.  It doesn't make sense for the 63 San Francisco, San Pablo, and Suisun bay bar pilots to purchase insurance. Vessels are already insured against damages that may occur during pilotage.  The cost of bar pilot insurance would be high and inevitably passed on to the vessels.  A liability indemnification standard is needed to protect the assets of the pilots of these bays.

Hampton Decl.[1] Ex. J ("SB 1109 (Burton) Statement").

Various organizations, including the Pacific Merchant Shipping Association ("PMSA") objected to the proposed legislation based on a concern that it would increase the liability exposure of shipowners, charterers, and agents.  See id. Ex. E ("PMSA Letter").  The PMSA stated that "[t]he legislation will impose liability upon parties such as time charters and 'managing agents' who otherwise are not responsible for the consequences of a vessel casualty."  Id.  In response to concerns of this kind, language was added to the bill clarifying that only demise or bareboat charterers had a duty to defend, indemnify and hold harmless pilots.  See id. Ex. H ("SB 1109"), Ex. I ("Assembly Republican Bill Analysis") ("The August 18th amendments . . . narrow[] the

---

[1] Lisa Hampton, a Research Director of Legislative Research, Incorporated (LRI), filed a declaration in support of Regal Stone and Fleet's Opposition.  Docket No. 134.

1 indemnification liability on certain types of charterers of
2 vessels.").

3 A time charter is a contract to use a ship for a specific
4 period of time in order to ship goods. Thomas J. Schoenbaum,
5 Admiralty and Maritime Law § 11-5 (4th ed. 2004). The owner
6 continues to operate the vessel, but makes the ship available to
7 the time charterer to ship cargo. Id. In contrast, a demise or
8 bareboat charter is essentially the lease of the ship to the
9 charterer, who mans, equips and maintains it. Id. § 11-3. It
10 makes sense for demise or bareboat charterers, but not time
11 charterers, to be required to indemnify pilots, because under a
12 demise or bareboat charter, the entire command and possession of
13 the vessel is turned over to the charterer, whereas under a time
14 charter, the owner continues to operate the vessel. See id.
15 §§ 11-3, 11-5.

16 Regal Stone and Fleet contend that section 1198 does not
17 apply when the time charter hires the pilot. Opp'n at 9-11.
18 However, the legislative history submitted to the Court does not
19 evidence any intent to absolve the owner or operator of their
20 requirement to defend, indemnify and hold harmless pilots in a
21 situation where the time charterer or its agent places the call
22 ordering the pilot for the vessel. Regal Stone and Fleet's
23 interpretation of section 1198 does not comport with the
24 legislature's intent to protect bar pilots. The Court will not
25 endorse an interpretation of the statute that allows shipowners
26 and operators to evade the requirements of section 1198 by having
27 time charterers place the order for pilotage services. Based on

both the plain language of the statute and the legislative history, the Court interprets section 1198 as follows: When a vessel, owner, operator, or demise or bareboat charterer hires a pilot, then the vessel, owner, operator, or demise or bareboat charterer must either notify the pilot of an intent to purchase trip insurance, or defend, indemnify and hold harmless the pilot.

### C. The Vessel Hired Cota

The facts of this case indicate that the vessel hired Cota. According to Kevin Kennedy ("Kennedy"), one of the directors of Regal Stone, Regal Stone became the owner of the COSCO BUSAN in 2007. Roberts Decl.[2] Ex. A ("Kennedy Dep. I") at 19:9-10; Ruby Decl.[3] Ex. E ("Kennedy Dep. II") at 12:21-23. Regal Stone has two directors, no officers, and no employees. Kennedy Dep. I at 78:23-79:10. Regal Stone is a single-purpose company, and its purpose is to own the COSCO BUSAN. Id. at 19:2-8.

Fleet operates the vessel for Regal Stone under a ship management agreement. Id. at 21:4-9. The management agreement is with Fleet Ship Management, Inc., which subcontracted operational management of the COSCO BUSAN to Fleet. Roberts Decl. Ex. B ("Fleet Dep.") at 103:5-104:23. Fleet was responsible for crew management, technical management, making insurance arrangements, and providing accounting services for the vessel. Id. at 33:6-

---

[2] C. Kent Roberts, one of the attorneys for Defendant Cota in this action, filed a declaration in support of Cota's Supplemental Brief. Docket No. 128.

[3] Samuel H. Ruby, an attorney for Continental, filed a declaration in support of Continental's Supplemental Brief. Docket No. 124.

7

34:11; Kennedy Dep. II at 36:4-7. In a document provided by Fleet to the masters of Fleet-operated vessels, it states: "When visiting ports where pilotage is compulsory . . . the Master shall employ a Pilot." Id. at 135:10-137:3, Ex. 137 ("Guidance to Masters and Navigating Officers").

