United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CONTINENTAL INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>JOHN JOSEPH COTA; REGAL STONE LIMITED, FLEET MANAGEMENT, LTD.; and the M/V COSCO BUSAN, LR/IMO Ship No. 9231743, her engines, apparel, electronics, tackle, boats, appurtenances, etc., <u>in rem</u>,<br><br>    Defendants. | Case No. 08-2052 SC<br><br>Related cases:<br>07-5800 SC<br>07-6045 SC<br>08-2268 SC<br>08-5096 SC<br>08-5098 SC<br>09-1469 SC<br><br>ORDER GRANTING MOTIONS FOR PARTIAL <u>SUMMARY JUDGMENT</u> |
| REGAL STONE LIMITED and FLEET MANAGEMENT, LTD.,<br><br>    Counterclaimants,<br><br>  v.<br><br>THE CONTINENTAL INSURANCE COMPANY,<br><br>    Counterdefendant. | |
| REGAL STONE LIMITED and FLEET MANAGEMENT, LTD.,<br><br>    Cross-Complainants,<br><br>  v.<br><br>JOHN JOSEPH COTA,<br><br>    Cross-Defendant. | |

1

| | |
|---|---|
| REGAL STONE LIMITED and FLEET MANAGEMENT, LTD., | ) ) ) |
| Third-Party Plaintiffs, | ) ) |
| v. | ) ) |
| THE SAN FRANCISCO BAR PILOTS and THE SAN FRANCISCO BAR PILOTS BENEVOLENT AND PROTECTIVE ASSOCIATION, | ) ) ) ) |
| Third-Party Defendants. | ) ) |

## I. **INTRODUCTION**

On August 20, 2009, Plaintiff and Counterdefendant Continental Insurance Company ("Continental") filed a Motion for Partial Summary Judgment. Docket No. 90 ("Continental's MPSJ"). On August 21, 2009, Defendant and Cross-Defendant John Joseph Cota ("Cota") filed a Motion for Partial Summary Judgment. Docket No. 93 ("Cota's MPSJ").[1] Defendants, Counterclaimants, Cross-Defendants, and Third-Party Plaintiffs Regal Stone Limited ("Regal Stone") and Fleet Management, Ltd., ("Fleet") filed an Opposition. Docket No. 97. Continental and Cota submitted Replies. Docket Nos. 102 ("Continental's Reply"), 104 ("Cota's Reply"). Third-Party Defendants San Francisco Bar Pilots and The San Francisco Benevolent and Protective Association (collectively, "Bar Pilots") joined in the motions for partial summary judgment. Docket No.

---

[1] Cota's MPSJ incorporates by reference the authorities and legal arguments made on the preemption issue in his Motion to Dismiss filed in Regal Stone, Ltd. v. Cota, Case No. 08-5098, Docket No. 30 ("Motion to Dismiss"). That case has been related to and consolidated with this one for pre-trial purposes. See Case No. 08-2052, Docket No. 83 ("Order Granting Motion to Consolidate").

2

107 ("Joinder I"). For the following reasons, the Court GRANTS the motions for partial summary judgment.

**II.   BACKGROUND**

This action stems from the allision of the cargo ship M/V COSCO BUSAN with the San Francisco-Oakland Bay Bridge on November 7, 2007.[2] First Amended Compl. ("FAC"), Docket No. 14, ¶ 22. After the allision, a number of civil actions were filed against Cota, the pilot of the vessel on November 7, 2007. Id. ¶¶ 21, 24. Because Continental issued a policy of insurance to the Bar Pilots, it initially appointed defense counsel for Cota. Id. ¶¶ 11, 28. Continental claims to have incurred at least $315,321.31 in legal fees and costs relating to Cota's defense before Regal Stone, Fleet, and the vessel assumed Cota's defense. Id. ¶¶ 26-31. Continental filed this lawsuit seeking reimbursement of those fees and costs. Continental relies primarily on California Harbors and Navigation Code section 1198, which provides that a vessel, or its owner or operator, shall either purchase trip insurance from the pilot, or defend, indemnify and hold harmless the pilot if an accident occurs due to the pilot's negligence. Cal. Harbors & Navigation Code § 1198(c).

