William M. Audet (waudet@audetlaw.com)
Michael McShane (mmcshane@audetlaw.com)
Adel A. Nadji (anadji@audetlaw.com)
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.982.1776
Facsimile: 415.568.2556

*Attorneys for Plaintiffs and
the Class Members*

# UNITED STATES DISTRICT COURT FOR

# THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Allen Loretz, individually and on behalf of all others similarly situated, | Case No. C 07-5800 SC<br>And related cases: |
| v. | 07-6045 SC, 08-2268 SC, 08-2052 SC, 08-5098 SC, 09-01469 SC |
| Regal Stone, Ltd., Hanjin Shipping, Co., Ltd., Synergy Maritime, Ltd., Fleet Management Ltd., and John Cota, *In Personam*; M/V Cosco Busan, their engines, tackle, equipment, appurtenances, freights, and cargo *In Rem*, | **NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO THE NAMED PLAINTIFFS** |

# TABLE OF CONTENTS

I.     INTRODUCTION......................................................................................1

II.    BACKGROUND .......................................................................................3

    A.     Key Background Information...........................................................3

    B.     Work Conducted By Class Counsel On Behalf Of Class ................4

    C.     Additional Benefits Achieved For Class Members ..........................7

III.   A SERVICE AWARD TO THE NAMED PLAINTIFFS IS APPROPRIATE ........8

IV.    CLASS COUNSELS' REQUEST FOR AN AWARD OF ATTORNEYS' FEES
    AND COSTS IS WELL SUPPORTED.................................................11

    A.     Legal Standard ..............................................................................11

    B.     Class Counsels' Fee Request Is Appropriate Under The Lodestar
    Method ...........................................................................................14

        1.     Class Counsel's Hourly Rates Are Reasonable ...................15

        2.     The Number of Hours Class Counsel Worked is Reasonable .........16

    C.     A Modest Multiplier is Warranted.................................................17

        1.     The Results Achieved...........................................................18

        2.     The Contingent Nature of This Case....................................20

        3.     The Novelty and Difficulty of the Questions Involved.......21

        4.     Whether the Fee is Contingent ............................................21

        5.     The Experience, Reputation and Ability of the Attorneys...............22

    D.     Class Counsels' Request For Reimbursement Of Costs And Expert Fees
    Are Reasonable And Encouraged Under California Law............................22

V.     CONCLUSION .......................................................................................23

# TABLES OF AUTHORITIES

**Cases**

*Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975) ................................13

*Arenson v. Board of Trade of City of Chicago*, 372 F. Supp. 1349 (N.D. Ill. 1974).................20

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)............................................................21

*Bernardi v. County of Monterey*, 167 Cal. App. 4th 1379 (2008) ..............................................15

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................................16

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985 ....................................................10

*Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345 455 P.2d 31 (1969)................................16, 20

*Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973 (9th Cir. 2008) .......................................16

*Campbell v. Nat'l Passenger R.R. Corp.*, No. 05-05434, 2010 WL 625362 (N.D. Cal. Feb. 18, 2010) ..............................................................................................................................22

*Carroll v. Blue Cross & Blue Shield of Mass.*, 157 F.R.D. 142 (D. Mass. 1994) .....................10

*Dunk v. Ford Motor Co*., 48 Cal. App. 4th 1794 (1996) ............................................................12

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997 (9th Cir. 2002)...........................12

*Fischer v. SJB-P.D. Inc*., 214 F.3d 1115 (9th Cir. 2000) ...........................................................17

*Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434 (D. Md. 1998) ...................................19

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (Cal. 2004) ..........................................14, 15

*Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992)...........................................................................22

*Hanlon v. Chrysler Group*, 150 F.3d 1011 (9th Cir. 1998) ...........................................12, 13, 16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..........................................................................15, 17

*Hughes v. Microsoft Corp.*, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. 2001) .......................10

*I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co.*, 1990 U.S. Dist. LEXIS 13752 (S.D.N.Y. 1990)...................................................................................................................21

*In re Convergent Tech. Sec. Litig.*, 721 F. Supp. 1133 (N.D. Cal. 1988)..................................21

*In re Immune Response Sec. Litig*., 497 F. Supp. 2d 1166 (S.D. Cal. 2007).............................23

*In re Media Vision Tech. Sec. Litig*., 913 F. Supp. 1362 (N.D. Cal. 1996) ...............................23

*In re Mego Fin. Corp. Securities Litig*., 213 F.3d 454 (9th Cir. 2000) ......................................10

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998).................19

**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS TO THE NAMED PLAINTIFFS**

*In re Rite Aid Corp. Secs. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001)......................................19

*In re RJR Nabisco Sec. Litig.*, 1992 U.S. Dist. LEXIS 12702, (S.D.N.Y. Aug. 24, 1992) ........19

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) ..........................................19

*In re WPPSS Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994)................................................................19

*Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222 (S.D.N.Y. 1990) .....................................21

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975)....................................12, 16, 22

*Ketchum v. Moses*, 24 Cal. 4th 1122 (Cal. 2001) .......................................................................12

*Krinsk v. Fund Asset Mgmt., Inc.*, 715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 404
     (2d Cir. 1989)........................................................................................................................21

*Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987)......................................................................21

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19 (2000) .........................12, 14, 15, 20

*McElwaine v. US West, Inc.*, 176 F.3d 1167 (9th Cir. 1999).......................................................12

*Merola v. Atlantic Richfield Co.*, 515 F.2d 165 (3d Cir. 1975) ..................................................20

*PLCM Group v. Drexler*, 22 Cal. 4th 1084 (2000).....................................................................12

*Prison Legal News*, 2010 U.S. App. LEXIS 11690 (9th Cir. June 9, 2010)................................14

*Rabin v. Concord Assets Group*, 1991 U.S. Dist. Lexis 18273 (S.D.N.Y. Dec. 19, 1991) ........19

*Radol v. Thomas*, 772 F.2d 244 (6th Cir. 1985) .........................................................................21

*Razilov v. Nationwide Mutual Ins. Co.*, No. 01-CV-1466-BR., 2006 WL 3312024 (D. Or.
     Nov. 13, 2006) .......................................................................................................................10

*Robbins v. Kroger Props.*, 116 F.3d 1441 (11th Cir. 1997) ......................................................21

*Rosenblatt v. Getty Oil Co.*, 1983 Del. Ch. Lexis 570 (Del. 1983) ...........................................21

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ...................................................................11, 12, 14

*Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 124 P.3d 530 (Nev. 2005)..........11, 12

*Spielman v. General Host Corp.*, 402 F. Supp. 190 (S.D.N.Y. 1975), *aff'd*, 538 F.2d 39 (2d
     Cir. 1976)...............................................................................................................................21

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................................passim

*Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819 (2001) .......................................................20

*Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299 (W.D. Wash. 2001) ..................................19

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)................................................11, 12

iii

*Wershba v. Apple Computer, Inc*., 91 Cal. App. 4th 224 (2001) .................................................. 12

**Treatises**

MANUAL FOR COMPLEX LITIGATION (2004)
   § 21.62 ........................................................................................................................ 10

**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS TO THE NAMED PLAINTIFFS**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on September 3, 2010, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Samuel Conti of the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Alan Loretz, with the support of the plaintiffs in the related class action filed in state court, *Tarantino, et al. v. Hanjin Shipping Co., Ltd.*, San Francisco County Superior Court Case No. CGC-07-469379 ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned counsel, will and hereby do request that this Court award reasonable attorneys' fees, costs, and service awards to the Named Plaintiffs for their service in the prosecution of this matter.

