1  FRANK M. PITRE (SBN 100077)
   fpitre@cpmlegal.com
2  STUART G. GROSS (SBN 251019)
   sgross@cpmlegal.com
3  **COTCHETT, PITRE & McCARTHY**
   San Francisco Airport Office Center
4  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
5  Telephone: (650) 697-6000

6  WILLIAM M. AUDET (SBN 117456)
   waudet@audetlaw.com
7  ADEL NADJI (SBN 232599)
   anadji@audetlaw.com
8  **AUDET & PARTNERS LLP**
   221 Main St Ste 1460
9  San Francisco, CA 94105
   Telephone: 415.568.2555

10

11 *Attorneys for Plaintiffs and*
   *the Class Members*

12

13            **UNITED STATES DISTRICT COURT FOR**

14            **THE NORTHERN DISTRICT OF CALIFORNIA**

15 Allen Loretz, individually and on behalf of   )
   all others similarly situated,                )  Case No. C 07-5800 SC
16                                                )  And related cases:
                                                  )
17       Plaintiffs,                              )
                                                  )
   v.                                             )  07-6045 SC, 08-2268 SC, 08-2052 SC,
18                                                )   08-5098 SC, 09-01469 SC
   Regal Stone, Ltd., Hanjin Shipping, Co.,       )
19 Ltd., Synergy Maritime, Ltd., Fleet            )
   Management Ltd., and John Cota, *In*           )  **DECLARATION OF FRANK M.**
20 *Personam*; M/V Cosco Busan, their engines,    )  **PITRE IN SUPPORT OF**
   tackle, equipment, appurtenances, freights,    )  **PLAINTIFFS' MOTION FOR**
21 and cargo *In Rem*,                            )  **FINAL APPROVAL OF THE**
                                                  )  **CLASS ACTION SETTLEMENT**
22       Defendants.                              )
                                                  )
23                                                )
   _____   )
24

25

26

27

28
   _____
   **DECLARATION OF FRANK M. PITRE IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL**
   **APPROVAL OF THE CLASS ACTION SETTLEMENT**

**I, FRANK M. PITRE, declare as follows:**

1.     I am an attorney admitted to practice before all courts of the State of California and before this Court, and am a partner in the law firm Cotchett, Pitre & McCarthy ("CPM") where I have practiced since 1981. I make this declaration of my own personal knowledge, and, if called as a witness, I could and would competently testify to the matters stated below.

**A.     Qualifications and Professional Experience**

2.     I am a Certified Civil Trial Advocate, National Board of Trial Advocacy; a member of the American Board of Trial Advocates, the American College of Trial Lawyers, and the International Academy of Trial Lawyers. For the past twelve years, I have been honored to be the author of the annual California Personal Injury Proof Update, Continuing Education of the Bar of the State of California. Both the firm and I are privileged to have AV ratings by Martindale-Hubbell. I have authored numerous articles and lectured before various consumer groups on issues of tort and trial practice.

3.     I have served in leadership positions for the coordination and resolution of several mass tort cases, including: *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation* United States District Court Central District of California, MDL Docket No. 8:10-ml-02151-JVS-FMO [Plaintiffs' Co-Lead Counsel for Economic Loss Class Actions]; *In re Bextra/Celebrex,* United States District Court, Northern District of California, MDL Docket No. M:05-CV-01699-CRB [Co-Lead Trial Counsel for the Plaintiffs' Steering Committee]; *In re Air Crash Near Point Mugu,* California on January 31, 2000, United States District Court, Northern District of California, MDL Docket No. 00-1343CRB, [Liaison Counsel for the Plaintiffs' Steering Committee]; *Livingston v. Toyota Motor Sales USA, Inc.*, United States District Court, Northern District of California, Case No. C94-1377 MHP [Co-Lead Counsel]; *Taylor Tire Co. v. The Goodyear Tire & Rubber Co.*, United States District Court, Southern District of California, No. 94-1050 [Co-Lead Counsel]; *In re Diet Drugs*

1   *(Fen-Phen)*, Superior Court of California, Los Angeles County, Judicial Council
2   Coordination Proceeding No. 4032. [Member of the Plaintiffs' Executive Committee];
3   *Carnahan et al. v. State of California*, Superior Court of California, County of Fresno,
4   Case No. 474276-3 [Member of Plaintiffs' Steering Committee]; *PSA Air Crash Cases*,
5   California Superior Court, Los Angeles County, Judicial Council Coordination
6   Proceeding No. 2180 and No. 1286, [Plaintiffs' Steering Committee, and later as
7   Plaintiffs' Co-Lead Trial Counsel for six week jury trial which established the
8   defendants' liability].

9   **B.     Involvement in Settlement**

10          4.      Co-counsel and I (collectively "Class Counsel") have fully and thoroughly
11  investigated this case and we are confident that this Settlement is in best interest of
12  Plaintiffs and the members of the class to be certified for the purposes of this Settlement
13  ("Dungeness Crab Settlement Class").

14          5.      CPM, with co-counsel, began investigating the claims set forth in the
15  Plaintiffs' Complaints on the day of the oil spill that is the subject of this litigation,
16  November 7, 2007.

17          6.      On November 20, 2007, CPM filed a class action in the Superior Court of
18  San Francisco, *Tarantino et al. v. Hanjin Shipping et al.* ("*Tarantino*"), No.
19  CGC-07-469379, on behalf of a class defined as: "all commercial fishing operations,
20  including crab, herring, flat fish, salmon and other fish, which commercially fish in and
21  around the San Francisco Bay and surrounding ocean areas."

22          7.      The *Tarantino* Complaint seeks *inter alia* that compensation be paid to
23  putative class members for both their short-term and long-term economic injuries caused
24  by the Cosco Busan oil spill, as well as punitive damages.

25          8.      The *Tarantino* Complaint names the following defendants: Hanjin Shipping
26  Co., Ltd.; Regal Stone, Ltd.; Fleet Management, Ltd; John J. Cota; and Does 2-100.

27

28

1    9.    On August 6, 2009, the Superior Court of San Francisco certified a

2    Commercial Herring Fishermen Subclass in *Tarantino*. A motion to certify the remaining

3    subclasses and class as whole was filed by plaintiffs in *Tarantino* on April 12, 2010.

4    10.    CPM had consultants review a number of publicly available studies

5    conducted by various government and private agencies relating to the CBOS, the fisheries

6    of San Francisco Bay and surrounding ocean areas, and the impact of marine oil pollution

7    on the species on which these fisheries depend. In addition our firm retained and

8    consulted with experts on highly technical issues including but not limited to the

9    envirotoxicological impact of the oil spill on Dungeness crab stocks and the long-term

10    economic impact of the oil spill on the fishery.

11    11.    CPM, along with co-counsel, obtained and reviewed documentary

12    information and written discovery responses from Defendants and participated in

13    depositions of Defendants' employees.

14    12.    A Freedom of Information Act ("FOIA") request by my firm to the National

15    Oceanic and Aeronautical Administration ("NOAA") yielded over 33,371 electronic files

16    (over 64.7 gigabytes) of previously unreleased data related to the CBOS and its effect on

17    the commercial fish stocks of the San Francisco Bay and surrounding ocean areas. This

18    information was further reviewed by CPM and several consultants retained by CPM.

19    13.    As part of the investigation, my firm along with co-counsel have been in

20    contact with over one hundred member of the proposed Dungeness Crab Settlement

21    Class.

22    14.    The settlement negotiations in this case were intense, substantive, and

23    adversarial. During the process, CPM, co-counsel, and counsel for Defendants Fleet

24    Management, Ltd. and Regal Stone, Ltd. ("Settling Defendants") determined that the

25    most appropriate to address, in settlement negotiations, the claims of class member was

26    on subclass basis. This settlement reflects that effort as to the claims of commercial

27    Dungeness crab fishermen only and does not affect, or relate to, the claims of any other

28

1  person. During this process counsel for the parties engaged in a contentious arms-length

2  negotiation process with the highly-regarded mediator, Roger Hawkings, Esq. In addition

3  to the in-person meetings that occurred in July and December of 2008, and January and

4  February of 2009, arm's-length in-person settlement negotiations continued with

5  telephonic meetings of counsel from then until March 17, 2010. Throughout, the parties

6  engaged in extensive exchange and review of information and claims data concerning

7  members of the Plaintiff Class, and Class Counsel contacted and interviewed Class

8  Members to gauge their reactions to the proposed settlement and gather information

9  necessary to achieve the results accomplished.

10  15. The significant settlement negotiations between Class Counsel and counsel

11  for Settling Defendants, as to the claims of commercial Dungeness crab fishermen, finally

12  culminated in an agreement in principal with respect to all material terms related to the

13  settlement between Plaintiffs and Settling Defendants (with the exception of attorneys'

14  fees and costs) on or about October 1, 2009, and a MOU setting forth those terms was

15  finalized on the same day. Vigorous negotiations continued after October 1, 2009 until

16  March 17, 2010 when the final settlement agreement was signed.

17  16. Class Counsels' history of aggressive, successful prosecution of class

18  actions made credible their commitment to pursue this litigation until Settling Defendants

19  provided a fair result for the Class members. Through their skill, reputation, and ability,

20  Class Counsel were able to obtain a settlement that provides an outstanding result for

21  Class members.

22  17. The settlement provides for the certification of a Dungeness Crab

23  Settlement Class and for its members to receive substantial benefits.

24  18. Class Counsel and counsel for Settling Defendants negotiated fees and costs

25  separately from the negotiations for settlement and only after all other material terms of

26  the Settlement were reached. When those negotiations failed to yield a resolution, Class

27

28

Counsel and counsel for Settling Defendants agreed that Class Counsel would separately apply to the Court for reimbursement of costs and an award of fees.

C.    **Class Counsel are Experienced in Class Action Litigation**

19.    Class Counsel are highly regarded members of the bar who are well experienced in the area of consumer class actions and complex class action litigation, as well as the facts and law underlying the Dungeness Crab Settlement Class Claims and the possible defenses thereto, and based thereon are convinced that the proposed Settlement is a fair settlement and highly beneficial to the Class.

20.    Counsel for both parties are particularly experienced in the litigation, certification, trial, and settlement of class action cases. In negotiating the finalization of this Settlement, Class counsel has had years of experience and a familiarity with the facts of this case.

21.    Although their exact numbers are unknown, Plaintiffs estimate that there are well in excess of forty Class Members. Class Counsel have been contacted by dozens of Dungeness Crab fishermen regarding their claims against the Settling Defendants.

D.    **Hours, Lodestar & Expenses**

22.    My firm is highly experienced in class action and other complex litigation on behalf of plaintiffs. Attached to this declaration as **Exhibit 1** is a true and correct copy of the resume of my law firm along with a true and correct copy of my personal resume, as well as other attorneys from my firm who have worked on this litigation as **Exhibit 2.**

23.    We devoted our best effort to this litigation. We undertook this action on a purely contingent basis, with no assurance of recovering expenses or attorneys' fees. The hours submitted with this application are solely for work performed in this case and specifically work performed on behalf of Dungeness Crab fishermen regarding their claims against the Settling Defendants. All attorneys, paralegals, and law clerks at my firm are instructed to maintain contemporaneous time records reflecting the time spent on this and other matters. I was primarily the attorney at the firm, that held the responsibility

for the day-to-day operations with respect to this file. In addition to being intimately involved with the conception of the case, as well as the nuts and bolts of litigating it, I also supervised the work performed on the case by other members of the firm.

24. I also have knowledge of the firm's policies regarding the assignment of work and the recording of time and expense records. Attached hereto as **Exhibit 3** is a true and correct copy of the summary Lodestar Report of Cotchett, Pitre & McCarthy. It shows, by partner, associate, law clerk, and paralegal the number of hours each person spent prosecuting this action. The firm's total number of hours is 1268.80 and total lodestar for these hours, using current hourly rates, is $434,392.50. The rates charged are the same hourly rates charged by our firm in other cases of this nature including to our hourly clients. None of the time included in this fee application represents any work done in connection with the application for fees.

