1  JOSEPH A. WALSH II, CASB No. 143694
   joe.walsh@kyl.com
2  JULIE L. TAYLOR, CASB No. 154341
   julie.taylor@kyl.com
3  JULIE KOLE, CASB No. 203681
   julie.kole@kyl.com
4  ANNE MORIARTY, CASB No. 251803
   annie.moriarty@kyl.com
5  KEESAL, YOUNG & LOGAN
   A Professional Corporation
6  450 Pacific Avenue
   San Francisco, California 94133
7  Telephone: (415) 398-6000
   Facsimile: (415) 981-0136
8
   Attorneys for Defendants
9  REGAL STONE LIMITED, FLEET MANAGEMENT LTD.,
   and M/V COSCO BUSAN
10

11

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14

15  ALLEN LORETZ, individually and on          )  Case No. C-07-5800-SC
    behalf of all others similarly situated,   )
16                                             )
                              Plaintiffs,      )  AT LAW AND IN ADMIRALTY
17                                             )
              vs.                              )
18                                             )  **DEFENDANTS' OPPOSITION TO**
    REGAL STONE, LTD., HANJIN                  )  **CLASS COUNSELS' MOTION FOR**
19  SHIPPING CO., LTD., SYNERGY                )  **AWARD OF ATTORNEYS' FEES,**
    MARITIME, LTD., FLEET                      )  **COSTS, AND SERVICE AWARDS TO**
20  MANAGEMENT, LTD., and JOHN COTA,)  **NAMED PLAINTIFFS**
    *In Personam*; M/V COSCO BUSAN, their )
21  engines, tackle, equipment,                )
    appurtenances, freights, and cargo *In Rem*,)  Date: September 3, 2010
22                                             )  Time: TBD
                              Defendants.      )  Honorable Samuel J. Conti
23  _____ )

24       Defendants REGAL STONE LIMITED, FLEET MANAGEMENT LTD. and

25  M/V COSCO BUSAN ("Defendants") submit the following Memorandum of Points and

26  Authorities in support of their Opposition to Class Counsels' Motion For Award of

27  Attorneys' Fees, Costs, and Service Awards to the Named Plaintiffs ("Class Counsels'

28  Motion for Attorneys' Fees.")

KYL_SF510529

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................1

II.  BACKGROUND ................................................................................................3

    A.  Opa 90 Set Forth A Comprehensive Statutory Claims Process For
        Individuals To Recover Damages As The Result Of An Oil Spill ..................3

    B.  California Enacted Its Own Oil Pollution Laws To Establish
        Procedures For Recovery Of Damages ........................................................4

    C.  Following The Cosco Busan Oil Spill, The Responsible Party
        Immediately Complied With OPA 90 And Lempert-Keene ...........................5

    D.  Within Two Weeks Of The Spill, Competing Class Actions Were Filed
        On Behalf Of Commercial Fishermen In Federal And State Court ..............6

    E.  In Settling Their Clients' Claims, The Young And Duncheon
        Consortiums Representing Individual Crab Fishermen Negotiated A
        25% Premium ...............................................................................................8

    F.  Class Counsel Accepted The Same Settlement Deal That Was
        Previously Negotiated For By The Young And Duncheon
        Consortiums ...............................................................................................10

III. LEGAL ARGUMENT .......................................................................................11

    A.  The Degree Of Success Obtained By Class Counsel Does Not
        Warrant The Requested Award Of Attorneys' Fee And Costs ....................11

        1.  The Benefit Class Counsel Obtained For Crab
            Fishermen Is Minimal .................................................................12

        2.  Class Counsels' Attempt To Describe "Additional
            Benefits Achieved For Class Members" Is Based Solely
            On Speculation And Inadmissible Hearsay ...................................14

    B.  Class Counsel Failed To Establish Their Rates Are Reasonable ................15

    C.  Class Counsel Failed To Establish That Their Time Was Reasonably
        Spent ..........................................................................................................19

        1.  Class Counsel Failed To Support Their Fee Request
            With Appropriate Documentation ................................................19

        2.  Class Counsel Unnecessarily Overworked This Strict
            Liability Case And Now Requests A Windfall For Work
            Performed By The Young and Duncheon Consortiums ...................21

    D.  A Multiplier Is Not Required To Attract Competent Counsel To  Take
        On A Case Such As This One And Therefore Is Not Warranted .................23

i

KYL_SF510529

DEFENDANTS' OPPOSITION TO CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS - CASE NO. C-07-5800-SC

IV.    CONCLUSION.................................................................................................25

KYL_SF510529

DEFENDANTS' OPPOSITION TO CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS - CASE NO. C-07-5800-SC

# TABLE OF AUTHORITIES

Page

**Cases**

Abrams v. Baylor College of Medicine,
   805 F.2d 528 (5th Cir. 1986.)..................................................................19

Askew v. American Waterways Operators, Inc.,
   411 U.S. 325 (1973) ...............................................................................4

Bernardi et al. v. Yeutter,
   754 F. Supp. 743 (N.D. Cal. 1990) ......................................................19

Blum v. Stenson,
   465 U.S. 886 (1984.) ............................................................................15

Dunk v. Ford Motor Co.,
   48 Cal. App. 4th 1794 (1996).............................................................24

Exxon Shipping Co. v. Baker,
   128 S. Ct. 2605 (2008.) .........................................................................3

Gates v. Deukmejian,
   987 F.2d 1392 (9th Cir. 1992.).....................................................15, 19

Hensley et al. v. Eckerhart et al.,
   461 U.S. 424 (1983.) ...........................................................1, 2, 11, 19

In re Vitamin Cases,
   110 Cal. App. 4th 1041 (2003)...........................................................21

Johnson v. Credit International, Inc.,
   2005 U.S. LEXIS 21513 (N.D. Cal. 2005)..........................................19

Jordan v. Mutnomah County,
   815 F.2d 1258 (9th Cir. 1987.)...........................................................19

Ketchum v. Moses,
   24 Cal. 4th 1122 (2001) ................................................................20, 24

Laffey v. Northwest Airlines, Inc.,
   572 F. Supp. 354 (D.D.C. 1983.).................................................17, 18

Lealao v. Beneficial California, Inc.,
   82 Cal App. 4th 19 (2000)...................................................................25

Mendez v. County of San Bernardino,
   540 F.3d 1109 (9th Cir. 2008).............................................................19

Pacific Shinfu Technologies, Co., Ltd., v. Pinnacle Research Institute, Inc.,
   2009 U.S. Dist. LEXIS 64036 (N.D. Cal. 2009).................................16

Purdue v. Kenny A.,
   130 S. Ct. 1662, 1666 (2010) ..............................................................23

Shogren et al. v. Regal Stone Ltd.,
   Northern District California, Case No. 07-5926 ..............................7, 24

Tarantino et al. v. Hanjin Shipping Co., Ltd. et al.,
   San Francisco County Superior Court Case No. CGC 07-469379 ........................ passim

Thayer v. Wells Fargo Bank, N.A.,
   92 Cal. App. 4th 819 (2001.) ........................................................................ 21, 23

Theme Promotions, Inc. v. News America Marketing FSI, Inc.,
   2010 U.S. Dist. LEXIS 68225 (N.D. Cal. June 14, 2010) ...................................... 17, 18

United States v. M/V COSCO BUSAN,
   Northern District of California, Case No. 07-6745 ........................................ 2, 5, 8, 22

Yahoo! Inc. v. Net Games, Inc.,
   329 F. Supp. 2d 1179 (N.D. Cal. 2004.) ................................................................ 16

**Statutes**

33 U.S.C.

   § 2702 ......................................................................................................... 4, 21, 24

   §§ 2705 .................................................................................................................. 4

   § 2713 .................................................................................................................... 4

