1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7                                  )   Case No. 08-5098 SC
   REGAL STONE LIMITED and FLEET   )
8  MANAGEMENT, LTD.,               )   Related cases:
                                   )   07-5800 SC
9              Plaintiffs,         )   07-6045 SC
                                   )   08-2052 SC
10       v.                        )   08-2268 SC
                                   )   08-5096 SC
11 JOHN J. COTA, an individual, THE )  09-1469 SC
   SAN FRANCISCO BAR PILOT'S       )
12 ASSOCIATION, an unincorporated  )   ORDER GRANTING MOTION
   association, PETER McISAAC, an  )   TO DISMISS
13 individual, and RUSSELL NYBORG, an )
   individual,                     )
14                                 )
               Defendants.         )
15 _____)

16 I.    **INTRODUCTION**

17       On January 19, 2010, Defendants Captain Peter McIsaac

18 ("McIsaac") and Captain Russell Nyborg ("Nyborg")(collectively,

19 "Moving Defendants") filed a Motion to Dismiss.  ECF No. 45

20 ("Mot.").  The Motion includes a request for attorney fees.  Id.

21 at 6.  Plaintiffs Regal Stone Limited ("Regal Stone") and Fleet

22 Management, Ltd., ("Fleet") (collectively, "Plaintiffs") filed an

23 Opposition, and the Moving Defendants submitted a Reply.  ECF Nos.

24 50 ("Opp'n"), 52 ("Reply").  Pursuant to Civil Local Rule 7-1(b),

25 the Court decides the Motion without oral argument.  For the

26 following reasons, the Motion to Dismiss is GRANTED, and the

27 request for attorney fees is DENIED.

28

**II.**   **BACKGROUND**

This action stems from the allision[1] of the cargo ship M/V COSCO BUSAN with the San Francisco-Oakland Bay Bridge on November 7, 2007.  First Amended Compl. ("FAC"), ECF No. 35, ¶ 17.  As a result of the allision, approximately 53,000 gallons of bunker fuel spilled into the San Francisco Bay.  Id.  At the time of the allision on November 7, 2007, Defendant John J. Cota ("Cota") was piloting the cargo ship.  Id. ¶ 19.

As explained below, the M/V COSCO BUSAN was required to have a pilot on board, the Board of Pilot Commissioners ("the Pilot Commission" or "the Board") licenses pilots, and a Port Agent supervises the pilots.  McIsaac is the current Port Agent, and Nyborg is his immediate predecessor.  Mot. at 2 n.3.  Plaintiffs allege that "McIsaac has been the Port Agent and the Chief Executive of the BPA [Bar Pilot's Association] since November 2006," and that Nyborg was the Port Agent and Chief Executive "at various times between 1998 and present."  Id. ¶¶ 6-7.[2]

Plaintiffs accuse Nyborg of failing to report to the Board that Cota had been convicted of driving under the influence in 1999.  Id. ¶ 24.  Plaintiffs allege Nyborg also failed to report

---

[1] The term "allision" is used in maritime cases to describe an accident involving a moving vessel and a stationary object or vessel.  Hochsteter v. Bd. of Pilot Comm'rs for the Bays of San Francisco, San Pablo and Suisun, 6 Cal. App. 4th 1659, 1661 n.1 (Ct. App. 1992).

[2] Moving Defendants point out that the reference to their co-defendants as "The San Francisco Bar Pilot's Association" is an error, and that they should be referred to as the "San Francisco Bar Pilots."  Reply at 1 n.1.  Unless quoting from Plaintiffs' pleadings, the Court will refer to the San Francisco Bar Pilots as "the Bar Pilots."

United States District Court
For the Northern District of California

that the U.S. Coast Guard suspended Cota's federal piloting license from November 1999 to January 2000.  Id.

Plaintiffs allege Nyborg and McIsaac knew or should have known that "Defendant Cota was not medically fit to serve as a marine pilot but [they] nonetheless failed to take the required action to remove Cota from rotation and/or initiate procedures to have Cota disqualified."  Id. ¶ 25.  Plaintiffs accuse McIsaac and Nyborg, along with the Bar Pilots, of having "unlawfully enabled, aided and abetted Cota to continue to serve as a pilot."  Id. ¶¶ 25-26.

