1  FRANK M. PITRE (SBN 100077)
   fpitre@cpmlegal.com
2  STUART G. GROSS (SBN 251019)
   sgross@cpmlegal.com
3  **COTCHETT, PITRE & McCARTHY**
   San Francisco Airport Office Center
4  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
5  Telephone: (650) 697-6000

6  WILLIAM M. AUDET (SBN 117456)
   waudet@audetlaw.com
7  ADEL NADJI (SBN 232599)
   anadji@audetlaw.com
8  **AUDET & PARTNERS LLP**
   221 Main St Ste 1460
9  San Francisco, CA 94105
   Telephone: 415.568.2555

*Attorneys for Plaintiffs and
the Class Members*

**UNITED STATES DISTRICT COURT FOR**

**THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Allen Loretz, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>Regal Stone, Ltd., Hanjin Shipping, Co., Ltd., Synergy Maritime, Ltd., Fleet Management Ltd., and John Cota, *In Personam*; M/V Cosco Busan, their engines, tackle, equipment, appurtenances, freights, and cargo *In Rem*,<br><br>    Defendants. | Case No. C 07-5800 SC<br>And related cases:<br><br>07-6045 SC, 08-2268 SC, 08-2052 SC, 08-5098 SC, 09-01469 SC<br><br>**SECOND SUPPLEMENTAL DECLARATION OF STUART G. GROSS IN SUPPORT OF CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO THE NAMED PLAINTIFFS** |

I, STUART G. GROSS, declare as follows:

1. I am an attorney admitted to practice before all courts of the State of California and before this Court, and am an attorney in the law firm Cotchett, Pitre & McCarthy ("CPM"). I make this declaration of my own personal knowledge, and, if called as a witness, I could and would competently testify to the matters stated below.

2. I submit this supplemental declaration in support of Class Counsels' Motion For Award Of Attorneys' Fees, Costs, And Service Awards To The Named Plaintiffs ("Motion For Fees & Costs").

3. CPM's lodestar figure of $434,392.50 submitted in association with the class-wide settlement of the claims of San Francisco Bay commercial Dungeness crab fishermen arising out of the Cosco Busan oil spill ("CBOS") ("Dungeness Crab Claims") represents approximately 27% of CPM's total lodestar for the entire case, $1,598,935.00, calculated from inception of the litigation on November 13, 2007, through June 29, 2010, four days before the Motion For Fees & Costs was filed. CPM will seek an award of fees based on the remaining approximately 73% of that lodestar through an application associated with the resolution of claims of various categories of San Francisco Bay commercial finfish fishermen that CPM is pursuing ("Finfish Claims"). CPM is pursuing the Finfish Claims in the parallel State court case before the Honorable John Munter, *Tarantino, et al. v. Hanjin Shipping Co., et al.*, CGC-07-469379 (SF Sup.), and has reached a settlement in principal of these claims with Defendants, which is scheduled to be submitted to Judge Munter for preliminary approval on September 29, 2010.

4. CPM allocated its total November 13, 2007 through June 29, 2010 lodestar between the Dungeness Crab Claims and Finfish Crab Claims based on: (a) the results achieved as to the two categories of claims; and (b) the extent to which the work associated with a particular time entry was more or less associated with pursuit of one or the other categories of claims.

5.      The redacted allocated time report submitted as Exhibit 1 to the Supplemental Declaration of Stuart G. Gross filed on September 14, 2010 ("Allocated Time Report"), provides a graphic representation of this allocation process.

6.      For the Court's convenience, CPM color-coded the Allocated Time Report. Time entries that were allocated equally between Dungeness Crab Claims and Finfish Claims are highlighted in green. Time entries that were allocated by some other proportion – in most of such instances less than 50% of the particular time entry was allocated to Dungeness Crab Claims but in a small number of instances more than 50% of the particular time entry was allocated to Dungeness Crab Claims – are highlighted in blue. Time entries that were allocated 100% to Dungneness Crab Claims are highlighted in yellow. Finally, time entries that were allocated 100% to Finfish Claims were omitted from the report.

7.      Time allocated equally between the Dungeness Crab Claims and the Finfish Claims, which is highlighted in green ("Green Time"), reflects work that furthered the pursuit of both the Dungeness Crab Claims and Finfish Claims and is properly allocated in equal proportions between those claims based on the necessity and/or applicability of the work to the pursuit of both categories of claims and the results achieved for each category of claims.

