# EXHIBIT A

1  Frank M. Pitre (fpitre@cpmlegal.com)
   Stuart G. Gross (sgross@cpmlegal.com)
2  COTCHETT, PITRE & McCARTHY
   San Francisco Airport Office Center
3  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
4  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
5
   William M. Audet (waudet@audetlaw.com)
6  Michael McShane (mmcshane@audetlaw.com)
   Adel A. Nadji (anadji@audetlaw.com)
7  AUDET & PARTNERS, LLP
   221 Main Street, Suite 1460
8  San Francisco CA 94105
   Telephone: 415.982.1776
9  Facsimile: 415.568.2556

10 *Class Counsel*

11

12

13              **UNITED STATES DISTRICT COURT FOR**

14           **THE NORTHERN DISTRICT OF CALIFORNIA**

15

16 Allen Loretz, individually and on behalf of all      Case No. C 07-5800 SC
   others similarly situated,                           And related cases:
17
           Plaintiffs,                                   07-6045 SC, 08-2268 SC, 08-2052 SC,
18                                                       08-5098 SC, 09-01469 SC
   v.
19
   Regal Stone, Ltd., Hanjin Shipping, Co., Ltd.,       **CORRECTED SUPPLEMENTAL**
20 Synergy Maritime, Ltd., Fleet Management              **DECLARATION OF STUART**
   Ltd., and John Cota, *In Personam*; M/V Cosco         **GROSS IN RESPONSE TO THE**
21 Busan, their engines, tackle, equipment,              **COURT'S ORDER OF OCT. 22, 2010**
   appurtenances, freights, and cargo *In Rem,*
22
           Defendants.
23

24

25

26

27

28

---

**CORRECTED SUPP. DEC. OF STUART GROSS IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO THE NAMED PLAINTIFFS**

I, Stuart Gross, declare under penalty of perjury, the following is true and correct:

1.  I am an attorney admitted to practice before all courts of the State of California and before this Court, and a principal in the law firm Cotchett, Pitre & McCarthy.

2.  I submit this supplemental declaration in response to this Court's Order of October 22, 2010.

3.  This declaration is based on my personal knowledge and on information provided to Class Counsel by third parties, including the Claims Administrator, Gilardi & Company LLC ("Gilardi"), and counsel for Settling Defendants, as well as on the documents attached hereto.

4.  Unless otherwise defined, all defined terms used herein shall have the meanings assigned to them in the Settlement Agreement.

5.  In order to best provide the information sought by the Court in its Order of October 22, 2010, the information below is organized in response to the Court's questions contained in its October 22 Order; however the order of those questions in the Order has <u>not</u> been replicated herein.

I.  **"How many Dungeness Crab Skippers and Crewmembers are part of the Class in this case?"**

6.  Based on currently available information, the **<u>lowest</u>** possible number of Dungeness Crab Skippers who are part of the Class is **<u>twenty-seven (27)</u>**. The **<u>highest</u>** possible number of Dungeness Crab Skippers who are part of the Class is **<u>three hundred and seventy-two (372)</u>**.

7.  As explained herein, the low number is based on information provided by Settling Defendants, identifying twenty-seven (27) Dungeness Crab Skippers, who as of the date of this Declaration, have submitted a Dungeness Crab Closure Claim, were paid thereon, but who had not individually settled with the Defendants. As also explained herein, the high number is calculated by subtracting from the total number commercial Dungeness crab vessel permits issued by the California Department of Fish & Game Statistics, in 2007 (the year of the spill), five hundred ninety-two (592), the total number of Dungeness Crab Skippers that, according to a

1

document produced by Cynthia Hudson of Hudson Marine, individually settled with the Settling Defendants, two hundred and twenty (220).

8.     Based on currently available information, the **lowest** possible number of Dungeness Crab Crewmembers who are part of the Class is **seven (7)**. The **highest** possible number of Dungeness Crab Crewmembers who are part of the class is **one thousand eight hundred and sixty (1860)**.   A **low mid-range** possible number of Dungeness Crab Crewmembers who are part of the Class is **thirty-six (36)**. A **high mid-range** possible number of Dungeness Crab Crewmembers who are part of the Class is **three hundred and sixty-five (365)**.

