# Exhibit 1

**From:**        Moriarty, Annie [annie.moriarty@kyl.com]

**Sent:**        Thursday, May 13, 2010 12:01 PM

**To:**          Adel Nadji

**Cc:**          Taylor, Julie

**Subject:**     Crab Settlement

**Attachments:** Crew List - Class.xls$; Crab boat Claimants' Addresses 12 May 2010.xls$

Adel,

There was a misunderstanding with regard to the crab data previously provided.  The prior lists did not include owners/crew members for boats that were represented by your office or Cotchett, Pitre and McCarthy.  Attached please find supplemental lists containing the contact information of the crab boat owners and crew members that were inadvertently omitted from the lists previously provided.

I assume you will provide these lists to Gilardi.  We understand this information is to be used solely for the purpose of providing notice to the class of the settlement and for no other purpose.

Also, I received your email requesting an outline of the process that skippers need to go through in order to finalize their Dungeness Crab Closure Claims.  Would you please give me a call to discuss?  I am unclear on why you need that information for purposes of sending out the notice.

Regards,
Annie

......................................................................................................................

**Annie Moriarty**
**Keesal, Young & Logan**
450 Pacific Avenue, San Francisco, CA 94133
415.398.6000 (office) | 415.981.0136 (fax)
annie.moriarty@kyl.com | www.kyl.com

KYL has offices in Los Angeles/Long Beach, San Francisco, Seattle, Anchorage and Hong Kong.  This e-mail contains information that may be confidential and privileged.  Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose this message, or any information contained herein. If you have received this message in error, please advise the sender by reply e-mail and delete this message.  Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or legal document.  Unauthorized use of this information in any manner is prohibited.

# Exhibit 2

**From:**          Kole, Julie [Julie.Kole@kyl.com]
**Sent:**          Thursday, October 28, 2010 11:46 AM
**To:**            Adel Nadji; Moriarty, Annie
**Cc:**            Taylor, Julie; Stuart Gross; William Audet
**Subject:**       RE: Loretz v. Regal Stone, Ltd. et al.

Adel:

There are 27 skippers in the settlement class. The OPA 90 data for the skipper class
members is as follows:

(1) The highest OPA 90 payment made to a skipper class member is $218,466.13.

(2) The lowest OPA 90 payment made to a skipper class member is $2,225.96.

(3) The average OPA 90 payment made to a skipper class member is $43,013,46.

(4) The total amount of OPA 90 payments made to skipper class members is $1,161,363.43. Of
that amount, $510,749.52 was paid to named class representatives.

(5) There are 8 skipper class members who were represented by counsel.
Six of those class members were represented by the Audet or Cotchett firms.  We do not
have any way to determine the amount of attorneys'
fees that may have been paid by those 8 class members.

(6) There were 3 clean up reduction payments made to class members.
Those payments were in the following amounts:  $1,294.47, $1,267.00 and $1,265.83.  The 3
clean up reduction payments were made to named class representatives.

