United States District Court
For the Northern District of California

1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7   ALLEN LORETZ, individually and on  ) Case No. 07-5800 SC
    behalf of all others similarly     )
8   situated,                          )
                                       ) ORDER GRANTING IN PART AND
9      Plaintiffs,                     ) DENYING IN PART MOTION FOR
                                       ) ATTORNEYS' FEES AND COSTS
10                                      )
    v.                                 )
11                                      )
                                       )
12  REGAL STONE, LTD., HANJIN          )
    SHIPPING, CO., LTD., SYNERGY       )
13  MARITIME, LTD., FLEET MANAGEMENT   )
    LTD., and JOHN COTA, In Personam,  )
14  M/V COSCO BUSAN, their engines,    )
    tackle, equipment, appurtenances,  )
15  freights, and cargo, In Rem,       )
                                       )
16                                      )
       Defendants.                     )
17  _____)

18  I.   **INTRODUCTION**

19      This action stems from the allision of the cargo ship M/V

20  COSCO BUSAN with the San Francisco-Oakland Bay Bridge on November

21  7, 2007.  On September 3, 2010, the Court held a hearing on the

22  Motion for Final Approval of Class Action Settlement filed by

23  Dungeness Crab Skippers and Crewmembers.  ECF No. 263.  Defendants

24  Regal Stone Limited ("Regal Stone"), Fleet Management Ltd. ("Fleet

25  Management") and M/V COSCO BUSAN (collectively "Defendants") did

26  not oppose final approval of the settlement.  ECF No. 226.  The

27  Court approved the settlement.  ECF No. 264.

28

**United States District Court**
For the Northern District of California

On July 2, 2010, Audet & Partners, LLP ("Audet & Partners"), and Cotchett, Pitre & McCarthy ("CPM") (collectively, "Class Counsel") filed a Motion for Award of Attorneys' Fees, Costs, and Service Awards to the Named Plaintiffs.  ECF No. 212 ("Mot. for Attorneys' Fees").  Defendants filed an Opposition and Class Counsel submitted a Reply.  ECF Nos. 227 ("Opp'n"), 236 ("Reply").  At the hearing on September 3, 2010, the Court requested time records for in camera review.  ECF No. 263.  The Court subsequently ordered Class Counsel to file supplemental declarations, and to serve Defendants with redacted versions of the time records.  ECF Nos. 266, 272.  Defendants filed objections to the fee records.  ECF No. 277 ("Defs.' Objs.").  Class Counsel filed a Response.  ECF No. 279 ("Resp. to Objs.").

The Court also ordered Class Counsel to file supplemental declarations regarding the size of the class and the amount recovered by class members to date.  ECF No. 281 ("Oct. 22, 2010 Order"), 282 ("Supp. Gross Decl. in Resp. to Oct. 22, 2010 Order"),[1] 284 ("Taylor Decl. in Resp. to Oct. 22, 2010 Order"), 285 ("Supp. Taylor Decl. in Resp. to Oct. 22, 2010 Order ").[2] Having considered the papers submitted and the arguments presented, the Court GRANTS IN PART and DENIES IN PART the Motion for an Award of Attorneys' Fees, Costs, and Service Awards to the Named Plaintiffs.

---

[1] Stuart G. Gross ("Gross"), an attorney at the law firm of CPM, filed a number of declarations in support of the Motion for Attorneys' Fees.

[2] Julie L. Taylor ("Taylor"), attorney at the law firm Keesal, Young & Logan, filed a number of declarations in opposition to the Motion for Attorneys' Fees.

**United States District Court**
For the Northern District of California

## II.   **BACKGROUND**

On November 15, 2007, a putative class action was filed on behalf of all commercial fishing operations in the San Francisco Bay Area harmed as a result of the COSCO BUSAN oil spill.   ECF No. 1 ("Compl.").   On November 19, 2007, a Verified First Amended Complaint was filed.   ECF No. 7 ("FAC").   It requested that Defendants be required to establish a fund and emergency clean-up program, it sought to hold Defendants strictly liable for damages as a result of the oil spill, and it also asserted causes of action for negligence and violation of California's Business and Professions Code § 17200 et seq.   FAC ¶¶ 35-58.   On July 29, 2008, a Verified Second Amended Complaint was filed.   ECF No. 117 ("SAC").   It added causes of action for strict liability under the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act ("Lempert-Keene Act"), Cal. Gov't Code § 8670 et seq.; negligence per se; and public nuisance.   SAC ¶¶ 67-95.

On November 20, 2007, CPM filed a putative class action in the Superior Court of San Francisco, Tarantino et al. v. Hanjin Shipping et al. ("the Tarantino action"), No. CGC-07-469379, on behalf of a similar class of commercial fishing operations.   Pitre Decl. ¶ 6.[3]   Audet & Partners and CPM soon thereafter coordinated their efforts.   Mot. for Attorneys' Fees at 4.

Plaintiffs applied for and were issued a warrant for the arrest of the COSCO BUSAN.   ECF Nos. 10 ("App."), 19 ("Order Authorizing Issue of Warrant of Arrest"), 21 ("Warrant").   The

---

[3] Frank M. Pitre ("Pitre"), partner in the law firm of CPM, filed a declaration in support of Plaintiff's Motion for Final Approval of the Class Action Settlement.   ECF No. 215.