At the time of the allision, the vessel was under a time charter to Hanjin Shipping Co. Ltd ("Hanjin"), and the vessel was sailing in compulsory pilotage waters. Fleet Dep. at 95:21-24, 99:3-19, Ex. 139 ("Time Charter"); Puri Decl.[4] ¶ 8. Hanjin was required to pay for the pilot. Time Charter § 2. If the vessel was operating in a port where pilotage is optional, Fleet would have referred any queries from the master of the vessel concerning whether a pilot should be taken to the time charterer, because the time charterer pays for the pilot. Fleet Dep. at 117:22-119:15. The shipowner remained responsible for the acts of pilots. Time Charter § 26.

Hanjin contracted with Norton Lilly International ("Norton Lilly") to provide agency services for Hanjin's time-chartered vessels. Kyu-Sung Cho Decl.[5] ¶ 3. Michael Masashi Kawamura ("Kawamura"), an employee of Norton Lilly, was the person who made

---

[4] Vivek Puri, former Chief Technical Ships Officer of Synergy Marine Ltd., filed a declaration in support of Regal Stone and Fleet's Opposition. Docket No. 132.

[5] Kyu-Sung Cho, the Manager of Fuel Management for Hanjin, filed a declaration in support of Regal Stone and Fleet's Opposition. Docket No. 131.

the call ordering the pilot for the COSCO BUSAN. Ruby Decl.[6] Ex. A ("Kawamura Dep.") at 151:12-16. Kawamura worked in the vessel operations department of Norton Lilly. Id. at 23:21-23. Generally, after a ship emails its estimated arrival time, Kawamura coordinates a pilot for the ship. Id. at 35:2-5, 37:7-38:12; 143:10-11. It was part of Kawamura's job function to call the pilots. Id. at 151:22. Kawamura was not aware of any other agent doing anything for the COSCO BUSAN in November 2007. Id. at 146:5-9.

When a San Francisco bar pilot arrives on a vessel, he or she gives the master of the vessel a bill for engagement of the pilot. Roberts Decl. Ex. D ("Sullivan Dep.") at 32:14-33:4, Ex. 129 ("Bill"); Sullivan Decl.[7] ¶¶ 2-4. The master signs the bill below the block that states "TENDER OF SERVICE ADMITTED AND BILL ACCEPTED BY MASTER OF VESSEL." See Bill. On November 7, 2007, the master of the vessel signed the bill accepting Cota's services. See Bill. Hanjin paid for the pilotage provided by Cota. Cox Decl.[8] Ex. B ("Sullivan Dep. II") at 35:2-24.

In summary, then, the vessel's master was required to employ a pilot when entering and leaving the Bay of San Francisco. The Time Charter holds the owner of the vessel responsible for the

---

[6] Samuel H. Ruby, an attorney for Continental, filed a declaration in support of Continental's Supplemental Brief. Docket No. 124.

[7] Werner R. Sullivan, Chief Dispatcher of the San Francisco Pilots filed a declaration. Docket No. 141.

[8] John Cox, an attorney for Regal Stone and Fleet, filed a declaration in support of Regal Stone and Fleet's Opposition. Docket No. 133.

9

1  acts of pilots.  An agent of the time charterer ordered the pilot,
2  which was part of his job function.  When the pilot boarded the
3  COSCO BUSAN, the bill was accepted by the master of the vessel.
4  The time charterer paid the bill.  Since the legislature expressed
5  no intent to absolve the vessel owner or operator of the
6  requirement to defend, indemnify, and hold harmless the pilot when
7  the vessel is under a time charter, the Court finds that the
8  vessel hired the pilot.[9]  As such, section 1198 applies to the
9  owner and operator of the vessel, Regal Stone and Fleet.

10  ///
11  ///
12  ///
13  ///
14  ///
15  ///
16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///

---

[9] The Court finds that <u>States Marine Corp. of Del. v. Victory Carriers, Inc.</u>, 272 F.2d 463 (9th Cir. 1959) is not controlling because whether the vessel hired the pilot turns on principles of statutory interpretation, not principles of private contract law. In <u>Victory Carriers</u>, the court held that a time charterer did not have the authority to bind the vessel owner to the pilotage clause of a towage contract.  <u>Id.</u> at 467-68.

10

**V.    CONCLUSION**

For the foregoing reasons, the Court finds that section 1198 applies to Regal Stone and Fleet.  Therefore, the Court may reach the question of whether section 1198 is preempted by federal maritime law.  Continental and Cota's motions for partial summary judgment on the preemption issue are fully briefed, and Regal Stone and Fleet have opposed those motions.  See Docket Nos. 90, 93, 97.  The Court will not set a new hearing date for those motions.  The Court will decide Continental and Cota's Motions for Partial Summary Judgment based on the papers submitted.

IT IS SO ORDERED.

Dated: December 17, 2009

_____
UNITED STATES DISTRICT JUDGE

11