In their Answer, Regal Stone and Fleet's Second Affirmative Defense states that "section 1198(c) is invalid as it is preempted

---

[2] The term "allision" is used in maritime cases to describe an accident involving a moving vessel and a stationary object or vessel. Hochstetler v. Bd. of Pilot Comm'rs for the Bays of San Francisco, San Pablo and Suisun, 6 Cal. App. 4th 1659, 1661 n.1 (Ct. App. 1992).

3

by federal maritime law." Docket No. 26 ("Answer") ¶ 64. In their Counterclaim, Cross-Claim and Third-Party Complaint, Regal Stone and Fleet seek a determination that federal maritime law preempts section 1198(c), and that they are not required to defend, indemnify, and hold harmless Cota or the Bar Pilots. Docket No. 27 ("Countercl.") ¶¶ 25-29.

Continental and Cota move for partial summary judgment on the question of whether section 1198 is preempted by federal maritime law. Continental's MPSJ at 1; Cota's MPSJ at 1. On September 21, 2009, the Court ordered supplemental briefing on the question of whether section 1198 applies to Regal Stone and Fleet because the time charterer hired the pilot. Docket No. 108 ("Order Requiring Supplemental Briefing"). Continental and Cota filed supplemental briefs. Docket Nos. 122 ("Continental's Supplemental Br."), 126 ("Cota's Supplemental Br."). The Bar Pilots joined in and adopted the supplemental briefs of Continental and Cota. Docket No. 127 ("Joinder II"). Regal Stone and Fleet filed an Opposition. Docket No. 130 ("Opp'n"). Continental and Cota submitted Replies. Docket Nos. 139 ("Continental's Reply"), 140 ("Cota's Reply"). On December 17, 2009, the Court found that the vessel hired the pilot, and therefore section 1198 applies to the owner and operator of the vessel, Regal Stone and Fleet. Docket No. 146 ("Order re: Applicability of Section 1198").

### III. <u>LEGAL STANDARD</u>

Partial summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to

a determination of a legal issue as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment bears the initial burden of identifying the absence of a genuine issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, then the burden shifts to the non-moving party to provide evidence and specific facts which establish the existence of a genuine issue. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. The standards and procedures for granting partial summary judgment, also known as summary adjudication, are the same as those for summary judgment. See California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). A party can move, under Rule 56, for partial summary judgment as to an affirmative defense. See United States v. Union Pac. R.R. Co., 565 F. Supp. 2d 1136, 1149 n. 20 (E.D. Cal. 2008).

**IV. DISCUSSION**

Having determined that the vessel hired Cota, the issue now before the Court is a purely legal one; namely, whether section 1198 is preempted by federal maritime law.

**A. Section 1198**

Under California law, foreign vessels in the Bay of San Francisco must use a pilot: "Every foreign vessel . . . [in] the bay[] of San Francisco . . . shall use a pilot or inland pilot holding a license issued pursuant to this division . . . ." Cal. Harbors & Navigation Code § 1127(d). Section 1198 is entitled

5

"Pilotage services; rates and charges; exclusions; insurance coverage." Section 1198(c) begins by stating that:

> Every vessel, owner, operator, or demise or bareboat charterer hiring a pilot with a state license for the Bays of San Francisco, San Pablo, and Suisun shall either defend, indemnify, and hold harmless pilots pursuant to paragraph (1), or alternatively, notify pilots of an intent to pay for trip insurance pursuant to paragraph (2). If a vessel or its owner, operator, or demise or bareboat charterer does not provide written notice pursuant to paragraph (2) of an intent to exercise the trip insurance option, then the vessel and its owner, operator, and demise or bareboat charterer will be deemed to have elected the obligation to defend, indemnify, and hold harmless pilots pursuant to paragraph (1).