This motion is based upon Plaintiffs' memorandum of law in support thereof; the executed Settlement Agreement preliminarily approved by the Court on April 21, 2010; the Order Granting Preliminary Approval of Settlement and Provisional Class Certification (ECF No. 207); and the Declarations of William M. Audet, Frank Pitre, and Rachel Christman, filed herewith in support of this Motion; and all other papers filed in this action.

## I.   **INTRODUCTION**

Class Counsel in the instant action, *Allen Loretz v. Regal Stone, Ltd, et al.* ("*Loretz*") and in the related class action filed in state court, *Tarantino, et al. v. Hanjin Shipping Co., Ltd.*, San Francisco County Superior Court Case No. CGC-07-469379 ("*Tarantino*") (hereinafter "Class Counsel")[1] submit this motion for an award of attorneys' fees and costs totaling $1,986,436.93 and $70,055.94 in costs, as well as service awards to the class representatives totaling $37,500 ($7,500 to each of the five (5) Named Plaintiffs[2]), for the

---

[1] Counsel for Plaintiffs in *Loretz* ("*Loretz* Counsel") and counsel for Plaintiffs in *Tarantino* ("*Tarantino* Counsel") are referred to collectively as "Class Counsel". Plaintiffs in *Loretz* and Plaintiffs in *Tarantino* are collectively referred to as "Named Plaintiffs." Unless otherwise specifically defined herein, all defined terms used herein are given the meanings described in the Settlement Agreement.

[2] Allen Loretz, John Tarantino, Steven Fitz, Sean Hodges, and John Atkinson. Hereinafter, as "Named Plaintiffs."

1    services they have rendered to the Class throughout the litigation resulting in a valuable

2    settlement.

3        Class Counsel have devoted intensive efforts and spent considerable time in

4    investigating and prosecuting this litigation.  The hours spent by Class Counsel in the

5    investigation and prosecution of the action were necessary and appropriate.  *Loretz* Counsel

6    and paralegals expended 1955.65 hours in the prosecution and settlement of the Actions and

7    $40,911.39 in costs.  The hours spent to date multiplied by reasonable hourly rates, results in

8    a total lodestar of $890,185.45.  (Audet Decl., ¶ 34-36.)  Consideration of the appropriate

9    factors, as well-established in class fee jurisprudence, shows that an enhancement of the

10   lodestar is warranted.  In addition to their costs, *Loretz* Counsel requests up to a 1.5

11   multiplier in the amount of $1,335,278.18, which will be paid, subject to the Court's

12   approval, by Defendants in addition to (and not out of) the relief made available to the Class.

13       *Tarantino* Counsel and paralegals expended 1268.80 hours in the prosecution and

14   settlement of the Actions as well as $29,144.55 in costs.  The hours spent to date multiplied

15   by reasonable hourly rates, results in a total of $434,392.50.  (Pitre Decl., ¶¶ 24-25.)  In

16   additional to their costs, *Tarantino* Counsel requests up to a 1.5 multiplier in the amount of

17   $651,588.75, which will be paid also, subject to the Court's approval, by Defendants in

18   addition to (and not out of) the relief made available to the Class.

19       As discussed below, Class Counsels' request for attorneys' fees and costs is squarely

20   supported by the lodestar method of calculating attorneys' fees recognized under Ninth Circuit

21   and California law. Class Counsels' fee request is eminently reasonable in light of the

22   outstanding result Class Counsel achieved for the Class, which provides all affected Class

23   members with substantial benefits.  Dungeness Crab Skippers would be reimbursed for their

24   Dungeness Crab Closure Losses, as well as a 25% premium, along with reimbursement of any

25   attorneys' fees or clean-up payment reduction that had previously been deducted from their

26   Dungeness Crab Closure Claim Payments. (*See* Dungeness Crab Settlement Agreement,

27   submitted previously with Plaintiffs' motion for preliminary approval; Ex. A, p.17.)  Dungeness

28   Crab Crewmembers would be reimbursed a payment of $500 plus a payment of $250 for each

**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF CLASS COUNSELS' MOTION FOR AWARD OF
ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO THE NAMED PLAINTIFFS**

1  additional qualifying season (not to exceed a total of $1250).  (*Id*. at p. 18.)  These benefits could

2  equal thousands of dollars for Dungeness Crab skippers and crewmembers (hereinafter,

3  "Dungeness Crab Settlement Class Members" or "Class Members").

4      The Settlement claims process also will provide an appeals process for those Class

5  Members who feel they have wrongfully been denied relief. (*Id.,* p. 20.)  Finally, the

6  Settlement requires the Claims Administrator to provide a report, including number of claims,

7  resolution, and evidence supporting resolution. (*Id.*)  Because of the reporting requirement,

8  Class Members receive a substantial benefit in that the claims process will be monitored by

9  Class Counsel and enforced if necessary.

10      Class Counsels' request for a service award to the Named Plaintiffs for their service to

11  the Class is also supported by Ninth Circuit and California law and the facts of this case.

12  **II.   BACKGROUND**

13      **A.   Key Background Information**

14      On April 21, 2010, the Court issued findings and an Order granting preliminary

15  approval of parties' settlement and provisional class certification.  Preliminary Approval Order

16  (ECF No. 207).  In that Order, the Court: (1) granted preliminary approval of settlement; (2)

17  granted provisional class certification and designation of Allen Loretz, John Tarantino, Steven

18  Fitz, Sean Hodges, and John Atkinson as class representatives; (3) approved class

19  representatives' Federal and related State Class Counsel as "Class Counsel;" (4) approved the

20  notice of settlement and claim form; and (5) set a final settlement approval hearing and related

21  filing deadlines.  (*See generally* Order Granting Preliminary Approval of Settlement and

22  Provisional Class Certification.)

23      As discussed in Plaintiffs' memorandum of points and authorities in support of final

24  approval of the settlement, which is incorporated by reference herein and filed concurrently

25  herewith, the settlement resolves the commercial Dungeness crab claims of Class Members on

26  terms that provide very substantial benefit to the Class.  The settlement resolves a substantial

27  portion of the nearly two and half years of litigation conducted by Class Counsel on behalf of

28  commercial fishermen injured by the CBOS.  Though Class Counsel originally separately filed,

3

on behalf of their respective clients, the instant action in this Court (the "Federal Court Action") and an action in San Francisco Superior Court (the "State Court Action"), soon after filing Class Counsel coordinated their actions with one another to avoid duplication of efforts and achieve the best possible results for Class Members and Plaintiffs. This has included not only achieving a settlement for Class Members that provides each person a final settlement payment of potentially several thousands of dollars, but also ensuring that the claims process through which Class Members' short-term losses were compensated was conducted in a fair, transparent, and non-discriminatory way.