25. Throughout the course of this litigation, Cotchett, Pitre & McCarthy incurred un-reimbursed, out-of-pocket costs. Attached hereto as **Exhibit 4** is a true and correct accounting of the unreimbursed costs incurred by Cotchett, Pitre & McCarthy during the course of this litigation. My firm has expended a total of $29,144.55 in unreimbursed expenses in connection with the prosecution of the Dungeness Crab fishermen's claims relating to CBOS. These costs included: (1) filing fees; (2) copying, mailing, faxing and serving documents; (3) conducting computer research; (4) travel to hearings and settlement negotiation meetings; and (6) expert fees. My firm made its usual and customary charges for expenses it paid or incurred in this litigation and added no surcharge to any expense. The expenses incurred pertaining to this case are reflected in the books and records of the firm. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred.

26. My firm has prosecuted this litigation solely on a contingent-fee basis, and has been completely at risk that it would not receive any compensation for prosecuting

1 claims against the Settling Defendants. The enforceability of the Settlement Agreement is
2 not contingent on the amount of attorneys' fees or costs awarded.

3 **E.**     **Incentive Payment for Dungeness Crab Settlement Class Representatives**

4     27.    The Dungeness Crab Settlement Class Representatives have contributed
5 substantial amounts of time assisting Class Counsel pursue the claims of Dungeness Crab
6 Settlement Class Members against Defendants, including but not limited to, work related
7 to ensuring the fairness of the Dungeness Crab Closure Claims Process and concluding
8 this Settlement.

9     28.    The proposed incentive payment of $ 7,500 is intended, in part, to recognize
10 the time and effort named class representatives John Tarantino, Steven Fitz, John
11 Atkinson, and Sean Hodges, have contributed to each step of this litigation in the past
12 three years.  Whereas unnamed class members are passive beneficiaries of this action,
13 Tarantino, Fitz, Atkinson and Hodges took the initiative of contacting counsel to initiate
14 this action. Tarantino, Fitz, Atkinson and Hodges helped counsel draft the complaint.
15 Tarantino, Fitz, Atkinson and Hodges actively participated in discovery and also
16 subjected themselves to the other burdens and obligations of named parties, including
17 potential imposition of costs after an unfavorable verdict.  Moreover, the named class
18 representatives took substantial to assist my firm to ensure that class members were able
19 to participate in the claims process and that the claims process was conducted in a manner
20 which was transparent, fair, and did not prejudice the rights of Class Members or the
21 policies furthered by the class action process.  Attached hereto as **Exhibit 5** is a true and
22 correct of the Declaration of John Tarantino In Support Of Plaintiffs' *Ex Parte* Motion
23 For An Order To Show Cause Why A Protective Order To Supervise And Limit
24 Communications With Putative Class Members Should Not Issue.  Attached hereto as
25 **Exhibit 6** is a true and correct of the Declaration of Steven Fitz In Support Of Plaintiffs'
26 *Ex Parte* Motion For An Order To Show Cause Why A Protective Order To Supervise
27 And Limit Communications With Putative Class Members Should Not Issue.

28

29.     Incentive awards for class representatives, on top of any damages payments provided to class members through settlement, are routine and proper, and promote the public policy of encouraging individuals to undertake the commitment and responsibility of representative lawsuits. See *In re Mego Fin. Corp. Securities Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *Ingram v. The Coca-Cola Co.* 200 F.R.D 685, 694 (N.D. Ga 2001). The amount requested in this case is at the very modest spectrum for reasonable incentive awards. *See, e.g., id* (approving incentive award of $300,000 to each named plaintiff); *Hughes v. Microsoft Corp.*, 2001 U.S. Dist. LEXIS 5976, *36-38 (W.D. Wash. 2001) (approving incentive awards of $7,500, $25,000, and $40,000); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) (stating "the propriety of allowing modest compensation to class representatives seems obvious," and awarding $20,000 to two named class representatives). The request for a $ 7,500 incentive award is appropriate and should be awarded to each of the class representatives.

**F.     Our Work Has Substantially Benefitted The Class**

30.     Following the commencement of the Federal and State Actions, Defendants Regal/Fleet began contacting putative class members in an effort to persuade them to participate in the Claims Process and abandon the class actions. All communications to putative class members were *ex parte* and included a demand that class members waive their rights under the class action in favor of the Claims Process. After learning of Defendants Regal/Fleet's improper efforts to subvert the class action process, Plaintiffs filed a Motion for Order to Show Cause Why a Protective Order to Supervise or Otherwise Limit Communication with Putative Class Members Should Not Issue to limit such communications.

31.     On February 22, 2008, the Court granted Plaintiffs' motion and enjoined Defendants Regal/Fleet from further attempts at limiting putative class members' rights in return for participation under the Claims Process. The Court further ruled that the Claims Process is "separate and independent from Plaintiffs' state law claims" and forbade the

Defendants Fleet/Regal from requiring putative class members sign any kind of release as

a condition of participating in the Claims Process. (2/22/08 Order (ECF No. 79) and

4/25/08 Order (ECF No. 86)).

///

///

32.    Following issuance of the aforementioned Order, negotiating on behalf of

Lead Plaintiffs short-term claims through the Claims Process. Class Counsel won a total

of $510,749.49 for John Tarantino, Steven Fitz, Sean Hodges, and John Atkinson through

this process.

33.    In summary, based on my experience and my review of the applicable law

and facts, I believe that the settlement reached on behalf of Dungeness Crab Settlement

Class Members is fair and highly beneficial to such persons.

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct. Executed at Burlingame, California, on July 2,

2010.



FRANK M. PITRE

# EXHIBIT 1

# COTCHETT, PITRE & McCARTHY

## Examples of Environmental Litigation Experience

### Avila Beach

*Poist v. Unocal Corp.*
San Luis Obispo Superior Court
Environmental toxic class action on behalf of owners of interest in timeshares in cost-side towns for nuisance arising out of petroleum contamination and remediation efforts. (Settlement preliminarily approved, 1998)

### Burbank

USDC Northern District of California
Actions on behalf of homeowners for nuisance arising from environmental remediation efforts at site of massive toxic contamination.

### Voisinet Litigation

*Voisinet, et al. v. Unocal, et al.*
San Luis Obispo Superior Court Case No. CV080320
This action is brought on behalf of home developers for nuisance and fraud arising out of petroleum contamination.

### Cambria Community Services District/Chevron Litigation

*Cambria Community Services District v. Chevron Corporation*
San Luis Obispo Superior Court
The Town of Cambria is considered the jewel of the Central Coast, a small community nestled amongst coast pines and steps away from the Pacific Ocean, San Simon, and the Central Coast wine region. A leak from a Chevron station contaminated the town's drinking water supplies with MTBE, a gasoline additive which renders drinking water unusable. The firm was successful in securing a settlement for Cambria which permitted it to insure that alternate water sources were available for the community.

### Bridgestone/Firestone Litigation

*Dower, et al. v. Bridgestone/Firestone North American Tire, LLC, et al.*
N.D. Cal. 5:06-CV-06837
This action is brought on behalf of homeowners for toxic groundwater contamination released from the Crazy Horse Sanitary Landfill in Salinas, California.

### Santa Maria Valley Litigation

These cases were brought on behalf of homeowners and families living in Santa Maria, California, an old oil field which was the setting of the film There Will be Blood. When production in the oil field tapered off, residential communities were constructed atop the old oil fields – and on top of the waste which the oil companies left behind. The firm has been successful in providing remedies to these families, who have been able to leave behind their polluted homes and communities and restart their lives.

### Californians for Native Salmon

221 Cal.App.3d 1419 (1990)
Representative action regarding approval of timber harvest plans.

## Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation

MDL 1699

Cotchett, Pitre & McCarthy was co-lead trial counsel in the In Re: Bextra and Celebrex Mktg., Sales Practices & Product Liability Litigation, which culminated in Pfizer agreeing to pay $894 million to settle consolidated injury and class action cases related to its pain killers Bextra & Celebrex.

## Vioxx Product Liability Litigation

MDL 1657 and JCCP 4247 (California)

Cotchett, Pitre & McCarthy represents a number of individuals who suffered medical injuries such as heart attacks and strokes after taking the prescription drug Vioxx. The drug was withdrawn from the market by its manufacturer and distributor, Merck & Co., Inc., after evidence emerged linking the drug to heart attacks, strokes, sudden cardiac death and other serious cardiovascular risks.

## Bausch & Lomb Contact Lens Solution Product Liability Litigation

MDL 1785

Cotchett, Pitre & McCarthy represents individuals who sustained serious eye injuries as a result of the use of the contact lens solution ReNu with MoistureLoc. The product was withdrawn from the market by its manufacturer and distributor, Bausch & Lomb, after it was associated with fungal keratitis (a rare type of eye infection).

## Dephlia Davis, et al. v. Actavis Group, et al.

USDC Northern District of California
Case No.: CV 08-3173

The firm currently represents individuals who were injured or killed after injecting the drug Digitek, which was formulated and distributed by the manufacturers and suppliers at a level more than double the FDA prescribed maximum.

## Trawick v. Parker-Hammifin, et al.

Monterey Superior Court

CPM successfully prosecuted a product liability claim against the manufacturer and supplier of a defective rubber hose coupling installed on a forklift which failed and killed a construction foreman at the Monterey Plaza Hotel.

## Rhonda Albom, et al. v. Ford Motor Company/Firestone Tires

Los Angeles Superior Court - Case No. BC 235016

CPM represented a young child and her mother injured when their Ford Explorer veered out of control and rolled over in Half Moon Bay, California. The case was one of several against Ford Motor Company and Firestone Tires consolidated before the Superior Court of Los Angeles.

## Austin Hills, et al. v. S & G Ragsdale Equipment Co., LLC, et al.

CPM represented the Hills family in a product liability/negligence claim against the parties responsible for the defective operation of a truck/trailer hitch system which caused a 5 ton trailer with drilling equipment to disengage, then swerve into the opposing lane of traffic killing Erika Hills, a resident of Napa.

## Munoz, et al. v. Bayer Corporation, et al.

San Joaquin County Superior Court - Case No.: CV 016766

CPM successfully represented multiple individuals who were killed or injured after ingesting the drug Baycol, which was promoted by Bayer Pharmaceutical without alerting users of a severe muscle adverse reaction known as rhabdomyolysis.

## Sharper Image Corporation v. Consumers Union of United States

03-4094 (N.D. Cal.)

Successful defense under California's Anti-SLAPP statute of product disparagement claim brought by Sharper Image relating to reviews of Sharper Image's Ionic Breeze air cleaner published in Consumer Reports.

## Isuzu Motors Ltd. v. Consumers Union of the United States, Inc.

C.D. Cal. No. 97 5685 RAP

Represented defendant publisher of Consumer Reports in defamation/product disparagement litigation brought by auto manufacturer against non-profit consumer testing organization. Jury verdict for Consumers Union after a two-month jury trial.

## Suzuki Motor Corp. Japan v. Consumers Union of the United States, Inc.

C.D. Cal. No. SA CV 96-340 AHS
Represented defendant publisher of Consumer Reports in defamation/product disparagement litigation brought by auto manufacturer against nonprofit consumer testing organization. Summary judgment in favor of defendants was granted in May, 2000.

## In re Cable News Network and Time Magazine "Operation Tailwind" Litigation

MDL No. 1257
Sheppard v. Cable News Network, Inc.
Case No. C-98 20946 JF (ND Cal.)
Action against Time and CNN on behalf of Vietnam veterans falsely reported to have committed war crimes in Laos.

## Swine Flu Immunization Products

89 F.R.D. 695 (D.D.C. 1980)
*Adleson v. United States*
523 F.Supp. 459 (N.D.Cal. 1981)
MDL actions for product liability.

## Diet Drug

Los Angeles County Superior Court
USDC Eastern District of Pennsylvania
*In re Diet Drugs (Phentermine, Fenfluramine, Dexfunfluramine) Products Liability*
Consumer fraud and product liability individual actions on behalf of approximately 100 individuals.

## Examples of Aviation Litigation

## Alaska Airlines MDL No. 1343

Northern District Court of California 2000
Representing the survivors of one of the victims of crash of Alaska Airlines Flight 261 on January 31, 2000 off the coast of California.

## Thomas v. Singapore Airlines

Singapore Airlines MDL No. 1394
Central District Court of California 2000-2001
Representing victims of the October 31, 2000 crash of a Singapore Airlines passenger jet in Taiwan in which 83 people were killed and dozens injured.