   § 2713(a) ............................................................................................................... 4

   § 2713(c) ............................................................................................................... 4

   § 2714(b)(2) .......................................................................................................... 4

   § 2715 .................................................................................................................... 6

Cal. Gov't Code

   § 8670.3(w)(2) ............................................................................................ 5, 21, 24

   § 8670.4 ................................................................................................................. 5

   § 8670.46 ............................................................................................................... 5

   § 8670.47 ............................................................................................................... 5

   § 8670.49 ............................................................................................................... 5

   § 8670.5 ................................................................................................................. 5

   § 8670.51.1 ............................................................................................................ 5

   § 8670.51.1(b) ....................................................................................................... 5

   § 8670.51.1(c) ....................................................................................................... 5

   § 8670.51.1(i) ........................................................................................................ 5

   § 8670.56.5 ................................................................................................... 5, 21, 24

   § 8670.56.5(f) ................................................................................................. 21, 24

1

<b>Other Authorities</b>

2  135 Cong. Rec. H7954-H7978 (daily ed. Nov. 2, 1989)........................................................3

3  NPFC regulations governing OPA claims, published at 33 C.F.R. part 136 ......................4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.      **INTRODUCTION**

As reflected by Defendants' Notice of Non-Opposition to Plaintiffs' Motion for Final Approval of the Dungeness Crab Settlement, Defendants believe that the terms of the settlement for which Plaintiffs seek Court approval are generous, fair and reasonable.  Indeed, as detailed below, one-hundred ninety-eight (198) commercial crab fishermen (represented by attorneys other than Class Counsel) previously accepted the very same settlement terms outside of this class action.  These represented commercial crab fishermen have already been paid over $3 million in full settlement of their claims.

However, Class Counsels' Motion for Attorneys' Fees greatly overstates the significance of their involvement in crafting the settlement terms that they ultimately accepted on behalf of the class.  In addition, Class Counsel fails to address the fact that, to date, just one unrepresented crab crewmember has submitted a valid claim form to the class action administrator.  Class Counsels' Motion for Attorneys' Fees is wholly unsupported and should be denied for at least the following reasons:

First, Class Counsels' request is particularly outrageous given that Defendants crafted the settlement terms through extensive negotiations with other lawyers, experienced maritime attorneys John Young, Michael Duncheon and John Hillsman (the "Young and Duncheon Consortiums"), to resolve approximately one-hundred seventy-three (173) claims of Dungeness Crab Skippers underline outside of the class. After that settlement was reached, Class Counsel simply accepted the very same terms negotiated by the Young and Duncheon Consortiums as the settlement of the class action.  (See Declarations of John Young ("Young Decl."), ¶¶ 8-9, Paul Gruwell ("Gruwell Decl."), ¶¶ 4-5, and Julie Taylor ("Taylor Decl."), ¶¶ 8-10.)

Second, it is well established that the party requesting an award of attorneys' fees bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.  Hensley et al. v. Eckerhart et al., 461 U.S. 424, 437 (1983.)   Class Counsel (who cite their experience and

1

1    expertise and no doubt knew at the start of this case that they would seek a fee award)

2    have submitted *no* detailed records substantiating their request for $1.9 million in

3    attorneys' fees and over $70,000 in costs.  Further, Class Counsel has made no showing

4    that the worked performed in connection with the settlement of Dungeness Crab

5    skippers and crewmembers' ("Dungeness Crab Settlement Class Members") claims was

6    (1) reasonably necessary, (2) not duplicative and (3) related specifically to the crab

7    fishermen subclass, as opposed to the seven other subclasses of fishermen that were

8    originally at issue in this matter but which are currently asserting their claims in State

9    Court through the same counsel that represent the class here.[1]

10   <u>Third</u>, the U.S. Supreme Court has held that when determining the amount

11   of attorneys' fees to be awarded to class counsel "the most critical factor is the degree of

12   success obtained."  <u>Hensley et al. v. Eckerhart et al.</u>, 461 U.S. 424, 436 (1983.)  To date,

13   only one unrepresented class member has submitted a valid claim form that includes the

14   required supporting documentation to the class action administrator.  Based on the

15   claim forms submitted thus far, the benefit conferred on unrepresented class members is

16   $1,250.  Class Counsels' request for over $2 million in attorneys' fees and costs when so

17   few class members have taken advantage of the benefits offered to them is shocking.

18   <u>Fourth</u>, Class Counsel unnecessarily overworked this strict liability case.

19   Class Counsel filed duplicative actions in both state and federal court while contributing

20   nothing to Defendants' settlement negotiations (or settlement structure) with the Young

21   and Duncheon Consortiums which ultimately resulted in settlement terms that Class

22   Counsel readily accepted.  Now, Class Counsel essentially requests to be compensated

---

[1] The following subclasses of commercial and sport fishermen are currently prosecuting their claims in the state court action, <u>Tarantino et al. v. Hanjin Shipping Co., Ltd. et al.</u>, San Francisco County Superior Court Case No. CGC 07-469379 ("*Tarantino*"):  (1) Sport Fishing Charter, (2) Commercial Halibut Hook & Line Fishermen, (3) Commercial Surfperch Hook & Line Fishermen, (4) Commercial Nearshore Fishermen, (5) Commercial Near Off-Shore Trawl Fishermen, (6) Commercial Live Bait Provider and (7) Commercial Herring Fishermen.

28

KYL_SF510529

DEFENDANTS' OPPOSITION TO CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS - CASE NO. C-07-5800-SC

1  for the substantial work performed by *other* attorneys in crafting a settlement.

2      Fifth, Class Counsels' assertion that they assumed great risk by taking the

3  action on a contingency fee is undermined by the fact that (1) liability is strict, (2)

4  federal and state law obligate to Defendants to pay compensation without the need for

5  litigation and (3) state law expressly provides for payment of reasonable attorneys' fees.

6  There was no risk whatsoever.

7      Sixth, given the fact that this is a strict liability case and the minimal

8  benefit obtained for the class, Class Counsels' request for a 1.5 multiplier in the amount

9  of $651,588 is not warranted.

10      For these reasons, and those explained below, Defendants respectfully

11  request that this Court deny Class Counsels' Motion for Attorneys' Fees.

12

13  **II.    BACKGROUND**

14      **A.    OPA 90 Set Forth A Comprehensive Statutory Claims Process For
Individuals To Recover Damages As The Result Of An Oil Spill**

15      Following the *EXXON VALDEZ* oil spill in 1989, Congress overhauled the

16  nation's oil pollution laws by enacting OPA 90, 33 U.S.C. §§ 2701 *et seq.*  Prior to OPA

17  90, the Federal Water Pollution Control Act ("FWPCA") governed a vessel owner's

18  liability for oil pollution; it did not, however, set forth procedures for private individuals

19  to recover damages.  In its OPA 90 deliberations, Congress criticized aspects of the

20  FWPCA which forced private individuals into lengthy litigation to recover their losses:

21  "The thrust of this legislation is to eliminate, to the extent possible, the need for an

22  injured person to seek recourse through the litigation process, which—as we all know—

23  can take years." 135 Cong. Rec. H7954-H7978, 26933, 26940 (daily ed. Nov. 2, 1989).

24  The *EXXON VALDEZ* ran aground on March 23, 1989.  The U.S. Supreme Court issued

25  its final ruling relation to compensation of damaged fishermen on June 26, 2008 (over 20

26  years later.)  See Exxon Shipping Co. v. Baker, 128 S. Ct. 2605 (2008.)