Plaintiffs allege that McIsaac, in his capacity as Port Agent, should have closed the bar and prevented vessel traffic on the day of the allision because it was extraordinarily foggy that day.  Id. ¶ 27.  "By law, it is the responsibility of the Port Agent to close the bar . . . when prevailing conditions threatened public, vessel, or pilot safety."  Id.  "In sum, had Defendants properly discharged their statutory and common law responsibilities to disqualify and/or prevent Cota from acting as a pilot and to close the bar on the morning of November 7, 2007, no damage to the vessel, the Bay Bridge or the environment would have occurred."  Id. ¶ 28.

Count II of Plaintiffs' FAC asserts a claim of negligence against the Bar Pilots and McIsaac based on McIsaac's failure to close the bar on November 7, 2007.  Id. ¶¶ 111-115.  Count III accuses the Bar Pilots, McIsaac, and Nyborg of "negligent failure to prevent Cota from piloting" by failing to disclose to the Board Cota's medical condition and the DUI incident.  Id. ¶¶ 116-122.

3

United States District Court
For the Northern District of California

Count IV alleges that the Bar Pilots and McIsaac negligently assigned Cota to pilot the M/V COSCO BUSAN on November 7, 2007, because at that time they knew of his prior incidents and his medical condition. Id. ¶¶ 123-129. Count V alleges that the Bar Pilots and McIsaac negligently failed to maintain adequate procedures for determining and monitoring the medical competence of pilots. Id. ¶¶ 130-136. Count XI accuses the Bar Pilots, McIsaac and Nyborg of willful misconduct in that they disregarded that Cota's continued service could result in an accident. Id. ¶¶ 176-78. Plaintiffs seek money damages as indemnity or contribution from Cota, the Bar Pilots, and the Moving Defendants.

McIsaac and Nyborg move to dismiss the claims against them, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, based on the Eleventh Amendment of the United States Constitution, and they seek an award of their attorney fees under section 1198 of the California Harbors and Navigation Code. Mot. at 1.

**III. <u>LEGAL STANDARD</u>**

When a defendant submits a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing the propriety of the court's jurisdiction. <u>See Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). As a court of limited jurisdiction, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." <u>Stock West, Inc. v. Confederated Tribes</u>, 873 F.2d 1221, 1225 (9th Cir. 1989). A Rule 12(b)(1)

4

jurisdictional attack may be facial or factual.  <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted).  In a facial attack, the defendant challenges the basis of jurisdiction as alleged in the complaint.  <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004).  In such a case, the court assumes the truth of the factual allegations, and draws all reasonable inferences in the plaintiff's favor.  <u>Wolfe v. Strankman</u>, 392 F.3d 358, 362 (9th Cir. 2004).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Cahill v. Liberty Mutual Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).  A motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to . . . nudge[] their claims across the line from conceivable to plausible."  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1974 (2007).

**IV.   DISCUSSION**

    **A.   Eleventh Amendment Immunity**

McIsaac and Nyborg contend the Court has no jurisdiction over the claims asserted against them because they have sovereign immunity under the Eleventh Amendment of the United States

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Constitution.  Mot. at 2-3.  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."  Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001).  The Eleventh Amendment "bars suits in admiralty against the States, even though such suits are not, strictly speaking, 'suits in law or equity.'"  Welch v. Texas Dept. of Highways and Public Transp., 483 U.S. 468, 473 (1987).

"[T]he reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."  Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997).  The decision to extend sovereign immunity to a public entity turns on whether the entity "is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend."  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977).

Courts in the Ninth Circuit employ a five-factor test to determine whether an entity is an arm of the state:

> [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3]

6

United States District Court
For the Northern District of California

> whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity.

Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 250-51 (9th Cir. 1992) (quoting Mitchell v. Los Angeles Community Coll. Dist., 861 F.2d 198, 201 (9th Cir. 1988)) (hereinafter the "Mitchell test" or "Mitchell factors").  Courts "must examine these factors in light of the way California law treats the governmental agency."  Belanger, 963 F.2d at 251.