8.      Accordingly, the greatest concentration of Green Time occurs near the inception of the litigation, when CPM was doing work that was foundational for all of the claims pursued in the litigation. For example, Line 8 of the Allocated Time Report, to which the internal Transaction ID No. 96,932 is assigned, describes 8.5 hours worked by Stuart Gross on November 16, 2007. The Activity Description for this entry describes the work done by Mr. Gross as follows: "Prepare Complaint." Neither the Dungeness Crab Claims nor the Finfish Claims claims could have been pursued without a complaint having been prepared, and the Complaint that Mr. Gross prepared states both categories of claims. Thus, the work spent by Mr. Gross preparing the Complaint is properly allocated in equal proportions between the two categories of claims: 4.25 hours to the lodestar associated with pursuit of the Dungeness Crab Claims and 4.25 hours to the lodestar associated with the pursuit of the Finfish Claims.

**SECOND SUPPLEMENTAL DECLARATION OF STUART G. GROSS IN SUPPORT OF CLASS COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO THE NAMED PLAINTIFFS ; CASE NO. C 07-5800 SC**

2

9. Time allocated by some proportion other than equally between the Dungeness Crab Claims and the Finfish Claims or 100% to one category or the other, which is highlighted in blue ("Blue Time"), reflects work that furthered the pursuit of the Dungeness Crab Claims and Finfish Claims but is properly allocated in non-equal proportions between the two claims based on the relative necessity and/or applicability of the work to pursuit of one category of claims and/or the relative results that worked achieved as to each category of claims.

10. In some cases, the chosen proportions were based on the fact that an entry described work on projects that furthered both categories of claims as well as projects that were directly related to only one category of claims. For example, Line 154 of the Allocated Time Report, to which the internal Transaction ID No. 105,448 was assigned, describes 5 hours worked by CPM legal assistant Kimberly So on March 12, 2008. The Activity Description describes this work by Ms. So as follows: "Prepare/meet with Clients Sau & Kiu Phang re Claims Process, Prepare plan for Disco. to Regal Stone, Fleet Management, and Hanjin." Sau and Kiu Phang are commercial nearshore (rockfish) fishermen; therefore, time spent working on their short-term claims is properly allocated to the lodestar associated with pursuit of Finfish Claims. However, preparing a plan for discovery against Defendants (the other activity described) is work that was necessary for, and furthered the pursuit of both categories of claims. Accordingly CPM allocated 75% of Ms. So's time in this entry to the lodestar associated with the Finfish Claims and 25% to the lodestar associated with the Dungeness Crab Claims.

11. In other instances, the proportional allocation of Blue Time, was based on the relative value of work done as to the pursuit of each type of claims as well as the results ultimately achieved. For example, Line 128 of the Allocated Time Report, to which internal Transaction ID No. 103,955 was assigned, describes 10.7 hours worked by senior paralegal Don Thornton on February 21, 2008. The Activity Description describes this work by Mr. Thornton as follows: "FACT INVESTIGATION: Research and public record check on similar claims processes in the past. Research into the herring, rock fish and commercial fishing industries, and potential others hit by spill." Based on the criteria just described, CPM allocated 10% of this

time, 1.07 hours, to the lodestar associated with pursuit of Dungeness Crab Claims and 90% of this time, 9.63 hours, to the lodestar associated with pursuit of Finfish Claims.

12. Time allocated 100% to Dungeness Crab Claims, which is highlighted in yellow ("Yellow Time"), reflects work that is properly allocated in full to the pursuit of the Dungeness Crab Claims based on the relative necessity and/or applicability of the work to pursuit of this category of claims and/or the results achieved. For example, Line 85 of the Allocated Time Report, to which internal Transaction ID No. 100,536 is assigned, describes 12 hours worked by CPM attorney Stuart Gross on January 7, 2008. The Activity Description describes this work by Mr. Gross as follows: "Preparation of motion for order show cause and related affidavits." Through the motion for an order to show cause, Plaintiffs successfully sought an order by this Court halting Defendants' abuse of the short-term claims, through which Defendants sought to require commercial Dungeness crab fishermen to waive substantial rights in exchange for receipt of small interim payments and foreclose the rights of Dungeness crab fishermen to seek compensation through the short-term claims process if they were lead plaintiffs in any class litigation against Defendants. Accordingly, CPM allocated all of this time to the lodestar associated with pursuit of Dungeness Crab Claims.