9.     As explained herein, the low number is based on the number Dungeness Crab Crewmembers who, as of October 14, 2010, are scheduled to be paid, on November 2, 2010, as Dungeness Crab Crewmembers in the first distribution of money to Class Members under the Settlement.  The highest possible number is based on multiplying a high estimate of five (5) crewmembers per boat by the highest estimate of Dungeness Crab Skippers who are part of the Class, three hundred and seventy-two (372).  The low-mid range number is the total number of Dungeness Crewmembers that have submitted claims to Gilardi as of October 29, 2010.  The high-mid range number is the total number of putative Dungeness Crab Crewmembers identified by Settling Defendants for the provision of direct notice of the Settlement.

A.     **Definitions Of "Class" And "Dungeness Crab Skippers" And "Dungeness Crab Crewmembers" Contained in the Settlement Agreement**

10.    The Class in the Settlement Agreement defines as follows:

[A]ll Dungeness Crab Skippers and Dungeness Crab Crewmembers.  Excluded from the Dungeness Crab Settlement Class are:  (1) Defendants and their subsidiaries and affiliates; (2) all Individually Settled Skippers; (3) all persons who are required, as a condition of participating in this Settlement, to submit a Dungeness Crab Closure Claim through the Dungeness Crab Closure Claims Process on or before the Skipper Closure Claim Deadline and fail to do so; (4) governmental entities; and (5) the Judges to whom the Actions are assigned and any immediate family members thereof

2

11. "Dungeness Crab Skipper" is defined in the Settlement Agreement as follows:

[A]n individual or entity in the United States who, at the time of the CBOS, was a commercial crab boat operator authorized to fish for Dungeness crab in the District 10 Commercial Dungeness Crab Fishery and is eligible for participation in the Dungeness Crab Closure Claims Process and has submitted a Dungeness Crab Closure Claim relating to the District 10 Commercial Dungeness Crab Fishery through the Dungeness Crab Closure Claims Process on or before the Skipper Closure Claim Deadline and ultimately receives, as a result, compensation through the Dungeness Crab Closure Claims Process relating to the District 10 commercial Dungeness crab fishery.

12. "Dungeness Crab Crewmember" is defined in the Settlement Agreement as follows:

[A]ny individual who can demonstrate, through Proof Of Crewmember Participation, that he or she worked as a crewperson on a crab boat commercially fishing for Dungeness crab in the District 10 Commercial Dungeness Crab Fishery during the 2007/08 District 10 Commercial Dungeness Crab Fishery and during one or more Dungeness Crab Crewmember Qualifying Season. Dungeness Crab Crewmembers do not include those Persons who have received a portion of any Final Individual Skipper Settlement Payment.

13. "Individually Settled Skippers" is defined in the Settlement Agreement as follows:

[A] represented Person who would otherwise qualify as Dungeness Crab Skipper and who on advice of counsel has independently settled and released claims otherwise covered by this Settlement against Settling Defendants prior to the time that Preliminary Approval of the Settlement is granted.

**B.   Basis For Estimate Of Total Dungeness Crab Skippers In Class**

14. On May 13, 2010, counsel for Settling Defendants sent Class Counsel two lists of names and addresses of persons that Settling Defendants identified as potentially members of the Class and to whom direct notice of the Settlement would be sent. A true and correct copy of the email dated May 13, 2010 from Annie Moriaty to Adel Nadji and others, to which were attached these lists, is attached here to as Exhibit 1. Because the lists include the home addresses of the persons listed, the lists are not included with Exhibit 1.

15. One list, which was labeled by Settling Defendants "Crab boat Claimants' Addresses 12 May 2010" identified **twenty-nine (29) persons** ("Crab Skipper Direct Notice List").

3

16.     In an email dated <u>October 28, 2010</u> from counsel for Settling Defendants, Julie Kole, to Adel Nadji and others, Ms. Kole indicated that there were **twenty-seven (27)** Dungeness Crab Skippers in the Class.  A true and correct copy of the email is attached here to as Exhibit 2.