Julie

# Exhibit 3

Welcome to California

## Commercial Fishing Licenses and Permits

Items reported by License Year
As Of August 31, 2010

| Licenses | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| COMM FISHING LICENSE (R) | N/A | N/A | N/A | 6,325 | 5,958 | 5,682 | 5,780 | 5,346 | 5,464 | 4,413 |
| COMM FISHING LICENSE (NR) | 1,055 | 961 | 931 | 859 | 771 | 677 | 684 | 664 | 680 | 386 |
| COMM BOAT REGISTRATION (R) | 4,155 | 3,680 | 3,506 | 3,326 | 3,205 | 3,062 | 3,003 | 2,916 | 2,873 | 2,658 |
| COMM BOAT REGISTRATION (NR) | 429 | 361 | 325 | 304 | 290 | 288 | 291 | 301 | 288 | 265 |
| COMM PASSENGER FISHING VESSEL | 416 | 433 | 432 | 450 | 451 | 445 | 450 | 431 | 434 | 427 |
| COMM AIRCRAFT REGISTRATION | 10 | 12 | 14 | 12 | 10 | 6 | 7 | 9 | 8 | 11 |
| COMM SALMON STAMP (SEE FOOTNOTE 1) | 1,839 | 1,865 | 1,720 | 1,764 | 1,697 | 1,557 | 2,174 | 1,308 | 1,244 | 1,303 |
| JOHN DOE SALMON STAMP (SEE FOOTNOTE 2) | 295 | 345 | 259 | 335 | 299 | 172 | 795 | 102 | 33 | 93 |
| OCEAN ENHANCEMENT | 798 | 810 | 807 | 785 | 818 | 794 | 788 | 793 | 795 | 749 |
| CALIFORNIA HALIBUT TRAWL VESSEL PERMIT | N/A | N/A | N/A | N/A | N/A | 62 | 59 | 52 | 51 | 47 |
| DEEPER NEARSHORE SPECIES FISHERY PERMIT | N/A | N/A | 293 | 276 | 259 | 249 | 239 | 231 | 220 | 209 |
| DRIFT GILL NET SHARK/SWORDFISH PERMIT | 114 | 106 | 100 | 96 | 90 | 88 | 86 | 84 | 83 | 78 |
| DUNGENESS CRAB VESSEL PERMIT (R) | 588 | 577 | 573 | 537 | 526 | 518 | 505 | 508 | 502 | 493 |
| DUNGENESS CRAB VESSEL PERMIT (NR) | 66 | 65 | 61 | 73 | 77 | 84 | 87 | 81 | 78 | 72 |
| GENERAL GILL/TRAMMEL NET PERMIT | 223 | 209 | 193 | 187 | 172 | 166 | 160 | 154 | 149 | 143 |
| HERRING GILL NET PERMIT(NR) | 119 | 118 | 111 | 106 | 97 | 60 | 46 | 45 | 42 | 0 |
| HERRING GILL NET PERMIT(R) | 333 | 329 | 320 | 308 | 289 | 254 | 211 | 199 | 188 | 0 |
| HERRING STAMP | 409 | 404 | 390 | 374 | 346 | 274 | 220 | 209 | 200 | 0 |
| LOBSTER OPERATOR PERMIT | 247 | 237 | 228 | 223 | 220 | 214 | 212 | 204 | 203 | 195 |
| MARKET SQUID BRAIL PERMIT (T) | N/A | N/A | N/A | N/A | 14 | 16 | 20 | 21 | 21 | 21 |
| MARKET SQUID BRAIL PERMIT (NT) | N/A | N/A | N/A | N/A | 0 | 0 | 0 | 0 | 0 | 0 |
| MARKET SQUID LIGHT BOAT PERMIT (T) | N/A | N/A | N/A | N/A | 61 | 59 | 55 | 54 | 54 | 54 |
| MARKET SQUID LIGHT BOAT PERMIT (NT) | N/A | N/A | N/A | N/A | N/A | N/A | 3 | 3 | 3 | 3 |
| MARKET SQUID VESSEL PERMIT (T) | N/A | N/A | N/A | N/A | 75 | 74 | 74 | 77 | 71 | 71 |
| MARKET SQUID VESSEL PERMIT (NT) | N/A | N/A | N/A | N/A | 14 | 12 | 12 | 11 | 9 | 9 |
| MARKET SQUID VESSSEL PERMIT, EXPERIMENTAL (NT) | N/A | N/A | N/A | N/A | 3 | 3 | 2 | 0 | 0 | 0 |
| NEARSHORE FISHERY BYCATCH PERMIT | N/A | N/A | 26 | 25 | 23 | 22 | 20 | 19 | 19 | 16 |
| NEARSHORE FISHERY PERMIT - N. CENTRAL COAST | N/A | N/A | 36 | 36 | 35 | 33 | 29 | 29 | 28 | 28 |
| NEARSHORE FISHERY PERMIT - NORTH COAST | N/A | N/A | 29 | 28 | 27 | 27 | 26 | 26 | 22 | 22 |



10/6/2010

## Commercial Fishing Licenses and Permits

Items reported by License Year
As Of August 31, 2010

| Licenses | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| NEARSHORE FISHERY PERMIT - S. CENTRAL COAST | N/A | N/A | 76 | 69 | 70 | 65 | 61 | 60 | 59 | 57 |
| NEARSHORE FISHERY PERMIT - SOUTH COAST | N/A | N/A | 74 | 71 | 70 | 68 | 64 | 63 | 63 | 64 |
| NEARSHORE TRAP ENDORSEMENT - N. CENTRAL COAST | N/A | N/A | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 |
| NEARSHORE TRAP ENDORSEMENT - NORTH COAST | N/A | N/A | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| NEARSHORE TRAP ENDORSEMENT - S. CENTRAL COAST | N/A | N/A | 21 | 20 | 20 | 20 | 20 | 20 | 20 | 19 |
| NEARSHORE TRAP ENDORSEMENT - SOUTH COAST | N/A | N/A | 45 | 43 | 42 | 42 | 42 | 42 | 41 | 40 |
| NORTHERN PINK SHRIMP TRAWL (VESSEL) (T) | 61 | 66 | 65 | 38 | 36 | 34 | 34 | 34 | 33 | 33 |
| NORTHERN PINK SHRIMP TRAWL (VESSEL) (NT) | 17 | 14 | 13 | 9 | 7 | 6 | 4 | 4 | 4 | 3 |
| SALMON VESSEL PERMIT (SEE FOOTNOTE 3) | 1,650 | 1,586 | 1,521 | 1,475 | 1,426 | 1,389 | 1,359 | 1,306 | 1,281 | 1,215 |
| SEA CUCUMBER DIVING PERMIT | 99 | 100 | 99 | 95 | 92 | 91 | 88 | 85 | 85 | 83 |
| SEA CUCUMBER TRAWL PERMIT | 30 | 29 | 28 | 24 | 22 | 18 | 18 | 17 | 17 | 17 |
| SEA URCHIN DIVING PERMIT | 389 | 363 | 349 | 340 | 332 | 323 | 309 | 310 | 305 | 282 |
| SOUTHERN ROCK CRAB TRAP PERMIT | N/A | N/A | N/A | N/A | 143 | 141 | 134 | 130 | 126 | 122 |
| SPOT PRAWN TRAP VESSEL PERMIT, TIER 1 | N/A | 18 | 16 | 16 | 17 | 17 | 18 | 17 | 17 | 17 |
| SPOT PRAWN TRAP VESSEL PERMIT, TIER 2 | N/A | 5 | 6 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| SPOT PRAWN TRAP VESSEL PERMIT, TIER 3 | N/A | N/A | N/A | 8 | 11 | 10 | 10 | 9 | 9 | 7 |
| LIMITED ENTRY LATE FEE (1 TO 30 DAYS) | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 52 | 58 | 63 |
| LIMITED ENTRY LATE FEE (31 TO 60 DAYS) | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 16 | 30 | 22 |
| LIMITED ENTRY LATE FEE (61 OR MORE DAYS) | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 50 | 62 | 8 |
| ANCHOVY TAKE PERMIT | 141 | 116 | 99 | 96 | 88 | 73 | 85 | 80 | 74 | 70 |
| BAY SHRIMP PERMIT | 35 | 35 | 28 | 22 | 21 | 21 | 19 | 16 | 20 | 19 |
| COONSTRIPE SHRIMP VESSEL PERMIT | N/A | 11 | 36 | 36 | 28 | 32 | 30 | 34 | 44 | 46 |
| CRAYFISH PERMIT | 54 | 48 | 51 | 42 | 40 | 53 | 43 | 50 | 52 | 43 |
| FISH LANDED OUTSIDE CALIFORNIA | 14 | 14 | 11 | 8 | 10 | 16 | 11 | 7 | 7 | 5 |
| GHOST SHRIMP PERMIT | 36 | 27 | 26 | 18 | 9 | 10 | 10 | 14 | 17 | 11 |
| GOLDEN & RIDGEBACK PRAWN PERMIT | 177 | 145 | 112 | 78 | 57 | 57 | 47 | 44 | 51 | 55 |
| INLAND/FRESHWATER FISH | 28 | 31 | 44 | 36 | 31 | 30 | 31 | 24 | 28 | 29 |
| KELP HARVESTER LICENSE | 28 | 35 | 44 | 35 | 35 | 29 | 30 | 43 | 33 | 36 |
| LOBSTER CREWMEMBER PERMIT | 197 | 204 | 175 | 143 | 148 | 175 | 173 | 203 | 197 | 44 |