**United States District Court**
For the Northern District of California

Court appointed Marine Lenders Services, LLC, as substitute custodian of the vessel.  ECF No. 20 ("Order of Appointment").  The COSCO BUSAN left U.S. waters on or about December 20, 2007, after Regal Stone and Fleet Management signed a Letter of Undertaking in the amount of $20,000,000 as security.  Mot. for Attorneys' Fees at 5.

On April 25, 2008, the Court ordered Defendants to inform claimants who signed Prepayment Advance Forms that, by doing so, they did not waive their right to join any lawsuit or class action for damages resulting from the oil spill.  ECF No. 86 ("Apr. 25, 2008 Order").  After several rounds of mediation and numerous settlement discussions, Class Counsel signed a Memorandum of Understanding on October 1, 2009, outlining the terms of the Dungeness Crab fishermen settlement.  Audet Decl. ¶¶ 11, 20-26.[4]

On April 21, 2010, the Court granted preliminary approval of the settlement in this case, and provisionally certified the class for settlement purposes.  ECF No. 207 ("Apr. 21, 2010 Order").  The Court permitted Plaintiffs from the Tarantino action to intervene in this case for the purpose of settling the claims of Dungeness Crab fishermen in both this case and the state court action.  ECF No. 209 ("Stip. and Order re: Limited Intervention").

The Settlement Agreement applies to Dungeness Crab skippers and crewmembers who have not individually settled their claims.  See ECF No. 199 ("Mem. of P. & A. in Support of Mot. for Preliminary Approval of Dungeness Crab Settlement") Ex. A

---

[4] William M. Audet ("Audet"), founding partner of Audet & Partners, filed a declaration in support of the Motion for Final Approval and the Motion for Award of Attorneys' Fees, Costs, and Service Awards to the Named Plaintiffs.  ECF No. 214.

**United States District Court**
For the Northern District of California

("Settlement Agreement").  After the oil spill, Regal Stone
established a claims process under the Oil Pollution Act of 1990
("OPA") and the Lempert-Keene Act (hereinafter, "OPA Claims
Process").  Settlement Agreement at 3.  Under OPA, "each
responsible party for a vessel . . . from which oil is discharged .
. . is liable for the removal costs and damages . . . that result
from such incident."  33 U.S.C. § 2702.  OPA requires injured
parties to present their claims for removal costs and damages to
the responsible party.  Id. §§ 2713(a),(c).  To promote speedy
resolution of OPA claims, the statute holds the responsible party
liable for interest after thirty days from receipt of the claim.
Id. §§ 2705.  California law also imposes strict liability on
vessel owners for clean-up costs and damages resulting from an oil
spill, and it also requires the establishment of a claims process.
See Cal. Gov't Code §§ 8670 et seq.  Over $16 million has been paid
to skippers through the OPA Claims Process, including payments made
to 220 individuals and entities that are not part of the class
because they individually settled their claims.  Taylor Decl. in
Resp. to Oct. 22, 2010 Order ¶ 27 n.2.

Under the settlement's terms, skippers who have not
individually settled must first seek compensation through the OPA
Claims Process.  Settlement Agreement at 3.  To date, thirty-two
skippers have filed claims.  Twenty-seven of these have received
compensation through the OPA Claims Process in the total amount of
$1,161,363.43, one skipper received a payment of $40,125, and four
skipper claims are pending.  Supp. Taylor Decl. in Resp. to Oct.
22, 2010 Order ¶¶ 15-17.  Named class representatives were
reimbursed for clean-up payment reductions in the amount of

United States District Court
For the Northern District of California

$3,827.50.  Id. ¶ 15.  The deadline for skippers to submit their OPA claims is January 1, 2011.  Settlement Agreement at 21; Supp. Gross Decl. in Resp. to Oct. 22, 2010 Order ¶ 20; Taylor Decl. in Resp. to Oct. 22, 2010 Order ¶ 10.  It is not likely that many more skippers will file claims prior to this deadline because most or all of these thirty-two skipper claims were filed prior to notice being sent to the class.  See Supp. Taylor Decl. in Resp. to Oct. 22, 2010 Order ¶¶ 7-8.

Within 180 days after resolution of their OPA claims, these skippers must then submit their claims to Gilardi & Co., LLC, the Class Action Settlement Claims Administrator ("Settlement Claims Administrator"), which is authorized to pay skippers a twenty-five percent premium and reimbursement of attorneys' fees.  Settlement Agreement at 17-22.  As of November 3, 2010, twenty-seven skippers who are part of the class have been paid $1,161,363.43.  Supp. Gross Decl. in Resp. to Oct. 22, 2010 Order ¶ 33; Supp. Taylor Decl. in Resp. to Oct. 22, 2010 Order ¶ 15.  Taking into account the payments that have been made to date, and based on estimates concerning four pending claims, the total potential recovery for skippers who are part of the class is not likely to exceed $1,716,660.83.  See Supp. Taylor Decl. in Resp. to Oct. 22, 2010 Order ¶¶ 20.  As a result of this settlement, skippers are likely to receive approximately $343,332.17 in excess of what they could have received through the OPA Claims Process.  Id. ¶ 21.