Id. § 1198(c). Paragraph 1 states, in part, that:

> A vessel subject to this paragraph and its owner, operator, and demise or bareboat charterer shall defend, indemnify, and hold harmless the pilot, any organization of pilots to which the pilot belongs, and their officers and employees, with respect to liability arising from any claim, suit, or action, by whomsoever asserted, resulting in whole, or in part, from any act, omission, or negligence of the pilot, any organization of pilots to which the pilot belongs, and their officers and employees.

Id. § 1198(c)(1)(B). Paragraph 2 states, in part, that:

> In lieu of paragraph (1), a vessel subject to this subdivision and its owner, operator, demise or bareboat charterer, and agent may elect to notify the pilot, or the organization of pilots to which the pilot belongs, of intent to pay for trip insurance, as described in subdivision (b). If notice of this election is received, in writing, by the pilot, or the organization of pilots to which the pilot belongs, at least 24 hours prior to the time pilotage services are requested, the vessel, and its owner, operator, demise or bareboat charterer, and agent are not subject to the requirements of paragraph (1).

Id. § 1198(c)(2).

**B. Preemption**

The Supremacy Clause of Article VI of the Constitution provides Congress with the power to preempt state law. Preemption occurs when (A) Congress, in enacting a federal statute, expresses a clear intent to preempt state law; (B) when there is actual conflict between federal and state law; (C) where compliance with both federal and state law is physically impossible; (D) where there is implicit in federal law a barrier to state regulation; (E) where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the states to supplement federal law; or (F) where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 368-69 (1986).

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." Wyeth v. Levine, 129 S.Ct. 1187, 1194 (2009)(quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)). In "all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" Wyeth, 129 S.Ct. at 1194-95 (quoting Medtronic, 518 U.S. at 485)(ellipses in Wyeth); see also Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). Federal admiralty law preempts state law only if the state law "contravene[s] any acts

7

of Congress, . . . work[s] any prejudice to the characteristic features of the maritime law, [] or interfere[s] with its proper harmony and uniformity in its international and interstate relations." In re Exxon Valdez, 484 F.3d 1098, 1101 (9th Cir. 2007).

### C. Congress Authorized State Regulation of Pilotage

"Pilotage is the art of navigating ships into and out of ports or along rivers, bays, harbors and other special waters." Interport Pilots Agency, Inc. v. Sammis, 14 F.3d 133, 136 (2nd Cir. 1994). Historically, Congress has left the regulation of pilotage in the control of the states. In its very first session, Congress passed the Lighthouse Act of 1789, which provided that "all pilots in bays, inlets, rivers, harbors, and ports of the United States shall continue to be regulated in conformity with the existing laws of the states . . . ." Anderson v. Pac. Coast S.S. Co., 225 U.S. 187, 195 (1912)(quoting from Act of Aug. 7, 1789, ch. 9, § 4).

According to the United States Supreme Court, "[t]his was a clear and authoritative declaration by the first Congress, that the nature of this subject is such that until Congress should find it necessary to exercise its power, it should be left to the legislation of the states." Id. (citation and internal quotation marks omitted); see also Kotch v. Bd. of River Port Pilot Comm'rs, 330 U.S. 552, 559 (1947) ("The States have had full power to regulate pilotage of certain kinds of vessels since 1789 when the first Congress decided that then existing state pilot laws were satisfactory and made federal regulation unnecessary."); Soriano

8

v. U.S., 494 F.2d 681, 684 (9th Cir. 1974) (describing regulation of pilotage as "an area specifically reserved by Congress for 185 years for regulation by the states and acknowledged by the Supreme Court for more than 120 years to be a subject of peculiarly local concern.").