**B.** <u>**Work Conducted By Class Counsel On Behalf Of Class**</u>

In achieving these results, Plaintiffs and their counsel faced considerable risk in a case that involved hotly contested allegations and complex issues of law and fact, including on complicated issues of science. Class Counsel utilized their expertise in this specialized area of law to efficiently handle this case, prompting Defendants to engage in alternative dispute resolution efforts early and often during the course of this case. The Named Plaintiffs agreed to serve as representatives of the Plaintiff Class and participated fully and actively in the investigation and pursuit of the claims in this case, producing records when necessary, answering multiple requests for information, and consulting with Class Counsel on questions of strategy. Each cooperated fully with Class Counsel. Through their efforts, they provided Class Counsel access to the underlying facts, which in turn led to a favorable outcome for the entire Class. (Declaration of Frank M. Pitre Decl. ("Pitre Decl."), ¶ 28.)

The parties' Settlement Agreement authorizes Class Counsel to petition the Court for attorneys' fees and reimbursement of costs. (Settlement Agreement, p. 25.) The Settlement Agreement also authorizes Class Counsel to petition the Court for a class representative service award for Named Plaintiffs in the amount of $7,500 for their work on behalf of the Dungeness Crab Settlement Class. (*Id*. at p. 26.) As stated in Plaintiffs' memorandum of points and authorities supporting final approval of the settlement, which is incorporated here by reference, Plaintiffs respectfully submit that the requested amounts are reasonable in light of the overall settlement, benefits brought to Class Members, and the work performed by Class Counsel to

4

achieve them. (*See generally* Pls.' Mot. and Mem. of Points and Authorities in Support of Final Approval of Class Action Settlement (filed concurrently with this Motion).)  That work included:

1.      Drafting the original complaints and amended complaints following a diligent investigation into the facts surrounding the CBOS and its impact on the marine environment and the commercial fishermen that depend thereon, as well as extensive research into the specialized area of law that governs oil spill liability under federal and California State law (Audet Decl., ¶ 32; Pitre Decl., ¶¶ 4-6).  Plaintiffs in the Federal Court Action briefed and won a Motion for Leave to Amend Complaint to add, *inter alia*, adding three California causes of action, including Strict Liability under Lempert-Keene-Seastrand Act, negligence per se, and public nuisance (07/22/08 Order (ECF No. 116));

2.      Successfully filing, on November 19, 2007, an application in the Federal Action to have the *M/V Cosco Busan* arrested.  The following day, the Court issued an order granting Plaintiffs' application, and a warrant was issued and the Ship arrested, thereby avoiding the very great and real danger of the *M/V Cosco Busan* evading *in rem* jurisdiction (11/20/07 Order (ECF No. 19)).  Following the issuance of a Letter of Undertaking by Defendants Regal/Fleet in the amount of $20,000,000 as security, the Ship was allowed to leave U.S. waters on or about December 20, 2007;

3.      Perfecting service on the non-*in rem* foreign Defendants through a cost efficient and creative use of domestic agents (Hanjin) and international mail service to Hong Kong (Fleet Management and Regal Stone);

4.      Conducting substantial discovery and investigation both formally and informally, including: propounding upon Defendants multiple sets of interrogatories, requests for admission, and requests for production of documents, and reviewing the results thereof; requesting, through informal channels, and a formal Freedom of Information Act request, information and documents from federal and State authorities;  participated in the depositions of M/V Cosco Busan crewmembers (1) Zhao, (2) Hu (Chief Officer), (3) Zheng, (4) Wang (Third Mate), and (5) Sun (Master) and reviewed the extensive exhibits produced in association

5

therewith; coordination and information sharing with governmental litigants; and extensive review of scientific and fish stock research materials. (Audet Decl., ¶ 32; Pitre Decl., ¶¶ 11,12);

5. Coordinating the gathering of information, data, and documents from Class Members and Plaintiffs. (Audet Decl., ¶ 32; Pitre Decl., ¶¶ 11-13). Surveyed, interviewed, and responded to numerous inquiries from and communicated status updates to Class Members and Plaintiffs (Audet Decl., ¶ 32; Pitre Decl., ¶ 13);

6. Retaining and consulting with experts on highly technical issues including but not limited to the envirotoxicological impact of the CBOS on Dungeness crab stocks and the long-term economic impact of the CBOS on the fishery (Audet Decl., ¶ 32; Pitre Decl., ¶¶ 10,12);

7. Ensuring that the short-term claims process established by Defendants Regal/Fleet under the Oil Pollution Act of 1990 ("OPA") and Lempert-Keene-Seastrand Act ("Claims Process") was conducted in a fair, transparent and non-discriminatory manner. (Audet Decl., ¶ 32; Pitre Decl., ¶ 28). Following the commencement of the Federal and State Actions, Defendants Regal/Fleet began contacting putative class members in an effort to persuade them to participate in the Claims Process and abandon the class actions. (Audet Decl., ¶ 32; Pitre Decl., ¶ 30). All communications to putative class members were *ex parte* and included a demand that class members waive their rights under the class action in favor of the Claims Process. After learning of Defendants Regal/Fleet's improper efforts to subvert the class action process, Plaintiffs filed a Motion for Order to Show Cause Why a Protective Order to Supervise or Otherwise Limit Communication with Putative Class Members Should Not Issue to limit such communications. *Id.* On February 22, 2008, the Court granted Plaintiffs' motion and enjoined Defendants Regal/Fleet from further attempts at limiting putative class members' rights in return for participation under the Claims Process. (Audet Decl., ¶ 32; Pitre Decl., ¶ 31). The Court further ruled that the Claims Process is "separate and independent from Plaintiffs' state law claims" and forbade the Defendants Fleet/Regal from requiring putative class members sign any kind of release as a condition of participating in the Claims Process. (2/22/08 Order (ECF No. 79) and 4/25/08 Order (ECF No. 86)).

8.      Following issuance of the aforementioned Order, negotiating on behalf of Lead Plaintiffs short-term claims through the Claims Process.  Class Counsel won a total of $510,749.49 for John Tarantino, Steven Fitz, Sean Hodges, and John Atkinson through this process.  (Pitre Decl., ¶ 32).

9.      Engaging in several rounds of settlement negotiations spanning nearly two years from July 10, 2008 through March 17, 2010.  (Audet Decl., ¶ 32; Pitre Decl., ¶ 14).  During this process counsel for the parties engaged in a contentious arms-length negotiation process with the highly-regarded mediator, Roger Hawkings, Esq.  *Id*.  In addition to the in-person meetings that occurred in July and December of 2008, and January and February of 2009, arms'-length in-person settlement negotiations continued with telephonic meetings of counsel from then until March 17, 2010.  *Id*. Throughout, the parties engaged in extensive exchange and review of information and claims data concerning members of the Plaintiff Class, and Class Counsel contacted and interviewed Class Members to gauge their reactions to the proposed settlement and gather information necessary to achieve the results accomplished.  *Id*.

### C.      Additional Benefits Achieved For Class Members

Class Counsel achieved substantial benefits for Class Members and putative Class Members that ultimately settled their claims individually with Defendants that defy precise quantification.  However, based on information provided by Plaintiffs and Defendants the following estimations can be made.