## Montoya v. Bell Helicopter

Northern District Court of Texas 1991
This case involved pursuit of a claim for product liability in the design of the engine shroud incorporated into a Bell helicopter, which crashed in the jungle of New Guinea killing a Chevron executive. The suit was on behalf of the wife and children of the executive and against the helicopter manufacturer and the French company, which supplied the component parts.

## PSA Flight 1771

Los Angeles Superior Court. Judicial Council Proceeding Nos. 2180 & 2186.
Representing victims of the December 7, 1989 air crash of a PSA jetliner near San Luis Obispo. The case was unique due to the focus on breaches of security by the airline and airport security, which permitted a disgruntled former airline employee to by-pass security with a gun later used to kill the pilot and crew during flight.

## Examples of Complex Personal Injury and Wrongful Death Litigation

Cotchett, Pitre & McCarthy has been one of the leading firms in California handling catastrophic and serious personal injury cases. The attorneys at Cotchett, Pitre & McCarthy have a vast array of experience and success in the field, including cases and trials involving pharmaceuticals, aviation, premise liability, product liability, motor vehicles, boats, bicycles, dangerous highways, pedestrians, railroads and wrongful death.

## Balcony Collapse

San Francisco Superior Court
Represented 13 victims of personal injuries and wrongful death arising out of Franklin Street balcony collapse in 1996.

## In re MGM Grand Hotel Fire Litigation

570 F.Supp. 913 (D.Nev. 1983)
MDL consolidated litigation by personal injury victims.

## Murillo, et al. v. National Railroad Passenger Corporation, et al.

Contra Costa Superior Court Case No. C04-00825
Cotchett, Pitre & McCarthy successfully represented
the family of an elderly couple who were killed by an
Amtrak train while their car was trapped at a
dangerously designed grade railroad crossing in
Crockett, California in an action against the National
Railroad Passenger Corporation ("Amtrak"), Union
Pacific Railroad Company and the State of California
Department of Transportation.

## Manlapaz, et al. v. Bills Trucking, et al.

Santa Clara Superior Court Case No. 105CV053215
Cotchett, Pitre & McCarthy represented the family of a
woman who was killed after being crushed by a
semi-truck with two dirt hauling trailers while she was
crossing the street near a construction site in Mountain
View, California.

## In re MGM Grand Hotel Fire Litigation

570 F.Supp. 913 (D.Nev. 1983)
MDL consolidated litigation by personal injury
wrongful death claims in the mamoth fire that
destroyed the MGM Grand in Las Vegas, Nevada.

## Carnaham v. State of California

Fresno County Superior Court No. 474276-3 (1991)
Action against the State of California and more than
100 separate defendants on behalf of scores of
individuals killed or injured in a severe dust storm on
I-5 over the Thanksgiving weekend in 1991.

## Hyman v. Nahi

Orange Co. Superior Court No. 794706
Represented victims of balcony collapse against
landlord and termite company in a case involving slum
landlord condititions.

## Malhotra v. Nathan

San Francisco Superior No. 976634 (1999)
Represented 13 victims of personal injuries and
wrongful death arising out of Franklin Street balcony
collapse in 1996 in San Francisco.

## Walton v. Samuels

Los Angeles Superior Court No. 183833
Action for lung injury victims arising out of a
four-alarm apartment fire in a major disaster in Los
Angeles.

## Gonzalez v. Oil Can Henry's International

Monterey Superior Court Case No. M61606
Cotchett, Pitre & McCarthy successfully represented a
four-year-old child who suffered brain damage after
being struck and run over by a driver at an oil change
service shop which failed to properly control vehicle
and pedestrian safety in conjunction with its promotion
of quick service.

## Examples of Securities Litigation Experience

## Freddie Mac

*In re Federal Home Loan Mortgage Corp. (Freddie
Mac) Securities Litigation*
USDC Southern District of New York
Lead Counsel in securities class action against Freddie
Mac executives, underwriters, and auditors alleging
that they misrepresented material facts regarding
Freddie Mac's business prior to government
conservatorship. The losses suffered by the Class of
preferred shareholders exceeds $6 billion.

## Homestore

*In re Homestore.com, Inc., Securities Litigation*
USDC Central District of California
Lead Counsel for CalSTRS in a securities fraud class
action against Homestore.com, Inc., its senior officers
and directors, its auditors, and other companies who
engaged in fraudulent "roundtripping" transactions,
increasing revenues by false accounting methods. In
March 2004 the court approved a settlement in which
Homestore agreed to reform its corporate policies and
pay approximately $93 million in stock and cash.

## Apple

*In re Apple Computer Inc. Derivative Litigation*
USDC Northern District of California
Lead Counsel in derivative action on behalf of Apple
relating to backdating of stock options granted to
various executives. The action alleged violations of
federal and California state securities statutes, and
resulted in Settlement of cash and novel corporate
governance reform.

## Global Crossing

*In re Global Crossing Ltd. Securities & "ERISA"
Litigation*
USCD Southern District of New York
Securities fraud class action on behalf of large
investors against Global Crossing, Ltd. for
misrepresentation and artificially inflating its financial
results through 2001.

## Janus

*In re Mutual Funds Investment Litigation*
USDC District of Maryland
Lead Counsel in securities fraud class action filed
against Janus mutual funds for allowing select investors
to make substantial profits at the expense of other
investors. The suits were filed in September 2003 and
accuse the funds of allowing "market timing" and "late
trading" by its largest customers resulting in millions of
dollars of losses to other shareholders.

## Salomon Analyst

*In re Salomon Analyst*
USDC Southern District of New York
Securities class action against Salomon Smith Barney,
Inc., and Salomon's lead telecommunications analyst
Jack Grubman related to their scheme to defraud
investors by perpetuating the myth of financial viability
of WorldCom. Defendants are alleged to have issued
false and misleading analyst reports and ratings
regarding the business operations and price targets of
WorldCom common stock.

## Qwest

*California State Teachers' Retirement System v. Quest
Communications International Inc., et al.*
San Francisco County Superior Court
Securities action on behalf of CALSTRS for losses in
excess of $100 million. The complaint charges certain
Qwest executives and directors, its accountants, and
banks with violations of state securities laws and
alleges that defendants made false and misleading
statements about Qwest's financial condition.

## American Continental Corp./lincoln Sav. & Loan

794 F.Supp. 1424 (D.Ariz. 1992)
*Aetna Cas. & Sur. Co. V. Dannenfeldt*
778 F.Supp. 484 (D. Ariz 1991)
Securities class action on behalf of shareholder and
bondholder victims of Charles Keating, and related
insurance coverage litigation, including lengthy jury
trial. (Largest jury verdict against an individual
defendant in American History.)

## Worldcom

*The Regents of the University of California v.
Salomon Smith Barney, Inc.,et al.*
San Francisco County Superior Court
Securities action, on behalf of the Regents of the
University of California, for a loss of more than #350
million. Defendants are alleged to have issued false
and misleading analyst reports and ratings regarding
the business operations, of WorldCom, and price
targets for WorldCom common stock.

## Orange Co.

*Smith v. Merrill Lynch*
Orange County Superior Court
Securities class action on behalf of the debt securities
holders of Orange County and its investment pool
participants. (Settled 1997)

## Acclaim

*Campbell v. Petermeier, et al.*
Alameda County Superior Court
*Campbell v. Acclaim Entertainment, Inc., et al.*
No. 96 Civ. 5099 TCP (E.D.N.Y.)
Securities class action arising from stock swap merger.
(Settled 1997)

## Harmsen v. Smith

693 F.2d 932 (9th Cir. 1982)
586 F.2d. 156 (9th Cir. 1978)
542 F.2d 496 (9th Cir. 1976)
Securities class action on behalf of shareholders of
United States National Bank against C. Arnholdt
Smith and other officers, directors, and insiders.
Multi-million dollar jury verdicts upheld on appeal.
The first securities class action tried on both liability
and damages to a jury.

## Pilgrim

U.S. District Court of California
Mutual fund fraud class action (Settled 1997)

## Oak Technologies

Santa Clara County Superior Court
Securities class action for insider trading and abuse of
control. (Appointed co-lead counsel, 1996)

## HomeFed

S.D. Cal. No. 90-799 (CGA)
Represented bankrupt S&L as plaintiff in action against
former S&L officers, directors and accountants for
mismanagement and breach of fiduciary duty.

## Informix

*Smurthwaite v. White*
San Mateo County Superior Court
Lead derivative counsel in consolidated shareholder
derivative action against corporate officers, directors
and accountants relating to accounting fraud.

## Sybase

*Krim v. Kertzman*
Alameda County Superior Court
Lead derivative counsel in consolidated shareholder
derivative action against corporate officers and
directors.

## Bankamerica Corp.

San Francisco Superior Court
Shareholder class action for failure to pay control
premium in connection with merger.

## West Valley

*Knight v. Rayden*
Santa Clara County Superior Court
Real estate limited partnership investors class action.
(Settled 1995/96)

## Bily v. Arthur Young Co.

3 Cal.4th 370 (1992)
Professional negligence action on behalf of shareholder
for materially misleading financial statements.

## J. David Dominelli

*Rogers & Wells v. Superior Court*
175 Cal.App.3d 545 (1986)
Investors fraud litigation on behalf of hundreds of
clients in San Diego County Superior Court, including
lengthy jury trial.

## Central Bank

*Almeida v. Peat Marwick Mitchett & Co.*
Alameda County Superior Court
Shareholder class action. (Settled 1993)

## Pyramid Realty

*Dickinson v. Duck*
132 B.R. 648 (N.D. Cal. 1991)
Class action investment fraud litigation.

## Technical Equities

Santa Clara County Superior Court
*Abelson v. National Union*
28 Cal.App. 4th 776 (1994)
*McLaughlin v. National Union*
21 Cal.App.4th 486 (1994)
*Chatton v. National Union*
10 Cal.App.4th 846 (1992)
*Helfand v. National Union*
10 Cal.App.4th 869 (1992)
*National Union v. Aaronson*
163 B.R. 350 (N.D.Cal. 1993)
Industrial Indemnity v. Superior Court
214 Cal.App.3d 259 (1989)
Investor fraud litigation, and subsequent insurance
coverage and insurance bad faith litigation, on behalf
of hundreds of individual plaintiffs, including three
lengthy jury trials, and three court trials. (Largest
verdict in California for 1991)

## CBT Group

San Mateo County Superior Court
Derivative litigation by holder of American Depository
Shares against officers and directors of CBT Group
PLC for accounting fraud and insider trading.

## Examples of Consumer Litigation Experience

The firm is one of the most experienced law firms in the country in representing consumers in class action lawsuits against businesses and corporations. Class actions are lawsuits in which an individual, or a group of individuals, sues a business on behalf of all individuals who have similar claims against the business. By allowing numerous claims to be brought in one lawsuit, class actions provide redress for harms that might be too small to address through individual lawsuits. The firm typically represents consumers in class actions against corporations that have engaged in fraud, or produced defective and dangerous products.

## Anastasiya Komarova v. MBNA America Bank, N.A.; National Credit Acceptance, Inc.

San Francisco Superior Court — Case No.: CGC-06-456891

In a rare jury trial against a credit card collection agency, a San Francisco jury ruled in favor of a young woman who was the victim of an abusive campaign to force her to repay a debt she never incurred. Anne Marie Murphy and Justin T. Berger, two Associates at Cotchett, Pitre & McCarthy represented Anastasiya Komarova, who was awarded $600,000 from National Credit Acceptance, Inc. in 2008. Komarova had been subjected to nearly a year of hostile telephone calls to her work place and a spurious arbitration proceeding, all over a bogus credit card debt and despite the fact that she repeatedly told the agency she never had an account with the credit card company in question. In issuing its verdict, the San Francisco Superior Court jury described National Credit Acceptance's conduct as "outrageous." The verdict is believed to be one of the largest verdicts in the country by a sole plaintiff alleging credit abuse.

## In re: Hewlett-Packard Inkjet Printer Litigation

Cotchett, Pitre & McCarthy represents consumers who have been deceived by inaccurate low-on-ink warnings on Hewlett-Packard Inkjet Printers. The low-on-ink warnings appear even when there is a substantial amount of ink remaining in the ink cartridges, thereby misleading consumers into unnecessarily buying expensive ink cartridges.