27      Congress remedied these deficiencies through OPA 90, which established a

28

KYL_SF510529

DEFENDANTS' OPPOSITION TO CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS - CASE NO. C-07-5800-SC

strict liability scheme accompanied by a claims procedure.  Under OPA 90, a vessel owner is strictly liable for clean-up costs and damages resulting from a discharge of oil from its vessel.  33 U.S.C. § 2702.  OPA 90 requires the President to designate the owner of a discharging vessel as the "Responsible Party" which, if directed, must publish a notice advising the public of the designation, and procedures for claims submittals.  Id. § 2714.  To promote resolution and discourage litigation, OPA 90 requires claimants to present their claims for removal costs or damages to the Responsible Party.  Id. § 2713(a) & (c).  To avoid delays in the payment of claims, the Responsible Party is liable for interest after 30 days from receipt of the claim.  33 U.S.C. §§ 2705 & 2714(b)(2).  If, and only if, after 90 days there is no resolution, a claimant may then sue the Responsible Party, or may submit its claim to the National Pollution Funds Center ("NPFC").[2]  OPA established the NPFC, an administrative agency within the United States Coast Guard, to administer the Oil Spill Liability Trust Fund (the "Federal Fund") in settling claims. Id. §§ 2701(11) & 2713(a) & (c). The NPFC's claims division in Arlington, Virginia, processes claims by federal and state agencies, individuals, and responsible parties.

### B.  California Enacted Its Own Oil Pollution Laws To Establish Procedures For Recovery Of Damages

Approximately a year following the *EXXON VALDEZ* oil spill, another oil tanker, the *AMERICAN TRADER*, spilled approximately 416,598 gallons of crude oil off the coast of Huntington Beach, California.  Prompted by these spills, the 1990 California Legislature passed the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act ("Lempert-Keene"), Cal. Gov.'t Code §§ 8670.1 *et seq.*[3]  Lempert-Keene set forth a new oil spill prevention and response program within California.  Like OPA 90, Lempert-Keene

---

[2] NPFC regulations governing OPA claims are published at 33 C.F.R. part 136.

[3] Courts have allowed states to enact legislation imposing strict liability for damages caused by ship to shore pollution as an exercise of their police powers.  Askew v. American Waterways Operators, Inc., 411 U.S. 325, 341-44 (1973); In re EXXON VALDEZ, 767 F. Supp. 1509, 1514 (D. Alaska 1991).

- 4 -

KYL_SF510529

DEFENDANTS' OPPOSITION TO CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS - CASE NO. C-07-5800-SC

imposes strict liability on a vessel owner for clean-up costs and damages resulting from a discharge of oil. Id. §§ 8670.56.5 & 8670.3(w)(2).

Lempert-Keene also established a claims process by which removal cost and damage claims can be made for payment by the Responsible Party. Id. § 8670.51.1. Lempert-Keene created the Oil Spill Response Trust Fund (the "California Fund"), as well as an Administrator within the Department of Fish and Game responsible for administering the California Fund with regard to response, clean-up and payment of claims arising from an oil spill. Id. §§ 8670.4, 8670.5, 8670.46, 8670.47 & 8670.49.

Upon learning of a spill, the Administrator must designate the Responsible Party who, in turn, must immediately advertise the manner in which it shall accept and pay claims. Id. § 8670.51.1(a)(1). To facilitate the processing of claims as "expeditiously as possible," if the claim is under fifty thousand dollars, the claimant "may submit the claim directly to the [California] fund." Id. § 8670.51.1(b). If the claim exceeds fifty thousand dollars, it "shall first be presented to the designated responsible party for payment." Id. § 8670.51.1(c). If, after 60 days, the claimant is not satisfied with the Responsible Party's response, he or she may submit the claim to the Federal Fund. Id. If, after 60 days, the Federal Fund's response is not satisfactory, the claimant may submit the claim to the California Fund. Id. Lempert-Keene then allows dissatisfied claimants to sue the California Fund within six months of the Administrator's final decision regarding the claim. Id. § 8670.51.1(i).

C.    **Following The COSCO BUSAN Oil Spill, The Responsible Party Immediately Complied With OPA 90 And Lempert-Keene**

On November 7, 2007, the *M/V COSCO BUSAN* allided with the base of the Delta tower of the San Francisco-Oakland Bay Bridge ("Bay Bridge"). As a result of the allision, the vessel sustained damage to its hull and approximately 53,500 gallons of bunker fuel (oil) escaped into San Francisco Bay (the "Spill"). On November 8, 2007, the day after the spill, the Administrator designated Regal Stone, the owner of the *COSCO BUSAN*, as the Responsible Party for the oil spill pursuant to Lempert-Keene. On

- 5 -

DEFENDANTS' OPPOSITION TO CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS - CASE NO. C-07-5800-SC

November 9, 2007, the United States Coast Guard issued a similar designation pursuant to OPA 90.  (Taylor Decl., Exhibits. "1" and "2.")  Both notices required the Responsible Party to widely advertise the manner in which claims arising from the spill would be accepted and paid.  (Id.)

Without delay, Hudson Marine Management Services ("Hudson") was retained to establish a claims center for accepting, processing and resolving personal, commercial, and municipal claims from the public for damages and losses resulting from the oil spill.  (Declaration of Cynthia Hudson ("Hudson Decl."), ¶ 3.)  On November 10, 2007, *only three days after the spill*, Hudson set up a claims center and widely advertised the claims handling process through local media and internet advertisements as well as by posting fliers at impacted marinas and other locations.  (Id., ¶ 4.)  Thereafter, Hudson immediately began processing and resolving personal, commercial, and municipal claims from the public for damages and losses resulting from the oil spill.  (Id.)

As set forth above, if a claimant is not satisfied with the Claims Process, the claimant may submit his or her claim to the Federal Fund and/or the California Fund (the "Funds") who may pay the claimant the amount due.  The Funds can recover compensation paid to claimants (plus interest, administrative costs and attorneys' fees) from the responsible party.  33 U.S.C. § 2715.  Therefore, Defendants have every incentive to fully and promptly pay legitimate claims.

**D.     Within Two Weeks Of The Spill, Competing Class Actions Were Filed On Behalf Of Commercial Fishermen In Federal And State Court**

Only eight days after the Spill, on November 15, 2007, the law firm Audet & Partners, LLP filed this federal court lawsuit (the "*Loretz* action")[4] for damages arising

---

[4] This action was originally titled Chelsea LLC et al. v. Regal Stone Limited.  As reflected in the First Amended Complaint filed on November 19, 2007, the action originally had four named class representatives. (See Dkt. 7.)  Three of the four class representatives (Chelsea LLC, Mark Russo and Ivan Simpson) terminated their

1   out of the Spill on behalf of a class then described as: "all commercial fishing operations,

2   including clam, crab and herring which commercially fish in and around, [sic] the coastal

3   waters of the San Francisco Bay Area." (See *Loretz* Complaint, ¶ 19, Dkt. No. 1.)