**B.   California's Statutory Scheme**

The California Legislature has enacted a statutory scheme to govern pilots for and pilotage of the San Francisco, San Pablo, and Suisun Bays ("the Bays").  Cal. Harb. & Nav. Code §§ 1100-1203.  In order to ensure the safety of persons, vessels, and property using the Bays and their tributaries, and to avoid damage to these waters and their surrounding ecosystems, pilotage is mandatory for the classes of vessels that are required by statute to secure pilotage services.  Id. § 1100.

**1.   The Board of Pilot Commissioners**

The Board licenses and regulates the pilots.  Id. §§ 1150, 1154, 1172.  Although originally an independent state agency, the Board became a department of the Business, Transportation and Housing Agency on January 1, 2009.  See Pls.' Req. for Judicial Notice ("RJN"), Docket No. 51-3, Ex. C ("Overview").[3]  The current

---

[3] Plaintiffs request the Court to take judicial notice of a document that can be found on the website of the Board entitled "Pilot Commision - Overview."  The Court can take judicial notice of facts not subject to reasonable dispute.  Fed. R. Evid. 201(b).

**United States District Court**
For the Northern District of California

1  version of the statute states: "There is in the Business,

2  Transportation and Housing Agency a Board of Pilot Commissioners

3  for the Bays of San Francisco, San Pablo, and Suisun, consisting

4  of seven members appointed by the Governor, with the consent of

5  the Senate . . . ."  Cal. Harb. & Nav. Code § 1150(a).[4]

6           **2.   The Port Agent**

7       Section 1130 of the Code sets out how a Port Agent is

8  appointed and his or her duties:

9           A majority of all of the pilots licensed by the
            board shall appoint one pilot to act as port
10          agent to carry out the orders of the board and
            other applicable laws, and to otherwise
11          administer the affairs of the pilots.  The
            appointment is subject to the confirmation of
12          the board.

13  Id. § 1130(a); Cal. Code Regs. tit. 7, § 218(a).  "The port agent

14  shall be responsible for the general supervision and management of

15  all matters related to the business and official duties of pilots

16  licensed by the board."  Cal. Harb. & Nav. Code § 1130(b); Cal.

17  Code Regs. tit. 7, § 218(b).

18          The port agent shall immediately notify the
            executive director of the board of a suspected
19          violation, navigational incident, misconduct, or
            other rules violation that is reported to him or
20          her or to which he or she is a witness.  The
            board shall adopt regulations for the manner and

21

22  Although the Court does not need to take judicial notice of this
    document in its entirety, the Court takes judicial notice of the
23  fact that the Board became a department of the Business,
    Transportation and Housing Agency on January 1, 2009.
24

25      [4] The version of the statute that was in effect from January
    1, 2005 to December 21, 2008, stated: "There is in the state
26  government a Board of Pilot Commissioners for the Bays of San
    Francisco, San Pablo, and Suisun, consisting of seven members
27  appointed by the Governor, with the consent of the Senate . . . ."
    Id. (amended 2009).

28
                                  8

**United States District Court**
For the Northern District of California

content of a notice provided pursuant to this
section.

Cal. Harb. & Nav. Code § 1130(c).

The California Code of Regulations provides more information
concerning the duties of the Port Agent.  The Port Agent assigns
pilots to vessels.  Cal. Code Regs. tit. 7, § 218(c)(1).  The Port
Agent shall:

> (2) Prepare and administer the pilots' vacation
> schedule.
> (3) Represent pilots before the Board and its
> committees.
> (4) Collect data, prepare accounts, and make the
> payments to the Board required of pilots by the
> Code and these regulations . . . .
> (5) Identify each boat used by the pilots and
> notify the Board of the names of the pilots
> responsible for the management of each such
> boat.
> (6) Report to the Board all accidents,
> groundings, collisions or similar navigational
> incidents involving vessels to which a pilot has
> been assigned.
> (7) Report to the Board any matter which, in his
> or her opinion, affects the ability of a pilot
> to carry out his or her lawful duties.
> (8) Ensure that at all times adequate pilots are
> available . . . .
> (9) Order the Bar closed for reasons of public,
> pilot, or vessel safety.