13. The time that CPM allocated 100% to pursuit of the Finfish Claims consists of both time that is related only to the pursuit of the Finfish Claims, e.g., the time spent by CPM on its successful motion to certify a Commercial Herring Fishermen Subclass before Judge Munter, as well as time that, while relating generally to the pursuit of all categories of claims, ultimately is properly allocated 100% to the pursuit of Finfish Claims based on the value that such work brought to the pursuit of Finfish Claims, e.g. certain portions of discovery conducted in the latter stages of the litigation.

14. The $29,144.55 in costs, including $5,562.5 in expert/consultant fees, for which CPM seeks reimbursement in association with the class-wide settlement of the Dungeness Crab Claims is also the product of allocation decisions. These decisions resulted in allocation of approximately three quarters of all costs, incurred from November 13, 2007 through June 29,

2010, to the pursuit of Finfish Claims and allocation of only approximately one quarter of those costs to the pursuit of Dungeness Crab Claims.

15. CPM's total costs from inception of the litigation on November 13, 2007, through June 29, 2010, four days before the Motion For Fees & Costs was filed, equaled $138,822.10, including $65,032.30 in expert/consultant fees.

16. This allocation was achieved by, first, separating out costs that were solely attributable to pursuit of the Finfish Claims, including but not limited to $59,469.80 in expert/consultant fees, the $40 filing fee charged by San Francisco Superior Court for filing the Motion to Certify the Commercial Herring Fishermen Subclass, and the $1,783.13 in facilities costs incurred in connection with an informational meeting held for Commercial Herring Fishermen Subclass members. Next, the remaining costs, which equaled $58,289.10, were divided in half and allocated equally between pursuit of the Dungeness Crab Claims and Finfish Claims.

17. The allocation of these costs equally between pursuit of the two categories of claims was reasonable, in light of the fact that such costs were necessary either for (a) pursuit of litigation on behalf of both categories of claims or (b) preparation of short-term claims submitted on behalf of Lead Plaintiffs, which arose varyingly out of their participation in the commercial Dungeness crab fishery and various Finfish fisheries.

18. As to various costs themselves, all were reasonably incurred.

19. For example, CPM was forced to incur $5,453.14 in service of process costs ($2,726.57 of which it seeks reimbursement, here) as a result of the refusal by counsel for Defendants Fleet Management Ltd. ("Fleet") and Regal Stone Ltd. ("Regal") to accept service of process on behalf of their Hong Kong resident clients or waive such service. This forced CPM to explore other methods of completing such service, including service using Hague Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters ("Hague Convention") mechanisms and mail service in accordance with California State law, as allowed under Article 10 of the Hague Convention. Ultimately, based on the work by a private

1 investigator, CPM was able to complete service upon these entities through mail service directed
2 to the home and office addresses of multiple Fleet and Regal executives.  It was reasonably
3 necessary for CPM to expend the costs to identify such persons and their home and work
4 addresses, as well as to mail service of process packages to each of those addresses, in light of
5 the refusal by counsel for Fleet and Regal to facilitate service of their clients, which plausibly
6 indicated a strategy by Fleet and Regal to evade service of process for as long as possible.   It was
7 reasonable, therefore, to anticipate that some or all of the persons to which service packets were
8 sent would refuse delivery at either their work or home addresses, necessitating the building in of
9 a certain level of redundancy.  Furthermore, until counsel for Defendants Fleet and Regal
10 acknowledged the adequacy of the service of process completed upon each by mail, it was
11 reasonably necessary for CPM to incur the costs necessary to effect service of process on these
12 Defendants using Hague Convention mechanisms.  CPM canceled this work when counsel for
13 Fleet and Regal acknowledged the adequacy of the service of process effected on both through
14 mail.

15     20. As a further example, the $10,886.50 for in-house photocopying charges that
16 CPM incurred from November 13, 2007 through June 29, 2010, of which just $2,728.05 is
17 requested in reimbursement here, is reasonable given the substantial amount of copying that
18 CPM had to do not only in connection with litigation efforts, but also in connection with
19 processing the short-term claims of its lead Plaintiffs.  The latter work, which resulted in CPM's
20 Lead Dungeness Settlement Class Representatives receiving $510,749.49 in short-term claims
21 payments separate and in addition to the consideration that they will receive through the instant
22 Settlement, was very document intensive, requiring CPM to make copies of a substantial number
23 of lengthy Department Fish & Game records for each person whose claim CPM prepared.

24     I declare under penalty of perjury that the foregoing is true and correct.
25 Executed on September 20, 2010.

26                                                 s/ Stuart G. Gross
                                                STUART G. GROSS
27
28