17.     On <u>October 29, 2010,</u> the undersigned spoke by phone to counsel for Settling Defendants, Ms. Kole and Julie Taylor, regarding Ms. Kole's October 28, 2010 email and the Crab Skipper Direct Notice List.  In the course of those conversations, counsel indicated that two persons included on the Crab Skipper Notice List should have been omitted, because at the time Preliminary Approval of the Settlement was granted by the Court, these persons had already individually settled their claims against the Settling Defendants.

18.     Counsel further indicated in these conversations that all twenty-seven persons identified in Julie Kole's October 28, 2010 email as Dungeness Crab Skippers had already submitted a Dungeness Crab Closure Claims and had received compensation based thereon.

19.     The Settlement Agreement provides that in order for a Person to participate in the Settlement as a Dungeness Crab Skipper, the Person must submit his, her, or its Dungeness Crab Closure Claim within one hundred and twenty (120) of the Court's issuance of the Final Order and Judgment, approving the Settlement.

20.     The Court issued the Final Order and Judgment on September 3, 2010.  Thus, Persons have until January 1, 2010 to file their Dungeness Crab Closure Claim.

21.     The Settlement Agreement further provides that after such Persons' Dungeness Crab Closure Claims are paid, they have one hundred and eighty (180) days to file a claim for payment under this Settlement.

22.     According to the California Department of Fish & Game Statistics, in 2007, the State of California issued a total of five hundred and ninety-two (592) Dungeness Crab vessel permits  ("Dungeness Crab Vessel Permits").  A true and correct copy of Commercial Fishing Licenses and Permits, As Of August 31, 2010, created by the California Department of Fish and Game is attached hereto as Exhibit 3.

23.     All holders of a Dungeness Crab Vessel Permits are entitled to commercially fish for Dungeness crab anywhere in the marine waters of the State of California, including those of

4

the San Francisco Bay Area, which includes District 10. *See* Cal. Fish & Game Code §§ 8275 *et seq*. Thus, all five hundred and ninety-two (592) Persons that held Dungeness Crab Vessel Permits in 2007, when the spill occurred, are potentially eligible to file a Dungeness Crab Closure Claim and thus qualify for membership in the Class as a Dungeness Crab Skipper.

24.     Settling Defendant Regal Stone Limited's third party insurer retained Hudson Marine Management Service ("Hudson Marine") to administer the claims process; Cynthia Hudson is a Senior Vice President of Hudson Marine. *See* Dckt. No. 230 (Declaration of Cynthia Hudson).

25.     In response to a subpoena issued by Class Counsel, Ms. Hudson produced a document summarizing "OPA and "NON-OPA" payments made to commercial Dungeness Crab fishermen for claims arising out of the Cosco Busan oil spill, as of July 2010 ("Hudson Marine July 2010 Summary"). A true and correct redacted copy of the Hudson Marine July 2010 Summary, Bates stamped HM000693, is attached hereto as Exhibit 4.

26.     Testimony given by Ms. Hudson at an August 18, 2010 deposition regarding the Hudson Marine July 2010 Summary can be found at [15:7-9 and 16:7-9] of the associated deposition transcript ("Hudson Depo"), a true and correct copy of excerpts of which is attached hereto as Exhibit 5.

27.     The Hudson Marine July 2010 Summary identifies a total 220 Dungeness Crab Skippers who have received what is referred to as a "NON-OPA" payment, which indicates that the person executed a final release of Settling Defendants and thus is not part of the Class.

28.     Any Dungeness Crab Skipper that was paid on their Dungeness Crab Closure Claim is a member of the Class, unless they executed a final release of the Settling Defendants before the Court granted preliminary approval of the Settlement, which occurred on April 21, 2010. *See* Dckt. No. 207.

29.     Subtracting from the total number commercial Dungeness crab vessel permits issued by the California Department of Fish & Game Statistics, in 2007 (the year of the spill), five hundred ninety-two (592), the total number of Dungeness Crab Skippers that, according to Hudson July 2010 Summary, individually settled with the Defendants,  two hundred and twenty

1 | (220), yields a potential number of Dungeness Crab Skippers in the Class of **three hundred and**
2 | **seventy-two (372)**.