10/6/2010

## Commercial Fishing Licenses and Permits
Items reported by License Year
As Of August 31, 2010

| Licenses | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| MARINE AQUARIA COLLECTOR | 10 | 10 | 9 | 12 | 10 | 9 | 8 | 12 | 16 | 11 |
| NORTHERN ROCK CRAB TRAP PERMIT | N/A | N/A | N/A | N/A | 31 | 17 | 22 | 32 | 29 | 32 |
| SEA URCHIN CREWMEMBER PERMIT | 222 | 203 | 194 | 160 | 139 | 131 | 136 | 167 | 163 | 135 |
| SOUTHERN PINK SHRIMP TRAWL PERMIT | 56 | 57 | 46 | 38 | 35 | 21 | 21 | 18 | 16 | 19 |
| SWORDFISH PERMIT | 40 | 41 | 45 | 56 | 57 | 64 | 73 | 63 | 63 | 54 |
| TANNER CRAB TRAP VESSEL PERMIT | N/A | N/A | N/A | N/A | N/A | 0 | 0 | 0 | 0 | 0 |
| TIDAL INVERTEBRATE PERMIT | 396 | 364 | 349 | 343 | 317 | 304 | 288 | 254 | 255 | 213 |
| TRAP PERMIT | 870 | 903 | 817 | 751 | 660 | 737 | 850 | 950 | 904 | 772 |
| *DISCONTINUED ITEMS:* | | | | | | | | | | |
| COMM FISHING - CREWMEMBER (R) | 3,687 | 3,553 | 3,473 | NA | N/A | N/A | N/A | N/A | N/A | N/A |
| COMM FISHING - OPERATOR (R) | 3,536 | 3,472 | 3,261 | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| COMM FISHING - CREWMEMBER UPGRADE (R) | 72 | 62 | 57 | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| COMM PASSENGER FISHING VESSEL W/SALMON | 34 | 39 | 32 | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| FINFISH TRAP PERMIT | 123 | 112 | 67 | 45 | N/A | N/A | N/A | N/A | N/A | N/A |
| JUNIOR COMM FISH LICENSE | 45 | 55 | 51 | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| JUNIOR COMM SALMON STAMP | 13 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| LIMITED ENTRY LATE FEE | 92 | 72 | 107 | 77 | 104 | 91 | 98 | N/A | N/A | N/A |
| MARKET SQUID LIGHT BOAT OWNER'S PERMIT | 45 | 41 | 40 | 40 | N/A | N/A | N/A | N/A | N/A | N/A |
| MARKET SQUID VESSEL PERMIT | 196 | 184 | 174 | 166 | N/A | N/A | N/A | N/A | N/A | N/A |
| MARKET SQUID/LIGHT VESSEL LATE FEE | 15 | 6 | 15 | 6 | N/A | N/A | N/A | N/A | N/A | N/A |
| MARKET SQUID LATE FEE | N/A | N/A | N/A | N/A | 3 | 10 | 9 | 6 | N/A | N/A |
| NEARSHORE FISHERY PERMIT | 767 | 508 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| NORTHERN PINK SHRIMP TRAWL PERMIT (INDIVIDUAL) | 25 | 15 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| PACIFIC MACKEREL PERMIT | 135 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| PINK SHRIMP PERMIT (INDIVIDUAL) | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| PINK SHRIMP PERMIT (VESSEL) | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| SALMON VESSEL LATE FEE | 115 | 113 | 137 | 108 | 94 | 85 | 0 | N/A | N/A | N/A |
| SARDINE PERMIT | 3 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| SHRIMP/PRAWN TRAWL PERMIT | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