Under the terms of the settlement, Dungeness Crab crewmembers can receive a base payment of $500 plus a payment of $250 for each qualifying season worked, up to a maximum settlement payment of $1250.  Settlement Agreement at 18.  Forty crewmembers submitted

**United States District Court**
For the Northern District of California

claims to the Settlement Claims Administrator prior to the November 2, 2010 deadline for crewmember claims. Taylor Decl. in Resp. to Oct. 22, 2010 Order ¶ 20. Of those forty, the Settlement Claims Administrator found nine claims to be valid. Id. Those nine crewmembers will be paid a total of $9500. Id. ¶ 36. The other thirty-one crewmembers failed to submit the required documentation. Id. ¶ 20. If they correct these deficiencies, the highest possible amount crewmembers will be paid under the terms of the settlement is $41,750. Id. ¶ 36.

**III. LEGAL STANDARD**

Plaintiffs asserted claims under California law, including the Lempert-Keene Act, which allows prevailing plaintiffs to recover reasonable costs, attorneys' fees, and the costs of necessary expert witnesses. Cal. Gov't Code § 8670.56.5(f). Where California law governs the claim, it also governs the award of attorneys' fees. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (applying Washington law to calculate fees where claim was brought under Washington law); see also Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995) (applying California law).

Courts in California and the Ninth Circuit recognize two methods for calculating attorneys' fees in civil class actions: the lodestar/multiplier method and the percentage of recovery method. Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 253 (Ct. App. 2001); Hanlon v. Chrysler Group, 150 F.3d 1011, 1029 (9th Cir. 1998). In fee-shifting cases, "in which the responsibility to pay attorney fees is statutorily or otherwise transferred from the

prevailing plaintiff or class to the defendant, the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method." <u>Lealao v. Beneficial Cal., Inc.,</u> 82 Cal. App. 4th 19, 26 (Ct. App. 2000).

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." <u>PLCM Group v. Drexler</u>, 22 Cal. 4th 1084, 1095 (2000).  The reasonable hourly rate is that prevailing in the community for similar work.  <u>Id.</u>  The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided.  <u>Id.</u>  These factors include: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1132 (citing <u>Serrano v. Priest</u>, 20 Cal.3d 25, 49 (1977)).

**IV.  <u>DISCUSSION</u>**

    **A.  <u>CPM's Lodestar</u>**

        **1.  Reasonable Hours**

CPM has provided the Court with its billing records for <u>in camera</u> review and it has publicly filed and served redacted versions of these records.  First Supp. Gross Decl. Ex. 1 ("CPM Allocated Time Report").[5]  As noted above, CPM's clients intervened

---

[5] Gross filed a supplemental declaration in support of the Motion for Attorneys' Fees.  ECF No. 273.

**United States District Court**
For the Northern District of California

in this action for the purpose of settling Dungeness Crab fishermen
claims.  The attorneys' fees that CPM seeks in this case represents
approximately twenty-seven percent of its total lodestar for the
entire <u>Tarantino</u> action, and CPM will seek an award of the rest of
its fees in the state court action.  Second Supp. Gross Decl. ¶ 3.[6]
These other fees were incurred pursuing claims on behalf of other
commercial fishermen, variously referred to as the "finfish
claims," or the "flatfish claims."  <u>Id.</u>; Supp. Audet Decl. ¶ 3.[7]

CPM color-coded its Allocated Time Report.  Time entries that
CPM allocated equally between Dungeness Crab claims and Finfish
claims are highlighted in green.  The greatest concentration of
"green time" occurs at the beginning of the litigation, when CPM
was doing work that was foundational for all of the claims it
pursued.  This activity includes: preparing the complaint;
conducting investigations; meetings with potential class members;
conducting legal research on matters including service on foreign
defendants; preparing an amended complaint; conducting legal
research regarding the effect of related criminal proceedings on
the civil cases; preparing discovery plans; coordinating with the
San Francisco City Attorney's office; applying for complex
designation status; reviewing reports from the National
Transportation Safety Board ("NTSB"); preparing third party
subpoenas for crew members; assisting fishermen with the OPA Claims
Process; preparing for and attending material witness depositions;

---

[6] Gross filed a second supplemental declaration in support of the
Motion for Attorneys' Fees.  ECF No. 276.

[7] Audet filed a supplemental declaration in support of the Motion
for Attorneys' Fees.  ECF No. 275.

**United States District Court**
For the Northern District of California

preparing for and attending mediation sessions; reviewing data related to damages; and engaging in settlement discussions. <u>See</u> CPM Allocated Time Report.

Time entries fully allocated to the Dungeness Crab claims are highlighted in yellow. These include preparing the motion and affidavits for an Order to Show Cause ("OSC"); meetings with clients regarding the OPA Claims Process and assisting fishermen with their claim forms; and work related to settling the claims of the Dungeness Crab fishermen. <u>See</u> <u>id.</u>

Time entries that were allocated between the Dungeness Crab claims and the Finfish claims in some other proportion are highlighted in blue. The "blue time" includes a ten percent allocation for some of the early factual investigations conducted by CPM. <u>See</u> <u>id.</u> Some of the investigations conducted early in December 2008 were allocated seventy-five percent to the Dungeness Crab claims. CPM allocated twenty-five percent of the time related to a Freedom of Information Act ("FOIA") request. Some of the entries related to settling the Dungeness Crab claims were allocated sixty-six, seventy-five, or ninety percent to the Dungeness Crab claims.

CPM retained several experts to assess the long-term impact of the oil spill on the Dungeness Crab fishery, including the Research Group of Corvallis, Oregon, and Edward Ueber. Supp. Pitre Decl. ¶ 4.[8] A FOIA request by CPM to the National Oceanic and Aeronautical Administration yielded a huge amount of data related

---

[8] Pitre filed a supplemental declaration in support of the Motion for Attorneys' Fees. ECF No. 250.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

to the oil spill that was analyzed by CPM and its consultants. Pitre Decl. ¶ 12.