In 1983, Congress enacted 46 U.S.C. § 8501, which provides, in part, that "pilots in the bays, rivers, harbors, and ports of the United States shall be regulated only in conformity with the laws of the States." 46 U.S.C. § 8501(a). "Any regulation or provision violating this section is void." Id. § 8501(e). The House of Representatives Report emphasized the importance of the word "only": "Section 8501 establishes the general proposition that the states regulate pilots in the bays, rivers, harbors, and ports of the United States, unless otherwise specifically provided by law. Subsection (a) . . . uses the word 'only' for emphasis on this point." H.R. Rep. No. 98-338, at 184 (1983), reprinted in 1983 U.S.C.C.A.N. 924, 996.

Courts have interpreted this statute as an expression of Congress's intent not to limit the states' power to regulate pilotage unless otherwise provided by Congress. See Gillis v. Louisiana, 294 F.3d 755, 761 (5th Cir. 2002). Congress has preempted state regulation of pilotage only with respect to vessels on the Great Lakes, 46 U.S.C. § 9302, and American flag vessels sailing between American ports, 46 U.S.C. § 8502. Sammis, 14 F.3d at 136. Thus, the states have authority over the pilotage of all American vessels engaged in foreign trade, and all foreign

flag vessels.³  Id.  Pursuant to 46 U.S.C. § 8501, California has the authority to regulate pilotage in the Bay of San Francisco. The California legislature exercised that authority when it enacted section 1198.

**D.   Section 1198 Is Not Preempted by Federal Maritime Law**

Under federal maritime law, the owner of a vessel is not personally liable for the negligence of a compulsory pilot. Homer Ramsdell Transp. Co. v. La Compagnie Generale Transatlantique, 182 U.S. 406, 416-17 (1901); see also Davenport v. M/V New Horizon, No. 01-933, 2002 WL 32098289, at *5 (N.D. Cal. Dec. 18, 2002).  The owner of a vessel is not personally liable because the element of compulsion eliminates the respondeat superior nexus which would normally serve as a basis for imputing a pilot's negligence to the shipowner.  California v. Italian Motorship Ilice, 534 F.2d 836, 841 (9th Cir. 1976).  However, the vessel is liable for the tort of a pilot, whether or not the pilotage is compulsory.  The China, 74 U.S. 53, 61-69 (1868).

The Court finds that this limitation on a shipowner's liability does not preempt section 1198.  Generally, in an admiralty case, "[a]bsent a relevant statute, the general maritime law, as developed by the judiciary, applies."  East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864 (1986). Here, however, there is a relevant statute, which provides that pilots "shall be regulated only in conformity with the laws of the States."  46 U.S.C. § 8501(a)(emphasis added).  This Court must

---

³ There is no dispute that the M/V COSCO BUSAN is a foreign flag vessel.

10

"keep strictly within the limits imposed by Congress. Congress retains superior authority in these matters, and an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation." Miles v. Apex Marine Corp., 498 U.S. 19, 27 (1990). Since Congress requires pilotage to be regulated only in conformity with the laws of the states, this Court must not overstep that boundary.

The Court notes that there is some tension between the general maritime principle that shipowners cannot be held personally liable for the negligence of compulsory pilots, and section 1198, which requires shipowners who do not purchase trip insurance to defend, indemnify, and hold harmless compulsory pilots. This tension is mitigated somewhat by the fact that section 1198 provides shipowners with a choice: even though pilots are compulsory in the Bay of San Francisco, shipowners do not have to defend, indemnify and hold harmless pilots if they purchase trip insurance. More importantly, however, federal legislation provides that pilots shall be regulated only in conformity with the laws of the states. Therefore, this Court finds that the general maritime principle at issue here does not preempt section 1198.