Class Counsel's efforts resulted in ***savings of multiple millions of dollars in attorneys' fees*** to putative Class Members that settled their claims against Defendants individually with the assistance on non-class counsel ("Individually Represented Persons").  This general calculation is based on information provided by class members as well as Class Counsel's own investigation and other information.

Additionally, according to information provided to Class Counsel by Lead Plaintiffs, attorneys representing Individually Represented Persons were originally demanding a 33% contingency fee from each person they agreed to represent individually; as a result of Class Counsel's decision to demand only a 24% contingency fee from Lead Plaintiffs in the event

that their claims were resolved individually and to pursue payment of attorneys fees by Defendants separate and apart from any compensation achieved for Class Members, counsel representing Individually Represented Persons *were forced to first drop their contingency fees to a 24%* and then seek as part of the final resolution of their clients' claims full reimbursement of the attorneys' fees paid thereby.

The Individually Represented Persons would not, first, have agreed to retain this counsel if the contingency fee charged was higher than that demanded by Class Counsel, and, second, would not have agreed to settle their claims individually if their attorneys' fees were not reimbursed by Defendants as Class Counsel was pursuing through the class action. Therefore, Class Counsel's actions achieved for Individually Represented Persons a savings of approximately 33% of the total compensation they received.

These figures do not include an attempt to quantify the value of the benefits brought to Class Members, putative and actual, through other actions taken by Class Counsel, including but not limited to:  arresting the Ship and so ensuring that *in rem* jurisdiction would attach and any judgment would be paid and ensuring that the Claims Process was conducted fairly and transparently and without prejudice to persons rights to exercise their full rights in pursuit of their claims for long-term impacts from the CBOS.

Importantly, Defendants' payment of fees and incurred expenses (including costs associated with claims administration and the proposed class representative service awards) is separate and apart from the class settlement, and will in no way diminish any benefit provided to any Plaintiff Class Member under the terms of the Settlement Agreement. The Plaintiff Class fully supports Class Counsel's attorneys' fees and expenses as well as the proposed service awards to the Named Plaintiffs.  In fact, to date, no Plaintiff Class Member has voiced any opposition to these awards. (*See* Christman Decl., ¶ 11.)

## III.   A SERVICE AWARD TO THE NAMED PLAINTIFFS IS APPROPRIATE

Plaintiffs request a combined service award of $37,500, consisting of $7,500 payments to each of the five (5) Named Plaintiffs in the Federal and State Class Actions. These stipends, which are provided for in the Settlement Agreement, do not affect or reduce the benefits to the

1   Class in any way, and are paid in addition to the other relief the class representatives may

2   receive under the settlement.

3          Courts within the Ninth Circuit, including this Court, have routinely approved the award

4   of service payments to class representatives for their assistance to a plaintiff class.  *See e.g.*

5   *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, * 21 (N.D. Cal. 2009) ("The

6   requested incentive payment of $ 5,000 each . . . is reasonable") (Conti); *Chun-Hoon v. McKee*

7   *Foods Corp.***,** 2010 U.S. Dist. LEXIS 62703, *16 (N.D. Cal. 2010) (Walker) ("amount of each

8   plaintiff's incentive award**,** $ 5,000, appears reasonable"); *Garner v. State Farm Mut. Auto. Ins.*

9   *Co.*, 2010 U.S. Dist. LEXIS 49491, * 16 (N.D. Cal. 2010 (Wilken)**.**  Service or incentive

10  payments recognize the Named plaintiffs' time and efforts, and the risks they undertake on

11  behalf of a class. In addition to compensating class representatives for their time, effort, and

12  inconvenience, service awards advance public policy by encouraging individuals to come

13  forward and take action to protect the rights of the class

14         In approving a settlement, the Court must determine whether every aspect of the

15  settlement is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d

16  938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. Proc. 23(e)). In *Staton*, the Ninth Circuit

17  recognized that "named plaintiffs, are eligible for reasonable incentive payments." *Staton*, 327

18  F.3d at 977.  Under *Staton*, such awards should be evaluated using "'relevant factors includ[ing]

19  the actions the plaintiff has taken to protect the interests of the class, the degree to which the

20  class has benefited from those actions, . . . the amount of time and effort the plaintiff expended

21  in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327

22  F.3d at 977 (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)) (ellipses in original).

23         Each of the Named Plaintiffs participated actively in the litigation. (See Declarations of

24  Allen Loretz, John Tarantino, Steven Fitz, Sean Hodges, and John Atkinson, filed herewith.)

25  Such incentive payments are therefore appropriate here. *Staton*, 327 F.3d at 977; *In re Mego*

26  *Fin. Corp. Securities Litig*., 213 F.3d 454, 463 (9th Cir. 2000).  Indeed, the $7,500 payments

27  requested here are at the modest end of the spectrum.  See *Hughes v. Microsoft Corp.*, 2001 U.S.

28  Dist. LEXIS 5976, *36-38 (W.D. Wash. 2001) (approving incentive awards of $7,500, $25,000,

and $40,000); *Carroll v. Blue Cross & Blue Shield of Mass.*, 157 F.R.D. 142, 143 (D. Mass. 1994), aff'd 34 F.3d 1065 (1st Cir. 1994) ("the class representatives shall receive payments of $7,500 each as compensation for services rendered to the class in initiating and prosecuting this action"); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) (stating "the propriety of allowing modest compensation to class representatives seems obvious," and awarding $20,000 to two named class representatives). *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving service awards of $5,000 from a total settlement of $1,725,000); *Razilov v. Nationwide Mutual Ins. Co.*, No. 01-CV-1466-BR., 2006 U.S. Dist. LEXIS 82723, **3-4 (D. Or. Nov. 13, 2006).

In this case, the requested service payments reflect the efforts by each of the Named Plaintiffs in gathering and communicating information to counsel and acting as the public faces of this litigation.  Unlike unnamed class members, who are passive beneficiaries of the representatives' efforts on their behalf, named class representatives agree to participate in discovery, trial, and all the other obligations of named parties.  Small enhancement payments, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. MANUAL FOR COMPLEX LITIGATION at § 21.62 fn. 971 (2004) (enhancement payments may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery").

Here, the efforts of the Named Plaintiffs on behalf of the class underscore the propriety of the requested incentive awards. Throughout the litigation, Plaintiffs performed the following tasks, among others: (1) assisted counsel with the preparation of the complaints and amended complaints; (2) supplied documentation and informal discovery responses; (3) stayed abreast of the settlement negotiations; (4) prepared and submitted declarations to the Court; (5) helped Class Counsel analyze their claims and the evidence; and (6) communicated with Class Counsel and monitored the status of the case. (*See* Declarations of Allen Loretz, John Tarantino, Steven Fitz, Sean Hodges, and John Atkinson, filed herewith.)  In addition, the Named class representatives took substantial to assist Class Counsel to ensure that class members were able

1   to participate in the claims process and that the claims process was conducted in a manner

2   which was transparent, fair, and did not prejudice the rights of Class Members or the policies

3   furthered by the class action process. (Pitre Decl., ¶ 28).  The efforts of each Plaintiff were

4   instrumental in achieving the Settlement on behalf of the class.