## Rich v. Hewlett-Packard

Cotchett, Pitre & McCarthy represents consumers in a class action lawsuit against Hewlett-Packard, which has designed its printers to use color ink even when printing in black and white. Hewlett-Packard does not disclose this design to consumers, who are forced to buy expensive color ink cartridges even when they only print simple black and white documents.

## Citigroup

San Francisco County Superior Court
Consolidated class action on behalf of mortgage "packing" and "flipping" victims. Nationwide class certification for settlement purposes, and final approval of settlement, 2003.

## Ameriquest

San Mateo County Superior Court
"Bait and Switch" class action on behalf of mortgage borrowers. Class certified for all purpose in 2003. Settlement finally approved in 2005.

## Northern Trust Bank of California

Los Angeles County Superior Court
Class action on behalf of beneficiaries of fixed-fee trusts charged excess trustee fees over a 21 year period. Class certification for settlement purposes and final approval of settlement, 2005.

## Household Lending

USDC Northern District of California
Nationwide class action on behalf of predatory lending victims. Class certification for all purposes, 2003. Final approval of settlement, 2004.

## Old Republic

*Wisper v. Old Republic Title Co.*
*Verges v. Old Republic Title Co.*
San Francisco Superior Court
Lead and liaison counsel in consolidated consumer class action against title company for unfair business practices regarding fee overcharges and "cost avoidance" relationships with banks. Class certified for all purposes. Verdict of $14 million in 2001.

## Massachusetts General Life Ins. Co.

Santa Clara County Superior Court
"Vanishing premium" class action ob behalf of life insurance policyholders. Class certified for all purposes, 1999.

## Fairbanks Capital Corp.

USDC District of Massachusetts
Nationwide class action against mortgage loan servicing company for charging various improper fees, costs and charges. Class certification for settlement purposes and final approval of settlement, 2004.

## In re Louisiana-Pacific Corp. Inner-Seal OSB Trade Practices

*Agius v. Louisiana-Pacific Corp.*
USDC Northern District of California
Nationwide product defect/Lanham Act class action on behalf of owners and operators of building and homes with defective and improperly certified oriented strand board wood sheathing. (Class certified and settlement finally approved, 1998)

## Stewart Title Co. Of California

San Mateo County Superior Court
Represented 115 individual plaintiffs in 81 consolidated cases arising from pyramid scheme fraud relating to fractionalized deeds of trust.

## Goodyear tire & Rubber Co.

USDC Southern District of California
Class action by franchisees for unfair business practices. (Settled 1996)

## Executive Life

Los Angeles County Superior Court
Action by insurance commissioner on behalf of failed insurance company (Filed April 1991); also filed as a class action . (Settled 1994/95)

## Fidelity Federal Bank

824 F.Supp. 909 (C.D. Cal. 1993)
91 F.3d 75 (9th Cir. 1996)
Class action on behalf of adjustable rate mortgage borrowers.

## First Capital Holdings

San Diego County Superior Court
Class action on behalf of policy holders of failed insurance company. (Settled 1992/93)

## Prop. 103

*Calfarm Ins. Co. v. Deukmejian*
48 Cal.3d 805 (1989)
Litigation regarding Proposition 103 (rate controls on insurance carriers) on behalf of Ralph Nader and his organization.

## San Francisco Unified School District    AIG

Sacramento County Superior Court
Consumer fraud and negligence case against a Fortune
250 energy company in a scheme to defraud the district
in connection with an energy contract to upgrade
schools and help the district save in energy costs.
(Settled in June of 2004 for $43.1 million)

*In re America International Group, Inc. Securities
Litigations*
USDC Southern District of New York
Securities fraud class action

## National Gas Anti-Trust Cases I, II, III, & IV    Commonwealth Life Ins. Co.

*City of Los Angeles v. Reliant, et al.*
Los *Angeles County Superior Court*
*County of Santa Clara v. Sempra, et al.*
San Diego County Superior Court
*City and County of San Francisco v. Sempra, et al.*
San Diego County Superior Court
*County of Alameda v. Sempra, et al.*
Alameda County Superior Court
*County of San Diego v. Sempra, et al.*
San Diego County Superior Court
*City of San Diego v. Sempra, et al.*
San Diego County Superior Court
*County of San Mateo v. Sempra, et al.*
San Mateo County Superior Court
*UC Regents v. Reliant, et al.*
Alameda County Superior Court
*Association of Bay Area Government v. Sempra, et al.*
Alameda County Superior Court
*Sacramento Municipal Utilities District v. Sempra, et
al.*
Sacramento County Superior Court
*School Project for Utility Rate Reduction v. Sempra,
et al.*
Alameda County Superior Court
*Nurseymen's Exhcnage, Inc., v. Sempra, et al.*
San Mateo County Superior Court
*Owens-Brockway Glass Containers, Inc. v. Sempra,
et al.*
Alameda County Superior Court
*TAMCO Steel, et al. v. Dyegry, et al.*
San Diego County Superior Court
Antitrust litigation on behalf of eleven public entities
and others for the reporting of false information by
non-core natural gas retailers to published price indices
to manipulate the natural gas market during the
California energy crisis.

Alameda County Superior Court
Consumer fraud class action against provider of
reverse mortgages to elderly consumers. Class
certified on Business and Professional Code Violation
for all purposes.

## Transamerica HomeFirst, Inc.    Commercial Tissue Products

69 Cal. App. 4th 577 (1999)
San Mateo County Superior Court
Consumer fraud class action against provider of
reverse mortgages to elderly consumers. Class
certified on Business and Professional Code Violations
for all purposes.

*County of San Mateo v. Kimberly-Clark Corp.*
San Francisco County Superior Court
Antitrust class action on behalf of class of public entity
consumers of commercial sanitary paper products
against alleged price-fixing conspiracy among
producers. (Appointed co-lead counsel for public
entity class, 1998)

## Judicial Counsel of California

USDC Northern District of California
Successfully defended the Chief Justice of the State of California and the Judicial Counsel of California in an action brought by the National Association of Securities Dealers (NASD) to invalidate California's Ethics Standards for Neutral Arbitrators by demonstrating that the 11th Amendment bars federal actions against these state actors.

## Federal Energy Regulatory Commission (FERC)

United States Court of Appeals, 9th Circuit
Represented the California Sate Senate, the California State Assembly, and the City of Oakland in an action against FERC.. Petitioned the Court to issue a writ of mandamus to compel FERC to take action to ensure just and reasonable rates for energy in California and all the western states.

## Central Sprin

*County of Santa Clara v. Central Sprinkler Corp.*
Santa Clara County Superior Court
*Hart v. Central Sprinkler Corp.*
Los Angeles County Superior Court
Consumer class action against manufacturer of automatic fire suppression sprinklers for product defects and consumer fraud. (Class certified and settlement finally approved, 1999)

## Examples of Antitrust Litigation Experience

## Municipal Derivative Investment Antitrust Litigation

Along with co-counsel, CPM represents Los Angeles and numerous public entities who purchased Guaranteed Investment Contracts ("GICs") and other derivative investments. GICs and derivative investments are purchased from sellers of municipal securities through a competitive bidding process overseen by municipal securities brokers. They are purchased when public entities issue tax-exempt municipal bonds to raise funds to finance public works projects and have funds that are not immediately needed for the project. CPM's investigation has uncovered, and the complaints allege, that the competitive bidding process is a sham as securities sellers and brokers in the derivative investment market have engaged in a conspiracy to allocate the market and rig the bidding process in violation of antitrust law and common law.

## Municipal Bond Insurance Antitrust Litigation

CPM represents Los Angeles and numerous public entities who issued tax-exempt municipal bonds to raise funds to finance public works projects and were compelled to purchase insurance for those bond issuances. When a public entity issues bonds, its credit rating determines the interest it will pay to bond holders. To reduce the interest rate, public entities have had to purchase bond insurance to improve their credit worthiness (despite an historical default rate of less than 0.1 percent). CPM's investigation has uncovered and the complaints allege that the bond insurance companies violated antitrust law and common law by conspiring to maintain a dual credit rating system that discriminates against public entities (versus private corporations), causing public entities to pay unusually high premiums to purchase unnecessary bond insurance, and failure of the bond insurance companies to disclose they made risky investments in the subprime market that has led to the downgrading of the bond insurers' own credit ratings.

## International Air Transportation Surcharge Antitrust Litigation

MDL No. 1793 (N.D. Cal.)
Date Filed: October 27, 2006
On October 3, 2008, Judge Charles R. Breyer of the Northern District of California gave final approval to settlements entered into by CPM, together with Cohen, Milstein, Hausfeld & Toll, with Defendants Virgin Atlantic Airways, LTD and British Airways Plc worth approximately $204 million. The settlements resolve price-fixing claims of qualifying purchasers of long-haul air travel from Virgin Atlantic or British Airways, in both the United States and the United Kingdom under U.S. federal antitrust laws (1 U.S.C. §1) and the antitrust laws of the United Kingdom and European Union. Plaintiffs allege that the British Airways and Virgin Atlantic, which dominate the market for long-haul flights between the United States and United Kingdom and between the United Kingdom and other destinations, conspired to fix the fuel surcharges charged to passengers on such flights. Members of the settlement classes that submit claims will be refunded 33.3% of the fuel surcharges they paid on qualifying flights.

## SRAM (Static Random Access Memory) Antitrust Litigation

MDL No. 1819 (N.D. Cal.)
Date Filed October 17, 2006
CPM is the court-appointed Lead Counsel on behalf of the proposed class of direct purchasers in this multidistrict class action against the major manufacturers of SRAM (Static Random Access Memory), including Samsung, Toshiba, Renesas, Hynix, Cypress, and Micron. Plaintiffs allege that from November 1996 through December 2005 the Defendant companies conspired to fix, raise and maintain the prices of SRAM, a memory chip used in a wide variety of computer and consumer electronics products, ranging from cell phones to high-end network servers. In 2005 alone, the Defendants' worldwide SRAM sales were in excess of $2 billion. The Direct Purchaser Plaintiffs' claims are based on Defendants' alleged violation of the U.S. federal antitrust laws (15 U.S.C. § 1). The cases are currently pending before Judge Claudia Wilken in the U.S. District Court for the Northern District of California.

## Class Action Suit Alleges Price-Fixing Conspiracy in the Ocean Shipping Industry

On April 17, 2008, the Department of Justice's Antitrust Division raided the offices of a number of major ocean shipping companies, including Defendants Horizon and Crowley. Others received subpoenas for documents from the federal government. The subject of the federal investigation related to a pervasive conspiracy in the ocean shipping industry to artificially raise the price of shipping goods between the continental United States and its territories, primarily Puerto Rico, Guam and Hawaii. Cotchett, Pitre & McCarthy, on behalf of a class of individuals and entities, filed suit in the Southern District of Florida and the Northern District of California, accusing the major ocean shipping companies of violating federal antitrust laws and seeks the recovery of treble damages for the losses suffered by consumers. This conspiracy has enriched the Defendants while harming the American economy and American businesses. The suit accuses the Defendants of: (1) conspiring to fix fuel surcharges on domestic shipping rates, (2) conspiracy to decrease and stabilize shipping capacity, (3) conspiracy to fix domestic intermodal rates to shippers, and (4) a concerted and coordinated refusal to deal with freight forwarders. By conspiring to fix prices, the ocean shipping industry has deprived consumers of the right to free and fair competition.

## Webkinz Litigation
## Nuts for Candy v. Ganz Inc., et al.

CV 08 2873 (Northern District of California)
Date filed: June 09, 2008
Complaint for Violations of Section 1 of the Sherman Act and Section 3 of the Clayton Act
CPM has file a complaint on behalf of a proposed class of persons or entities in the United States who ordered Webkinz from Ganz Inc. on the condition that they also order products from Ganz's "core line" of products. The complaint alleges that Ganz conditions the purchase of its popular Webkinz plush line toy with the a minimum $1,000 purchase of non-Webkinz "core" line products in violation of federal antitrust laws.