4       Just five days after the *Loretz* action was filed (on November 20, 2007), the

5   law firm Cotchett, Pitre & McCarthy filed the *Tarantino* action[5] in San Francisco County

6   Superior Court for damages arising out of the Spill on behalf of a virtually identical class

7   defined as: "all commercial fishing operations, including crab, herring, flat fish, salmon

8   and other fish which commercially fish in and around the San Francisco Bay and

9   surrounding ocean areas." (See *Tarantino* Complaint, ¶ 20, attached as Exhibit "3" to the

10  Taylor Decl.)[6]

11      The *Loretz* Complaint was amended on November 19, 2007 and again on

12  July 29, 2007.  (See Dkt. Nos. 7 and 117.)  The *Loretz* Verified Second Amended Class

13  Action Complaint for Damages and Equitable Relief (the operative complaint on file in

14  this action) describes the class as consisting of:  "all commercial fishing operations,

15  including but not limited to crab fishermen, herring fishermen, salmon fishermen,

16  bottom trawl fishermen, shellfish producers, seafood processors, vendors, truckers,

17  unloaders and other distributors of seafood products, and recreational charter vessel

18  _____

19  relationship with Class Counsel and were relieved of their duties as class
    representatives.  (See Dkt. 172, 178 and 186.)  Chelsea LLC and Mark Russo chose to be
20  represented by John Young in connection with settling their claims.  (See Hudson Decl.,
    ¶ 10)  Ivan Simpson was unrepresented when he submitted his OPA 90 claim to
21  Hudson.  (See id.)  The only remaining class representative in this action is Plaintiff
    Allen Loretz.
22

23  [5] In addition to the Loretz and Tarantino actions, on November 21, 2007, Birnburg &
    Associates filed a federal court action on behalf of fifteen commercial crab fishermen
24  and/or corporations that owned commercial crab fishing vessels.  (See Shogren et al. v.
    Regal Stone Ltd., Northern District California, Case No. 07-5926, Complaint attached as
25  Exhibit "4" to the Taylor Decl.)

26  [6] The Tarantino Complaint was amended on February 1, 2008.  The definition of the
    class remained the same.  (See Tarantino First Amended Complaint for Damages,
27  attached as Exhibit "5" to the Taylor Decl.)

28
                                          - 7 -                          KYL_SF510529

1   operations and marinas, who have been injured, or otherwise financially harmed, as a

2   result of the COSCO BUSAN Oil Spill of November 7, 2007." (See *Loretz* Second

3   Amended Complaint, ¶ 29, attached as Exhibit "2" to the Declaration of William M.

4   Audet filed in Support of Class Counsels' Motion for Attorneys' Fees ("Audet Decl."), Dkt

5   No. 214.)

6       Essentially, the *Loretz* and *Tarantino* cases were initially competing actions

7   on behalf of the same class. That relationship obviously changed when counsel for each

8   started to work in concert. At or about the time the parties reached an agreement in

9   principle on the settlement of the crab fishermen subclass claims in February 2009, the

10  law firms Audet & Partners LLP and Cotchett, Pitre & McCarthy informed Defendants

11  of their agreement that the commercial crab fishermen subclass would assert their

12  claims in the federal court action (*Loretz*) and all other commercial fishermen subclasses

13  would pursue their claims in the state court action (*Tarantino*.) (See Taylor Decl., ¶ 7.)

14  Accordingly, the competing class actions were pending for approximate 17 months before

15  they were coordinated.

16  **E.    In Settling Their Clients' Claims, The Young and Duncheon**

17  **Consortiums Representing Individual Crab Fishermen Negotiated**
    **A 25% Premium**

18

19      To date, Hudson has already paid two-hundred sixty-one (261) crab

20  fishermen a total amount of approximately $16,046,853 in resolution of their OPA 90

    claims. (Hudson Decl., ¶ 6.) Approximately one hundred seventy-three (173) crab
21
    fishermen obtained the representation of extremely experienced and competent
22
    maritime counsel in connection with settling their claims[7] – John Young of Young
23
    deNormandie, P.C. and John Hillsman of McGuinn Hillsman & Palefsky. (See Young
24
    Decl., ¶ 3 and Gruwell Decl., ¶ 2.) Mr. Hillsman worked as co-counsel with Michael
25

26  [7] The remaining crab fishermen that submitted claims through the OPA 90 Claims
    Process were either represented by various other attorney or were unrepresented. (See
27  Hudson Decl., ¶ 7.)

28

DEFENDANTS' OPPOSITION TO CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS - CASE NO. C-07-5800-SC

1  Duncheon of Hanson Bridgett LLP in representing their crab fishermen clients.  (See

2  Gruwell Decl., ¶ 2.)  Both Mr. Young's and Mr. Hillsman's law firms specialize in the

3  representation of commercial fishermen.  (See Young Decl., ¶ 2 and Gruwell Decl., ¶ 2.)

4  Mr. Young has extensive experience representing commercial fishermen in the context of

5  claims arising out of an oil spill having been involved as an attorney in the *EXXON*

6  *VALDEZ* litigation since that spill occurred in March 1989.  (See Young Decl., ¶ 4.)  Mr.

7  Hillsman is a well-known and respected maritime attorney.  (See Gruwell Decl., ¶ 2. )

8          The Young and Duncheon Consortiums worked extensively with Regal

9  Stone Limited and Fleet Management Ltd. to resolve the claims of the crab fishermen

10  clients they represented.  (See Young Decl., ¶ 8 and Gruwell Decl., ¶ 4.)  On October 15

11  and 16, 2008, the Young and Duncheon Consortiums participated in 2 days of mediation

12  with counsel for Regal Stone Limited and Fleet Management Ltd.  (See Young Decl., ¶ 8,

13  Gruwell Decl., ¶ 4 and Taylor Decl., ¶ 8.)  In addition, prior to this mediation, the Young

14  and Duncheon Consortiums had many communications with counsel for Regal Stone

15  Limited and Fleet Management Ltd. regarding the potential framework for settlement.

16  (See id.)

17          Following extensive arms-length negotiations that were adversarial and

18  hard-fought, on or about ***October 16, 2008***, the Young and Duncheon Consortiums

19  reached an agreement in principle with Regal Stone Limited and Fleet Management

20  Ltd. (without resorting to litigation) that resolved all their crab fishermen clients' claims

21  – past, present and future.  Pursuant to the terms of these agreements, each represented

22  crab fisherman received a payment equal to 25% of their gross and fully adjusted claim

23  amount that they received (or would have received) in connection with the OPA 90

24  Claims Process.  (See Young Decl., ¶ 9, Gruwell Decl., ¶ 5, Hudson Decl., ¶ 8 and Taylor

25  Decl., ¶ 9.)  The crab fishermen represented by the Young and Duncheon Consortiums

26  received a total amount of approximately $3,123,843 as part of this settlement.  (See

27  Hudson Decl., ¶ 8.)  In addition, these crab fishermen were reimbursed their reasonable

28

KYL_SF510529

1    attorneys' fees incurred in connection with the filing of their OPA 90 claims.  (See Young

2    Decl., ¶ 10, Gruwell Decl., ¶ 6 and Taylor Decl.,¶ 9.)  In exchange, the Young and

3    Duncheon Consortiums' clients executed a full release of all claims, past, present and

4    future against Regal Stone Limited and Fleet Management Ltd.  (See Young Decl., ¶ 9

5    Gruwell Decl., ¶ 5 and Hudson Decl., ¶ 8.)[8]  The vast majority of the Young and

6    Duncheon Consortiums' clients received their settlement payments over a year ago, by

7    March 2009.  (Hudson Decl., ¶ 8.)

8    **F.    Class Counsel Accepted The Same Settlement Deal That Was**
9         **Previously Negotiated For By The Young and Duncheon**
          **Consortiums**

10              Approximately four months *after* Defendants agreed in principle to settle

11   with the Young and Duncheon Consortiums, Class Counsel agreed to accept the same

12   deal.  (See Taylor Decl., ¶ 10.)  On or about February 18, 2009, Class Counsel confirmed

13   to counsel for Defendants that they would recommend settlement of the crab fishermen

14   subclass' claims on terms consistent with what had previously been agreed to by the

15   Young and Duncheon Consortiums.  (See Taylor Decl., ¶ 10.)  A Memorandum of

16   Understanding was finalized on or about October 1, 2009 reflecting the terms of the

17   agreement in principle.  (See Audet Decl., ¶ 11-12; Declaration of Frank M. Pitre in

18   Support of Motion for Award of Attorneys' Fees ("Pitre Decl."), ¶ 15.)  The final

19   settlement agreement was signed on March 17, 2010, approximately a year and a half

20   *after* Regal Stone Limited and Fleet Management Ltd. reached an agreement in

21   principle with the Young and Duncheon Consortiums and a year after the vast majority

22   of the Young and Duncheon Consortiums' clients had been paid.  (See id.)