Id. § 218(c)(2)-(9).  "In carrying out his or her duties, the Port
Agent shall be primarily guided by the need for safety of persons,
property, vessels and the marine environment."  Id. § 218(d).  The
Port Agent must also report pilot absences to the Board.  Id. §
218(f).  The Port Agent has the authority to direct pilots to
undergo timely drug and alcohol testing, and the Port Agent "shall
expeditiously inform the U.S. Coast Guard and the Board, orally
and in writing, of his or her determination and the basis

9

therefor."  Id. § 218(h).

**C.   Plaintiffs' Allegations Concern McIsaac's and Nyborg's Actions or Omissions as Officers or Agents of the Board**

Under the Eleventh Amendment, "a state official is immune from suit in federal court for actions taken in an official capacity."  California v. Deep Sea Research, Inc., 523 U.S. 491, 502 (1998).  Moving Defendants contend that they are state officials immune from suit.  Mot. at 3.  Plaintiffs respond that there are fundamental factual questions concerning the relationship of the Moving Defendants to the Bar Pilots and the Board that cannot be resolved until after the parties have an opportunity to engage in discovery.  Opp'n at 2-3.  Plaintiffs focus on the Moving Defendants' role as Bar Pilots or Chief Executives of the Bar Pilots.  Id. at 6.  Plaintiffs suggest Port Agents function as "liaisons" between the Bar Pilots and the Board.  Id. at 6.  Plaintiffs contend that McIsaac and Nyborg were Port Agents of the Bar Pilots, not Port Agents of the Board.  Id. at 7 n.5.

The relevant statutes and regulations do not support Plaintiffs' contentions.  Title 7, Division 2 of California's Code of Regulations deals with the Board, and the definition and duties of the Port Agent are contained within, and explained within, this division.  See Cal. Code Regs. tit. 7, §§ 202, 218.  As the regulations creating the office of Port Agent are found within this division, the Court finds that Port Agent is an agent or officer of the Board.

However, it is also clear that the Port Agent sometimes acts

10

on behalf of the Bar Pilots, and sometimes on behalf of the Board. Although confirmed by the Board, the Port Agent is selected by a majority of the pilots. Id. § 218(a). The Port Agent "[r]epresents pilots before the Board and its committees." Id. § 218(3). When doing so, the Port Agent is acting on behalf of the pilots. See Overview at 5 ("the Port Agent . . . is selected by the pilots to represent them at the Board."). It is not inaccurate, therefore, for Plaintiffs to describe the Port Agent as a liaison between the Bar Pilots and the Board.

However, Plaintiffs' allegations against McIsaac and Nyborg focus on conduct performed on behalf of the Board, not on behalf of the Bar Pilots. Plaintiffs allege that McIsaac should not have assigned Cota to pilot the M/V COSCO BUSAN, that Nyborg failed to report information concerning Cota, that McIsaac and Nyborg knew Cota was medically unfit to serve as a pilot but failed to report him, and that McIsaac should have closed the bar on November 7, 2007. FAC ¶¶ 23-28. These allegations correspond precisely to the Port Agent's regulatory duties. See Cal. Code Regs. tit. 7, § 218(c) ("The Port Agent shall . . . . [a]ssign Pilots to Vessels . . . . [r]eport to the Board any matter which, in his or her opinion, affects the ability of a pilot to carry out his or her lawful duties . . . [and] [o]rder the Bar closed for reasons of public, pilot, or vessel safety."). Plaintiffs' FAC explicitly states that "[a]t all times alleged herein, Defendants McIsaac and Nyborg were acting within the course and scope of their capacities as Port Agents, as defined by Title 7, California Code of Regulations section 218, and therefore were acting as agents of

11

United States District Court
For the Northern District of California

the California Board of Pilot Commissioners."  FAC ¶ 11.
Plaintiffs essentially argue that McIsaac and Nyborg were
negligent in their supervision of Cota, and in this supervisory
role, McIsaac and Nyborg were acting on behalf of the Board.
There is no need for discovery regarding this issue.  The Court
finds, as a matter of law, that McIsaac and Nyborg were acting as
officers or agents of the Board when they engaged in the conduct
complained of in Plaintiffs' FAC.