3 | **C.     Basis For Estimate Of Total Dungeness Crab Crewmembers In Class**

4 | 30.     Attached to Ms. Moriaty's May 13, 2010 email, attached hereto as Exhibit 1, was
5 | a list titled "Crew List – Class.xls. This list identified **three hundred and sixty-five (365)**
6 | Dungeness Crab Crewmembers that were potentially part of the Class and to whom direct notice
7 | of the Settlement was sent.

8 | 31.     On October 14, 2010, Gilardi indicated that payments would be made to **seven (7)**
9 | Dungeness Crab Crewmembers in the first distribution of Settlement compensation.

10 | 32.     According to the October 29, 2010 Statistics Report produced by Gilardi, **thirty-**
11 | **six (36)** Dungeness Crab Crewmembers have already submitted claims for compensation under
12 | the Settlement. A true and correct copy of the report is attached here to as Exhibit 6.

13 | **II.     "In Class Counsel's opinion, what is the total potential recovery for the Class in this case?"**
14 |

15 | 33.     The **lowest** estimate of the total potential recovery for the Class in this case is
16 | **$1,492,488**. This number is calculated by adding (1) the total amount paid to Dungeness Crab
17 | Skippers identified in Ms. Kole's October 28, 2010 email in Dungeness Crab Closure Claim
18 | payments, $1,161,363.43; (2) the total amount by such Dungeness Crab Skippers would be
19 | reimbursed for reductions related to clean-up payments under the Settlement, $3,827; (3) the
20 | amount that such Dungeness Crab Skippers will collectively receive in Dungeness Crab Skipper
21 | Settlement Payments under the Settlement (which is 25% of the sum of $1,161,363.43 and
22 | $3,827), $291,297; and (4) and an estimated total recovery of $36,000 for Dungeness Crab
23 | Crewmembers, based on the total number that have filed claims so far and an estimated average
24 | payment to each of $1000.

25 | 34.     The **highest** estimate of total potential recovery for the Class in this case is
26 | **$21,865,844**. This number is calculating adding $20,373,356 to the low estimate of $1,492,488
27 | described in Paragraph 33 above.

28 |

35.     The $20,373,356 figure is calculated as follows.  First, the highest total estimated Dungeness Crab Skipper number is reduced from three hundred and seventy-two (372) to three hundred and forty-five (345), reflecting the twenty-seven (27) Dungeness Crab Skippers already accounted for in the low estimate in Paragraph 33 above.  Second, this adjusted number is multiplied by the average Dungeness Crab Closure Claim payment figure described in Ms. Kole's October 28, 2010 email (attached hereto as Exhibit 2), $43,013, yielding an estimated Dungeness Crab Closure Claim payment total of $14,839,485.  Third, this figure is multiplied by 25% reflecting the total Dungeness Crab Skipper Settlement Payment to which these Persons would be collectively entitled, based on their estimated Dungeness Crab Closure Claim payment total, yielding $3,709,871.  Fourth, the highest total estimated Dungeness Crab Crewmembers number above is reduced from one thousand eight hundred and sixty (1860) to one thousand eight hundred and 1824, reflecting the thirty-six Dungeness Crab Crewmembers already accounted for in the low estimate in Paragraph 33 above.  Fifth, this figure is multiplied by $1000, reflecting the estimated average payment to each under the Settlement.

36.     None of these figures reflect any amounts that Persons who individually settled with the Settling Defendants received as a result of Class Counsel's actions, including work by Class Counsel that led to the Court's Orders entered in February and April of 2008 (*see* Dckt. Nos. 79, 80, and 86).  By virtue of these Orders, such persons were able to collect both a Dungeness Crab Closure Claim payment and a final settlement payment.  Absent these Orders, these persons would very likely have been limited to receiving only a Dungeness Crab Closure Claim payment.  According to the Hudson July 2010 Summary, attached here to as Exhibit 4, these Persons received a total of $3,575,165 in final settlement payments that were in addition to the Dungeness Crab Closure Claim payments they received.