10/6/2010

Welcome to California

## Commercial Fishing Licenses and Permits

Items reported by License Year
As Of August 31, 2010

| Licenses | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| SPOT PRAWN OBSERVER TRAP | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| SPOT PRAWN OBSERVER TRAWL (<1,000 LBS. ) | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| SPOT PRAWN OBSERVER TRAWL (1,000-9,999 LBS.) | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| SPOT PRAWN OBSERVER TRAWL (>10,000 LBS.) | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| TOTAL | 24,549 | 23,169 | 22,173 | 20,961 | 20,040 | 19,095 | 20,191 | 18,117 | 17,949 | 15,420 |

Footnotes:

1) Commercial Salmon Stamp - In 2006, refunds were issued for 1,542 permittees.  In 2007, the fees were waived.  In 2008, refunds were issued for 1,278 permittees.  In 2009, refunds were issued for 1,183 permittees.

2) John Doe Salmon Stamp - In 2006, refunds were issued for 166 permittees.  In 2007, the fees were waived.  In 2008, refunds were issued for 102 permittees.  In 2009, refunds were issued for 34 permittees.

3) Salmon Vessel Permit - In 2006, refunds were issued for 1,376 permittees.  In 2007, the fees were waived.  In 2008, refunds were issued for 1,282 permittees.  In 2009, refunds were issued for 1,228 permittees.

# Exhibit 4

| Represented | Claims | Paid OPA | | Pending OPA | | D,C,W OPA | | TOTAL OPA | | TOTAL | Paid NON OPA | Pending NON OPA | PAID NON OPA | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Boat | Crew | Boat | Crew | Boat | Crew | Boat | Crew | Consolid. | Boat | Boat | PNR Boat | PROA Boat |
| REDACTED | # | 60 | 0 | 2 | 0 | 7 | 0 | 69 | 0 | 69 | 60 | 2 | 24 | 10 REDACTED |
| | $$ | $5,612,432 | $0 | $0 | $0 | n/a | n/a | $5,612,432 | $0 | $5,612,432 | $1,403,108 | | $265,268 | $147,676 |
| REDACTED | # | 73 | 0 | 0 | 0 | 28 | 2 | 99 | 2 | 101 | 73 | 0 | 26 | 1 |
| | $$ | $3,179,691 | $0 | $0 | $0 | n/a | n/a | $3,179,691 | $0 | $3,179,691 | $794,923 | $0 | $494,926 | $17,940 |
| REDACTED | # | 30 | 0 | 65 | 0 | 27 | 8 | 122 | 8 | 130 | 0 | 67 | 0 | 0 |
| | $$ | $1,571,954 | $0 | $0 | $0 | n/a | n/a | $1,571,954 | $0 | $1,571,954 | TBD | $0 | $0 | $0 |
| REDACT | # | 4 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 4 | 0 | 4 | 0 | 0 |
| | $$ | $413,222 | $0 | $0 | $0 | n/a | n/a | $413,222 | $0 | $413,222 | $0 | $103,306 | $0 | $0 |
| REDACTED | # | 2 | 0 | 1 | 0 | 0 | 0 | 3 | 2 | 5 | 1 | 1 | 0 | 0 |
| | $$ | $194,533 | $0 | $10,000 | $0 | n/a | n/a | $204,533 | $0 | $204,533 | $16,431 | TBD | $0 | $0 |
| REDACTED | # | 2 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 2 | 2 | 0 | 0 | 0 |
| | $$ | $69,667 | $0 | $0 | $0 | n/a | n/a | $69,667 | $0 | $69,667 | $17,417 | $0 | $0 | $0 |
| REDACTED | # | 2 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 2 | 2 | 0 | 0 | 0 |
| | $$ | $60,929 | $0 | $0 | $0 | n/a | n/a | $60,929 | $0 | $60,929 | $16,740 | $0 | $0 | $0 |
| REDACTED | # | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 1 | 0 | 0 | 0 |
| | $$ | $133,853 | $0 | $0 | $0 | n/a | n/a | $133,853 | $0 | $133,853 | $33,413 | $0 | $0 | $0 |
| REDACTED | # | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 | 1 | 0 | 0 | 0 |
| | $$ | $0 | $0 | $25,000 | $0 | n/a | n/a | $25,000 | $0 | $25,000 | TBD | $0 | $0 | $0 |
| REDACTED | # | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 1 | 0 | 1 | 18 |
| | $$ | $41,140 | $0 | $0 | $0 | n/a | n/a | $41,140 | $0 | $41,140 | $10,286 | $0 | $103,565 | $253,471 |
| Unrepresented | # | 73 | 11 | 0 | 0 | 20 | 40 | 93 | 51 | 144 | 51 | 22 | n/a | n/a |
| | $$ | $4,734,632 | $0 | $0 | $0 | n/a | n/a | $4,734,632 | $0 | $4,734,632 | $0 | $201,888 | n/a | n/a |
| TOTAL | # | 248 | 13 | 69 | 0 | 80 | 50 | 397 | 63 | 460 | 191 | 97 | 51 | 28 |
| | $$ | $16,011,853 | $0 | $35,000 | $0 | n/a | n/a | $16,046,853 | $0 | $16,046,853 | $2,292,317 | TBD | $863,759 | $419,089 |

DCW      Denied, Consolidated, Withdrawn
PNR      Previously Not Represented
PROA     Previous[y Represented by Other Attorney