It is clear to the Court that determining the nature and extent of the damages suffered by Dungeness Crab fishermen was no easy matter.  These efforts had an impact on the parties' settlement negotiations. Indeed, Class Counsel agreed to settle with Defendants only after an expert concluded that the probability of long-term impact from the oil spill on the Dungeness Crab fishery was small.  Supp. Pitre Decl. ¶ 5.  Considering the substantial disagreements between Class Counsel and Defendants concerning such issues as the appropriateness of crab fishermen pursuing their claims as a class action, it is clear to the Court that the parties' negotiations were intense, substantive, and adversarial.  See Audet Decl. ¶¶ 20-26; Pitre Decl. ¶¶ 14-17. Having carefully reviewed CPM's detailed time entries, and with the exceptions noted below, the Court finds the time spent on this case by CPM attorneys, paralegals, and staff was reasonable, and that the allocation of time between Dungeness Crab claims and Finfish claims is reasonable.

### 2.   Reasonable Rates

When determining a reasonable hourly rate, the Court looks to "the prevailing hourly rate in the area for comparable services." Ketchum, 24 Cal. 4th at 1140; see also Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008) (relevant community is forum in which district court sits).  The Court can consider evidence including "declarations by Bay Area attorneys concerning the prevailing rates for contingent fee cases." Ketchum, 24 Cal. 4th at 1140.

**United States District Court**
For the Northern District of California

1    CPM's attorneys billed at rates ranging from $900 per hour for

2    Joseph W. Cotchett, who spent only 4.85 hours working on this case,

3    to rates of $150 per hour for work performed by law clerks.  Pitre

4    Decl. Ex 3 ("CPM Lodestar Report").  Most of the work in this case

5    was performed by partner Frank M. Pitre, whose hourly rate was

6    $775, associate Stuart G. Gross, whose hourly rate was $350, and

7    case assistant/paralegal Ryan Manuel, whose hourly rate was $225.

8    See id.

9    The Court finds that the rates charged by CPM's attorneys,

10   case assistants, and paralegals are reasonable.  The rates charged

11   are the same as those charged by CPM in other cases of this nature,

12   including rates charged to CPM's hourly clients.  Pitre Decl. ¶ 24.

13   Class counsel submitted a number of declarations from other

14   attorneys representing plaintiffs in complex civil litigation who

15   aver that CPM's rates are comparable to their own and to those of

16   other attorneys of similar levels of experience.  See Alexander

17   Saveri Decl. ¶¶ 2-3;[9] Joseph Saveri Decl. ¶¶ 1-2.[10]  Alexander

18   Saveri has attached to his declaration hourly fee schedules from a

19   case in San Francisco Superior Court showing that other attorneys

20   billed at similar rates.  Alexander Saveri Decl. Ex. C, D, and E.

21   Taking into account the experience of the attorneys working on this

22   case and in comparable cases, and taking into account the

23

24   _____

25   [9] Alexander Saveri, managing partner of Saveri & Saveri, Inc.,
     filed a declaration in support of the Motion for Award of

26   Attorneys' Fees.  ECF No. 251.

27   [10] Joseph R. Saveri, an attorney practicing in the Northern
     District of California, filed a declaration in support of the

28   Motion for Award of Attorneys' Fees.  ECF No. 254.

**United States District Court**
For the Northern District of California

1  complexity of this case, the Court finds that CPM's rates were

2  reasonable.

3  **B.   Audet's Lodestar**

4  **1.   Reasonable Hours**

5  Audet & Partners submitted its time records for <u>in</u> <u>camera</u>

6  review, and the law firm also filed and served redacted versions of

7  the time records.   <u>See</u> Supp. Nadji Decl. Ex. A ("Audet Time

8  Records").[11]   These records show that attorneys at Audet & Partners

9  began investigating the case and meeting with potential clients in

10  early November 2007.   <u>See</u> <u>id.</u>   Attorneys from Audet & Partners

11  spent time preparing the complaint and amended complaints;

12  requesting a show cause hearing regarding ex parte communications

13  with putative class members; assisting fishermen with the OPA

14  Claims Process; propounding discovery requests; participating in

15  depositions; analyzing expert reports and other data; mediating

16  Dungeness Crab fishermen's claims; and engaging in settlement

17  discussions.   <u>See</u> <u>id.</u>

18  This case was filed on November 15, 2007, shortly after the

19  COSCO BUSAN allided with the Bay Bridge.   <u>See</u> Compl.   Successfully

20  litigating this case involved extensive research in the specialized

21  area of law that governs oil spill liability.   Audet retained and

22  utilized a number of maritime consultants during discovery and

23  later to prepare Plaintiffs' damages calculations.   Audet Decl. ¶

24  16.   Class Counsel attended depositions, including those of the

25  COSCO BUSAN's crew members.   <u>Id.</u> ¶ 17.   During the course of this

26  two-and-a-half year litigation, Class counsel has been in contact

27  _____

28  [11] Adel A. Nadji ("Nadji"), attorney at Audet, filed a supplemental declaration in support of the Motion for Award of Attorneys' Fees. ECF No. 274.

13

with over one hundred class members and/or commercial fishermen regarding their experiences related to the oil spill.  Id. ¶ 18.