The Court's decision is consistent with the Ninth Circuit's reasoning in Guangco v. Edward Shipping & Mercantile, S.A., 705 F.2d 360 (9th Cir. 1983). The Ninth Circuit took note of the general maritime principle that shipowners are not personally liable for the negligence of compulsory pilots. Id. at 362. Despite its awareness of this principle, the Ninth Circuit held

11

that "even where pilotage is compulsory . . . an exculpatory clause [requiring the shipowner to indemnify the pilot's employer] is not unconscionable. . . . The clause is fair and reasonable in the light of the customary business practices of pilotage companies in Guam and elsewhere throughout the United States." Id. at 362-63.

This Court's decision is also supported by the Ninth Circuit's reasoning in United States v. S.S. President Van Buren, 490 F.2d 504 (9th Cir. 1973). While that case concerned a noncompulsory pilot, see id. at 507, it also concerned a situation where vessels had the option of purchasing trip insurance, id. at 509. The Ninth Circuit relied in part on the availability of trip insurance in determining that tariff provisions exculpating the pilot from liability were valid and enforceable. Id. Quoting from a Supreme Court decision enforcing a contractual clause exculpating tug owners from liability, the Ninth Circuit stated "[i]t would be unconscionable for petitioner upon occurrence of a mishap to repudiate the agreement upon which it obtained the service." Id. (quoting Sun Oil Co. v. Dalzell Towing Co., 287 U.S. 291, 295 (1932)). In S.S. President Van Buren, the Ninth Circuit found the exculpatory provision valid and enforceable despite its awareness of the maritime principle that shipowners are not personally liable for the negligence of a compulsory pilot. See id. at 506.

In 1983, the District Court of Oregon rejected a challenge to Oregon's dual-rate pilotage system similar to the challenge presently before this Court. Olympia Sauna Compania Naviera, S.A.

12

v. United States, No. 80-699, slip op. (D. Or. 1983) ("Olympia Sauna").[4] In Oregon, by electing not to request trip insurance, vessels agree not to sue pilots, and they agree to defend, indemnify and hold them harmless. See Or. Rev. Stat. §§ 776.510-776.540. District Judge Leavy took note of the maritime rule that a vessel owner is not personally liable for the negligence of compulsory pilots, but went on to determine that the shipowner could not assert any liability against the pilot. Olympia Sauna at 4-6. Judge Leavy relied, in part, on the Ninth Circuit's Guangco decision. Id. at 6. These decisions support this Court's determination that the maritime rule limiting a vessel owner's personal liability does not preempt section 1198.

California is not alone in limiting the liability of licensed pilots or providing them indemnity. As noted above, Oregon has a dual-rate tariff similar to section 1198, which requires vessels without trip insurance to defend, indemnify and hold pilots harmless. See Or. Rev. Stat. §§ 776.510-776.540. Other states go further, by imposing strict limits on a pilot's liability, even though vessels are not offered trip insurance. In Washington, a pilot's liability for negligence is limited to $5000 per incident. Wash. Rev. Code §88.16.118(1)(a). The same is true in Maine. 38 Me. Rev. Stat. Ann. § 99-A. In Texas, a pilot's liability is

---

[4] Steven M. Crane, attorney for Continental, filed a Declaration in Support of Continental's MPSJ. Docket No. 92. The District of Oregon opinion is attached as Exhibit F. Regal Stone and Fleet filed an evidentiary objection to this opinion. Docket No. 96 ("Evidentiary Objections") at 3. Citation of an unpublished district court opinion is not improper, unless the opinion has been designated as "not for citation." Civ. L. R. 3-4(e). The objection is OVERRULED.

13

limited to $1000 per incident. Tex. Transp. Code Ann. § 66.083(a)(Houston Pilots), § 67.083(a)(Galveston Pilots), § 69.083(a)(Jefferson and Orange County Pilots), § 70.083(a)(Port of Corpus Christi Pilots). This Court is not aware of any decision finding that federal maritime law preempts these statutes.