5       After the Court granted preliminary approval of the Settlement and the service payment

6   request, the Class Notice informed Class Members that Plaintiffs will be requesting an incentive

7   payment.  At the time of filing this motion, no Class Member(s) had filed an objection to the

8   requested service payments.  In addition, Defendants agreed that the $ 7,500 service award was

9   proper in the parties Settlement Agreement. (Settlement Agreement, p. 26).  The lack of

10  objections by class members and Defendants favors approval of the incentive payments.

11  **IV.    CLASS COUNSELS' REQUEST FOR AN AWARD OF ATTORNEYS' FEES
12          AND COSTS IS WELL SUPPORTED**

13      **A.    Legal Standard**

14      Plaintiffs asserted claims under California law, and California also governs the award of

15  attorneys' fees here. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

16  California recognizes the common fund doctrine for the award of attorneys' fees to a prevailing

17  plaintiff whose efforts result in creation of a fund benefiting others. *Serrano v. Priest*, 20 Cal. 3d

18  25, 38 (1977); *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 864-65, 124 P.3d 530,

19  548-49 (Nev. 2005). Under both California and Ninth Circuit precedent, a court may exercise its

20  discretion to award attorneys' fees by applying either the lodestar/multiplier method or the

21  percentage-of-the-fund method. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 253

22  (2001); *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Fischel v. Equitable

23  Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (citing *Vizcaino*, 290 F.3d at

24  1047); *Shuette*, 121 Nev. at 864-65; 124 P.3d at 548-49.

25      Counsel who represent a class and produce a benefit for the class members are entitled to

26  be compensated for their services. Indeed, as the California Supreme Court has explained, in a

27  purely contingent case like this, a fee based upon lodestar and enhanced by a multiplier

28  "constitutes earned compensation; unlike a windfall, it is neither unexpected nor fortuitous.

11

1   Rather, it is intended to approximate market-level compensation for such services, which

2   includes a premium for the risk of nonpayment or delay in payment of attorney fees." *Ketchum*

3   *v. Moses*, 24 Cal. 4th 1122, 1138 (Cal. 2001). As such, "a contingent fee must be higher than a

4   fee for the same legal services paid as they are performed." *Id*. at 1132.

5         California courts approve the use of a lodestar enhanced by a multiplier in calculating

6   and awarding attorneys' fees and costs. *See, e.g. Dunk v. Ford Motor Co*., 48 Cal. App. 4th

7   1794, 1810 (1996); *Lealao v. Beneficial California, Inc*., 82 Cal. App. 4th 19, 45 (2000);

8   *Shuette*, 121 Nev. at 864-65; 124 P.3d at 548-49.  Lodestar is derived by multiplying the number

9   of hours reasonably expended by counsel by a reasonable hourly rate. *McElwaine v. US West,*

10  *Inc*., 176 F.3d 1167, 1173 (9th Cir. 1999); *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095

11  (2000); *Shuette*, 121 Nev. at 864-65, 124 P.3d at 548-49.  After examining the time and labor

12  required of the attorneys, the lodestar may then be enhanced using a multiplier after considering

13  relevant factors, including the following: (1) the results obtained on behalf of the class by

14  plaintiff's counsel; (2) the contingent nature of the case; (3) the novelty and difficulty of the

15  questions involved; (4) the skill and quality of representation; and (5) the extent to which the

16  litigation precluded other employment by the attorneys. See, e.g., *Serrano*, 20 Cal. 3d at 48;

17  *Lealao*, 82 Cal. App. 4th at 26; see also *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th

18  Cir. 1975); *Vizcaino*, 290 F.3d at 1050–51; *Shuette*, 121 Nev. at 865, n.100, 124 P.3d at 548,

19  n.100 (citing *Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969)).

20        Whereas here, the Settlement has a claims-made structure, and with no upper cap on

21  certain forms of relief, the Settlement cannot be characterized as a true "fund" for the purpose of

22  a percentage-of-the-fund fee analysis.  In the absence of such a true common fund, the requested

23  attorneys' fees lend themselves more readily to a lodestar/multiplier analysis.  Further, because

24  the attorneys' fees will be assessed against Defendants without reducing the relief available to

25  consumers, the lodestar method is more appropriate. See *Hanlon*, 150 F. 3d at 1029 (noting that

26  lodestar method is used more often in cases where "there is no way to gauge the net value of the

27  settlement or any percentage thereof.")

28

**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF CLASS COUNSELS' MOTION FOR AWARD OF
ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO THE NAMED PLAINTIFFS**

1    Regardless of whether a court applies the lodestar or the percentage method, the

2    fundamental requirement is that the resulting fee is fair and reasonable. *Staton*, 327 F.3d at 963-

3    964.  As demonstrated below, Class Counsels' request for attorneys' fees and costs is fair and

4    reasonable.

5    <u>Attorney's Fees Are Also Authorized Under The Lempert-Keene-Seastrand Oil Spill Prevention
     and Response Act ("Lempert-Keene")</u>

6

7    Class suits brought under a statute authorizing attorney fees payable by the non-

8    prevailing parties will entitle counsel to compensation.  *See e.g. Alyeska Pipeline Service Co. v.*

9    *Wilderness Society*, 421 U.S. 240, 261-262 (1975). The California State Legislature has enacted

10   a strict regulatory scheme designed to prevent and remedy oil spills.  The Lempert-Keene-

11   Seastrand Oil Spill Prevention and Response Act ("Lempert-Keene"), California Gov't  Code §

12   8670 *et seq*., was  passed in the wake of the  February 7, 1990 *American Trader* oil spill off the

13   coast of Huntington Beach, California.  See Sugg, *Blame It on the Rain? El Nino is no Excuse to*

14   *Pollute*, 21 Whittier L. Rev. 737, 743 (2000).  Lempert-Keene sets forth a series of remedies not

15   available under the common law, including "***reasonable costs of the suit, attorneys' fees, and***

16   ***the costs of necessary expert witnesses to any prevailing plaintiff***."  (Cal. Gov't Code §

17   8670.56.5 (f)).  The purpose behind these provisions is clear: create powerful incentives for

18   plaintiffs and their attorneys to aggressively pursue litigation to remedy harms caused by

19   environmental disasters that harm Californians and their waters.  In light of these statutory

20   concerns, Class Counsel's request for attorneys' fees and costs are not only appropriate but

21   necessary to effectuate California law.

22   <u>Additionally, Attorney's Fees Are Available By The Benefit Provided To The Class</u>

23   Class Counsels' request for fees is legally justified under California's[3] "catalyst

24   theory."[4]  "The catalyst theory is an application of the . . . principle that courts look to the

---

25   [3] "When California law governs the claim, it also governs the award of fees."  *Nat'l Fed'n of the*
26   *Blind v. Target Corp.*, No. C06-01802 MHP, 2009 WL 2390261, at *2 (N.D. Cal. Aug. 3, 2009)
     (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)).