## NAND Flash Memory Antitrust Litigation

Case No. 07-0086 (N.D. Cal.)
Date Filed: January 5, 2007
CPM, together with Zelle Hofmann Voelbel Mason & Gette, is the court-appointed Lead Counsel on behalf of the proposed class of indirect purchasers in this class action against the major manufacturers of NAND Flash Memory, such as Samsung, Toshiba, Renesas, Hynix, and SanDisk. Plaintiffs allege that beginning in January 1999 the Defendant companies conspired to fix, raise and maintain the prices of NAND Flash Memory. In the past few years, this type of memory chip has become one of the most widely popularized memory chips, and it is used in a whole host of computer and consume electronics products, including Apple's iPhone and the removable memory cards for digital cameras and video game consoles. In 2006 alone, the Defendants' worldwide NAND Flash Memory sales were in excess of $10 billion. The Plaintiffs' claims are based on Defendants' alleged violation of the various state antitrust laws, such as California, Florida, New York, and Minnesota. The cases are currently pending before Judge Saundra Armstrong in the U.S. District Court for the Northern District of California.

## Transpacific Passenger Air Transportation Antitrust Litigation

MDL No. 1913 (N.D. Cal.)
Date Filed: November 6, 2007
CPM, together Cohen, Milstein, Hausfeld & Toll, is the court-appointed lead counsel for a proposed class of direct purchasers of long-haul passenger air transportation. Plaintiffs allege that the major airlines providing transpacific flights to and from the United States conspired to fix the price of such flights, including associated fuel surcharges. Defendants in the case include Air New Zealand, All Nippon Airways, Cathay Pacific Airways, China Airlines, Eva Airways, Japan Airlines International, Malaysia Airlines, Northwest Airlines, Qantas Airways, Singapore Airlines, Thai Airways, and United Airlines. Plaintiffs allege that the price-fixing conspiracy by Defendants violated U.S. federal antitrust law (1 U.S.C. § 1) [and are investigating whether the conduct also violated the antitrust laws of other nations].

## Pacific Noncontiguous Ocean Shipping Antitrust Litigation

MDL No. 1972 (district assignment pending)
Date Filed: May 9, 2008
CPM, with co-counsel, have filed two complaints on behalf of proposed classes of direct purchasers of domestic ocean shipping services between the U.S. mainland and Hawaii ("the Hawaii Trade") and between the U.S. mainland and Guam ("the Guam Trade"). These complaints-which CPM is seeking to have consolidated along with related complaints brought by other plaintiffs-allege that the two carriers that dominate the Hawaii and Guam Trades, Matson Navigation and Horizon Lines, have conspired to fix the price of domestic ocean shipping in the two trades in violation of U.S. federal antitrust law (15 U.S.C. § 1).

## Puerto Rico Ocean Shipping Antitrust Litigation

MDL No. 1960 (district assignment pending)
Date filed: April 23, 2008
CPM, with co-counsel, have filed a complaint of behalf of proposed class of direct purchasers of domestic ocean shipping services between the U.S. mainland and Puerto Rico ("the Puerto Rico Trade"). The complaint-which CPM is seeking to have consolidated with related complaints brought by other plaintiffs-alleges that the carriers that dominate the Puerto Rico Trade, Horizon Lines, Sea Star Lines, Crowley Liner Services, and Trailer Bridge, have conspired to fix the price of domestic ocean shipping in the Puerto Rico Trade in violation of U.S. federal antitrust law (15 U.S.C. § 1).

## Air Cargo Shipping Services Antitrust Litigation

MDL No. 1775 (E.D.N.Y,)

Date Filed: June 27, 2006

CPM, with co-counsel, is the court-appointed lead counsel for a proposed class of U.S. indirect purchasers of international air freight services. The case alleges that the providers of international air freight services conspired to fix the prices of such services, including fuel surcharges. The case names almost forty international air freight carriers as defendants. The claims of the United States indirect purchasers is brought under the antitrust laws and consumer protection laws of various U.S. states. On April 4, 2008, the Court preliminarily approved a proposed settlement worth over $85 million with defendants Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines, Ltd. For information regarding the proposed settlement, please visit http://www.aircargosettlement.com.

## Freight Forwarders Antitrust Litigation

No. CV 08-0042 (E.D.N.Y.)

Date Filed: January 3, 2008

CPM, with co-counsel, have filed a complaint on behalf of a proposed class of direct purchasers of freight forwarding services in the United States. "Freight forwarding services" includes services relating to the organization of transportation of items via air, ship, rail, and truck, both nationally and internationally. The complaint alleges that the major providers of freight forwarding services conspired to fix the prices of such services in violation of U.S. federal antitrust law (15 U.S.C. § 1).

## LTL Shipping Service Antitrust Litigation

MDL No. 1895 (N.D. Ga.)

Date filed: October 18, 2007

CPM, with co-counsel, represent a proposed class of direct purchasers of less-than-truckload ("LTL") freight shipping services. The case alleges that all the national and regional trucking freight carrier conglomerates conspired to fix fuel surcharges in violation of U.S. federal antitrust law (15 U.S.C. § 1).

## Hip And Knee Implant Marketing Litigation

MDL No. 1973 (district assignment pending)

Date filed: March 24, 2008

CPM, with co-counsel, has filed two complaints on behalf of proposed classes of persons who underwent hip or knee implant surgery. The complaints allege that the major manufacturers of hip and knee implants have engaged in a pervasive kickback scheme, using phony consulting agreements with orthopaedic surgeons, to improperly funnel money to doctors and hospitals in return for choosing the manufacturer's device during surgeries. This scheme artificially raised the costs of hip or knee implants paid for by members of the proposed class in violation of state antitrust and consumer protection laws.

## Kopies, Inc. et al vs. Eastman Kodak Co.

Civ. No. C94-0524 JLQ (N.D. Cal.)

Antitrust class action by copier service firms against parts manufacturer for illegal tying of products and services. (Class certified, 1994; settlement finally approved, 1999)

## In re Commercial Tissue Products Public Entity Indirect Purchaser Antitrust Litigation

Coordinated Proceedings 4027

County of San Mateo v. Kimberly-Clark Corp.
San Francisco County Superior Court No. 989138
Antitrust class action on behalf of class of public entity consumers of commercial sanitary paper products against alleged price-fixing conspiracy among producers. (Appointed co-lead counsel for public entity class, 1998)

## E. & J. Gallo Winery v. EnCana Energy Services, et al.

03-5624 (E.D. Cal.)
Antitrust action against natural gas merchants for manipulating prices charged to end users for natural gas.

## Dry Creek Corporation v. El Paso Corporation

JCCP 4221 (Super. Ct. San Diego Cty.). Antitrust action against El Paso for withholding natural gas from California in order to drive up prices.

## Hydrogen Peroxide Antitrust Litigation

USDC Northern District of California
Antitrust class action for conspiracy to fix prices of hydrogen peroxide manufactured and sold by defendants who were engaged in an alleged price-fixing conspiracy. (Currently pending before the Judicial Panel on Multi-district Litigation)

## Bathroom Fittings

Los Angeles County Superior Court
Antitrust class action for conspiracy to fix prices of Bathroom Fitting manufactured by defendants participating in an alleged price-fixing conspiracy. (Currently before the Judicial Panel for Coordination Proceedings)

## Magazine Paper

San Francisco County Superior Court
Antitrust class action for price-fixing conspiracy against magazine paper products international Paper, Co., MeadWestvaco Corporation, Norse Skog, Stora Enso, Sappi Limited, S.D.Warren Company and others.

## Foundry Resins

USDC Southern District of Ohio
Antitrust class action for conspiracy to fix prices of resins manufactured by Ashland Inc., Ashland Specialty Chemical Company, Borden Chemical Inc., Delta HA, Inc., HA International LLC.

## Automotive Paint

Alameda County Superior Court
Antitrust class action for conspiracy to fix the price of auto paint by manufacturers engaged in an alleged price-fixing conspiracy.
(Pending Partial Settlement 2005, Class Certified 2004, Appointed Co-Liaison Counsel, 2002)

## Dynamic Random Access Memory (DRAM)

USDC Northern District of California
Antitrust class action for a price-fixing conspiracy amongst DRAM manufactures. (Appointed Co-Discovery Chair 2002)

## Methionine

USDC Northern District of California
Antitrust class action against Novus International, Mitsui & Co., Nippon Soda, Rhone-Poulenc, Degussa-Huls and others for conspiracy to fix prices and restrain trade. (Appointed co-lead counsel for Class, class certified, 2000; settlement finally approved, 2002)

## Eastman Kodak Co.

USDC Northern District of California
Antitrust class action by copier service firms against parts manufacturer for illegal tying of products and services. (Class certified, 1994; settlement finally approved, 1999)

## Citric Acid

USDC Northern District of California
Antitrust class action against Archer-Daniels Midland Co. and others for conspiracy to fix prices and restrain trade. (Class certified, 1996, settled in part, 1998)

## Beer

USDC Northern District of California
Antitrust class action on behalf of specialty beer brewers against Anheuser-Busch, Inc. for attempt to monopolize U.S. beer industry by denying access to distribution channels.

## Sodium Gluconate

Chemical Distribution, Inc. v. AKZO Nobel Chemicals, BV
Chemical Distribution, Inc. v. Roquette Freres
USDC Northern District of California
Antitrust class action for price fixing of sodium gluconate, an industrial cleaning agent. (Class certified, 1998; settlement finally approved, 1999)

## Truta v. Avis Rent A Car System, Inc.

193 Cal.App.3d 802 (1987)
Class action for antitrust and unfair business practices.

## Livingston v. Toyota Motor Sales USA, Inc.

USDC Northern District of California
Antitrust class action under Sherman Act by purchasers of Toyota vehicles for secret rebates. (Settled 1997)

## Examples of Qui Tam Litigation

## Ischemia Research & Education Foundation

San Francisco Superior Court
Qui tam California False Claims Act case against research foundation for failure to pay direct and overhead costs in clinical drug studies to its host university. (Settled, 1997)

## Columbia HCA

USDC Northern District of California
Qui tam False Claims Act litigation against healthcare provider for false billing.

## Examples of First Amendment Litigation Experience

## Isuzu Motors Ltd. v. Consumers Union

USDC Central District of California
Represented defendant publisher of Consumer Reports in defamation /product disparagement litigation brought by auto manufacturer against non-profit consumer testing organization.

## Suzuki v. Consumers Union

USDC Central District of California
*Suzuki Motor Corp. Japan v. Consumers Union of the United States, Inc.*
Represented defendant publisher of Consumer Reports in defamation/product disparagement litigation brought by auto manufacturer against non-profit consumer testing organization.

## Kendall-Jackson Winery v. E.J. Gallo Winery

USDC Northern District of California
150 F.3d 1042 (9th Cir. 1998)
Represented defendant in trade dress and unfair business practice litigation. (Judgment and verdict for defendant after jury trial.)

## In re Cable News Network and Time Magazine "Operation Tailwind" Litigation

USDC Northern District of California
*Sheppard v. Cable News Network, Inc.*
Action against Time and CNN on behalf of Vietnam veterans falsely reported to have committed war crimes in Laos.

**Exhibit 2**

Joseph W. Cotchett



As stated by the National Law Journal, **Joseph W. Cotchett** is considered by plaintiffs and defense attorneys alike to be one of the foremost trial lawyers in the country. He has been named one of the 100 most influential lawyers in the nation for the past 10 years.

As reported in the *San Francisco / Los Angeles Daily Journal*, he is "considered one of the best trial strategists in the state" who built a career out of representing the underdog against powerful interests. He is a fearless litigator and once tried two cases at the same time (one in the morning and one in the afternoon) and won them both in San Diego Superior Court in 1984. His clients range from corporate giants to groups like Consumers Union – but the issue must be correct for Cotchett. In 2003, the *San Francisco Chronicle* rated him as one of the best in the Bay Area, saying, "The Burlingame attorney has had a star career that's not only talked about in legal circles but has made headlines around the country. Known mostly as a plaintiffs' lawyer, many of his cases are filed on behalf of fraud victims, and have a widows-and-orphan flavor to them."

Cotchett consistently has been named one of the most influential lawyers in California. In its latest top 100 most influential list in 2006, the *San Francisco / Los Angeles Daily Journal* said, "The high-profile trial attorney is now taking on the Bush administration after joining the legal team of CIA agent Valerie Plame, who has accused senior officials of deliberately revealing her identity." In addition, Cotchett repeatedly has been named by the legal press as one of the top 10 trial attorneys in the state and has been listed in every edition of *Best Lawyers in America* since its inception in 1989.