23              Pursuant to the terms of this agreement, Dungeness Crab Skippers are

24   _____

25   [8] An additional twenty-five (25) claimants were represented by various other attorneys
     (other than Class Counsel or the Young and Duncheon Consortiums) in connection with
26   receiving a payment equal to 25% of their gross and fully adjusted claim in exchange for
     executing a full release of all their claims. (Hudson Decl., ¶ 9.) These twenty-five (25)
27   claimants were paid a total of approximately $451,322 as part of these settlements. (Id.)

28

KYL_SF510529

DEFENDANTS' OPPOSITION TO CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS - CASE NO. C-07-5800-SC

1    required to first submit their claims through the OPA 90 Claims Process.  They are then

2    eligible to receive a 25% premium in addition to their fully adjusted and allowed OPA 90

3    claim.  (See Settlement Agreement, pg. 17 attached as Exhibit "6" to the Taylor Decl.)

4    Dungeness Crab Crewmembers – admittedly not included in the prior settlements – are

5    eligible to receive a $500 base payment plus $250 for every season (between 2003 and

6    2007) that the crewmember can demonstrate that he/she worked on a commercial crab

7    fishing boat.  (Id. at pg. 18.)  In no case will the additional crab crewmember settlement

8    payment exceed $750; nor will the base settlement payment and additional settlement

9    payment exceed $1250.  (Id.)  Even if there is eventually a class member who submits a

10   valid claim form before the claim deadline, at best, class members will have received

11   their settlement payments approximately two years after the majority of crab fishermen

12   who settled their claims outside the class action with the Young and Duncheon

13   Consortiums.

14

15   **III.    LEGAL ARGUMENT**

16           The fee applicant bears the burden of establishing entitlement to an award

17   and documenting the appropriate hours expended and hourly rates.  Hensley v.

18   Eckerhart, 461 U.S. 424, 437 (1983.)  Class Counsel offers this Court and the Defendants

19   absolutely no documentation to review in considering whether the hours expended and

20   the rates are appropriate.  Class Counsel clearly failed to meet their burden for the

21   reasons explained below.

22           **A.    The Degree Of Success Obtained By Class Counsel Does Not
                     Warrant The Requested Award Of Attorneys' Fee and Costs**

23           As noted above, the U.S. Supreme Court has held that the degree of success

24   obtained is a crucial factor in determining the proper amount of an attorneys' fees

25   award.  Hensley, 461 U.S. at 436.  Here, the settlement agreed to by Defendants was

26   primarily the result of negotiations with the Young and Duncheon Consortiums and was

27   not a settlement primarily "obtained by" Class Counsel.

28

DEFENDANTS' OPPOSITION TO CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS - CASE NO. C-07-5800-SC

### 1.     The Benefit Class Counsel Obtained For Crab Fishermen Is Minimal

As noted above, one-hundred ninety-eight (198) crab fishermen settled their claims with representation from the Young and Duncheon Consortiums and other non-class counsel outside of the class for total payments of over $3 million.  Only a relatively small number of Dungeness Crab Skippers have not already resolved their claims.

On June 2, 2010, the class action administrator mailed the Settlement Notice and Claim Forms to the Dungeness Crab Settlement Class Members.  (Taylor Decl., ¶ 12.)  Pursuant to the terms of the settlement agreement, the Claim Forms clearly state what is required of Dungeness Crab Crewmembers and Dungeness Crab Skippers in order to receive a settlement payment.  (Id.)  Dungeness Crab Skippers must first submit their claim for damages to the OPA 90 Claims Process established by Hudson (if he/she has not already done so.)  After the claim has been fully adjusted and resolved within the OPA 90 Claims Process, Dungeness Crab Skippers must submit a Claim Form to the class action administrator that includes the following information (*along with proof thereof*):

(1) the amount received from the OPA 90 Claims Process;

(2) the amount, if any, the OPA 90 Claim payment was reduced to reflect mitigation payment the skipper received in exchange for participation in the Spill's clean-up; and

(3) the amount, if any, of reasonable attorneys' fees he/she paid to an attorney in connection the OPA 90 Claims Process.

(See Taylor Decl., ¶ 14.)

From June 2, 2010 (the date the Settlement Notice was mailed to the class), to the date of this filing, no crab skipper has submitted an OPA 90 Claim to Hudson.  (Hudson Decl., ¶ 11.)  Further, to date, the only crab skippers that have submitted claim forms to the class action administrator are four named Plaintiffs

1   (represented by Class Counsel) in the *Tarantino* action, John J. Atkinson, Jr., Steven F.

2   Fitz, Sean M. Hodges and John T. Tarantino.  (Taylor Decl., ¶ 15.)  Of those claim forms

3   submitted, Steven F. Fitz is the only one that substantiated his claim with the necessary

4   documentation.  (Id.)  The payout to Mr. Fitz pursuant to the terms of the settlement

5   agreement would be $32,236.83 (25% of his fully adjusted OPA 90 claim.)  (Id.)  No

6   unrepresented class member has submitted a Skipper claim form to the class action

7   administrator.  (Id.)

8           In order for a Dungeness Crab Crewmember to receive a settlement

9   payment, he/she must establish that he/she commercially fished for Dungeness crab

10  during the 2007/2008 crab season <u>and</u> during one or more of the following seasons:

11  2003/2004, 2004/2005, 2006/2007.  (See Settlement Agreement, pg. 8, attached as

12  Exhibit "6" to the Taylor Decl.)   The crewmember must submit a copy of his/her

13  California Fish and Game Commercial Fishing License covering the applicable season

14  claimed.  (Id.)  In addition, the crewmember must submit (1) an Internal Revenue

15  Service Form 1099 showing payment to him/her for work as a crewmember on a District

16  10 commercial crab boat, (2) a copy of his/her federal tax return for the year(s) covering

17  the applicable season(s) claimed, <u>or</u> (3) a sworn declaration from the owner or operator of

18  the District 10 commercial crab boat on which the crewmember worked during the

19  applicable season(s) <u>and</u> a cancelled check showing payment from such owner or

20  operator to the crewmember.  (Id. at 8, 11.)

21          To date, sixteen individuals have submitted Dungeness Crab Crewmember

22  Claim Forms to the class action administrator.  (Taylor Decl., ¶ 17.)   However, only one

23  claim is valid.[9]  (Id.)  Pursuant to the terms of the settlement agreement, this single

24  Dungeness Crab Crewmember would be paid $1,250.  (Id.)

25

26  [9] The remaining fifteen crewmember claims forms that have been submitted are invalid
    because (1) only one season is identified (two or more must be identified) and/or (2) the
27  agreed upon documentation has not been submitted.  (Taylor Decl., ¶ 17.)

28
DEFENDANTS' OPPOSITION TO CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS - CASE NO. C-07-5800-SC

To be clear, the only valid claim submitted by an unrepresented class member is worth $1,250.  Class Counsels' success in obtaining a benefit on behalf of the class is minimal at best.  This result in no way justifies the outrageous $2 million in attorneys' fees that Class Counsel requests.  Defendants anticipate that Class Counsel will argue that the time period for class members to submit claim forms to the class action administrator has not yet expired and that there may be additional claims forms submitted.  Defendants seriously doubt that additional claim forms submitted, if any, would justify Class Counsels' exorbitant attorneys' fees request.  However, Defendants would not be opposed to the Court postponing its determination regarding Class Counsels' request for attorneys' fees until after the deadline for class members to submit their claims has expired.