Furthermore, Regal Stone has argued in a related case that
McIsaac and Nyborg were acting on behalf of the Board when engaged
in the acts or omissions complained of here.  In <u>State of</u>
<u>California v. Regal Stone et al.</u>, Case No. 08-2268, Regal Stone
filed a Counterclaim alleging that the Port Agent "is a dual
agent, who acts on behalf of the pilots and the Board, depending
on the circumstances," alleging that the Port Agent was negligent
in carrying out its duties by failing to report matters to the
Board and by failing to close the bar, and alleging that the Board
"is liable for the negligence of the Port Agent when he acts on
behalf of the Board."  <u>See</u> Defs.' RJN, ECF No. 53, Ex. 1 ("Regal
Stone Countercl.") ¶¶ 26, 68-71.[5]  Regal Stone is one of the
Plaintiffs in this case.  Regal Stone's own allegations in this
related case confirms the Court's determination that McIsaac and
Nyborg were acting as officers or agents of the Board when they

---

[5] The Court can take judicial notice of Regal Stone's
allegations in <u>State of California v. Regal Stone et al.</u>, Case No.
08-2268, a related case that is also before this Court.  It is not
subject to reasonable dispute that Regal Stone made these
allegations.

1    assigned Cota to pilot the M/V COSCO BUSAN, when they failed to

2    report information concerning Cota's past conduct and medical

3    condition, and when McIsaac failed to close the bar on November 7,

4    2007.

5         **D.    The Board is Immune from Suit**

6         Having determined that McIsaac and Nyborg were acting on

7    behalf of the Board, the next question is whether the Board can be

8    considered an arm of the state immune from suit in federal court.

9    Plaintiffs do not dispute that the Board is an agency of the

10   state.  Opp'n at 7.  Instead, they contend the Board is not a

11   state agency immune from suit under the Eleventh Amendment.  Id.

12   The Court disagrees with Plaintiffs.  The Mitchell test

13   establishes that the Board is immune from suit.

14        **1.    Money Judgment Satisfied out of State Funds**

15        The first prong of the Mitchell test -- whether a money

16   judgment against the agency would be satisfied out of State funds

17   -- is the "predominant factor."  Belanger, 963 F.2d at 251.

18   Plaintiffs contend that a money judgment against the Board would

19   not be satisfied out of state funds because the Pilot Commission

20   Overview states that the Board's expenses "are paid for by

21   industry surcharges on pilotage fees and not by state or local

22   taxes."  Overview at 1.

23        However, the relevant statute provides that:

24            All moneys received by the board pursuant to
             the provisions of any law shall be accounted
25            for at the close of each month to the
             Controller in the form that the Controller may
26            prescribe and, at the same time on the order
             of the Controller, all these moneys shall be
27            paid into the State Treasury to the credit of

28                                    13

United States District Court
For the Northern District of California

the Board of Pilot Commissioners' Special
Fund.

Cal. Harb. & Nav. Code § 1159(a).  The State Controller
appropriates money from this fund in the State Treasury for the
payment of the compensation and expenses of the Board and its
officers and employees.  Id. § 1159(b).  These statutes imply that
any judgment against the Board would be paid from state funds.
See Cal. Gov't Code § 900.6 ("'State' means . . . any . . . board,
commission or agency of the State claims against which are paid by
warrants drawn by the Controller."), § 965.2(a) ("The Controller
shall draw a warrant for the payment of any final judgment . . .
against the state . . . .").

The mere fact that a state agency collects fees does not bar
it from Eleventh Amendment immunity.  See Regents of the Univ. of
Cal. v. Doe, 519 U.S. 425, 431 (1997) (treating state university
as arm of the state immune from suit even though university
collects fees); Lupert v. California State Bar, 761 F.2d 1325,
1327 (9th Cir. 1985) (treating Board of Governors and Committee of
Bar Examiners of the State Bar of California as immune from suit
even though State Bar collects fees).  The first, and predominant,
Mitchell test factor weighs in favor of finding the Board immune
from suit.

        2.   Central Governmental Functions

Plaintiffs contend the Board does not perform central
governmental functions because it provides service for one
isolated geographic area of the State, and because at the time of
the incident, "it was not part of any governmental department."