**III.**     **"In Class Counsel's opinion, how much money will Class members receive as a result of this settlement in excess of what they could have received through the claims process established by Regal Stone under the Oil Pollution Act of 1990 and the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act?"**

37.     The Settlement provides the following award to Dungeness Crab Skippers that is in addition to the amounts that such Persons are also entitled—by virtue of the Court's Orders

7

1  on Motion by Class Counsel entered in February and April of 2008 (*see* Dckt. Nos. 79, 80, and

2  86)—through the claims process:

3

4      1.      A payment equal to any amount by which the Dungeness Crab Skipper's
       Dungeness Crab Closure Payment was reduced to reflect payment that the
5      Dungeness Crab Skipper received in exchange for participation in the clean-up of
       the CBOS  ("Clean-Up Payment Reimbursement");

6      2.      A payment equal to twenty-five percent (25%) of the total of: (i) the
       Dungeness Crab Closure Payment received by the Dungeness Crab Skipper, plus
7      (ii) the Clean-Up Payment Reimbursement received by the Dungeness Crab
       Skipper ("Dungeness Crab Skipper Settlement Payment"); and
8

9      3.      A payment equal to any reasonable attorneys' fees paid by any Dungeness
       Crab Skipper who participated in the Dungeness Crab Closure Claims Process
10     prior to the date of this Agreement and received a Dungeness Crab Closure
       Payment, and was represented in the Dungeness Crab Closure Claims Process by
11     counsel, and compensated their counsel in connection with such representation.
       Such payment will not exceed twenty-seven percent (27%) of the Dungeness Crab
12     Closure Payment received by the Dungeness Crab Skipper.

13     38.     The Settlement provides the following award to Dungeness Crab Crewmembers

14 (such Persons were not eligible to receive any direct compensation through the claims process):

15     1.      A payment of $500 ("Dungeness Crab Crewmember Base Settlement
       Payment"); and
16

17     2.      A payment of $250 for each Dungeness Crab Crewmember Qualifying
       Season that the Dungeness Crab Crewmember can demonstrate, through Proof Of
18     Crewmember Participation, that he or she worked as a crewperson on a crab boat
       commercially fishing for Dungeness crab in the District 10 Commercial
19     Dungeness Crab Fishery that is in addition to the Dungeness Crab Crewmember
       Qualifying Season necessary to qualify as Dungeness Crab Crewmember
20     ("Dungeness Crab Crewmember Additional Settlement Payment").

21     39.     The **lowest** estimate of the total amount that Class members will receive under

22 these provisions is **$327,297**.  This figure is calculated by subtracting from the lowest estimated

23 total potential benefit figure described in Paragraph 33 above, $1,161,363.43, which is the total

24 amount that those Dungeness Crab Skippers identified in Ms. Kole's October 28, 2010 email

25 received in total Dungeness Crab Closure Claim payments.

26     40.     The **highest** estimate of the total amount that Class members will receive under

27 these provisions is **$5,864,996**.  This figure is calculated by subtracting from the highest

28 estimated total potential benefit figure described in Paragraph 34 above, $1,161,363.43, which,

1  again, is the total amount that those Dungeness Crab Skippers identified in Ms. Kole's October

2  28, 2010 email received in total Dungeness Crab Closure Claim payments, and $14,839,485,

3  which is the total estimated Dungeness Crab Closure Claim payment amount described in

4  Paragraph 35 above.

5  **IV.**    **"To date, how many skippers and crewmembers have filed claims for recovery as a result of this settlement, and how much money have they asked for and/or**

6  **received?"**

7      41.    Per the latest Statistics Report provided Gilardi, attached hereto as Exhibit 6,

8  twelve (12) Dungeness Crab Skippers have already submitted claims and thirty-six (36)

9  Dungeness Crab Crewmembers have timely already submitted claims, as of October 29, 2010.

10      42.    According to the Gilardi, the first distribution from the Settlement will be made

11  on November 2, 2010. This first payment will total $143,560.65, and will pay the claims of five

12  (5) Dungeness Crab Skippers and seven (7) Dungeness Crab Crewmembers.

13

14      I declare under penalty of perjury of the laws of the United States of America and the

15  State of California that the foregoing is true and correct to the best of my knowledge.  Executed

16  this 30th day of October 2010, at Bulringame, California.

17

18                                              /s/
                                           Stuart G. Gross

19

20

21

22

23

24

25

26

27

28

9