$19,244,879

REDACTED

HM000693

# Exhibit 5

ORIGINAL

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

ALLEN LORETZ, individually and )
on behalf of all others )
similarly situated, )
                                )
                  Plaintiffs, )   Case No.
                                )   C-07-5800-SC
      vs. )
                                  )
REGAL STONE, LTD., HANJIN )
SHIPPING CO., LTD., SYNERGY )
MARITIME, LTD., FLEET )
MANAGEMENT, LTD., and JOHN )
COTA, In Personam; M/V COSCO )
BUSAN, their engines, tackle, )
equipment, appurtenances, )
freights, and cargo In Rem, )
                                  )
                  Defendants. )
                                  )

## DEPOSITION OF CYNTHIA HUDSON

### AUGUST 18, 2010

BALINDA DUNLAP, CSR # 10710, RPR, CRR, RMR
    308003

**BARKLEY**
*Court Reporters*
barkley.com

(310) 207-8000 Los Angeles    (415) 433-5777 San Francisco    (949) 955-0400 Irvine    (858) 455-5444 San Diego
(916) 922-5777 Sacramento    (408) 885-0550 San Jose    (760) 322-2240 Palm Springs    (951) 686-0606 Riverside
(818) 702-0202 Woodland Hills    (212) 808-8500 New York City    (347) 821-4611 Brooklyn    (518) 490-1910 Albany
(516) 277-9494 Garden City    (914) 510-9110 White Plains    (312) 379-5566 Chicago    (702) 366-0500 Las Vegas
+33 1 70 72 65 26 Paris-France    +852 3693 1522 Hong Kong

1          IN THE UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3

4

5    ALLEN LORETZ, individually and   )
     on behalf of all others          )
6    similarly situated,              )
                                      )
7                    Plaintiffs,      )   Case No.
                                      )   C-07-5800-SC
8            vs.                      )
                                      )
9    REGAL STONE, LTD., HANJIN        )
     SHIPPING CO., LTD., SYNERGY      )
10   MARITIME, LTD., FLEET            )
     MANAGEMENT, LTD., and JOHN       )
11   COTA, In Personam; M/V COSCO     )
     BUSAN, their engines, tackle,    )
12   equipment, appurtenances,        )
     freights, and cargo In Rem,      )
13                                    )
                     Defendants.      )
14   _____)

15

16

17

18       VIDEOTAPE DEPOSITION OF CYNTHIA HUDSON

19            WEDNESDAY, AUGUST 18, 2010

20

21

22

23

24

25   REPORTER: BALINDA DUNLAP, CSR 10710, RPR, CRR, RMR

                           2

BARKLEY
Court Reporters

1                    A P P E A R A N C E S

2                       ---oOo---

3    FOR THE PLAINTIFFS:

4          AUDET & PARTNERS
           221 Main Street, Suite 1460
5          San Francisco, California   94105
           BY: WILLIAM M. AUDET, ESQ.
6              ADEL A. NADJI, ESQ.
           (415) 568-2555
7          Waudet@audetlaw.com
           Anadji@audetlaw.com

8

9    FOR THE DEFENDANT HANJIN SHIPPING CO., LTD.:

10         FLYNN, DELICH & WISE LLP
           343 Sansome Street, Suite 540
11         San Francisco, California   94104
           BY: CONTE C. CICALA, ESQ.
12         (415) 693-5566
           Contec@fdw-law.com

13

14   FOR THE DEFENDANT REGAL STONE, LTD., and FLEET
     MANAGEMENT, LTD.:
15
           KEESAL, YOUNG & LOGAN
16         450 Pacific
           San Francisco, California   94133
17         BY: JULIE A. KOLE, ESQ.
               ANNIE M. MORIARTY, ESQ.
18         (415) 398-6000
           Jule.kole@kyl.com
19         Annie.moriarty@kyl.com

20
     FOR THE DEPONENT CYNTHIA HUDSON AND HUDSON MARITIME
21   MANAGEMENT SERVICES:

22         REED SMITH LLP
           101 Second Street, Suite 1800
23         San Francisco, California   94105
           BY: JACK R. NELSON, ESQ.
24         (415) 659-5988
           Jnelson@reedsmith.com

25

                          3

BARKLEY
Court Reporters

INDEX OF EXAMINATIONS
---oOo---

EXAMINATIONS                                          PAGE

MR. AUDET                                                8

INDEX OF EXHIBITS

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Subpoena to Testify at a Deposition in a Civil Action for Cynthia Hudson and Hudson Maritime Management Services Dated August 12, 2010 | 15 |
| 2 | Excel Spreadsheet, Bates No. HM000693 | 15 |
| 3 | Declaration of Cynthia Hudson in Support of Defendants' Opposition to Class Counsels' Motion for Award of Attorneys' Fees, Costs, and Service Awards to Named Plaintiffs | 34 |
| 4 | Regal Stone, Ltd.'s Opposition to Plaintiffs' Ex Parte Motion for Order to Show Cause Why a Protective Order to Supervise or Otherwise Limit Communications with Putative Class Members Should Not Issue | 39 |
| 5 | Amended Civil Minutes Dated February 22, 2008 | 67 |
| 6 | Order Re: Defendants' Communication with Putative Class Members and Order Lifting Stay Dated April 25, 2008 | 71 |
| 7 | Declaration of Cynthia Hudson in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification Dated July 22, 2009 | 153 |

Cynthia Hudson

BARKLEY
Court Reporters

1

INDEX OF EXHIBITS

NO.                    DESCRIPTION                    PAGE

2

8       Letter from Jessica Struyk to Koepf v.        162
        Hanjin Shipping Co. Administrator, c/o
        Gilardi & Co. LLC Dated October 13,
        2009

9       Redacted Settlement Agreement                 180

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Cynthia Hudson

BARKLEY
Court Reporters

1  the declaration that is the subject, we understand,

2  of the deposition.