Audet & Partners retained a number of experts during the course of this litigation, including Dennis M. King, Ph.D., of King & Associates, Inc., who conducted background research, data collection, data analysis, and report preparation for Audet & Partners.  Id. ¶ 32(c).  The law firm retained and utilized consultants and reviewed thousands of pages of documents related to the events leading up to the oil spill.  Id. ¶ 16.  The firm engaged Marine Lender Services, LLC, to assist with the arrest of the COSCO BUSAN.  Id. ¶ 32(d).  Audet & Partners' Motion for an OSC helped insure that the Claims Process established by Defendants was conducted in a fair manner, and the law firm successfully petitioned the Court for an Order enjoining Defendants from attempting to get fishermen who participated in the OPA Claims Process from giving up their rights to participate in this action.  Audet & Partners worked with the Settlement Claims Administrator regarding the class notice plan, the claim form, publication notice, and the class notice.  Id. ¶ 32(j).  With the exceptions noted below, the Court finds that the time Audet & Partners expended on this case was reasonable.

### 2.    Reasonable Rates

Attorneys, paralegals and legal assistants for Audet & Partners billed at rates ranging from an hourly rate of $650 for William Audet, who spent 639.82 hours working on this case, to hourly rates of $100 for a number of legal assistants or paralegals.  Audet Decl. Ex. 4 ("Audet Chart").  For the reasons explained above when discussing CPM's hourly rates, see Part

**United States District Court**
For the Northern District of California

1    IV.A.2, <u>supra</u>, the Court finds that Audet & Partners' hourly rates

2    are reasonable.

3       **C.   Objections**

4       Defendants filed objections to Class Counsel's time records.

5    The Court addresses each objection.

6          **1.   Block Billing**

7       Defendants contend that Class Counsel engaged in excessive

8    block billing, thereby hampering the Court's ability to determine

9    the reasonableness of the hours expended on this case.  Defs.'

10   Objs. at 1-2.  Defendants request the Court reduce Class Counsel's

11   block billing entries by at least thirty percent.   <u>Id.</u>

12      The Court denies the request.  The Court has "authority to

13   reduce hours that are billed in block format . . . because block

14   billing makes it more difficult to determine how much time was

15   spent on particular activities."  <u>Welch v. Metro. Life Ins. Co.</u>,

16   480 F.3d 942, 948 (9th Cir. 2007); <u>but</u> <u>see</u> <u>Wershba</u>, 91 Cal. App.

17   4th at 255 (fee awards permitted in absence of detailed time

18   sheets).  Here, the time records submitted by Audet & Partners and

19   CPM are sufficiently detailed for the Court to determine the

20   reasonableness of the hours expended.  Defendants, for example,

21   complain about Audet's time entry for November 20, 2007, where he

22   billed 13.75 hours based on 18 separate tasks.  <u>See</u> Defs.' Objs. at

23   2.  While, as explained below, <u>see</u> Part IV.C.7, <u>infra</u>, the Court

24   reduces Audet's fee request for time spent communicating with the

25   media, this fee reduction shows that the time entries are

26   sufficiently clear and detailed for the Court to evaluate their

27   reasonableness.  The Court denies Defendants' request for a

28   reduction based on block billing.

**United States District Court**
For the Northern District of California

## 2.   <u>Tarantino</u> State Court Action

Defendants object that several time entries relate to work performed solely in connection with the <u>Tarantino</u> state court action.  Defs.' Objs. at 3.  However, as explained above, the settlement in this case resolves the class claims of the Dungeness Crab fishermen brought here and in state court.  Defendants point out that CPM seeks fees for work done to prepare and serve the <u>Tarantino</u> complaint and to obtain complex designation in the <u>Tarantino</u> case.  <u>Id.</u> at 3.  CPM seeks reimbursement for fifty percent of this time, which is reasonable, because this work benefited Dungeness Crab fishermen.  Now that Defendants are in possession of redacted versions of CPM's time records, Defendants can make sure that CPM does not seek duplicate recovery in the <u>Tarantino</u> action.

Defendants object that Audet & Partners' records include entries relating to mediations and discovery that took place after the parties signed a Memorandum of Understanding.  Defs.' Objs. at 3.  According to Defendants, there were no additional mediations or additional discovery relating to the Dungeness Crab claims after the MOU was signed.  Moriarty Decl. ¶ 5.[12]  It appears, therefore, that time entries for mediation and discovery after November 2009 can only relate to the <u>Tarantino</u> action.  Also, Adel Nadji's time entries concerning opt-outs do not relate to this case.  <u>See</u> Christman Decl. ¶ 10; Second Christman Decl. ¶ 8 (no requests for

---

[12] Anne Moriarty ("Moriarty"), counsel for Defendants Regal Stone, Fleet Management and the M/V COSCO BUSAN, filed a declaration in support of Defendants' Objections to Class Counsel's fee records. ECF No. 278.

1  exclusion).[13]  Accordingly, the Court reduces Audet & Partners'

2  requested fees by $16,026.[14]

3             **3.    Plaintiffs Who Withdrew**

4        Defendants point out that, during the course of this

5  litigation, some Named Plaintiffs withdrew.  Defs.' Objs. at 4.

6  Defendants contend they should not be held responsible for fees

7  Class Counsel incurred due to decisions to withdraw.  Id.  However,

8  Class Counsel assisted many fishermen who ultimately decided to

9  individually settle, and work by Class Counsel to maintain the

10  viable of this class action is recoverable.  Accordingly, the Court

11  denies the request to reduce the fee award based on fees incurred

12  dealing with the withdrawal of Named Plaintiffs.