It was Congress's intent to allow the states to regulate pilotage, and there is no danger that state regulation of pilotage interferes with federal maritime law's proper harmony and uniformity. See Cooley v. Bd. of Wardens, 53 U.S. 299, 320 (1851)("[T]he nature of the subject [pilotage] when examined, is such as to leave no doubt of the superior fitness and propriety, not to say the absolute necessity, of different systems of regulation, drawn from local knowledge and experience, and conformed to local wants."). Accordingly, this Court would appear to be sailing in safe waters by finding, as a matter of law, that federal maritime law does not preempt section 1198.

Finally, the Court notes that the insurance commonly carried by sea-going vessels covers accidents under pilotage. See Kane v. Hawaiian Indep. Refinery, Inc., 690 F.2d 722, 725 (9th Cir. 1982). Here, Fleet is entered with the Steamship Mutual Underwriting Association (Bermuda) Limited, for protection and indemnity risks relating to the M/V COSCO BUSAN. Rajvanshy Decl. ¶ 4.[5] Hence, even though the M/V COSCO BUSAN did not have trip insurance at the

---

[5] Kishore Rajvanshy, Managing Director for Fleet, filed a Declaration in Opposition to the Motions for Partial Summary Judgment. Docket No. 98.

14

time of the November 7, 2007 allision, the vessel still had this other form of insurance coverage. This coverage further lessens any tension between section 1198 and the maritime principle that vessel owners should not be held personally liable for the negligence of a compulsory pilot.

**E.    Section 1198 Is Not Preempted by the Oil Pollution Act**

Regal Stone and Fleet contend that section 1198 conflicts with the Oil Pollution Act ("OPA"), 33 U.S.C. § 2701 et seq. Opp'n at 21-24. While OPA imposes strict liability for pollution removal costs and damages on parties responsible for vessels that discharge oil, see id. § 2702, it also allows those parties to bring an action for contribution against other parties who are liable or potentially liable, see id. § 2709. Regal Stone and Fleet imply that section 1198 is preempted by this law to the extent that it would immunize Cota and the Bar Pilots from a contribution claim. Opp'n at 23. However, the OPA contains a savings clause, which provides that nothing in the act shall "affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under . . . State law, including common law." 33 U.S.C.A. § 2718(a). Accordingly, the OPA does not affect or modify section 1198's requirement that vessel owners and operators who fail to purchase trip insurance must defend, indemnify and hold harmless pilots. The OPA also provides that indemnification agreements are not prohibited. 33 U.S.C. § 2710. Furthermore, the OPA concerns pollution removal costs and damages, while section 1198 concerns the regulation of pilotage. The Court finds no conflict between the two such that

15

the OPA preempts section 1198.[6]

### V. CONCLUSION

For the foregoing reasons, the Court finds that section 1198 is not preempted by federal maritime law. Based on this finding, the Court grants partial summary judgment in favor of Continental Insurance Company and against Regal Stone Limited and Fleet Management Limited on the Second Affirmative Defense in the Answer filed by Regal Stone Limited and Fleet Management Limited. The Court also grants partial summary judgment in favor of Continental Insurance Company, John Joseph Cota, the San Francisco Bar Pilots, and the San Francisco Bar Pilots Benevolent and Protective Association, and against Regal Stone Limited and Fleet Management Limited, on the first claim for relief in the Counterclaim, Cross-Claim and Third-Party Complaint filed by Regal Stone Limited and Fleet Management Limited.

IT IS SO ORDERED.

Dated: January 27, 2010

_____
UNITED STATES DISTRICT JUDGE

---

[6] In the section of their Opposition discussing the OPA, Regal Stone and Fleet also suggest that the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, might preempt section 1198. Opp'n at 23. Plaintiffs have not met their burden of showing how CERCLA preempts section 1198. The Court notes that CERCLA focuses on hazardous waste disposal and the costs of cleanup, and, like OPA, CERCLA consists of a number of savings clauses. See, e.g., Fireman's Fund Ins. Co. v. City of Lodi, California, 302 F.3d 928, 941 (9th Cir. 2002).

16