27   [4]  Class Counsel is entitled to attorneys' fees under the Ninth Circuit's application of the "catalyst
28   theory" as well.  *See Prison Legal News*, 2010 U.S. App. LEXIS 11690 (9th Cir. June 9, 2010)
     (plaintiff "statutorily eligible to recover attorneys' fees for monitoring the state officials' post-

1  practical impact of the public interest litigation in order to determine whether the party was

2  successful, and therefore potentially eligible for attorney fees." *Graham v. DaimlerChrylser*

3  *Corp.* (2004) 34 Cal. 4th 553, 565-66.

> A plaintiff is considered the prevailing party if his [or her] lawsuit motivated
> defendants to provide the primary relief sought or activated them to modify their
> behavior, or if the litigation substantially contributed to or was demonstrably
> influential in setting in motion the process which eventually achieved the desired
> result.

7  *See Bernardi v. County of Monterey*, 167 Cal. App. 4th 1379, 1393 (2008) (internal quotation

8  omitted).  It would be incoherent to apply the catalyst theory in the context of determining

9  whether a plaintiff is a prevailing party and thus entitled to attorneys' fees, but not apply the

10  theory in the context of determining the extent of the benefit achieved on behalf of the class:

11  both inquires examine the results achieved by the attorney.

12      Regardless of which method the Court applies, the fundamental requirement is that the

13  resulting fee is fair and reasonable. *Staton*, 327 F.3d at 963-964.  As demonstrated below, Class

14  Counsels' request for attorneys' fees and costs is fair and reasonable.

15  **B.  <u>Class Counsels' Fee Request Is Appropriate Under The Lodestar Method</u>**

16      The lodestar method provides courts an objective basis upon which to determine the

17  value of the services provided by counsel. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

18  Multiplying the numbers of hours counsel worked by a reasonable hourly rate establishes the

19  lodestar.  After examining the time and labor required, the Court may apply a multiplier to the

20  lodestar in light of certain factors, including:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions involved; (3) the requisite legal skill necessary; (4) the
> preclusion of other employment due to acceptance of the case; (5)
> the customary fee; (6) whether the fee is fixed or contingent; (7)
> the time limitations imposed by the client or the circumstances; (8)
> the amount at controversy and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) the
> 'undesirability' of the case; (11) the nature and length of the

26  settlement compliance" because monitoring settlement agreements,  causes "defendants to fulfill
their obligations 'more speedily and reliably.'"  *Id*. at 10 (quoting *Keith v. Volpe*, 833 F.2d 850
(9th Cir. 1987)).  Ninth Circuit law, therefore, entitles Class Counsel to attorneys' fees because,
in this case, the Class is the prevailing party and Class Counsel caused Defendants to fulfill their
obligations "more speedily and reliably."

1   professional relationship with the client; and (12) awards in similar
2   cases.

3   *Kerr*, 526 F.2d at 70; see also *Hanlon*, 150 F.3d at 1029 (a lodestar figure "may be adjusted

4   upward or downward to account for several factors including the quality of the representation,

5   the benefit obtained for the class, the complexity and novelty of the issues presented, and the

6   risk of nonpayment") (citing *Kerr*); *Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349, 455

7   P.2d 31, 33 (1969).

8       The parties in this case worked diligently for over two-and-a-half years to reach a fair

9   and reasonable settlement of the Class Members' claims.  (Audet Decl., ¶ 13; Pitre Decl., ¶¶ 4-

10  18).  The settlement was negotiated so as not to affect the amounts available to pay Plaintiff

11  Class Member claims. (Settlement Agreement, pp. 25-26).  There was no collusion and Class

12  Counsel has served the best interests of the Plaintiff Class in all respects.  (Audet Decl., ¶ 25;

13  Pitre Decl., ¶¶ 14-18).  Negotiations over nearly every detail were vigorous.

14          **1.      Class Counsel's Hourly Rates Are Reasonable**

15      The hourly rates that Plaintiffs seek for their counsel are reasonable. In assessing the

16  reasonableness of an attorney's hourly rate, courts should consider the prevailing market rate in

17  the community for similar services by lawyers of reasonably comparable skill, experience, and

18  reputation. *Blum v. Stenson*, 465 U.S. 886, 895-96 & n.11 (1984). Courts look to the forum in

19  which the District is located to determine the hourly rates that should apply. *Camacho v.*

20  *Bridgeport Financial, Inc*., 523 F.3d 973, 979 (9th Cir. 2008) ("[a]ffidavits of the plaintiffs'

21  attorney[s] and other attorneys regarding prevailing fees in the community, and rate

22  determinations in other cases[, particularly those setting a rate for the plaintiff's' attorney,] are

23  satisfactory evidence of the prevailing market rate" (quoting *United Steelworkers of Am. v.*

24  *Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir.1990)).

25      Class Counsel are highly regarded members of the bar who are experienced in the area

26  of consumer class actions and complex class action litigation. (Audet Decl., ¶¶ 2-5, Ex. A; Pitre

27  Decl., ¶¶ 2-3, Ex. 1).  Class Counsels' customary rates, which were used for purposes of

28

15

**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF CLASS COUNSELS' MOTION FOR AWARD OF
ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO THE NAMED PLAINTIFFS**

1  calculating lodestar here, are based on hourly rates charged by our firm in other cases of this

2  nature including to our hourly clients..  (Audet Decl. ¶ 34; Pitre Decl. ¶ 24).

3  **2.**  **The Number of Hours Class Counsel Worked is Reasonable**

4  The number of hours that Plaintiffs are claiming is reasonable.  Each firm made every

5  effort to prevent the duplication of work or inefficiencies that might have resulted from having

6  multiple firms working on the case.

7  As set forth above, the work Counsel did was meaningful. Class Counsel, among other

8  things: (1) investigated and filed the action; (2) responded to hundreds of inquiries throughout

9  their investigation, and collected information, and other facts from many of the individuals who

10  made inquiries, which helped determine the scope of the problem and define the class; (3)

11  coordinated and attended informational meetings with Class Members; (4) commissioned expert

12  analysis of the facts relating to the oil spill; (5) obtained and reviewed significant confidential

13  documents produced by Defendants; (7) crafted a Settlement after extensive investigation,

14  informal discovery and arm's-length negotiations; (8) successfully moved for preliminary

15  approval of the Settlement over objections; (9) worked with counsel for Defendants to develop

16  the class notice materials and claim forms; (10) worked to ensure the claims process was fair

17  and transparent; and (11) responded to Class Member questions concerning the class notice and

18  Settlement.

19  It is well established that Plaintiff's counsel is "not required to record in great detail how

20  each minute of his time was expended." *Hensley*, 461 U.S. 424, 437 n.12 (1983). Instead,

21  counsel need only "identify the general subject matter of his time expenditures." *Id*. (citations

22  omitted); see also *Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000) (concluding

23  that "a summary of the time spent on a broad category of tasks such as pleadings and pretrial

24  motions" met "basic requirement" of documentation). If the Court prefers to review Class

25  Counsels' detailed time records, Class Counsel will willingly make them available for in camera

26  review.