In the 1980s, Cotchett won mammoth judgments and settlements for investors in white-collar fraud cases, with jury verdicts of more than $200 million arising out of the collapse of the Technical Equities Corp. in San Jose. He is known nationally as the lead trial lawyer for 23,000 plaintiffs in the Lincoln Savings & Loan Association/American Continental Corp. downfall in 1990 involving Charles Keating and others. He won one of the then largest jury verdicts, $3.3 billion, which was later reduced to $1.75 billion. He also gained nearly $300 million in settlements from lawyers, accountants and other professionals caught up in the scandal in a jury trial in Tucson, Arizona.

During his 40-year legal career, he has tried more than 100 cases, and settled hundreds more, winning numerous jury verdicts, ranging from a $10 million malicious prosecution suit to several defense verdicts in civil cases. He successfully negotiated a settlement for $25 million in a qui tam suit on behalf of the University of California and hundreds of millions of dollars in antitrust, securities and major fraud cases.

In addition, he has represented both the National Football League and teams since the early 1980s in various legal actions. As counsel for E. & J. Gallo Winery, he won a defense jury verdict in a celebrated trade dress infringement case.

In 2000, he served as trial counsel for Consumers Union, successfully defending the watchdog consumer group in a product disparagement and defamation suit. Isuzu Motors of Japan had sued Consumers Union for disparagement to the 1995-96 Trooper, claiming millions in damages. Following an eight-week trial, a jury ruled in favor of Consumers Union. Trial Lawyers for Public Justice honored Cotchett as "Trial Lawyer of the Year Finalist" in 2000 in honor of his "outstanding contribution to the public interest" through his work for Consumers Union. Also in 2000, Consumer Attorneys of California gave Cotchett its "Presidential Award of Merit." In 2004, he was the lead trial counsel for Consumers Union in a product defamation suit brought by Sharper Image. The suit was thrown out of court in what was considered a major victory for a free press.

In recent years, Cotchett has taken on major corporate entities and Wall Street. He and his firm are involved in litigation resulting from nearly every major corporate scandal including Enron, Worldcom, Global Crossing, Homestore.com, Qwest, Montana Power Company and numerous others on behalf of private investors and public pensions. The firm has represented the California Public Employees' Retirement System, California State Teachers' Retirement System, and the University of California Board of Regents, along with numerous political subdivisions of the state, such as counties, cities and districts.

Cotchett is involved in extensive pro bono work. In one such case, he brought a lawsuit against the United States on behalf of 8,600 Amerasian children in the Philippines who were left in villages by the closing of the Subic Bay Naval Base. The case ended in a settlement giving direct U.S. aid to the children fathered by U.S. servicemen and a television documentary on the subject. He regularly takes on pro bono causes including environmental and public policy matters and his firm represents and advises several Native American groups.

Cotchett successfully represented the Chief Justice of the California Supreme Court and the individual judges and members of the Judicial Council, in litigation brought against them by the New York Stock Exchange and the National Association of Securities Dealers. The two Wall Street forces had filed suit against the Judicial Council challenging the State of California on establishing guidelines for arbitrators who hear complaints from investors in the state.

Cotchett received his B.S. in Engineering from California Polytechnic College, San Luis Obispo in June 1960, being named an Outstanding Graduate, and his J.D. from Hastings College of Law at the University of California in June 1964. In June 2002, Cotchett received an honorary Doctor of Laws from Cal Poly and the trustees of The California State University. In May 2006, Cotchett received an honorary Doctor of Letters from Notre Dame de Namur University.

Following California Polytech College, he served in the U.S. Army Intelligence Corps, followed by years as a Special Forces paratrooper and JAG Corps officer, in the active reserves, and retired in 1991 with the rank of Colonel. He is a member of many veteran and airborne associations having served on active duty 1960-1961. From 2001 to 2005, he served on the board of the Army War College Foundation in Carlisle, Pennsylvania. The Foundation supports the work of the prestigious Army War College at Carlisle Barracks, Pennsylvania, the graduate school for the senior commanders of all branches of the service, including officers from foreign allies.

He has been an active member of national, state and local bar associations, including the California, New York and District of Columbia bars. He is a Fellow of the prestigious American College of Trial Lawyers and The

International Society of Barristers and an Advocate in the American Board of Trial Advocates. He also is a Fellow and current board member of The International Academy of Trial Lawyers. A former Master of the American Inns of Court, he serves on various advisory boards for professional organizations.

He also has served on the Advisory Board of the Witkin Institute, the mission of which is to further B.E. Witkin's commitment to advancing the understanding of California law and improving the administration of justice.



He is the author of numerous articles and a contributing author to numerous magazines. His books include *California Products Liability Actions*, Matthew Bender; *California Courtroom Evidence*, LexisNexis; Federal Courtroom Evidence, LexisNexis; *Persuasive Opening Statements and Closing Arguments*, California Continuing Education of the Bar (1988); *The Ethics Gap*, Parker & Son Publications (1991); *California Courtroom Evidence Foundations*, Parker Publications (1993); and numerous law review articles. He is a prolific author of op-ed pieces and articles on public policy. In 2002, he co-authored and published the book *The Coast Time Forgot*, a historic guide to the San Mateo County coast.

In addition, Cotchett serves on the Federal Judicial Advisory Committee, a bipartisan group that submits federal judicial nominations in California to President Bush. The committee was authorized by the Bush Administration and California's two Democratic senators, Dianne Feinstein and Barbara Boxer. Cotchett is one of three Democrats on the special six-person committee for the Central District of California (Los Angeles).

Cotchett has lectured at numerous law schools including Harvard Law School, the University of Southern California, Georgetown Law Center, Stanford, Boalt, and his alma mater U.C. Hastings. His subjects include evidence, trial practice and professional ethics. He also is a keynote public speaker and lecturer on contemporary subjects of law.

He has been honored by the State Bar of California by serving on the Board of Governors from 1972 to 1975. He also served on the California Judicial Council from 1976 to 1980; the Board of Directors, Hastings College of Law, University of California for twelve years; California Commission on the Future of the Courts; and the California Select Committee on Judicial Retirement, the latter two appointed by the Chief Justice of California.

His civic work includes both past and present membership on the board of directors of the San Mateo County Heart Association; San Mateo Boys & Girls Club; Peninsula Association of Retarded Children and Adults; Bay Meadows Foundation; Disability Rights Advocates; and numerous Bay Area organizations. He presently sits as a member of the board of Public Citizen in Washington, D.C. and formerly served on the board of Earth Justice.

In 1996, he was awarded the Anti-Defamation League's Distinguished Jurisprudence Award. The award was established to recognize individuals in the legal community who have exhibited humanitarian concerns, and whose everyday actions exemplify the principals on which the Anti-Defamation League was founded.

In January of 2000, the University of California Hastings College of Law opened the Cotchett Center for Advocacy recognizing Cotchett as one of its outstanding graduates. Chief Justice Ronald M. George of the California Supreme Court and Associate Justice Anthony Kennedy of the U.S. Supreme Court honored Cotchett as speakers at the Founder's Day dedication of the center. In November of 2006, President John B. Oblak and other officials of

Notre Dame de Namur University in Belmont, California dedicated the Joseph W. Cotchett Business Studio for students.

In March of 2000, Cotchett was named to the California State Parks Commission. The commission establishes general policies for the guidance of the Parks Department in the administration, protection and development of the state park system. He served as Chairperson in 2002-2003.

In 2003, Cotchett was honored by Disability Rights Advocates for his nearly 40 years of civil rights work. At a San Francisco dinner in October attended by more than 500 lawyers, judges and community leaders, this was how Cotchett was described:

> *Joe Cotchett has been a champion for justice since his college days. As an engineering student in the South, Joe challenged segregation by drinking from segregated water fountains and riding in the back of buses. Later, as a student at Cal Poly, Joe successfully established the first integrated fraternity, which prompted the other fraternities on campus to follow suit.*
>
> *Joe's legal career has involved representing the underdog and doing extensive pro bono work. His civil rights commitment has been leveraged over and over by his financial support of legal fellowships. He has given a 'kick-start' to the public interest careers of the new law graduates at Trial Lawyers for Public Justice, Public Citizen, Southern Poverty Law Center and Disability Rights Advocates. Through these fellowships, Joe has helped to ensure social change through law. Joe guided DRA as a board and litigation committee member from its infancy 10 years ago into the defender of disability rights it has become today.*

Cotchett and his family are active in numerous Bay Area charitable organizations involving animals, children, women and minorities. They established the Cotchett Family Foundation that aids individuals and groups in need of assistance.

Continuing a distinguished history of community and civic involvement, in 2004 Cotchett endowed a $7 million fund to support science and mathematics teacher education at California State Polytechnic University to serve inner city and rural minority children. To honor the Cotchett family, the San Luis Obispo, California, university renamed its landmark Clock Tower building the "Cotchett Education Building." The gift supports science and mathematics teacher education initiatives at Cal Poly through the University Center of Teacher Education and the College of Science and Mathematics.

Frank M. Pitre



**Frank M. Pitre**, Frank M. Pitre, a San Francisco native, earned a B.S. cum laude and a J.D. from the University of San Francisco. Pitre served a legal externship with the California Supreme Court while at USF.

Considered to be one of the outstanding trial lawyers in areas of consumer fraud, commercial torts, and personal injury cases, Pitre has won millions of dollars for victims of consumer fraud and injury.

His skill as a trial lawyer has earned him recognition among his peers who have elected him as a member of the American College of Trial Lawyers, American Board of Trial Advocates, International Academy of Trial Lawyers and the National Board of Trial Advocacy. His membership in all four of these prestigious trial organizations is a remarkable accomplishment.

In 2009, Pitre was recognized by the *National Law Journal's "Plaintiff's Hot List"* for his work as co-lead trial counsel in the *In Re: Bextra and Celebrex Mktg., Sales Practices & Product Liability Litigation* (MDL 1699), which culminated in Pfizer agreeing to pay $894 million to settle consolidated injury and class action cases related to its pain killers Bextra & Celebrex.

He was honored by the San Mateo County Trial Lawyers Association as Trial Lawyer of the Year in 2006, has been selected for inclusion in Best Lawyers in America each year since 2006 and ranked among the top 500 litigators in America by Lawdragon Magazine. In addition, he has been named a Northern California (Top100) Super Lawyer for each year since 2005.

He is a past president of Consumer Attorneys of California (CAOC), the 3,000-member group of lawyers dedicated to protecting and seeking justice for consumers.

Pitre had served as liaison counsel and a member of the Plaintiffs Steering Committee in the Alaska Air Flight 261 air crash. In addition, he was a member of the Plaintiffs Executive Committee arising out of the Singapore Airlines Flight 006 air crash in Taiwan. Immediately prior to his committee appointments in Alaska Air and Singapore Airlines, he served as a member of the Plaintiffs Management Committee in the California Diet Drug Litigation where thousands of individuals were victimized by the diet pill combination Fen-Phen, which was condemned by the FDA for causing adverse health effects.

Pitre's numerous jury trials include a multi-million dollar wrongful death verdict in Orange County Superior Court in Santa Ana, California, against the State Department of Transportation, a highway contractor and a trucking company. The verdict, one of the largest of its kind for Orange County at the time, was affirmed on appeal, and as a result Pitre was a finalist for CAOC's Trial Lawyer of the Year award (2004).

Pitre served as co-lead trial counsel for Consumers Union, obtaining a defense verdict in favor of Consumers Union in a product disparagement case where the plaintiff, Isuzu Motors of Japan, sought damages of multi- million dollars. His work in defense of Consumers Union earned him recognition as a finalist for Trial Lawyer of the Year Award 2000.

Pitre won a multi-million dollar verdict for the victims of a high profile San

Francisco balcony collapse. He also secured a large verdict for compensatory and punitive damages before a San Francisco jury which found the defendant to have wrongfully deprived the plaintiff of her partnership interest in a successful business. In addition, he served as co-lead trial counsel with Joseph W. Cotchett for E. & J. Gallo, winning a landmark trade dress infringement case for the winery.

His notable federal class action cases include *Livingston v. Toyota Motor Sales USA, Inc.,* involving a nationwide antitrust class action under the Sherman Act by purchasers of more than three million Toyota vehicles.