### 2. Class Counsels' Attempt To Describe "Additional Benefits Achieved For Class Members" Is Based Solely On Speculation And Inadmissible Hearsay

Faced with a situation in which the settlement obtained by Class Counsel (as opposed to other attorneys) has provided a minimal benefit to unrepresented class members, Class Counsel asserts the untenable and unsupported argument that they achieved "additional benefits" for individuals that chose not to participate in the class action and who were part of the Young or Duncheon Consortiums.  Class Counsel argues that their efforts "resulted in a savings of multiple millions of dollars in attorneys' fees" to putative class members that settled their claims with the assistance of non-class counsel.  (See Class Counsels' Motion for Attorneys' Fees, pg. 12.)  Apparently, this "general calculation is based on information provided by class members as well as Class Counsel's own investigation and other information."  (Id.)  This statement is based solely on the inadmissible Declaration of Steven Fitz.  This Declaration is fraught with hearsay and a multitude of other evidentiary deficiencies.[10]  Further, Class Counsel does

---

[10] See Defendants' concurrently filed Objections to Declaration of Steven Fitz.

KYL_SF510529

DEFENDANTS' OPPOSITION TO CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS - CASE NO. C-07-5800-SC

1    not specify what information class members provided that led to this conclusion; nor

2    does Class Counsel explain their "investigation" or what specific "other information"

3    they considered.  Indeed, this speculative and attenuated argument is unsupported by

4    any admissible evidence or even explanation of how the "multiple million dollar" figure

5    was reached.  Class Counsel does not address this issue in either of their Declarations.

6    (See Audet Decl. and Pitre Decl.)

7            Equally absurd, Class Counsel argues that the Young and Duncheon

8    Consortiums representing individual commercial crab fishermen reduced their

9    contingency fee from 33% to 24% because Class Counsel charged the *Loretz* and

10    *Tarantino* class representatives a 24% contingency fee.  (See Class Counsels' Motion for

11    Attorneys' Fees, pg. 12.)  The only evidence Class Counsel has submitted in support of

12    this entirely speculative argument as to the reasons behind the fees charged by the

13    Young and Duncheon Consortiums is the inadmissible hearsay declaration of *Tarantino*

14    class representative Steven F. Fitz.  (See Declaration of Steven Fitz, ¶ 7.)  As fully set

15    forth in Defendants' concurrently filed Objections to Evidence, these irrelevant hearsay

16    statements made by Mr. Fitz are inadmissible and should not be considered by the

17    Court.  Indeed, the rates charged by the Young and Duncheon Consortiums were

18    unaffected by this action or the *Tarantino* action.  (Young Decl., ¶11 and Gruwell Decl.,

19    ¶ 7.)

20        **B.**    **Class Counsel Failed To Establish Their Rates Are Reasonable**

21            In determining whether a particular hourly rate is reasonable, the Court

22    must determine "prevailing market rates in the relevant community."  Blum v. Stenson,

23    465 U.S. 886, 895 n. 11 (1984.)  The relevant community includes attorneys practicing in

24    the forum district.  Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992.)  "The

25    burden is on the fee applicant to produce satisfactory evidence – in addition to the

26    attorney's own affidavits – that the requested rates are in line with those prevailing in

27    the community for similar service by lawyers of reasonably comparable skill, experience

28

DEFENDANTS' OPPOSITION TO CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS - CASE NO. C-07-5800-SC

1  and reputation." <u>Blum</u>, 465 U.S. at 895 n. 11.  In determining a reasonable hourly rate,

2  courts disfavor reliance on claimed billing rates.  <u>See</u> <u>Yahoo! Inc. v. Net Games, Inc.</u>, 329

3  F. Supp. 2d 1179, 1192 (N.D. Cal. 2004.)  "[A] reasonable attorney fee is the fee that

4  would be charged by reasonably competent counsel, not counsel of unusual skill and

5  experience."  <u>Id.</u> at 1184.

6         Class Counsel merely submits their claimed billing rates while failing to

7  offer a single declaration of any attorney who practices plaintiffs' maritime litigation in

8  order to support the reasonableness of those rates.  (See Audet. Decl., Exhibit "4;" Pitre

9  Decl., Exhibit "3.")  Class Counsel has wholly failed to meet their burden in producing

10  satisfactory evidence that their requested fees are in line with those prevailing in the

11  community for similar maritime cases.

12         In a recent Northern District of California case, <u>Pacific Shinfu</u>

13  <u>Technologies, Co., Ltd., v. Pinnacle Research Institute, Inc.</u>, 2009 U.S. Dist. LEXIS

14  64036 (N.D. Cal. 2009), the Court approved the following rates:

15          ●    $225 to $250 per hour rate for an attorney with over 20 years

16  experience.

17          ●    $160 per hour for a first-year associate.

18          ●    $125 to $130 per hour for a law clerk.[11]

19         These rates are well below the rates that Class Counsel is requesting.

20  Indeed, in contrast to the $250 an hour an attorney with 20 years experience was

21  awarded in <u>Pacific Shinfu</u>, Class Counsel requests nearly the same fee for attorneys with

22  just 1-3 years experience.  (See Audet. Decl., Exhibit "4;" Pitre Decl., Exhibit "3;" <u>see</u> <u>also</u>

23  chart below.)

24         In addition, in another recent Northern District of California case, <u>Theme</u>

25  ─────────────────────

26  [11] The Court also approved attorney billing rates of $181.14 and $115.01.  It is not clear
from the opinion itself the experience level of these attorneys.  Each of these rates is well
below Class Counsel's most junior attorneys' requested rates.  (See Audet. Decl., Exhibit

27  "4;" Pitre Decl., Exhibit "3.")

28

      KYL_SF510529

<u>Promotions, Inc. v. News America Marketing FSI, Inc.</u>, 2010 U.S. Dist. LEXIS 68225 (N.D. Cal. June 14, 2010), the fee applicants (like Class Counsel here) requested that their fees be calculated at the billing rates of each individual attorney and paralegal for whom the fee applicants sought reimbursement.  <u>Id.</u> at * 16.  The Court denied the request.

Instead, in determining reasonable rates, the Court utilized the "Laffey matrix," a widely recognized compilation of attorney and paralegal rates based on various levels of experience, and adjusted it to reflect the San Francisco Bay area market.  <u>Id.</u> at 26-27 <u>citing</u> <u>Laffey v. Northwest Airlines, Inc.</u>, 572 F. Supp. 354 (D.D.C. 1983.)  The <u>Theme Promotions</u>' court applied the following rates (for worked performed in 2008 and 2009) based on the attorney's experience level:

| Experience | 2008 – 2009 Laffey rates for San Francisco area |
|---|---|
| 20+ years | $511.50 |
| 11-19 years | $451.00 |
| 8-10 years | $363.00 |
| 4-7 years | $297.00 |
| 1-3 years | $247.50 |
| Paralegals and law clerks | $143.00 |

<u>Id.</u>  at  31.

Each Audet & Partners, LLP attorney's requested rate is well above the Laffey rate.[12]

---

[12] Because Class Counsel has not provided dates that specific work was done, Defendants have compared the rates requested to the Laffey rates for the San Francisco Bay Area for 2008/2009.  The Laffey rates for 2009 to 2010 were slightly less than

KYL_SF510529

| Attorney | Experience | 2008 – 2009 Laffey rates for San Francisco area | Requested Rate |
|---|---|---|---|
| William Audet | 20+ years | $511.50 | $650.00 |
| Michael McShane | 20+ years | $511.50 | $595.00 |
| Adel Nadji | 4-7 years | $297.00 | $425.00 |

Likewise, each Cotchett, Pitre & McCarthy attorney's requested rate is well above the Laffey rate.

| Attorney | Experience | 2008 – 2009 Laffey rates for San Francisco area | Requested Rate |
|---|---|---|---|
| Joseph W. Cotchett | 20+ years | $511.50 | $900.00 |
| Nancy L. Fineman | 20+ years | $511.50 | $700.00 |
| Frank M. Pitre | 20+ years | $511.50 | $775.00 |
| Stuart G. Gross | 4-7 years | $297.00 | $350.00 |
| Daniel R. Sterrett | 1-3 years | $247.50 | $350.00 |
| Joseph C. Wilson | 1-3 years | $247.50 | $350.00 |

Further, the rates requested for the nine Cotchett, Pitre & McCarthy paralegals and two law clerks range from $150 – $250.  (Pitre Decl., Exhibit "3.")  All of these rates are in excess (some well in excess) of the 2008/2009 Laffey rate of $143 for paralegals and law clerks.