14

**United States District Court**
For the Northern District of California

Opp'n at 9.   While it is true that the Board became a department
of the Business, Transportation and Housing Agency on January 1,
2009, <u>see</u> Cal. Harb. & Nav. Code § 1150(a), it does not follow
that the Board was not performing central governmental functions
before that date.   The Board "was created by [the] first
legislative session of the new state of California in 1850 and has
been serving continuously ever since."   Overview at 1.   While the
Board's area of coverage does not extend to the whole state, it is
the only state pilot commission in California.   <u>Id.</u> at 2. Pilots
outside the Board's area of coverage operate under the authority
of their federal pilot's license.   <u>Id.</u> at 2.

California's statutory scheme shows that the Board performs
central governmental functions.   The California Legislature "finds
and declares that it is the policy of the state to ensure the
safety of persons, vessels, and property using Monterey Bay and
the Bays of San Francisco, San Pablo, and Suisun, and the
tributaries thereof . . . by providing competent, efficient, and
regulated pilotage for vessels required by this division to secure
pilotage services."   Cal. Harb. & Nav. Code § 1100.   The
Legislature further finds that "[a] program of pilot regulation
and licensing is necessary in order to ascertain and guarantee the
qualifications, fitness, and reliability of qualified personnel
who can provide safe pilotage of vessels entering and using
Monterey Bay and the Bays of San Francisco, San Pablo, and
Suisun."   <u>Id.</u> § 1101(e).   "Bar pilotage in the Bays of San
Francisco, San Pablo, and Suisun has continuously been regulated
by a single-purpose state board since 1850, and that regulation

15

United States District Court

For the Northern District of California

1    and licensing should be continued." Id. § 1101(g).  Regulating

2    and licensing the Bar Pilots to ensure the safety of person,

3    vessels, and property are central governmental functions.  The

4    second Mitchell test factor weighs in favor of finding the Board

5    immune from suit.

6              **3.   Other Mitchell Test Factors**

7         Plaintiffs correctly point out that the Board can sue and be

8    sued.  See, e.g., Hochstetler, 6 Cal. App. 4th at 1663 (pilot

9    filed petition for writ of mandate in state court seeking to

10   overturn Board's suspension of his state pilot license).  However,

11   the Ninth Circuit has found state agencies immune from suit even

12   though they could sue or be sued.  In Belanger, the Ninth Circuit

13   noted that the third Mitchell factor "is entitled to less weight

14   than the first two factors," and found California school districts

15   immune even though they can sue or be sued.  963 F.2d at 254.

16        With regard to the final two factors, Plaintiffs do not

17   contend that the Board can own property in its own name, see Opp'n

18   at 9, and Moving Defendants point out that the Board does not have

19   independent corporate status.  Reply at 11.  Only the third factor

20   weighs against a finding of immunity, and therefore the Court

21   finds that the Board is a state agency immune from suit under the

22   Eleventh Amendment.  As Plaintiffs' FAC focuses on the Moving

23   Defendants' conduct when acting on behalf of the Board, the Court

24   concludes that the Moving Defendants are immune from suit under

25   the Eleventh Amendment and should be dismissed from this case.

26        **E.   Attorney Fees**

27        Moving Defendants request that they be awarded fees and

28                                   16

costs.  Mot. at 6.  Moving Defendants rely on Section 1198(c)(1)(D) of the Harbors and Navigation Code, which provides that "[a] pilot who is the prevailing party shall be awarded attorney's fees and costs incurred in any action to enforce a right to indemnification provided pursuant to this subdivision." Cal Harb. & Nav. Code § 1198(c)(1)(D).

Here, the Court has dismissed the Moving Defendants because the allegations against them focus upon actions that they took, or failed to take, as agents or officers of the Board.  See Part IV.C, supra.  While pilots can enforce a right to indemnification pursuant to Section 1198(c), there is nothing in the statutory language to indicate that Port Agents can do so when acting on behalf of the Board.  Accordingly, the Court DENIES the Moving Defendants' Section 1198 request for attorney fees.

///
///
///
///
///
///
///
///
///
///
///
///
///

17

**United States District Court**
For the Northern District of California

**V.    <u>CONCLUSION</u>**

For the foregoing reasons, the Court GRANTS the Motion to Dismiss filed by Defendants Captain Peter McIsaac and Captain Russell Nyborg, who are hereby DISMISSED from this case WITH PREJUDICE.  The Court DENIES their request for attorney fees.

IT IS SO ORDERED.

Dated: September 7, 2010

_____
UNITED STATES DISTRICT JUDGE

18