3      Q.   Okay.  And did you end up producing any

4  documents?

10:17  5      A.   Yes.

6      Q.   What did you produce?

7      A.   We produced a summary spreadsheet of the

8  status of the crab claimant settlement process, and

9  we also produced bills, invoices.

10:17  10      Q.   Okay.  We will get to that.  Let's just

11  start -- does this look familiar to you?  I am

12  going to hand you what's going to be marked as

13  Exhibit 2.

14          MR. NELSON:  Before we get too far, why

10:17  15  don't you just have them marked so we don't start

16  getting things, "I am going to mark it 1.  I am

17  going to mark it 2."

18          MR. AUDET:  Could you do that for me,

19  please.

10:18  20          THE WITNESS:  Yes.

21              (Whereupon a brief discussion off the

22              record.)

23              (Reporter marked Exhibit No. 1 for

24              identification.)

10:18  25              (Reporter marked Exhibit No. 2 for

15

BARKLEY
Court Reporters

1          identification.)

2     Q.    BY MR. AUDET:   Okay.   Looking at Exhibit

3  No. 2, could you identify that for the record?

4     A.    Yes.

10:18  5     Q.    Yes.   Could you identify it for the

6  record.   Yes, you can.   What is it?

7     A.    This is a summary sheet of the status of

8  the crab claims settlement process as per, I think,

9  the end of July.

10:18  10     Q.    And who prepared this?

11     A.    This was prepared by our claims department

12  and reviewed by Bill Bernard.

13     Q.    And was it prepared for this deposition or

14  was it prepared previously to this deposition?

10:19  15     A.    It was prepared previous to this

16  deposition.

17     Q.    So it was an existing summary that you

18  just obtained for this deposition; is that correct?

19  Let me ask it a different way.

10:19  20          It's -- I just want to make sure, this was

21  already existing; is that correct, this compilation

22  was already existing, and you just received a copy

23  of it, correct?

24     A.    Correct.

10:19  25     Q.    Yeah.   You didn't, as part of this

16

BARKLEY
Court Reporters

1   deposition, say, "Please give me a compilation"; is

2   that correct?

3       A.   No, that's not -- well, let me back up.

4   Could you repeat that so I can answer it?

10:19   5       Q.   Yeah.  You did not have that document

6   prepared specifically for this deposition; is that

7   correct?

8       A.   It is correct that I did not have it

9   prepared for this deposition.

10:19   10      Q.   It was an existing document that Hudson --

11      A.   It was an existing document.

12      Q.   Okay.  Thank you.  And could you --

13   there's little footnotes down at the bottom.  Could

14   you -- there's three of them.  Do you see those

10:19   15  footnotes?

16      A.   Yes, uh-huh.

17      Q.   Okay.  I think -- what does -- I think

18   there's No. 3.  I don't have it in front of me, but

19   -- thank you very much.

10:19   20           Could you look at No. 3.  What does "PROA"

21   mean?

22      A.   Yeah, it -- my copy, it does not appear

23   numbered, but the third one in that list is

24   "PROA" --

10:20   25      Q.   Uh-huh.

17

BARKLEY
Court Reporters

1          You have read the paragraph?

2     A.    Yes.

3     Q.    Okay.  Help me break this down.  Is

4    this -- is this pure OPA payments?

11:59  5     A.    It says here:

6              "In resolution of their OPA 90

7               claims."

8          So I would say that this is pure OPA

9    payment.

11:59 10     Q.    Okay.  This does not include the non-OPA

11    payments?

12     A.    According to this, no.  So pure OPA

13    payments would result in $16,046,853.

14     Q.    Okay.  And that's as of the date of this?

11:59 15     A.    Yes.

16     Q.    Do you know if there's any subsequent

17    payments?

18     A.    I don't know.  I wouldn't be surprised if

19    there were a few coming in.

11:59 20     Q.    Okay.  And as far as you know, again, just

21    to confirm, this is all pure OPA; that does not

22    include the non-OPA payments we have been

23    discussing?

24     A.    That's correct.

12:00 25     Q.    Okay.  And again, it does not include the

95

Cynthia Hudson

BARKLEY
Court Reporters

1   25 percent; is that correct?

2       A.   Well, the 25 percent would only be

3   non-OPA.

4       Q.   Got it.  And does this figure include --

12:00  5   let me back up.

6            At -- initially when you -- there were OPA

7   payments, did that include, when you made a

8   payment, attorney's fees?

9       A.   No.

12:00 10   Q.   It did not.  At some point did that

11  change?

12      A.   I am not sure of the -- of -- I am not

13  sure of your question.  If you could maybe rephrase

14  it, it would be an easier one to answer.

12:00 15   Q.   Yeah.  In terms of payments to OPA

16  claimants --

17      A.   Uh-huh.

18      Q.   -- initially you just testified that you

19  would make a payment, and it would be inclusive of

12:01 20  attorney's fees; is that correct?

21      A.   No.

22      Q.   It was not inclusive of attorney's fees?

23      A.   No, attorney's fees were not included in

24  the OPA payment.