13          **4.    Work Relating to Non-Class Action Cases**

14        Defendants object to Class Counsel's time entries relating to

15  non-class action cases filed against Defendants as a result of the

16  oil spill.  Defs.' Objs. at 4.  Defendants contend that Class

17  Counsel should not be compensated for work relating to a claim by

18  Next Seafood, a crab processor that is not a class member in this

19  case or the Tarantino action.  See id.  Class Counsel does not

20  respond to this objection.  Accordingly, the Court reduces Audet &

21  Partners' award by $6316.50.[15]

22

_____

23  [13] Rachel Christman ("Christman"), case manager at Gilardi & Co.,

24  LLC, filed two declarations related to this motion. ECF Nos. 216, 240.

25  [14] Defendants request that Audet & Partners' fees be reduced by

26  $16,053,50.  This includes a time entry for A. Bustamante on May 15, 2009, but there is no such time entry in the records.  The

27  Court reduces Audet's fees by $16,026 ($16,053.50 - $27.50 = $16,026).

28  [15]  Time entries reflecting work on Next Seafood's claim include
    Audet's entries for March 14, 2008, April 8, 2009, April 23, 2009,

1   With regard to the other time entries that refer to related

2   cases, the Court finds that the work performed advanced this class

3   action.  For example, Fleet Management's guilty pleas in the

4   criminal action would have been admissible evidence in this case.

5   Also, this Court's finding in Continental Insurance Co. v. Regal

6   Stone, Case No. 08-2052, that Section 1198 of the California

7   Harbors and Navigations Code is not preempted by federal law is

8   relevant to the claims brought by Dungeness Crab fishermen because

9   it helps establish the liability of the shipowner for the actions

10  of the ship's pilot.  Other than the time entries related to Next

11  Seafood, the Court will not reduce Class Counsel's request for fees

12  based on work done in connection with related cases.

13          **5.   Clerical Work**

14  Defendants seek a reduction of fees based on time spent on

15  clerical work and related administrative tasks.  In Missouri v.

16  Jenkins, the Supreme Court held that a "'reasonable attorney's fee'

17  provided for by statute should compensate the work of paralegals,

18  as well as that of attorneys."  491 U.S. 274, 285 (1989).  Both the

19  Ninth Circuit and California courts allow clerical and secretarial

20  work to be included in the Court's determination of reasonable

21  attorneys' fees.  Trs. of the Constr. Indus. and Laborers Health

22  and Welfare Trust v. Redland Ins. Co., 460 F.3d 1253, 1258 (9th

23  Cir. 2006); Salton Bay Marina, Inc. v. Imperial Irrigation Dist.,

24  172 Cal. App. 3d 914, 951 (Ct. App. 1985).  Hence, the Court denies

25

26

27  and June 3, 2009; McShane's entries for March 14, 2008, and March
    17, 2008; Nadji's entry for May 5, 2009; Chamberlin's entry for

28  June 3, 2009; and Chase's entry for January 24, 2008, and March 19,
    2008.

**United States District Court**
For the Northern District of California

1  Defendants' request to reduce the fee award based on time entries

2  describing paralegal or clerical work.

3       **6.   Duplication of Work**

4       Defendants contend that Class Counsel's records reflect

5  significant evidence of duplication.  Defs.' Objs. at 5.  With

6  regard to work performed on the OSC, the time records do not

7  support Defendants' contention.  Audet states that his firm served

8  as the lead counsel on the motion, and that CPM provided support

9  including, but not limited to, class member declarations.  Supp.

10  Audet Decl. ¶ 5.  The time records support this statement because

11  the vast majority of the work performed by CPM on the OSC motion

12  was performed by a CPM associate, Stuart Gross.  <u>See</u> CPM Allocated

13  Time Report.

14       Defendants contend it was unnecessary and duplicative for one

15  attorney from both CPM and Audet & Partners to prepare for and

16  attend the five COSCO BUSAN crewmember depositions taken in

17  connection with a civil action filed by the United States

18  Government.  Defs.' Objs. at 6.  The Court finds it was not

19  duplicative for these two firms to have one attorney present at

20  each of the depositions to ensure that the deposition testimony

21  could be entered into evidence in either this case or in the

22  <u>Tarantino</u> state court action.[16]

23       Defendants contend that it was unnecessary and duplicative for

24  five attorneys from CPM and Audet & Partners to prepare for and

25  attend the one-day mediation in December 2008.  Defs.' Objs. at 7.

26  Class Counsel responds that Defendants were represented at the

---

[16]  Stuart Gross appears to have duplicated his May 19, 2008 time
entry of 10.5 hours.  The Court reduces CPM's fee request by $3675
for this double billing ($350 x 10.5).

**United States District Court**
For the Northern District of California

1  mediation by three partners from Keesal, Young & Logan, and three

2  representatives from Hudson Marine Management Services ("Hudson

3  Marine").  Resp. to Objs. at 4.  Having reviewed the time entries

4  associated with preparing for and attending the mediation, the

5  Court finds Class Counsel's time was reasonable.  Defendants also

6  object to a number of other single entries in the time records.

7  Defs.' Objs. at 8.  Having reviewed these entries, and having

8  considered Defendants' objections to them, the Court finds that the

9  time spent and work performed was neither unnecessary nor

10  duplicative.