27  Class Counsels' responsibilities will not end with final approval.  For instance, pursuant

28  to the Settlement Agreement, Skipper Claimants have an opportunity to submit claim well into

16

2011. (*See generally* Settlement Agreement.)  The Claims Administrator will also provide periodic reports and shall maintain all such records at least sixty (60) days after the expiration of the Claims Period to Class Counsel and Defendants indicating the number of claims received, the number of claims approved and denied, the number of appeals and the number of appeals that were successful.  Moreover, Class Counsel will remain available to answer any Class Member inquiries.  These are substantial tasks, given that the claims period here is especially lengthy, going through the claims period of each claimant.  Based on prior experience, this ongoing work will add many hours of work by Class Counsel and their staff. (Audet Decl., ¶ 40.)

Not only were the hours that Class Counsel put into this case reasonable, but they also served the public good by providing substantial compensation to consumers who suffered a loss from the CBOS. Class Counsels' efforts have succeeded in serving important public purposes and in compensating the Class for the damage it suffered.  Thus, Class Counsel respectfully submits that this Court may and should find that all of the hours Class Counsel spent in this action were reasonably incurred.

## C.        A Modest Multiplier is Warranted

*Loretz* Counsel request a fee amount of $1,335,278.18 and $40,911.39 in costs. *Loretz* Counsel expended over 1955.65 hours prosecuting this action on behalf of the Named Plaintiffs and the Plaintiff Class with a lodestar of $890,185.45.  (Audet Decl., ¶ 34-36.)  The lodestar with a 1.5 multiplier equals $1,335,278.18.

*Tarantino* Counsel requested a fee amount of $651,588.75 and $29,144.55 in costs. *Tarantino* Counsel's expended over 1268.80 hours prosecuting this action on behalf of the Named Plaintiffs and the Plaintiff Class with a lodestar of $434,392.50.  The lodestar with a 1.5 multiplier equals $651,588.75 (Pitre Decl., ¶¶ 24-25.)

In this Circuit, courts acknowledge that the risk of prosecuting a large contingent case without any guarantee of payment alone merits a multiplier:

**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF CLASS COUNSELS' MOTION FOR AWARD OF
ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO THE NAMED PLAINTIFFS**

> Counsel faced many obstacles and took a major risk in handling this litigation on a contingency basis.  To restrict counsel to the hourly rates they customarily charge for non-contingent work – where payment is assured – would deprive them of any financial incentive to accept contingent-fee cases which may produce nothing.  Courts have therefore held that counsel are therefore entitled to a multiplier for risk.

*Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1305-06 (W.D. Wash. 2001) (approving multiplier of 3.67; citing *In re WPPSS Sec. Litig.*, 19 F.3d 1291, 1301-06 (9th Cir. 1994)); *In re WPPSS*, 19 F.3d at 1299-1300.  Other courts have noted that "[i]n recent years multipliers of between 3 and 4.5 have been common."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y. 1998); *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 439 n.6 (D. Md. 1998); *Rabin v. Concord Assets Group*, 1991 U.S. Dist. Lexis 18273 (S.D.N.Y. Dec. 19, 1991).  The 1.5 multiple requested by Class Counsel here is ***well below*** that range and falls squarely within the ranges surveyed for this district and compared with the range of implied multipliers that have been found to be reasonable for cross-check purposes in other class actions.  *See also*, *e.g.*, *In re Rite Aid Corp. Secs. Litig.*, 146 F. Supp. 2d 706, 736, n. 44 (E.D. Pa. 2001) (recognizing that a "lodestar multiple in the range of 4.5 to 8.5" is "unquestionably reasonable" under the cross-check approach); *In re RJR Nabisco Sec. Litig.*, 1992 U.S. Dist. LEXIS 12702, at *16 (S.D.N.Y. Aug. 24, 1992) (6 multiplier).  Consideration of the relevant enhancement factors demonstrates that the modest multiplier requested here is reasonable and warranted.

### 1.   The Results Achieved

As discussed in detail in Plaintiffs' Memorandum filed in support of Final Approval, the Settlement provides significant relief for all affected Class members.  The Settlement provides all affected Class members with substantial benefits to the Class.  Dungeness Crab Skippers would be reimbursed for their Dungeness Crab Closure Losses, as well as a 25% premium, along with reimbursement of any attorneys' fees or clean-up payment reduction that had previously been deducted from their Dungeness Crab Closure Claim Payments. (*See* Dungeness Crab Settlement Agreement, submitted previously with Plaintiffs' motion for preliminary approval; Ex. A, p.17.)  Dungeness Crab Crewmembers would be reimbursed a payment of

$500 plus a payment of $250 for each additional qualifying season (not to exceed a total of $1250). (*Id.* at p. 18.) These benefits could equal thousands of dollars for Dungeness Crab Settlement Class Members.

The Settlement claims process also will provide an appeals process for those Class Members who feel they have wrongfully been denied relief. (*Id.,* p. 20.) Finally, the Settlement requires the Claims Administrator to provide a report, including number of claims, resolution, and evidence supporting resolution. (*Id.*) Because of the reporting requirement, Class Members receive a substantial benefit in that the claims process will be monitored by Class Counsel and enforced if necessary.

Class Counsel achieved this outstanding result in an expeditious manner, without the delay, expense or risk of litigation. California courts have long recognized that the result obtained by Class Counsel is a principal factor in considering an enhanced lodestar multiplier:

> The "results obtained" factor can properly be used to enhance a lodestar calculation where an exceptional effort produced an exceptional benefit. In other words, as stated by a leading treatise, "the California cases appear to incorporate the 'result obtained' factor into the 'quality' factor: i.e., high-quality work may produce greater results in less time than would work of average quality, thus justifying a multiplier." (Pearl, *Cal. Attorney Fee Awards* (Cont. Ed. Bar 2d ed. 1998) § 13.6, p. 327)

*Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 838 (2001) (alteration in original). In calculating an appropriate fee, "counsel should be rewarded, not punished" for helping to obtain a prompt settlement without running up lodestar through needless litigation. *Lealao*, 82 Cal. App. at 52-53 (2000). Accordingly, the lodestar method "permits the court to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested." *Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 168 (3d Cir. 1975). See also *Arenson v. Board of Trade of City of Chicago*, 372 F. Supp. 1349, 1358 (N.D. Ill. 1974) (noting potential for far greater lodestar absent settlement, thereby justifying a lodestar multiplier of four). The same is true in Nevada. *Brunzell*, 85 Nev. at 349, 455 P.2d at 33. Here, Class Counsel avoided considerable burden and expense to the parties and the judicial system by conducting a thorough investigation, facilitating informal discovery that

1    proceeded smoothly and effectively without costly Court intervention, and achieving a favorable

2    Settlement in a timely fashion. The outstanding results achieved by Class Counsel here fully

3    justify the requested fee.