His experience in mass tort cases began in 1987 with the PSA Air Crash Cases, representing numerous plaintiffs in wrongful death actions following the crash of PSA Flight 1771, where he served as a member of the Plaintiffs Steering Committee, and later as plaintiffs co-lead trial counsel for the six-week jury trial which established the defendants' liability. The success of the PSA Air Crash Cases led to his appointment as a member of the Plaintiffs Steering Committee in Carnahan et al. v. State of California, which successfully resolved hundreds of claims for personal injuries and damages against more than 100 defendants.

Pitre is the author of numerous articles, including "Abuse of Process," *California Tort Damages*, California Continuing Education of the Bar, 1988; and "Tort Trends," *The Docket*, San Mateo County Bar Association, 1989-1994. He is co-author of "Jury Instructions: A Practical Approach to their Use," *Civil Litigation Reporter*, March, 1984; "Arguing Punitive Damages," *Civil Litigation Reporter*, California Continuing Education of the Bar, 1991; "Effective Opening Statements," *California Litigation*, Journal of The Litigation Section, California State Bar, 1991; "Jury Trial Tips: Witnesses," *California Litigation*, Journal of The Litigation Section, California State Bar, 1991; and "Winning Through a More Effective Direct Examination," *California Litigation*, Journal of the Litigation Section, California State Bar, 1991. Since 1998 he has served as the author of the Annual Supplement to "California Personal Injury Proof," published by the California Continuing Education of the Bar.

Pitre has served on the faculty of the Hastings College of Advocacy and the University of San Francisco Trial Advocacy Program. He also has served as Judge Pro Tem, San Mateo County Superior Court.

Pitre is a member of the Bar Association of San Francisco; San Mateo County Bar (Member, Board of Directors, 1990-1992) and American Bar Associations; the State Bar of California; San Mateo County Barristers (Member, Board of Directors, 1984-1986); Consumer Attorneys of California (Vice President 2002, 2004; President 2005-06); Consumer Attorneys of San Mateo County (Member, Board of Directors 1996 to present); Association of Trial Lawyers of America; American Trial Lawyers Association (Top 100); Litigation Counsel of America; Association of Business Trial Lawyers (Member, Board of Directors 1996 to present); and a member of the American Board of Trial Advocates, San Francisco Chapter, and National Board of Trial Advocacy. He is a Fellow of the American College of Trial Lawyers and the International Academy of Trial Lawyers and the American Bar Foundation.

Nancy L. Fineman



**Nancy Leavitt Fineman**, a principal at Cotchett, Pitre & McCarthy, was born in San Francisco and raised in the East Bay. She received her undergraduate degree from the University of California, Berkeley in 1981 and her J.D. at Boalt Hall School of Law in 1986.

She joined Cotchett, Pitre & McCarthy in 1989, after practicing with a San Francisco firm and working as a Research Attorney for the San Mateo County Superior Court. At Cotchett, Pitre & McCarthy, her practice currently emphasizes complex business litigation, employment litigation, securities cases, antitrust and intellectual property. She is currently a member of the Cotchett, Pitre & McCarthy team representing victims of the Bernie Madoff Ponzi Scheme. She and partner, Joseph W. Cotchett, were the first lawyers to interview Bernie Madoff in prison. She also currently represents the Liquidating Trustee of Humboldt Creamery in litigation against certain of Humboldt Creamery's officers and its outside accountant for financial fraud. Her cases also include FINRA arbitrations on behalf of investors, representing the bankruptcy trustee in litigation involving the collapse of the Montana Power Company, and representing CalSTRS and other investors in Homestore.com. She represented public and private entities pursuing litigation against natural gas companies for manipulation of retail natural gas prices in California and individuals who invested in tax strategies now called tax shelters by the IRS. She has successfully challenged certain provisions in arbitration agreements so that the arbitration provisions are more favorable to individuals.

Although most of her cases involve the representation of plaintiffs, she does defense work, having defended Fisher Investments, All Davis of the Oakland Raiders, Charles Schwab Co., E. & J. Gallo Winery and others. She also has represented many *pro bono* clients.

She has substantial trial and arbitration experience in the areas of professional negligence, personal injury, employment, business matters and trade dress infringement.

Ms. Fineman also has an active appellate practice. Some of her reported decisions include: *Simpson v. AOL Time Warner Inc.* (9th Cir. 2006) 452 F.3d 1040) vacated by (9th Cir. 2008) 519 F.3d 1041; *Fazio v. City & County of San Francisco* (9th Cir. 1997) 125 F.3d 1328; *Baker v. BDO Siedman, L.L.P,* (N.D. Cal. 2005) 390 F.Supp.2d 919; *Bily v. Arthur Young* (1992) 4 Cal.4th 370; *Regents of the Univ. of California v. Superior Court* (2008) 165 Cal. App. 4th 672; *Centerpoint Energy Inc. v. Superior Court* (2007) 157 Cal. App. 4th 1101; *Aquila Inc. v. Superior Court* (2007) 148 Cal. App. 4th 556; *City of Santa Cruz v. PG&E* (2000) 82 Cal.App.4th 1167; *Holmes v. Lerner* (1999) 74 Cal.App.4th 442; *County of Alameda v. PG&E* (1997) 51 Cal.App.4th 1691 *Balthazar v. Verizon Haw. Inc.*, Supreme Court of Hawaii, 109 Haw. 69; 123 P.3d 194 (2005). She also has been the appellate attorney in many unpublished decisions.

She has lectured and written extensively. In December 2009, she was interviewed by the National Association of Corporate Directors, Silicon Valley Chapter about preventing financial fraud. From 2001-2009, she was an annual speaker for the CEB Torts Practice: Recent Developments. She is a regular speaker to lawyers and paralegals on trial preparation and trial. She has addressed the Annual State Bar Convention, the State Bar's Labor and

Employment Section, the California Trial Lawyers' Association, the San Mateo County Bar Association, the San Mateo County Women Lawyers, Boalt Hall and other groups. She has been a contributing author to Mathew Bender; a co-author with Joseph W. Cotchett of "Developing Damage Theories in Commercial Class Actions for the National College of Advocacy," and a co-author with Cotchett of "Enron, Arthur Anderson and Wall Street, Slain by Trial Lawyers" for ATLA.

Ms. Fineman serves as a Judge Pro Tem for San Mateo County Superior Court. She currently is a member of the Board of Directors of the San Mateo County Bar Association, the Boalt Hall School of Law Alumni Association, and the Multi-Option ADR Project for San Mateo County. She is past President and a current board member of the San Mateo County Women Lawyers Section Educational Foundation. She has served as the Chair of the San Mateo County Bar Association Professional Equality Committee, a member of the California State Bar Judicial Nominees Evaluation Commission, the San Mateo Women Lawyers' Board, the 20th Year Reunion Committee for Boalt Hall and other boards and commissions.

Ms. Fineman and her husband, Ed, are very active in community affairs. She served as past president and current Council member of The Christian Action Life Line ("CALL") Primrose Center, a Burlingame food bank and emergency referral facility. She is an Honorary Member of the Contra Costa Civic Theatre's 50 Year Reunion Committee. She also is involved in her children's school through serving in a number of positions including Co-Chair of the Jewish Community High School Annual Fund.

**Related Video:**
NACD, Silicon Valley Chapter, interviews Fineman about the Bernie Madoff fraud.

Stuart G. Gross



**Stuart G. Gross** is a principal at Cotchett, Pitre & McCarthy, where he focuses on antitrust, environmental, and financial sector litigation. Gross is admitted to practice in California and New York and has an active practice in the state and federal courts of both states.

Prior to joining Cotchett, Pitre & McCarthy, Gross clerked for U.S. District Court Judge Samuel Conti of the Northern District of California and practiced as a litigation associate in New York, focusing on complex business litigation and Foreign Corrupt Practices Act defense.

Gross received a B.A. with honors in anthropology from Wesleyan University in Middletown, Connecticut, a J.D. cum laude from the University of Michigan Law School, and an M.A. in Southeast Asian Studies from the University of Michigan.

Gross has published several pieces on the legal systems of Indonesia and Malaysia and their intersection with international legal orders, and has advised governmental and non-governmental organizations on related subjects.

Gross' publications include: *WTO Government Procurement Rules and the Local Dynamics of Procurement Policies: A Malaysian Case Study*, 17 Eur. J. Int'l L. 151 (2006), coauthored with Prof. Christopher McCrudden of Oxford University; *Book Review: Sebastiaan Pompe, The Indonesian Supreme Court: A Study of Institutional Collapse*, 53 Am. J. Comp. Law 947, Fall (2005); *Inordinate Chill: BITs, Non-NAFTA MITs And Host-State Regulatory Freedom – An Indonesia Case Study*, 24 Mich. J. Int'l Law 893 (2003).

Gross advised the governments of New Zealand and Australia in bilateral and trilateral trade negotiations with Malaysia, based on his expertise in Malaysian government procurement law and policies. Gross was also heavily involved in efforts by international and Indonesian non-governmental organizations to defend an Indonesian government ban on open-pit mining in protected forests from attack by transnational mining companies. This work included drafting multiple submissions to Australian government authorities and the Indonesian House of Representatives (Dewan Perwakilan Rakyat), and resulted in an invitation to testify as an expert witness from the Indonesian Constitutional Court (Mahkamah Konstitusi).

Gross is active in the San Francisco Chapter of the Surfrider Foundation, the Sierra Club, Human Rights Watch and the San Mateo County Bar Association.

Daniel Sterrett



**Daniel Sterrett** is a principal at Cotchett, Pitre & McCarthy, where he practices civil litigation focusing on business disputes, securities fraud and consumer protection.

Sterrett received a B.A. from the University of California Los Angeles and his Juris Doctorate from the University of California Hastings College of the Law. While at UCLA he earned both College and Departmental Honors. During law school he received an American Jurisprudence award in Trial Advocacy.

Sterrett represents numerous public entities who issued tax-exempt municipal bonds to raise funds to finance public works projects. To reduce the interest rate, public entities were forced to purchase bond insurance to improve their credit worthiness despite a consistently low default rate. Bond insurance companies violated antitrust law and common law by conspiring to maintain a dual credit rating system that discriminated against public entities, causing public entities to pay unusually high premiums to purchase unnecessary bond insurance, and failing to disclose that they made risky investments in the subprime market that has led to the downgrading of the bond insurers' own credit ratings.

Sterrett also represents public entities against financial institutions who conspired to decrease the returns that public entities earned on municipal derivative instruments by allocating the Municipal Derivative market amongst themselves and rigging the bidding process by which public entities acquired Municipal Derivatives. Municipal Derivatives are used by public entities to hold and preserve public monies raised from the sale of municipal bonds.

Sterrett is a member of the Consumer Attorneys of California, the San Mateo Bar Association and the American Trial Lawyers Association. He also volunteers at the San Mateo County High School Mock Trial Competition.