Class Counsel has failed to provide this Court with any evidence that their requested rates are reasonable and in line with the community.  Indeed, the Pacific Shinfu and Theme Promotions cases demonstrate that Class Counsels' requested fees are well above those prevailing in the community.  Therefore, Class Counsels' rates should be reduced accordingly.

2008/2009.  Id.

**C.      Class Counsel Failed To Establish That Their Time Was Reasonably Spent**

"A fee applicant is not entitled to recover hours not reasonably expended, excessive, redundant, otherwise unnecessary or not properly billed to one's client." Bernardi et al. v. Yeutter, 754 F. Supp. 743, 746 (N.D. Cal. 1990) (reversed, in part, on other grounds), quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983.)  In calculating the appropriate lodestar, the Court "must deduct from the lodestar hours that were 'not reasonably expended.'"  Johnson v. Credit International, Inc., 2005 U.S. LEXIS 21513 (N.D. Cal. 2005) (vacated, in part, on other grounds) quoting Hensley, 461 U.S. at 434.

The court must "scrutinize the application for evidence of duplication of effort."  Bernardi, 754 F. Supp. at 746 (reversed, in part, on other grounds), quoting Abrams v. Baylor College of Medicine, 805 F.2d 528, 536 (5th Cir. 1986.)   The Court must determine that the "time spent was reasonably necessary and that its counsel made 'a good faith effort to exclude from the fee request hours that are excessive, redundant, or otherwise unnecessary.'"  Jordan v. Mutnomah County, 815 F.2d 1258, 1263 n. 8 (9th Cir. 1987.)  quoting Hensley, 461 U.S. at 434.  For the reasons explained below, Class Counsel has failed to show that the 3,224.45 hours they claim was reasonably spent.

**1.      Class Counsel Failed To Support Their Fee Request With Appropriate Documentation**

The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992.)  Counsel must submit detailed time records that describe the specific legal tasks being performed during each particular time period.  The documentation must be sufficiently detailed to permit the Court to determine whether the time was reasonably spent on the task at hand.  See Mendez v. County of San Bernardino, 540 F.3d 1109, 1129 (9th Cir. 2008).  "Reasonable" compensation does not include compensation for "padding in the form of inefficient or

- 19 -

1    duplicative efforts. …"  <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1142 (2001).

2              The *only* evidence that Class Counsel has submitted in support of their

3    request that this Court award nearly $2 million in attorneys' fees for over 3,000 hours of

4    claimed work is a one-page summary of the amount of hours worked by each attorney

5    and paralegal.  (<u>See</u> Audet Decl., Exhibit "4;" Pitre Decl., Exhibit "3.")  These summaries

6    merely state the total number of hours each attorney and paralegal claims to have

7    expended on this case, without any description of the worked performed or the dates the

8    work was performed.  There is no attempt to provide any such information to the Court

9    (or the Defendants for that matter).  Class Counsel knows better – especially given their

10   descriptions of their experience.

11             It is impossible to determine from these summaries alone whether the time

12   devoted to particular tasks was reasonable and whether there was improper overlapping

13   of hours.  This prevents the Court from scrutinizing the fee application as required.  This

14   is especially problematic given that nine attorneys and twenty paralegals/law clerks

15   from two different law firms were involved in the case.  In addition, prior to February

16   2009, work was being done on this case that had absolutely nothing to do with

17   commercial crab fishermen.  (<u>See</u> Taylor Decl., ¶ 7.)  To the extent that a portion of Class

18   Counsels' work was related to other subclasses of commercial fishermen (who are now

19   pursuing their claims in the *Tarantino* action),[13] it is not appropriate for attorneys' fees

20   to be awarded for that work in the context of this settlement.

21             Similarly, Class Counsel has requested over $70,000 in costs without

22   appropriate supporting documentation.  The one-page summaries submitted (without

23   any dates or detailed descriptions) by Class Counsel are insufficient to determine

24   whether the costs expended were reasonable.  (<u>See</u> Audet Decl., Exhibit "5;" Pitre Decl.

25   _____

26   [13] It is important to note that Class Counsel here are the <u>same</u> attorneys who are
     prosecuting the *Tarantino* action, and they will undoubtedly seek fees for their work on
     behalf of the other subclasses in that action.  To the extent these attorneys seek fees in
27   this case relating to the other subclasses, their fee requests are improper.

28

KYL_SF510529

DEFENDANTS' OPPOSITION TO CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS - CASE NO. C-07-5800-SC

Exhibit "4.")

### 2.   Class Counsel Unnecessarily Overworked This Strict Liability Case And Now Requests A Windfall For Work Performed By The Young and Duncheon Consortiums

In <u>In re Vitamin Cases</u>, 110 Cal. App. 4th 1041, 1057 (2003), the Court reversed and remanded an award of attorneys' fees.  In so doing the Court stated:

> As the [United States Court of Appeals for the Second Circuit] has pointed out, "[w]hile there is no first-in-time rule governing the award of counsel fees where multiple litigation is brought, a duplicative action which contributes virtually nothing to the ultimate result cannot justify an award of counsel fees. … Where [the] goal [of the litigation] is fully achieved by a single well-managed action, an award of compensation to latecomers who add nothing of value would encourage the bringing of superfluous litigation solely for an award of fees." <u>quoting</u> <u>Thayer v. Wells Fargo Bank, N.A.</u>, 92 Cal. App. 4th 819, 835 (2001.)

OPA 90 and Lempert-Keene provide for ***strict liability*** on a vessel owner for clean-up costs and damages resulting from a discharge of oil. 33 U.S.C. § 2702; Cal. Gov't Code §§ 8670.56.5 & 8670.3(w)(2).  In addition, Lempert-Keene allows the Court to award "reasonable" costs and attorneys' fees to a prevailing Plaintiffs.  Cal. Gov't Code § 8670.56.5(f).  Further, as stated above, OPA 90 and Lempert-Keene both created a claims process by which individuals can recover damages suffered as the result of an oil spill.  Immediately following the Spill, Hudson established a claims center in accordance with OPA 90 and Lempert-Keene for accepting, processing and resolving personal, commercial, and municipal claims from the public for damages and losses resulting from the oil spill.  (<u>See</u> Hudson Decl., ¶ 3.)

The OPA 90 Claims Process established by Hudson worked.  Indeed, without resorting to litigation, the Young and Duncheon Consortiums were able to utilize the OPA 90 Claims Process and negotiated a settlement that gave their crab fishermen clients a 25% premium in addition to their OPA 90 fully adjusted claim. (Young Decl., ¶ 9, Gruwell Decl., ¶ 5, and Hudson Decl., ¶ 8.)  The total settlement

- 21 -

1   payout to these represented commercial crab fishermen is over $3 million. (Hudson

2   Decl., ¶ 8.)

3         With this Motion, Class Counsel attempts to ride the coattails of the Young

4   and Duncheon Consortiums and be compensated as if they were instrumental in

5   negotiating the 25% premium.  In reality, Class Counsel had nothing to do with the

6   negotiations with respect to the 25% premium – that deal was negotiated by Defendants

7   and the Young and Duncheon Consortiums and was later accepted by Class Counsel.  In

8   contrast to the $3 million benefit the represented commercial crab fishermen received,

9   Class Counsels' work in this matter (a total of 3,224.45 hours claimed) has resulted to

10  date in one valid claim worth $1,250 by an unrepresented class member.