12:01 25   Q.   Now, maybe I am not phrasing it right.

96

BARKLEY
Court Reporters

1   Let me try again.

2           You would make a lump sum payment to a

3   claimant; is that correct?

4       A.   Yes.

12:01 5     Q.   And there wouldn't be additional amounts

6   paid at that -- early on to the lawyers for

7   attorney's fees; is that correct?

8       A.   Correct.

9       Q.   Okay.  So that lump sum, to the extent

12:01 10  there was an attorney fee contract, the lump sum

11  would include attorney's fees?

12          MR. NELSON:  Well, calls for speculation.

13          THE WITNESS:  I wouldn't -- yeah, I

14  wouldn't know.

12:01 15    Q.   BY MR. AUDET:  Okay.  But at some point

16  did Hudson change its OPA payments to be OPA plus

17  15 percent for attorney's fees?

18      A.   No, our OPA payment was always our OPA

19  payment.  It wouldn't -- you're asking an OPA

12:01 20  payment.  An OPA payment is a payment to a

21  claimant.  What he then does with his money,

22  whether he pays his attorney or ex-wife or --

23      Q.   Right.

24      A.   -- whoever he pays, it would be his money

12:02 25  to do as he wishes.

97

Cynthia Hudson

BARKLEY
Court Reporters

1    Q.   Okay.  But there wasn't a point at which

2    there were payments separately made to attorneys

3    above and beyond OPA payments?

4    A.   Excuse me for just a minute, please.

12:02  5    Q.   Yeah.

6    A.   What's hanging me up, without being too

7    precise, is that OPA itself doesn't provide for

8    attorney's fee payments.  So we never made an OPA

9    payment that would have included an attorney's fee,

12:02 10    and that, I think, is the answer.

11    Q.   Okay.  Let's -- let me go general.  There

12    were payments that you made to claimants, correct?

13    A.   Yes.

14    Q.   And in the last two years, as I understand

12:03 15    it, there were OPA payments made and then there

16    were additional payments, generally at 15 percent,

17    to the attorneys?

18    A.   Well, first of all, I can't recall the 15

19    percent, and then second of all, they would not be

12:03 20    OPA --

21    Q.   Right.

22    A.   -- they would not be OPA payments.

23    Q.   Correct.  I am not asking OPA payments

24    where --

12:03 25    A.   Uh-huh.

98

Cynthia Hudson

BARKLEY
Court Reporters

1    Q.    We will call them just payments.

2    A.    Okay.

3    Q.    And within your payment, you had an OPA

4    amount, and then weren't certain lawyers paid above

12:03  5   and beyond the OPA payment some payment for

6    attorney's fees?

7    A.    Yes.

8    Q.    Okay.  Good.

9    A.    Uh-huh, uh-huh.

12:03 10   Q.    Perfect.  And that initially was not the

11   payment structure; is that correct?

12   A.    Well, again, an OPA payment doesn't

13   include an attorney's fee.  So the payment

14   structure you are referring to was only an OPA

12:04 15   payment structure, and that doesn't include any

16   consideration for attorney's fees.

17   Q.    Yes, but at some point you did, Hudson,

18   make payments to lawyers directly?

19   A.    Yes.

12:04 20   Q.    Okay.  And when did that switch?

21   A.    I don't know, Bill.  I could refresh my

22   recollection by looking at documents, but I don't

23   know when that would have actually changed.

24   Q.    And do you recall why that did change?

12:04 25   A.    I think that there was an interpretation

99

BARKLEY
Court Reporters

```
 1  due to Lempert-Keene, which I believe -- in fact, I
 2  think you were one of the ones that brought up
 3  that -- that issue, but I'm sure that the other
 4  attorneys involved probably also did, and quite
 5  loudly.
 6          And so we received an instruction,
 7  although I don't think we should go further into
 8  that, that this was appropriate to do, and we did
 9  it.
10      Q.  Okay.  And do you recall the percentage
11  generally?
12      A.  No.  I do believe that the fees were
13  varied.
14      Q.  And do you recall the percentage, general
15  range?
16      A.  Well, you're asking for a recollection --
17      Q.  Yeah.
18      A.  -- and my recollection would be somewhere
19  around the 12 to 15 percent mark, but believe me,
20  that is a recollection, and we haven't been looking
21  at this for a long, long time, so --
22      Q.  Okay.  And just so I'm clear, this -- now
23  we'll go back to this, because this is what I just
24  really would like to boil it down to.  Does that
25  figure include the attorney's fees portion, does
```

timestamps

100

Cynthia Hudson

BARKLEY
Court Reporters

## DEPOSITION OFFICER'S CERTIFICATE

STATE OF CALIFORNIA      }
                         }    ss.
COUNTY OF SAN FRANCISCO}

     I, <u>Balinda Dunlap</u>, hereby certify:

     I am a duly qualified Certified Shorthand Reporter in the State of California, holder of Certificate Number CSR <u>10710</u> issued by the Court Reporters Board of California and which is in full force and effect.  (Fed. R. Civ. P. 28(a)).

     I am authorized to administer oaths or affirmations pursuant to California Code of Civil Procedure, Section 2093(b) and prior to being examined, the witness was first duly sworn by me.  (Fed. R. Civ. P. 28(a), 30(f)(1)).

     I am not a relative or employee or attorney or counsel of any of the parties, nor am I a relative or employee of such attorney or counsel, nor am I financially interested in this action.  (Fed. R. Civ. P. 28).