11               **7.   Media Contacts**

12      The Court finds that Class Counsel should not be compensated

13  for time spent interacting with the media.  Such contacts serve to

14  enhance Class Counsel's reputation, and that is compensation

15  enough.  Having reviewed Audet's time entries, the Court estimates

16  he spent about twenty hours interacting with the media, and hence

17  the Court reduces his requested award by $13,000.  Having reviewed

18  CPM's time entries that describe contacts with the media, the Court

19  reduces CPM's award by $3087.50.[17]

20               **8.   OPA Claims Process**

21      Defendants object to time spent assisting individual fishermen

22  submit their OPA claims.  Defs.' Objs. at 9.  The Court has

23  reviewed some of the correspondence between Lead Plaintiffs, Class

24  Counsel and Hudson Marine as part of the Lead Plaintiffs' pursuit

25  _____

26  [17] Based on CPM's time records, the Court estimates that Frank
    Pitre spent approximately 2.5 hours dealing with media contacts,
27  Stuart Gross spent approximately 1.5 hours, and Nirav Engineer
    spent approximately 2.5 hours.  (2.5 x $775) + (1.5 x $350) + (2.5
28  x $250) = $3087.50.

**United States District Court**
For the Northern District of California

1    of their claims.  <u>See</u> Gross Decl. Exs. 1-22.[18]  The Court is

2    persuaded that Lead Plaintiffs required attorney assistance.  Lead

3    Plaintiffs were awarded $510,749.49 in short-term claims.  Pitre

4    Decl. ¶ 32.  Class Counsel should be compensated for their work

5    assisting Lead Plaintiffs.  The Court denies the request to exclude

6    work performed on behalf of individual fishermen.

7        **D.    Revised Lodestars**

8        Audet & Partners expended 1955.65 hours in the prosecution and

9    settlement of this case.  Audet Decl. ¶¶ 34-36.  These hours

10   multiplied by reasonable hour rates resulted in a requested

11   lodestar of $890,185.45.  <u>Id.</u>  Having reviewed the time records of

12   Audet & Partners <u>in camera</u>, and having considered Defendants'

13   objections, the Court finds that the lodestar should be reduced by

14   $35,342.50.[19]  Therefore Audet & Partners' revised lodestar, based

15   on the Court's determination of reasonable hours expended and

16   reasonable rates charged, is $854,842.95.

17       CPM expended 1268.60 hours in the prosecution and settlement

18   of this case.  Pitre Decl. ¶ 24.  These hours multiplied by

19   reasonable hour rates result in a requested lodestar of

20   $434,392.50.  <u>Id.</u>  Having reviewed the time records of CPM <u>in</u>

21   <u>camera</u>, and having considered Defendants' objections, the Court

22   finds that the lodestar should be reduced by $6762.50.[20]

23   Therefore, CPM's revised lodestar, based on the Court's

---

[18] Gross filed a declaration in support of Plaintiffs' Response to
Defendants' Objections to Class Counsel's Fee Records.  ECF No.
280.

[19] $16,026 + $6316.50 + $13000 = $35,342.50.

[20] $3675 + $3087.50 = $6762.50.

1  determination of reasonable hours and reasonable rates, is

2  $427,630.

3      **E.    Requested Enhancement**

4      Class Counsel requests a 1.5 multiplier.  Mot. for Attorneys'

5  Fees at 2, 17.  Defendants contend that a negative multiplier is

6  warranted.  Opp'n at 25.  Other than the reductions outlined above,

7  the Court neither enhances nor reduces the revised lodestars.

8      Under California law, the party seeking a fee enhancement

9  bears the burden of proof.  Ketchum, 24 Cal. 4th at 1138.  In

10  determining whether to include a fee enhancement, the trial court

11  takes into account such factors as contingent risk and exceptional

12  skill.  Id.  The purpose of such an adjustment is to fix a fee at

13  the fair market value for the particular action.  Id. at 1132.  "In

14  effect, the court determines, retrospectively, whether the

15  litigation involved a contingent risk or required extraordinary

16  legal skill to justify augmentation of the unadorned lodestar in

17  order to approximate the fair market rate for such services."  Id.

18      The Court finds that a multiplier is not justified.  While

19  Class Counsel prosecuted this case on a contingent-fee basis, see

20  Pitre Decl. ¶ 26; Audet Decl. ¶ 38, the risks were not as great as

21  in other such cases.  Before this lawsuit was filed, Regal Stone

22  had been designated as the responsible party for the oil spill

23  pursuant to the Lempert-Keene Act.  See Opp'n at 5.  This act

24  imposes strict liability on the responsible party.  See Cal. Gov't

25  Code § 8670.56.5(a) ("A responsible party . . . shall be absolutely

26  liable without regard to fault for any damages incurred by any

27  injured party that arise out of, or are caused by a spill . . .

28  .").  The statute provides for reasonable attorneys' fees and

22

**United States District Court**
For the Northern District of California

1    costs.  Id. § 8670.56.5(f).  Although Defendants vigorously opposed

2    the efforts to prosecute this case as a class action, the Court

3    finds that the underlying legal standard made this case less risky

4    than comparable contingent-fee cases.