4            2.        **The Contingent Nature of This Case**

5            From the outset of the case to the present, prosecution of this action has involved

6    financial risk for Class Counsel. Class Counsel prosecuted this matter on a contingent basis, and

7    placed at risk their own resources to do so, with no guarantee of recovery. (Audet Decl., ¶ 38;

8    Pitre Decl., ¶ 23.) Class Counsel took on this highly complex case on a wholly contingent basis

9    with no guarantee that their costs would ever be recovered or their fees ever paid.  From the

10   outset, Class Counsel understood that they were embarking on an expensive and lengthy

11   campaign with no guarantee of payment resulting from their investment of time, money and

12   effort.  In fact, there are numerous class actions in which Class Counsel expended thousands of

13   hours, but received no remuneration despite their diligence and expertise.  *See e.g. Robbins v.*

14   *Kroger Props.*, 116 F.3d 1441 (11th Cir. 1997); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st

15   Cir. 1990); *Krinsk v. Fund Asset Mgmt., Inc.*, 715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd*, 875 F.2d

16   404 (2d Cir. 1989); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987); *Radol v. Thomas*, 772

17   F.2d 244 (6th Cir. 1985); *Rosenblatt v. Getty Oil Co.*, 1983 Del. Ch. Lexis 570 (Del. 1983);

18   *Spielman v. General Host Corp.*, 402 F. Supp. 190 (S.D.N.Y. 1975), *aff'd*, 538 F.2d 39 (2d Cir.

19   1976).  Examples of cases that were dismissed before trial, but only after substantial efforts had

20   been expended, are also abundant.  *See In re Convergent Tech. Sec. Litig.*, 721 F. Supp. 1133

21   (N.D. Cal. 1988) (granting summary judgment for defendants after almost five years of

22   litigation), *aff'd*, 1991 U.S. App. Lexis 19733 (9th Cir. 1991); *Kalish v. Franklin Advisers, Inc.*,

23   742 F. Supp. 1222 (S.D.N.Y. 1990) (judgment for defendants after bench trial), *aff'd*, 928 F.2d

24   590 (2d Cir. 1991); *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co.*, 1990 U.S. Dist.

25   LEXIS 13752 (S.D.N.Y. 1990) (dismissing third amended complaint without leave to replead).

26           Therefore, the contingent nature of this litigation posed a great deal of risk for Class

27   Counsel in undertaking this case.  There was no guarantee that Plaintiffs would eventually

28   succeed in substantive motion practice, at trial, or on appeal. Defendants have at no time

20

conceded liability, the appropriateness of class certification, the availability of damages, or the proper measure thereof. In short, since the beginning of this litigation, recovery by Plaintiffs was far from assured. Despite such challenges, Class Counsel succeeded in reaching a Settlement in which Defendants will provide immediate, substantive relief for the Class Members.

### 3.   The Novelty and Difficulty of the Questions Involved

As this Court recently recognized, class actions are generally more complex than cases brought by a single plaintiff and this complexity necessarily impacts the Court's determination of the reasonableness of class counsel's fee request. See *Campbell v. Nat'l Passenger R.R. Corp.*, No. 05-05434, 2010 LEXIS 20778, at **12-14 (N.D. Cal. Feb. 18, 2010). Accordingly, the amount of time a lawyer decides to devote to various tasks in complex litigation is necessarily the product of highly-selective judgment, involving questions of strategy and tactics unique to that case, and is ill-suited to hindsight evaluation. *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ("The relevant issue … is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures"), cert. denied, 506 U.S. 1053 (1993).

This case is particularly complex because it involved a combination of Oil Pollution Act of 1990 (Federal) and the Lempert-Keene-Seastrand Act, Gov't Code §§ 8670 *et seq.* (California), which had advantages and disadvantages under varying circumstances. While Class Counsel believe, based on similar cases they have prosecuted in the past, that a nationwide class would be certified, the outcome of a class certification motion is by no means assured. Similarly, while Class Counsel believe a jury would have found in favor of the Class on the merits, this outcome is also not guaranteed.

### 4.   Whether the Fee is Contingent

Class Counsel undertook this class action on a purely contingent basis, with no assurance of recovering expenses or attorneys' fees. (Audet Decl., ¶ 38; Pitre Decl., ¶ 23) Nevertheless, Class Counsel spent significant time and resources to prosecute the case successfully on behalf of the class, and will continue to represent the class in the course of the

21

1  claims process. Counsel's willingness to take this risk weighs in favor of a multiplier on

2  lodestar.  *Kerr*, 526 F.2d at 70.

3          **5.**      **The Experience, Reputation and Ability of the Attorneys**

4        The reputation, experience, and ability of Class Counsel were essential to success in this

5  litigation. As noted in the declarations submitted herewith, Class Counsel has substantial

6  experience in consumer class action litigation. (Audet Decl., ¶¶ 2-5, Ex. A; Pitre Decl., ¶ 2-3,

7  20, 22, Exs.1, 2). Class Counsels' skills in developing an extensive factual record and

8  convincing Defendants of its litigation exposure were essential to achieving this Settlement.

9  Class Counsels' history of aggressive, successful prosecution of consumer class actions made

10  credible their commitment to pursue this litigation until Defendants provided a fair result for the

11  Class members. Through their skill, reputation, and ability, Class Counsel were able to obtain a

12  settlement that provides an outstanding result for Class members.

13       **D.**     **Class Counsels' Request For Reimbursement Of Costs And Expert Fees Are**
14               **Reasonable And Encouraged Under California Law**

15        "Reasonable costs and expenses incurred by an attorney who creates or preserves a

16  common fund are reimbursed proportionately by those class members who benefit from the

17  settlement." *In re Media Vision Tech. Sec. Litig*., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)

18  (citing *Mills v. Electric Auto-Lite Co*., 396 U.S. 375, 391-392 (1970)); see also *Staton*, 327 F.3d

19  at 974.  The requested costs must be relevant to the litigation and reasonable in amount. *In re*

20  *Media Vision,* 913 F. Supp. at 1366.  Moreover, under Lempert-Keene the Class is permitted to

21  recover "reasonable costs of the suit . . . and the costs of any expert witnesses . . . ."  Cal. Gov't

22  Code § 8670.56.5 (f).

23        During the course of this litigation, Class Counsel had to incur un-reimbursed, out-of-

24  pocket costs totaling $70,055.94. (Declarations of Audet ¶ 36 ($40,911.39); Pitre ¶ 25

25  ($29,144.55)). These costs included: (1) filing fees; (2) copying, mailing, faxing and serving

26  documents; (3) conducting computer research; (4) travel to hearings and settlement negotiation

27  meetings; and (5) expert fees.  (*Id.*)  Class Counsel put forward these out-of-pocket costs

28  without assurance that they would ever be repaid.  The expenses incurred were necessary to

secure the resolution of this litigation.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in a class action litigation).  Accordingly, Class Counsels' request for fees should be granted.

**V.     CONCLUSION**

For the reasons stated above, Class Counsel respectfully request that this Court grant Class Counsels' Motion for Attorneys' Fees and Costs, and award Class Counsel $1,986,866.93 in fees and $70,055.94 in costs, and award the requested class representative payments of $7,500.00 each.

Dated this July 2, 2010                                    AUDET & PARTNERS, LLP

                                        /s/ William M. Audet
                                        William M. Audet
                                        221 Main Street, Suite 1460
                                        San Francisco, CA  94105
                                        Telephone:  415.568.2555
                                        Facsimile:  415.568.2556
                                        WAudet@audetlaw.com
                                        Attorneys for Plaintiffs with
                                        Complaint filed in the State of California

**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO THE NAMED PLAINTIFFS**