# EXHIBIT 3

**COTCHETT, PITRE & McCARTHY**
Tarantino - Crab
Lodestar Report
Inception Through June 29, 2010

| NAME | RANK | TOTAL HOURS | HOURLY RATE | | TOTAL FEES | |
|---|---|---|---|---|---|---|
| Cotchett, Joseph W, | Partner | 4.85 | $ | 900 | $ | 4,365.00 |
| Fineman, Nancy L. | Partner | 0.30 | $ | 700 | $ | 210.00 |
| Pitre, Frank M. | Partner | 106.80 | $ | 775 | $ | 82,770.00 |
| **SUB-TOTAL PARTNERS** | | 111.95 | | | $ | 87,345.00 |
| | | | | | | |
| Gross, Stuart G. | Associate | 676.45 | $ | 350 | $ | 236,757.50 |
| Sterrett, Daniel R. | Associate | 26.05 | $ | 350 | $ | 9,117.50 |
| Wilson, Joseph C. | Associate | 7.65 | $ | 350 | $ | 2,677.50 |
| **SUB-TOTAL ASSOCIATES** | | 710.15 | | | $ | 248,552.50 |
| | | | | | | |
| Engineer, Nirav | Sr. Paralegal | 99.75 | $ | 250 | $ | 24,937.50 |
| Grafilo, Mark A | Sr. Paralegal | 2.70 | $ | 250 | $ | 675.00 |
| Thornton, Donald D. | Sr. Paralegal | 19.70 | $ | 175 | $ | 3,447.50 |
| Beltran, Eileen | Case Asst/Paralegal | 30.25 | $ | 225 | $ | 6,806.25 |
| Knabity, Kenneth | Case Asst/Paralegal | 2.10 | $ | 150 | $ | 315.00 |
| Manuel,Ryan | Case Asst/Paralegal | 237.25 | $ | 225 | $ | 53,381.25 |
| So, Kimberely | Case Asst/Paralegal | 32.45 | $ | 150 | $ | 4,867.50 |
| Song, Jenny | Case Asst/Paralegal | 8.80 | $ | 225 | $ | 1,980.00 |
| Szeto, Oni | Case Asst/Paralegal | 0.40 | $ | 225 | $ | 90.00 |
| **SUB-TOTAL PARALEGALS** | | 433.40 | | | $ | 96,500.00 |
| | | | | | | |
| Coleman, Elizabeth | Law Clerk | 8.45 | $ | 150 | $ | 1,267.50 |
| Gambino, Robert | Law Clerk | 4.85 | $ | 150 | $ | 727.50 |
| **SUB-TOTAL LAW CLERKS** | | 13.30 | | | $ | 1,995.00 |
| | | | | | | |
| **GRAND TOTAL** | | **1,268.80** | | | **$** | **434,392.50** |

# EXHIBIT 4

### COTCHETT, PITRE & McCARTHY

### TARANTINO - CRAB

### INCEPTION THROUGH 6/29/2010

| DESCRIPTION | | AMOUNT |
|---|---|---|
| Attorney Service | $ | 1,201.27 |
| Court Costs | $ | 636.75 |
| Depositions | $ | 2,304.07 |
| Document Depository | $ | 2,763.16 |
| Document Production | $ | 5,977.55 |
| Documents/Publications | $ | 83.44 |
| Experts/Consultants | $ | 5,562.50 |
| Federal Express; California Overnight | $ | 589.30 |
| Hearing Transcripts | $ | 265.00 |
| Investigation | $ | 975.00 |
| Lexis/Nexis | $ | 1,624.08 |
| In-house Photocopies | $ | 2,728.05 |
| Outside Photocopies | $ | 943.65 |
| Postage | $ | 236.51 |
| Service of Process | $ | 2,726.57 |
| Telephone/Fax | $ | 167.94 |
| Travel | $ | 359.71 |
| **TOTAL LITIGATION COSTS** | $ | 29,144.55 |

# EXHIBIT 5

1   FRANK M. PITRE (SBN 100077)
    fpitre@cpmlegal.com
2   NANCY L. FINEMAN (SBN 124870)
    nfineman@cpmlegal.com
3   NIKI B. OKCU (SBN 229345)
    nokcu@cpmlegal.com
4   STUART G. GROSS (SBN 251019)
    sgross@cpmlegal.com
5   **COTCHETT, PITRE & McCARTHY**
    San Francisco Airport Office Center
6   840 Malcolm Road, Suite 200
    Burlingame, CA 94010
7   Telephone: (650) 697-6000

8
    *Attorneys for Plaintiffs Steven F. Fitz,*
9   *John Tarantino, and the Class*

10

11                **UNITED STATES DISTRICT COURT FOR**

12             **THE NORTHERN DISTRICT OF CALIFORNIA**

13

14
    **CHELSEA, LLC, MARK RUSSO,**            )   **CASE NO.:  C-07-5800-SC**
15  **ALLEN LORETZ, and IVAN**               )
    **SIMPSON, individually and on**         )
16  **behalf of all others similarly**       )   **DECLARATION OF**
    **situated,**                            )   **JOHN TARANTINO IN SUPPORT**
17                                           )   **OF PLAINTIFFS'** *EX PARTE*
                        **Plaintiffs,**      )   **MOTION FOR AN ORDER TO**
18                                           )   **SHOW CAUSE WHY A**
                                             )   **PROTECTIVE ORDER TO**
19         **v.**                            )   **SUPERVISE AND LIMIT**
                                             )   **COMMUNICATIONS WITH**
20  **REGAL STONE, LTD., HANJIN**            )   **PUTATIVE CLASS MEMBERS**
    **SHIPPING, CO., LTD., CONTI**           )   **SHOULD NOT ISSUE**
21  **CAIRO KG, NSB NEIDERELBE,**            )
    **SYNERGY MARITIME, LTD. In**            )   Date: -----
22  **Personam; M/V COSCO BUSAN,**           )   Time: -----
    **their engines, tackle, equipment,**   )   Ctrm:  1, 17th Floor
23  **appurtenances, freights, and cargo**   )   Hon. Samuel J. Conti
    **In Rem,,**                             )
24                                           )
                        **Defendants.**      )
25                                           )

26

27

28

Declaration of John Tarantino ISO Plaintiffs' *Ex Parte* Motion for Order to Show Cause re:
Protective Order to Supervise and Limit Communications with Putative Class Members
Case No. C-07-5800-SC

I, JOHN TARANTINO, declare as follows:

1.   I am a plaintiff in *Tarantino, et al. v. Hanjin Shipping Co., Ltd.*, San Francisco County Superior Court Case No. CGC-07-469379. I have personal knowledge of the following matters, and I can and will competently testify to them.

2.   I am a commercial Dungeness crab fisherman operating out San Francisco. I have commercially fished for Dungeness crabs in the San Francisco Bay Area for 35 yers.

3.   Hudson Marine has established a claims process ("Claims Process") whereby Dungeness crab fishermen may seek compensation for some part of their economic losses caused by the M/V Cosco Busan's collision with the Bay Bridge on November 7, 2007 and the resulting oil spill ("Oil Spill").

4.   I have suffered and continue to suffer economic injuries caused by the Oil Spill.

5.   On or about December 8, 2006, I spoke by phone with a representative of Hudson Marine named Harry Bolton.

6.   I informed Mr. Bolton that I am represented by counsel in an action seeking compensation for the economic injuries I have suffered and continue to suffer as a result of the Oil Spill.

7.   Mr. Bolton, as a representative of Hudson Marine, informed me that because I was represented by counsel he could not speak with me. Mr. Bolton further informed me that I could only participate in the Claims Process if I terminated my representation by counsel.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this _10_ day of January, 2008, at Corte Madera, California.

John Tarantino

JOHN TARANTINO

Declaration of John Tarantino ISO Plaintiffs' *Ex Parte* Motion for Order to Show Cause re:
Protective Order to Supervise and Limit Communications with Putative Class Members
Case No. C-07-5800-SC                                                                    1

# EXHIBIT 6

1  FRANK M. PITRE (SBN 100077)
   fpitre@cpmlegal.com
2  NANCY L. FINEMAN (SBN 124870)
   nfineman@cpmlegal.com
3  NIKI B. OKCU (SBN 229345)
   nokcu@cpmlegal.com
4  STUART G. GROSS (SBN 251019)
   sgross@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY**
   San Francisco Airport Office Center
6  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
7  Telephone: (650) 697-6000

8  *Attorneys for Plaintiffs Steven F. Fitz,*
   *John Tarantino, and the Class*
9

10          **UNITED STATES DISTRICT COURT FOR**

11         **THE NORTHERN DISTRICT OF CALIFORNIA**

12

13

14

15  **CHELSEA, LLC, MARK RUSSO,**      )   **CASE NO.: C-07-5800-SC**
    **ALLEN LORETZ, and IVAN**         )
16  **SIMPSON, individually and on**   )
    **behalf of all others similarly** )
17  **situated,**                      )   **DECLARATION OF**
                                        )   **STEVEN F. FITZ IN SUPPORT OF**
18              **Plaintiffs,**         )   **PLAINTIFFS'** *EX PARTE* **MOTION**
                                        )   **FOR AN ORDER TO SHOW CAUSE**
19                                      )   **WHY A PROTECTIVE ORDER TO**
         **v.**                         )   **SUPERVISE AND LIMIT**
20                                      )   **COMMUNICATIONS WITH**
    **REGAL STONE, LTD., HANJIN**       )   **PUTATIVE CLASS MEMBERS**
21  **SHIPPING, CO., LTD., CONTI**      )   **SHOULD NOT ISSUE**
    **CAIRO KG, NSB NEIDERELBE,**       )
22  **SYNERGY MARITIME, LTD. In**       )   Date: -----
    **Personam; M/V COSCO BUSAN,**      )   Time: -----
23  **their engines, tackle, equipment,** )  Ctrm: 1, 17th Floor
    **appurtenances, freights, and cargo** ) Hon. Samuel J. Conti
24  **In Rem,,**                        )
                                        )
25              **Defendants.**         )
                                        )
26  _____    )

27

28

---

Declaration of Steven F. Fitz ISO Plaintiffs' *Ex Parte* Motion for Order to Show Cause re:
Protective Order to Supervise and Limit Communications with Putative Class Members
Case No. C-07-5800-SC

1  I, STEVEN F. FITZ, declare as follows:

2      1.     I am a plaintiff in *Tarantino, et al. v. Hanjin Shipping Co., Ltd.*, San
3  Francisco County Superior Court Case No. CGC-07-469379. I have personal
4  knowledge of the following matters, and I can and will competently testify to
5  them.

6      2.     I am a commercial Dungeness crab fisherman operating out of Half
7  Moon Bay. I have earned a living as a commercial fisherman for over 35 years,
8  the last 27 of which I have commercially fished for Dungeness crabs in the San
9  Francisco Bay Area.

10     3.     Hudson Marine has established a claims process whereby Dungeness
11 crab fishermen economically injured by the oil spill caused by the collision of the
12 M/V Cosco Busan with the Bay Bridge on November 7, 2007 ("Oil Spill") may
13 seek compensation for those injuries ("Claims Process").

14     4.     I have suffered and continue to suffer economic injuries caused by
15 the Oil Spill.

16     5.     On or about December 13, 2007, a fellow Dungeness crab fisherman
17 named Michael McHenry met with a representative Hudson Marine named Harry
18 Bolton.

19     6.     Mr. McHenry asked Mr. Bolton, as Hudson Marine's representative,
20 whether I could not participate in the Claims Process.

21     7.     Mr. Bolton as Hudson Marine's representative, informed Mr.
22 McHenry that because I am a plaintiff in an action against Regal Stone, Ltd. and
23 others responsible for the Oil Spill I could not file a claim with Hudson Marine
24 for compensation for the economic injuries I have suffered and continue to suffer
25 as a result of the Oil Spill. At the same meeting, Mr. Bolton allowed Mr.
26 McHenry to file a claim and gave him an advance payment.

27

28

**Declaration of Steven F. Fitz ISO Plaintiffs'** *Ex Parte* **Motion for Order to Show Cause re:
Protective Order to Supervise and Limit Communications with Putative Class Members
Case No. C-07-5800-SC**                                                                                   1

1    8.    The San Francisco Bay Area commercial fishing community

2  ("Community"), of which I am a member, is close-knit, and information travels

3  quickly amongst its members.

4    9.    The knowledge that I along with my co-lead plaintiff, John

5  Tarantino, were not allowed to participate in the Claims Process because we were

6  plaintiffs in an action against Regal Stone, Ltd. and others responsible for the Oil

7  Spill quickly circulated through the Community.

8    10.    This knowledge influenced many members of the Community to

9  forsake participation in the class action in which I am a co-lead plaintiff.

10    11.    The knowledge that I was being denied participation in the Claims

11  Process because of my role as lead plaintiff while others were being allowed to

12  participate caused me to question the judgment of my attorneys and my decision

13  to act as lead plaintiff in the class action.

14    12.    It has became known among the community that if you were part of

15  the class action, Hudson Marine would not speak with you.

16    13.    Hudson Marine has also encouraged the perception among members

17  of the Community that they were interested in quickly getting year 2007 "off the

18  books," and thus fishermen who participated in the Claims Process would quickly

19  get paid.

20    I declare under penalty of perjury under the laws of the State of California

21  that the foregoing is true and correct. Executed this 9th day of January, 2008, at

22  Burlingame, CA.

23

24

25  STEVEN F. FITZ

26

27

28

Declaration of Steven F. Fitz ISO Plaintiffs' *Ex Parte* Motion for Order to Show Cause re:
Protective Order to Supervise and Limit Communications with Putative Class Members
Case No. C-07-5800-SC                                                                2