11        Further, Class Counsel unnecessarily duplicated work in this action.   For

12  example, the depositions of five COSCO BUSAN crewmembers were taken in May and

13  November 2008 in connection with the civil action filed by the United States government

14  against Regal Stone Limited and Fleet Management Ltd. (among others.)  (See United

15  States v. M/V COSCO BUSAN, Northern District of California, Case No. 07-6745;

16  Declaration of John Cox ("Cox Decl."), ¶ 2.)  During each of these five depositions,

17  because the COSCO BUSAN criminal action was still pending, the crewmembers

18  invoked the Fifth Amendment and refused to answer any of the questions of counsel.

19  (Id.)  Counsel for each crew member indicated in open court at a status conference before

20  the depositions even took place, and again at the beginning of the depositions, that their

21  clients would invoke their Fifth Amendment rights in response to each and every

22  question.  (Id.)  Nevertheless, one attorney from Cotchett, Pitre & McCarthy *in*

23  *addition to* one attorney from Audet & Partners LLP attended each of these five

24  depositions.  (See Cox Decl., Exhibits "1-5.")

25        In an effort to avoid the needless waste of time, during the deposition of the

26  third mate, Counsel for Defendants proposed a stipulation that all counsel could submit

27  a written list of questions for the deponent. (Cox Decl., ¶ 4.)  Defendants would then

28

DEFENDANTS' OPPOSITION TO CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS - CASE NO. C-07-5800-SC

stipulate that the questions had been asked and the response was an invocation of the deponent's Fifth Amendment rights.  (Cox Decl., ¶4 and Exhibit "4" attached thereto, pg. 21-26.)   Counsel for Defendants further offered to stipulate that any questions the parties might at some point in the future propose, could be deemed asked and answered with an invocation of the witness' Fifth Amendment rights.  (Id.)

Class Counsel refused to enter into the stipulation thereby necessitating that the deposition go forward.  (Cox Decl., ¶ 5.)  The deposition lasted all day (from approximately 9:00 a.m. to 6:00 p.m.)  (Cox Decl., ¶ 6.)  During this all-day deposition, Class Counsel from Cotchett, Pitre & McCarthy asked the deponent a total of two questions.  (Id.)  Class Counsel from Audet & Partners LLP did not ask the deponent any questions.  (Id.)  It is unnecessary and duplicative for two attorneys to essentially observe a full day deposition in which the deponent refused to answer every question. There is simply no reason to compensate Class Counsel for this duplication of effort.

### D.    A Multiplier Is Not Required To Attract Competent Counsel To Take On A Case Such As This One And Therefore Is Not Warranted

Courts may enhance a lodestar where "an exceptional effort produced an exceptional benefit."  Thayer v. Wells Fargo Bank, N.A., 92 Cal. App. 4th 819, 838 (2001.) In contrast, a negative multiplier may be appropriate where attorneys duplicate other counsel's work as well as their own.  Id. at 840-845.  The burden of proving that an enhancement is necessary must be borne by the fee applicant.  Purdue v. Kenny A., 130 S. Ct. 1662, 1666 (2010).  There is a strong presumption that the lodestar method yields a sufficient fee.  Id.  An enhancement or multiplier may only be awarded in "rare" and "exceptional" cases.  Id.  Enhancements should not be awarded without specific evidence that the lodestar fee would not have been "adequate to attract competent counsel."  Id. at 1668.

This is not a "rare" or "exceptional" case in which a multiplier is warranted. As stated above, Class Counsel did not "obtain" an exceptional benefit on behalf of the

1   class.  Rather, Class Counsel simply accepted the settlement terms negotiated by other

2   counsel.  Further, a multiplier is not necessary to attract competent counsel to take on

3   the claims of commercial fishermen following an oil spill.  On the contrary, almost

4   immediately after the Spill, competent counsel from various law firms, jumped at the

5   chance to represent commercial crab fishermen.  Indeed, within two weeks of the Spill,

6   the law firms of Audet & Partners, LLP and Cotchett, Pitre & McCarthy filed competing

7   lawsuits in federal and state court on behalf of a class of commercial fishermen.[14]  The

8   Young and Duncheon Consortiums and other counsel also successfully represented a

9   significant number of commercial crab fishermen.

10          It is perhaps not surprising that various law firms jumped at the chance to

11  represent commercial crab fishermen given that OPA 90 and Lempert-Keene provide for

12  *strict liability* on a vessel owner for clean-up costs and damages resulting from a

13  discharge of oil.  33 U.S.C. § 2702; Cal. Gov't Code §§ 8670.56.5 & 8670.3(w)(2).  In

14  addition, Lempert-Keene allows the Court to award "reasonable" costs and attorneys'

15  fees.  Cal. Gov't Code § 8670.56.5(f).  Class Counsel has not submitted any evidence that

16  the lodestar fee would not have been adequate to attract competent counsel in a strict

17  liability case.

18          Further, the cases cited by Class Counsel do not support their argument

19  that a multiplier is appropriate here.  For example, in Ketchum v. Moses, 24 Cal. 4th

20  1122, 1142 (2001), the California Supreme Court held that the superior court erred in

21  considering counsel's expertise in justifying a fee enhancement.  The counsel's

22  qualifications were presumably included in the hourly rate used to calculate the

23  lodestar.  Id.  The Court in Dunk v. Ford Motor Co., 48 Cal. App. 4th 1794, 1810 (1996),

24  _____

25  [14] In addition, as stated above, on November 21, 2007, Birnburg & Associates filed a
    federal court action on behalf of fifteen commercial crab fishermen and/or corporations

26  that owned commercial crab fishing vessels. Those claims were settled and the case
    dismissed. See Shogren et al. v. Regal Stone Ltd., Northern District California, Case No.

27  07-5926, Dkt. No. 19.

28

- 24 -                          KYL_SF510529

1  did not address the appropriateness of a multiplier.  Further, in <u>Lealao v. Beneficial</u>

2  <u>California, Inc.</u>, 82 Cal App. 4th 19, 45 (2000), the Court stated that:

3
4       in cases in which the value of the class recovery can be monetized with a reasonable degree of certainty and it is not otherwise inappropriate, a trial court has discretion to adjust
5  the basic lodestar through the application of a ***positive or negative*** multiplier where necessary to ensure that the fee
6  awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation. (emphasis added.)
7

8       Here, where Class Counsel was not instrumental in obtaining the benefit

9  conferred on the class, a negative multiplier (not a positive multiplier as requested) is

10  warranted.

11  **IV.   CONCLUSION**

12       Based on the foregoing, Defendants respectfully request that the Court

13  deny Class Counsels' Motion for Award of Attorneys' Fees, Costs, and Service Awards to

14  the Named Plaintiffs.

15

16  DATED:  July 23, 2010
17                                    <u>/s/ Anne M. Moriarty</u>
                                    JOSEPH A. WALSH II
18                                      JULIE L. TAYLOR
                                    JULIE A. KOLE
19                                      ANNE MORIARTY
                                    KEESAL, YOUNG & LOGAN
20                                      Attorneys for Defendants
                                    REGAL STONE LIMITED, FLEET
21                                      MANAGEMENT LTD. and M/V COSCO
                                    BUSAN

22
23
24
25
26
27
28

KYL_SF510529