     I am the deposition officer that stenographically recorded the testimony in the foregoing deposition and the foregoing transcript is a true record

/ / /

240

1  of the testimony given by the witness.  (Fed. R. Civ. P.

2  30(f)(1)).

3          Before completion of the deposition, review of

4  the transcript [ **XX** ] was [   ] was not requested.  If

5  requested, any changes made by the deponent (and

6  provided to the reporter) during the period allowed, are

7  appended hereto.  (Fed. R. Civ. P. 30(e)).

8

9  Dated:  ~~September 1, 2010~~

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

241

# Exhibit 6



**Statistics Report**

**October 29, 2010**

3301 Kerner Blvd
San Rafael, CA 94901
Case Administration Statistics - **CONFIDENTIAL**
Case Name - *Loretz et al v. Regal Stone Limited, et al (LRETZ)*

| | |
|---|---|
| Mailing Date: | 6/2/2010 |
| Total Notice Packets Sent: | 458 |
| Exclusion Deadline: | 7/19/2010 |
| Objection Deadline: | 8/13/2010 |
| Earliest Possible Skipper Claims Filing Deadline: | 3/2/2011 |
| Earliest Possible Crewmember Claims Filing Deadline: | 11/2/2010 |

| | |
|---|---|
| Case Manager: | Rachel Christman |
| Direct Telephone: | (415) 458-3603 |
| Facsimilie: | (415) 256-9756 |
| Email: | rachel.christman@gilardi.com |

**Plaintiffs' Counsel**
Adel Nadji, Esq.
William M. Audet, Esq.
**Audet & Partners LLP**
Stuart Gross, Esq.
**Cotchett Pitre & McCarthy**

**Defense Counsel**
Joseph A Walsh
Julie L Taylor
Julie A Kole
**Keesal, Young & Logan**

| As of: | Notification Mailings | | | Returned Undeliverable Mail | | Claim Forms Received | | | | Exclusion Requests | | Objections | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Mailed Notice Packets | RUM [1] | Remails [2] | Searched | Remailed | Timely Skipper | Late Skipper | Timely Crewmember | Late Crewmember | Timely | Late | Timely | Late |
| 6/22/2010 | 458 | 4 | 0 | 0 | 0 | 1 | N/A | 5 | N/A | 0 | N/A | 0 | N/A |
| 6/29/2010 | ~ | 37 | 0 | 0 | 0 | 0 | N/A | 0 | N/A | 0 | N/A | 0 | N/A |
| 7/9/2010 | ~ | 0 | 3 | 0 | 0 | 1 | N/A | 7 | N/A | 0 | N/A | 0 | N/A |
| 7/15/2010 | ~ | 0 | 0 | 41 | 17 | 1 | N/A | 2 | N/A | 0 | N/A | 0 | N/A |
| 7/22/2010 | ~ | 0 | 0 | 0 | 0 | 1 | N/A | 2 | N/A | 0 | 0 | 0 | N/A |
| 7/29/2010 | ~ | 0 | 0 | 0 | 0 | 0 | N/A | 0 | N/A | 0 | 0 | 0 | N/A |
| 8/6/2010 | ~ | 0 | 0 | 0 | 0 | 2 | N/A | 1 | N/A | 0 | 0 | 0 | N/A |
| 8/19/2010 | ~ | 0 | 0 | 0 | 0 | 1 | N/A | 0 | N/A | 0 | 0 | 0 | 0 |
| 8/27/2010 | ~ | 1 | 0 | 1 | 1 | 0 | N/A | 3 | N/A | 0 | 0 | 0 | 0 |
| 9/3/2010 | ~ | 0 | 0 | 0 | 0 | 1 | N/A | 1 | N/A | 0 | 0 | 0 | 0 |
| 9/10/2010 | ~ | 2 | 0 | 2 | 0 | 0 | N/A | 8 | N/A | 0 | 0 | 0 | 0 |
| 9/17/2010 | ~ | 0 | 0 | 0 | 0 | 0 | N/A | 1 | N/A | 0 | 0 | 0 | 0 |
| 9/24/2010 | ~ | 0 | 0 | 0 | 0 | 1 | N/A | 0 | N/A | 0 | 0 | 0 | 0 |
| 9/30/2010 | ~ | 1 | 0 | 1 | 0 | 1 | N/A | 0 | N/A | 0 | 0 | 0 | 0 |
| 10/8/2010 | ~ | 0 | 0 | 0 | 0 | 0 | N/A | 0 | N/A | 0 | 0 | 0 | 0 |
| 10/15/2010 | ~ | 0 | 0 | 0 | 0 | 0 | N/A | 1 | N/A | 0 | 0 | 0 | 0 |
| 10/22/2010 | ~ | 0 | 0 | 0 | 0 | 2 | N/A | 1 | N/A | 0 | 0 | 0 | 0 |
| 10/29/2010 | ~ | 0 | 0 | 0 | 0 | 0 | N/A | 4 | N/A | 0 | 0 | 0 | 0 |
| **TOTAL:** | 458 | 45 | 3 | 45 | 18 | 12 | 0 | 36 | 0 | 0 | 0 | 0 | 0 |

**Notes**

[1] RUM is an acronym for Returned Undeliverable Mail indicating mail returned by the United States Postal Service (USPS).

[2] Remails are RUM returned with a forwarding address from the USPS which are remailed to the new address.