5        The Court does not deny that Class Counsel litigated this case

6    in a skillful manner.  However, the Court has already taken into

7    account the skill and experience of Class Counsel in determining

8    that Class Counsel's hours expended and rates charged were

9    reasonable.  The results do not warrant a fee enhancement.  Forty

10   crewmembers have applied for the benefits made possible by this

11   settlement, and their total recovery will not exceed $41,750.  See

12   Taylor Decl. in Resp. to Oct. 22, 2010 Order ¶ 36.  The number of

13   skippers in the class is not likely to be much higher than thirty-

14   two.  See Supp. Taylor Decl. in Resp. to Oct. 22, 2010 Order ¶¶ 7-

15   8, 15-17.  These skippers are likely to recover approximately $1.7

16   million, but Class Counsel has essentially obtained for them a

17   twenty-five percent premium over what they were entitled to under

18   the OPA Claims Process.  As a result of this settlement, skippers

19   are likely to receive approximately $343,332.17 in excess of what

20   they could have received through the OPA Claims process.  See id.

21   ¶ 21.

22       The Court does not doubt that Class Counsel played an

23   important role in ensuring that the OPA Claims Process proceeded in

24   a fair and transparent manner, and in ensuring that important

25   studies were performed to evaluate the effects of the oil spill on

26   the Bay Area's crab fishery.  Having reviewed Class Counsel's time

27   records, the Court finds a substantial award of attorneys' fees is

28

warranted.  However, Class Counsel has not met its burden of
convincing the Court that this award should be enhanced.

**F.   Costs**

Audet & Partners submitted a cost report showing the firm
incurred costs of $40,911.39.  Audet Decl. Ex. 5 ("Audet Cost
Report").  The costs include expert fees, photocopying, online
research, court filings, transcripts, and telephone and facsimile
costs.  Id.  Audet declares he avoided unnecessary costs and
excluded unreasonable expenses.  Supp. Audet Decl. ¶ 11.
Considering that this litigation has been pending for over two-and-
a-half years, and considering the clear need for expert analysis of
the issues in this case, the Court finds the costs incurred by
Audet & Partners are reasonable.

CPM submitted a cost report showing the firm incurred costs
of $29,144.55.  Pitre Decl. Ex. 4 ("CPM Cost Report").  The costs
include expert fees, court costs, depositions, document production,
investigation costs, online research, photocopies, and amounts paid
to process servers.  Id.  Gross declares the incurred costs were the
product of allocation decisions.  Second Supp. Gross Decl. ¶ 14.
CPM separated out costs solely attributable to the pursuit of
Finfish claims, and the remaining costs were divided in half and
allocated equally between the pursuit of Dungeness Crab claims and
Finfish claims.  Id.  The Court finds that CPM's allocated costs of
$29,144.55 are reasonable.

**G.   Service Awards**

Plaintiffs request a combined service award of $37,500,
consisting of payments of $7500 to each of the five Named
Plaintiffs.  Such plaintiffs are eligible for reasonable incentive

**United States District Court**
For the Northern District of California

1   payments.   In re Cellphone Fee Termination Cases, 186 Cal. App. 4th

2   1380, 1393-95 (Ct. App. 2010); Staton v. Boeing Co., 327 F.3d 938,

3   977 (9th Cir. 2003).   The declarations filed by Allen Loretz, John

4   Tarantino, Steven Fitz, Sean Hodges, and John Atkinson state that

5   they each participated actively in the litigation.   ECF Nos. 217-

6   221.   The requested $7500 service award is included in the

7   Settlement Agreement, and it has already been agreed to by the

8   Defendants.   See Settlement Agreement at 26.   The service award

9   does not reduce potential payments to other class members.

10  Accordingly, the Court GRANTS the request for service awards of

11  $7500 each to Allen Loretz, John Tarantino, Steven Fitz, Sean

12  Hodges, and John Atkinson.

13

14  **V.   CONCLUSION**

15      In summary, as of November 3, 2010, twenty-seven skippers who

16  are part of the class have been paid $1,161,363.43.   The number of

17  skippers who are part of this class is not likely to exceed thirty-

18  two, and their total potential recovery is not likely to exceed

19  $1,716,660.83.   As a result of this class action, these skippers

20  will receive approximately $343,332.17 in excess of what they could

21  have received through the OPA Claims Process.   The number of

22  crewmembers who are part of the class will not exceed forty, and

23  the highest possible amount crewmembers will be paid as a result of

24  this class action is $41,750.   Id. ¶ 36.

25      Having reviewed all of the submissions in support of, and in

26  opposition to, the Motion for Attorneys' Fees and Costs, and for

27  the reasons explained above, the Court GRANTS IN PART and DENIES IN

28  PART the Motion.   The Court hereby awards Audet & Partners, LLP

1   $854,842.95 in attorneys' fees and $40,911.39 in costs.  The Court

2   hereby awards Cotchett, Pitre & McCarthy $427,630 in attorneys'

3   fees and $29,144.55 in costs.  The Court GRANTS the request for a

4   service award of $7500 each to the five Named Plaintiffs in this

5   case: Allen Loretz, John Tarantino, Steven Fitz, Sean Hodges, and

6   John Atkinson.

7       The Settlement Agreement provides that the settling Defendants

8   shall be solely responsible for all claims administration expenses.

9   Settlement Agreement at 18.  Class Counsel must continue to monitor

10  the claims process to ensure Dungeness Crab skippers and

11  crewmembers receive their appropriate relief, but the Court will

12  entertain no further motions for attorneys' fees or costs in this

13  case.

14

15      IT IS SO ORDERED.

16

17      Dated:  November 23, 2010

18                                      UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28